## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ASSOCIATION OF NEW JERSEY RIFLE & PISTOL CLUBS, INC., <br><br>BLAKE ELLMAN, *and* <br><br>ALEXANDER DEMBOWSKI, <br>       *Plaintiffs*, <br>   v. <br><br>GURBIR GREWAL, in his official capacity as Attorney General of New Jersey, <br><br>PATRICK J. CALLAHAN, in his official capacity as Superintendent of the New Jersey Division of State Police, <br><br>THOMAS WILLIVER, in his official capacity as Chief of Police of the Chester Police Department, *and* <br><br>JAMES B. O'CONNOR, in his official capacity as Chief of Police of the Lyndhurst Police Department, <br>       *Defendants*. | Civil Action No. 18-cv-10507 |

### COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

| | |
|---|---|
| David H. Thompson* <br> Peter A. Patterson* <br> Haley N. Proctor* <br> J. Joel Alicea* <br> COOPER & KIRK, PLLC <br> 1523 New Hampshire Avenue, N.W. <br> Washington, D.C. 20036 <br> (202) 220-9600 <br> (202) 220-9601 (fax) <br> dthompson@cooperkirk.com | Daniel L. Schmutter <br> HARTMAN & WINNICKI, P.C. <br> 74 Passaic Street <br> Ridgewood, New Jersey 07450 <br> (201) 967-8040 <br> (201) 967-0590 (fax) <br> dschmutter@hartmanwinnicki.com |

   **Pro hac vice* application forthcoming

*Attorneys for Plaintiffs*

## LOCAL CIVIL RULE 10.1 STATEMENT

The mailing addresses of the parties to this action are:

Association of New Jersey Rifle & Pistol Clubs, Inc.
5 Sicomac Road
Suite 292
North Haledon, New Jersey 07508

Blake Ellman
#3 Cristina Court
Chester, New Jersey 07930

Alexander Dembowski
98 Summit Avenue
Lyndhurst, New Jersey 07071

Gurbir Grewal
Office of the Attorney General
RJ Hughes Justice Complex
25 Market Street, Box 080
Trenton, New Jersey 08625

Patrick J. Callahan
Office of the Superintendent
New Jersey State Police
P.O. Box 7068
West Trenton, New Jersey 08628

Thomas Williver
Chester Police Department
1 Parker Road
Chester, New Jersey 07930

James B. O'Connor
Lyndhurst Police Department
367 Valley Brook Avenue
Lyndhurst, New Jersey 07071

## INTRODUCTION

Plaintiffs Association of New Jersey Rifle & Pistol Clubs, Inc., Blake Ellman, and Alexander Dembowski (collectively "Plaintiffs"), by and through the undersigned attorneys, file this Complaint against the above-captioned Defendants, in their official capacities as the state officials responsible under New Jersey law for administering and enforcing the State's laws and regulations governing the possession of firearms and ammunition magazines. Plaintiffs seek declaratory and injunctive relief: a declaration that New Jersey's ban on the possession of ammunition magazines capable of holding more than 10 rounds of ammunition is facially unconstitutional under the Second and Fourteenth Amendments; a declaration that the ban effects a taking of property without just compensation in violation of the Fifth and Fourteenth Amendments; a declaration that the ban unconstitutionally favors retired police officers over former members of the Armed Forces and over law-abiding citizens generally; and an injunction compelling Defendants to refrain from enforcing the invalid ban. In support of their Complaint against Defendants, Plaintiffs hereby allege as follows:

1. The State of New Jersey has criminalized one of the most common and important means by which its citizens exercise their fundamental right of self-defense. By banning the possession of standard-capacity firearm magazines that can carry more than 10 rounds of ammunition, the State has reached into the homes of its law-abiding citizens, invading their constitutional right to keep and bear arms for the defense of themselves and their families in the most intimate of private spaces. It has put its citizens to the choice of rendering their personal property useless, permanently altering it, transferring it, or handing it over to the government for no public purpose and without any prospect of compensation. And it has exempted select groups from these demands without any basis in reason.

2. Absent relief from this Court, Defendants will violate the constitutional rights of New Jersey's law-abiding citizens and reinforce the erroneous notion that the right to keep and bear arms is nothing more than "a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees." *McDonald v. City of Chicago*, 561 U.S. 742, 780 (2010).

3. Worse yet, Defendants will commit these constitutional violations without any realistic prospect of diminishing the misuse of firearms or the incidence of horrific mass shootings. The State's ban on standard-capacity magazines will do nothing to address or ameliorate these legitimate public policy concerns. All it will do is leave law-abiding citizens more vulnerable to attack from better-armed and more ruthless assailants.

4. Plaintiffs, law-abiding residents of New Jersey and a state organization dedicated to defending the right to self-defense, bring this action to vindicate the constitutional rights being denied them by the State of New Jersey.

## JURISDICTION AND VENUE

5. This Court has subject-matter jurisdiction over Plaintiffs' claim under 28 U.S.C. §§ 1331 and 1343.

6. Plaintiffs seek remedies under 28 U.S.C. §§ 1651, 2201, and 2202 and 42 U.S.C. §§ 1983 and 1988.

7. Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) & (b)(2).

## PARTIES

8. Plaintiff Association of New Jersey Rifle & Pistol Clubs, Inc. (the "ANJRPC") is a not-for-profit membership corporation, incorporated in the State of New Jersey in 1936, which represents its members. Its address is 5 Sicomac Road, Suite 292, North Haledon, New Jersey 07508. ANJRPC represents the interests of target shooters, hunters, competitors, outdoors people,

4

and other law-abiding firearms owners. Among the ANJRPC's purposes is aiding such persons in every way within its power and supporting and defending the people's right to keep and bear arms, including the right of its members and the public to purchase and possess firearms and magazines. The New Jersey restrictions on magazine size at issue in this case are thus a direct affront to ANJRPC's central mission. ANJRPC has tens of thousands of members who reside in New Jersey. ANJRPC brings the claims herein on behalf of its members.

9. Plaintiff Blake Ellman is a law-abiding resident and citizen of the United States and the State of New Jersey. He is a member of ANJRPC.

10. Plaintiff Alexander Dembowski is a law-abiding resident and citizen of the United States and the State of New Jersey. He is veteran of the United States Marine Corps and a member of ANJRPC.

11. Defendant Gurbir Grewal is the Attorney General of New Jersey. As Attorney General, he exercises, delegates, or supervises all the powers and duties of the New Jersey Department of Law and Public Safety, including the Division of State Police within that Department, which is responsible for executing and enforcing New Jersey's laws and regulations governing the possession of firearms and magazines. His official address is Office of the Attorney General, RJ Hughes Justice Complex, 25 Market Street, Box 080, Trenton, New Jersey 08625. He is being sued in his official capacity.

12. Defendant Patrick J. Callahan is the Superintendent of the New Jersey Division of State Police. As Superintendent, subject to the oversight and supervision of the Attorney General, he exercises, delegates, or supervises all the powers and duties of the New Jersey Division of State Police, including executing and enforcing New Jersey's laws and regulations governing the possession of firearms and magazines. His official address is Office of the Superintendent, New

Jersey State Police, P.O. Box 7068, West Trenton, New Jersey 08628. He is being sued in his official capacity.

13. Defendant Thomas Williver is the Chief of Police for the Chester Police Department and is the chief law enforcement officer in the jurisdiction in which Plaintiff Ellman resides. His official address is Chester Police Department, 1 Parker Road, Chester, New Jersey 07930. He is being sued in his official capacity.

14. Defendant James B. O'Connor is the Chief of Police for the Lyndhurst Police Department and is the chief law enforcement officer in the jurisdiction in which Plaintiff Dembowski resides. His official address is Lyndhurst Police Department, 367 Valley Brook Avenue, Lyndhurst, New Jersey 07071. He is being sued in his official capacity.

## FACTUAL ALLEGATIONS

### New Jersey's Ban on Standard-Capacity Magazines

15. Since 1990, New Jersey has criminalized the possession of a "large capacity ammunition magazine," which it defined to include "a box, drum, tube or other container which is capable of holding more than 15 rounds of ammunition to be fed continuously and directly therefrom into a semi-automatic firearm." N.J.S.A. §§ 2C:39-1(y), 2C:39-3(j). On June 7, 2018, the New Jersey legislature passed Assembly Bill No. 2761 (hereinafter "Act A2761"),[1] which (among other things) amended that definition to lower the threshold at which a magazine qualifies as "large capacity." The Governor signed the Act into law on June 13, 2018.

16. New Jersey now defines as "large capacity," and criminalizes the possession of, any magazine capable of holding more than *10* rounds of ammunition (with a narrow carve-out

---

[1] The full title of the act is an Act Concerning Firearms and Amending N.J.S. 2C:39-1, N.J.S. 2C:39-3, and N.J.S. 2C:39-12, and Supplementing Chapter 39 of Title 2C of the New Jersey Statutes.

designed to accommodate a small class of tube-fed, low-powered .22-caliber semi-automatic firearms like the Marlin Model 60). Act A2761 §§ 1, 2, to be codified at N.J.S.A. §§ 2C:39-1(y), 2C:39-3(j).

17. The same law altered the definition of "assault firearm" to include any semi-automatic rifle with a fixed magazine capacity exceeding 10 rounds, thereby generally criminalizing the possession of such firearms. *Id.* §§ 2C:39-1(w)(4), 2C:39-5(f).

18. While state law provides a narrow exception for certain firearms purchased before the bill's effective date—namely for a theoretical class of firearms "incapable of being modified to accommodate 10 or less rounds"—there is no general "grandfather clause" for firearms and magazines lawfully owned and possessed before the effective date, effectively turning an estimated one million New Jersey gun owners into criminals if they fail to follow the legislation's new mandates.

19. Instead, the law gives New Jersey residents lawfully in possession of a banned firearm or magazine prior to the effective date 180 days after the effective date to transfer their firearms or magazines, to render them inoperable, to permanently modify them to accept 10 rounds or less, or to voluntarily surrender them to Defendant Callahan or the chief of police of the municipality in which the owner resides. Act A2761 § 7.

20. The law does not provide for surrendered firearms or magazines to be put to any particular use, apparently allowing the police unfettered discretion to destroy the arms.

21. Despite forcing law-abiding citizens, including retired members of the armed forces, to surrender their lawfully-acquired arms, the law permits retired law enforcement officers to possess and carry so-called "large capacity ammunition magazines."

22. Violating New Jersey's "assault firearm" ban is a crime of the second degree, punishable by between five and ten years' imprisonment and a fine of up to $150,000, with harsh minimum mandatory sentences with no judicial discretion. *Id.* §§ 2C:39-5(b), 2C:43-3(a)(2), 2C:43-6.

23. Violating the "large capacity ammunition magazine" ban is a crime of the fourth degree, punishable by up to 18 months' imprisonment and a fine of up to $10,000. *Id.* §§ 2C:39-3(j), 2C:43-3(b)(2), 2C:43-6(a)(4).

## New Jersey Has Banned and Criminalized a Common and Important Means of Self-Defense

24. Although Act A2761 describes magazines that can accept more than 10 rounds of ammunition as "large capacity ammunition magazines," this is actually a gross and misleading misnomer. Magazines capable of holding more than 10 rounds of ammunition are a normal feature of firearms in the United States and are more accurately described as "standard-capacity magazines."

25. Approximately half of all magazines owned in America can accept more than 10 rounds. There are tens of millions—if not more—of these standard-capacity magazines throughout the United States, with at least one estimate putting the total number at more than 100 million.

26. Indeed, many of the most popular pistols in the Nation are typically manufactured with magazines holding more than 10 rounds of ammunition, and the standard-issue magazines for many popular rifles—including the most popular semiautomatic rifle in the country—have a capacity of more than 10 rounds.

27. Magazines such as these are spread throughout the country. Standard-capacity magazines are legal under both federal law and the laws of at least 43 states.

28. The ubiquity of standard-capacity magazines among law-abiding Americans demonstrates that they are used for lawful purposes, such as self-defense, hunting, competition, and target shooting.

29. In line with the widespread possession and use of standard-capacity magazines, there is no longstanding or historical tradition of prohibiting such magazines. Magazine bans were unknown in the United States before the twentieth century. Bans like New Jersey's are recent phenomena in American history. New Jersey, for example, had never limited magazine capacity to 10 rounds before the enactment of Act A2761, and no such limitation existed at either the state or federal level before the 1990s.

30. Nor is there any reliable proof that prohibitions on standard-capacity magazines will reduce violence involving firearms. Between 1994 and 2004, federal law prohibited magazines holding more than 10 rounds, but a report prepared for the U.S. Department of Justice concluded: "[W]e cannot clearly credit the ban with any of the nation's recent drop in gun violence," and "there has been no discernible reduction in the lethality and injuriousness of gun violence." CHRISTOPHER S. KOPER, ET AL., AN UPDATED ASSESSMENT OF THE FEDERAL ASSAULT WEAPONS BAN: IMPACTS ON GUN MARKETS AND GUN VIOLENCE, 1994-2003, REP. TO THE NAT'L INST. OF JUSTICE, U.S. DEP'T OF JUSTICE 96 (2004). What is more, due to the porousness of State borders there is no reason to think that a State-level ban would be any more effective than a federal ban in reducing violence committed by those who ignore the law or use alternative means to commit their crimes. *See id.* at 81 n.95.

31. There are, however, many sound reasons why the average citizen might want to use magazines that accept more than 10 rounds of ammunition. Most obviously, a law-abiding citizen would not want to run out of ammunition and have to reload while under criminal attack, which

9

could involve multiple assailants, an assailant using a magazine containing more than 10 rounds, or an assailant using multiple firearms or magazines. Particularly given the stressful and often-unexpected nature of such encounters, forcing the victim to reload puts her at a significant disadvantage relative to her assailant. And that assumes that the victim will have additional magazines or rounds of ammunition at the ready when attacked, which is unlikely.

32. For example, one of ANJRPC's members was sleeping at his grandparents' house in Camden, New Jersey, when he was awoken by his grandmother's screams. He ran to the room in which she had been sleeping and found her in a struggle with a man attempting to stab her. Two other armed men were also present at the house. The member screamed at the top of his lungs and startled them. Fortunately, they fled, but had they not done so, they would have discovered that he was completely unarmed. The member now owns a semi-automatic pistol that comes standard with a 15-round magazine and is concerned about the effect of the standard-capacity magazine ban on his safety.

33. Another member was threatened at his home when two men started beating on his door asking for someone who did not live there. The men forced the door open. Only when the member drew his firearm did the men flee. The member now owns a Glock 19 pistol with a 15-round magazine and is concerned about the effect of the standard-capacity magazine ban on his safety.

34. Law enforcement data confirm what real-life stories and common sense show: that law-abiding citizens will frequently need standard-capacity magazines to defend themselves from those wishing to do them harm. Police departments typically issue handguns with magazines that hold more than 10 rounds. *See* MASSAD AYOOB, THE COMPLETE BOOK OF HANDGUNS 50, 87–90 (2013). And they do so for good reason. For example, in 2011, New York City police officers fired

more than 10 rounds in 29% of incidents in which they fired their weapons to defend themselves and others. The fact that police officers frequently need to fire more than 10 rounds to defend themselves suggests that law-abiding citizens likewise will sometimes find themselves in a similar situation. Law-abiding citizens, no less than police officers, are entitled to defend themselves with commonly owned firearms equipped with standard-capacity magazines.

35. Unlike law-abiding citizens, violent criminals will not be meaningfully constrained by New Jersey's magazine ban. Given the tens of millions of standard-capacity magazines in circulation in the country, it will not be difficult for violent criminals to acquire them despite New Jersey's ban. And unlike law-abiding citizens, violent criminals will have no compunction about violating the magazine ban. Even if violent criminals were prevented from acquiring banned magazines, they could easily compensate by bringing multiple firearms or magazines with them to the scene of the crime. Their ability to do so is made possible by the fact that violent criminals, and not their law-abiding victims, choose the time and place of crimes and can plan accordingly. New Jersey's law thus clearly favors criminals bent on mass mayhem, as they will ignore the law and continue using banned magazines; use multiple magazines, which can be switched out in a matter of seconds; use multiple firearms; or employ all of these strategies simultaneously. Law-abiding citizens will be reduced to countering this threat with a single firearm equipped with a single sub-standard capacity magazine, as people generally are not in the habit of having spare firearms and magazines readily accessible to them at all times.

**The Magazine Ban Deprives Plaintiffs of Their Property and
Prevents Them from Keeping or Acquiring Arms for Self-Defense**

36. Plaintiff Ellman is an adult citizen and resident of New Jersey. He is not a retired law enforcement officer, and he does not fall within any of the other exceptions enumerated in New Jersey's ban on ammunition magazines capable of holding more than 10 rounds of ammunition. Plaintiff Ellman is a firearms instructor, range safety officer, armorer, and competitive shooter.

37. Plaintiff Ellman currently lawfully owns and keeps in New Jersey ammunition magazines that qualify as "large capacity ammunition magazines" under the amended law because they are capable of holding more than 10 but fewer than 16 rounds of ammunition. Mr. Ellman owns these magazines for lawful purposes, including self-defense in the home. But for the newly enacted ban, Plaintiff Ellman would continue to own and keep these magazines in his New Jersey home. Instead, absent judicial intervention, Mr. Ellman will be forced to transfer, render inoperable or permanently modify, or surrender to the police his magazines.

38. If it were lawful, Plaintiff Ellman would also acquire additional magazines capable of holding more than 10 rounds of ammunition. Because of New Jersey's ban and the associated criminal penalties, he refrains from doing so.

39. Plaintiff Dembowski is an adult citizen and resident of New Jersey. He is not a retired law enforcement officer, and he does not fall within any of the other exceptions enumerated in New Jersey's ban on large capacity ammunition magazines. He is a former member of the U.S. military, having served in the United States Marine Corps for 4 years.

40. During his time in the Marine Corps, Plaintiff Dembowski received annual training on firearms and magazines. He also served for a year as a Combat Marksmanship Instructor, which required an additional month of intensive training in firearms and magazines. While in the

Marines, Plaintiff Dembowski used 30-round magazines with his M-16 rifle and 15-round magazines with his Beretta 92 FS pistol.

41.     Plaintiff Dembowski is Chief Range Safety Officer a range in New Jersey, where he routinely trains customers using 15-round magazines for both rifles and pistols.

42.     Plaintiff Dembowski currently lawfully owns and keeps in New Jersey ammunition magazines that qualify as "large capacity ammunition magazines" under the amended law because they are capable of holding more than 10 but fewer than 16 rounds of ammunition. Mr. Dembowski owns these magazines for lawful purposes, including self-defense in the home. But for the newly enacted ban, Plaintiff Dembowski would continue to own and keep these magazines in his New Jersey home. Instead, absent judicial intervention, Mr. Dembowski will be forced to transfer, render inoperable or permanently modify, or surrender to the police his magazines.

43.     If permitted to do so, Plaintiff Dembowski would also acquire additional magazines capable of holding more than 10 rounds of ammunition. Because of New Jersey's ban and the associated criminal penalties, he refrains from doing so.

44.     Plaintiff ANJRPC has many members who own and keep in New Jersey ammunition magazines that qualify as "large capacity" or firearms that qualify as "assault firearms" due to their magazine capacity under the revised definitions of those terms enacted by Act A2761. But for the law, ANJRPC members would continue to possess these magazines and firearms in New Jersey for lawful purposes, including self-defense in the home.

45.     Plaintiff ANJRPC also has numerous members who wish to acquire—and but for the newly enacted law would acquire—for purposes of self-defense or other lawful purposes a magazine that qualifies as a "large capacity ammunition magazine" or a firearm that qualifies as

an "assault firearm" due to its magazine capacity under the revised definitions of those terms enacted by Act A2761.

## COUNT ONE
**Deprivation of Plaintiffs' Rights Under U.S. CONST. amends. II and XIV**

46. Plaintiffs incorporate by reference the allegations of the preceding paragraphs.

47. The Second Amendment to the U.S. Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." The Second Amendment applies against the States via the Fourteenth Amendment. *See McDonald v. City of Chicago*, 561 U.S. 742, 791 (2010).

48. Ammunition, including ammunition magazines, are "Arms" within the meaning of the Second Amendment. "[W]ithout bullets, the right to bear arms would be meaningless." *Jackson v. City & Cty. of San Francisco*, 746 F.3d 953, 967 (9th Cir. 2014).

49. New Jersey's definition of "large capacity magazines" includes many firearm magazines that come standard with or are common for firearms typically possessed by law-abiding citizens for lawful purposes nationwide (and, before the ban, in New Jersey). New Jersey law therefore generally prohibits residents of New Jersey, including Plaintiff Ellman, Plaintiff Dembowski, and other members of ANJRPC, from possessing magazines protected by the Second Amendment, subject to significant criminal penalties, including imprisonment.

50. New Jersey's ban on standard-capacity magazines extends its prohibition into the home. "[W]hatever else [the Second Amendment] leaves to future evaluation, it surely elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008).

51. Because standard-capacity magazines are in common use and "chosen by Americans for self-defense in the home, . . . a complete prohibition of their use is invalid" under the Second Amendment, regardless of the applicable level of scrutiny. *Id.* at 629.

## COUNT TWO
### Deprivation of Plaintiffs' Rights Under U.S. CONST. amends. V and XIV

52. Plaintiffs incorporate by reference the allegations of the preceding paragraphs.

53. The Fifth Amendment provides that "property [shall not] be taken for public use, without just compensation." U.S. CONST. amend. V.

54. This Fifth Amendment's takings clause applies against the State of New Jersey under U.S. CONST. amend. XIV.

55. Act A2761 takes property by requiring owners of specified firearms and magazines to turn them over to state officials, transfer them, destroy them, or permanently alter them.

56. Act A2761 does not provide for the property so taken to be put to a public use.

57. Act A2761 does not provide for just compensation for the surrender, transfer, destruction, or alteration of the firearms and magazines.

58. Plaintiffs Ellman and Dembowski and other members of Plaintiff ANJRPC own firearms included within the amended definition of "large capacity ammunition magazine" or "assault firearms."

59. Accordingly, Act A2761 violates Plaintiffs' rights under the Fifth and Fourteenth Amendments by taking their property without putting it to a public use and without providing just compensation.

60. Alternatively, Act A2761 effects an unconstitutional regulatory taking, either by depriving Plaintiffs of all economically beneficial use of their firearms or magazines or by

15

upsetting their reasonable investment-backed expectations of possessing firearms or magazines capable of holding more than 10 rounds.

## COUNT THREE
**Deprivation of Plaintiffs' Rights Under U.S. CONST. amend. XIV**

61. Plaintiffs incorporate by reference the allegations of the preceding paragraphs.

62. The Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution provides: "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws."

63. Act A2761 exempts retired police officers from its ban on standard-capacity magazines.

64. Retired police officers are similarly situated to average New Jersey citizens insofar as they are both civilians and classes of State residents who, absent the standard-capacity magazine ban, would generally have the right to possess standard-capacity magazines. There is no constitutionally sufficient rationale that would justify this distinction.

65. Retired police officers are also similarly situated to New Jersey residents who are former members of the U.S. military and who possess and use standard-capacity magazines subject to Act A2761's ban. There is no rational basis for distinguishing between (1) former members of the armed forces and (2) retired police officers with respect to possessing or using standard-capacity magazines.

66. The retired-police officer exception is a classification affecting Second Amendment rights, and Second Amendment rights are fundamental rights. *See McDonald*, 561 U.S. at 791.

67. "[C]lassifications affecting fundamental rights are given the most exacting scrutiny." *Clark v. Jeter*, 486 U.S. 456, 461 (1988) (citations omitted).

68. Because Act A2761 draws a distinction that fails any applicable level of scrutiny, the standard-capacity magazine ban violates the Equal Protection Clause of the Fourteenth Amendment both facially and as-applied.

## PRAYER FOR RELIEF

69. WHEREFORE, Plaintiffs pray for an order and judgment:

    a.    Declaring that New Jersey's ban on certain magazines and firearms effects a taking of the property of Plaintiffs Ellman and Dembowski and members of Plaintiff ANJRPC;

    b.    Declaring that New Jersey's ban on certain magazines and firearms, as amended by Act A2761, violates the Second, Fifth, and Fourteenth Amendments and is thus devoid of any legal force or effect;

    c.    Preliminarily and permanently enjoining Defendants Grewal, Callahan, Williver, O'Connor, and their employees and agents from enforcing Act A2761 and any implementing regulations;

    d.    Awarding Plaintiffs their reasonable costs, including attorneys' fees, incurred in bringing this action, pursuant to 42 U.S.C. § 1988; and

    e.    Granting such other and further relief as this Court deems just and proper.

Dated: June 13, 2018                                Respectfully submitted,

David H. Thompson*                                  s/ Daniel L. Schmutter
Peter A. Patterson*                                 Daniel L. Schmutter
Haley N. Proctor*                                   HARTMAN & WINNICKI, P.C.
J. Joel Alicea*                                     74 Passaic Street
COOPER & KIRK, PLLC                                 Ridgewood, New Jersey 07450
1523 New Hampshire Avenue, N.W.                     (201) 967-8040
Washington, D.C. 20036                              (201) 967-0590 (fax)
(202) 220-9600                                      dschmutter@hartmanwinnicki.com
(202) 220-9601 (fax)
dthompson@cooperkirk.com

  *Pro hac vice application forthcoming

*Attorneys for Plaintiffs*

## DECLARATION OF COUNSEL PURSUANT TO LOCAL CIV. R. 11.2

The undersigned hereby states that the matter in controversy is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding.

I declare under penalty of perjury that the foregoing is true and correct.

s/ Daniel L. Schmutter
Daniel L. Schmutter
HARTMAN & WINNICKI, P.C.
74 Passaic Street
Ridgewood, New Jersey 07450
(201) 967-8040
(201) 967-0590 (fax)
dschmutter@hartmanwinnicki.com

*Attorney for Plaintiffs*
