1                     UNITED STATES DISTRICT COURT
                      DISTRICT OF NEW JERSEY

2

3
_____
4 ASSOCIATION OF NEW JERSEY
    RIFLE & PISTOL CLUBS, INC.,
5            PLAINTIFF

6     Vs.                    CIVIL NO.
                        18-10507 (PGS)
7 GURBIR GREWAL, et al,
            DEFENDANTS
8 _____

9

10

11                      **JULY 12, 2018**
                     CLARKSON S. FISHER COURTHOUSE
12                      402 EAST STATE STREET
                     TRENTON, NEW JERSEY  08608

13

14

15 B E F O R E:         THE HONORABLE PETER G. SHERIDAN
                     U.S. DISTRICT COURT JUDGE
16                      DISTRICT OF NEW JERSEY

17

18

19

20 **HEARING ON PLAINTIFF'S APPLICATION FOR PRELIMINARY INJUNCTION**

21

22

23                      Certified as true and correct as required
                     by Title 28, U.S.C. Section 753
24                      /S/ Francis J. Gable
                     FRANCIS J. GABLE, C.C.R.
25                      OFFICIAL U.S. REPORTER
                     (856) 889-4761

```
 1

 2    A P P E A R A N C E S:

 3

 4        HARTMAN & WINNICKI, PC
          BY:  DANIEL L. SCHMUTTER, ESQUIRE
 5        FOR THE PLAINTIFF

 6

 7        COOPER & KIRK, PLLC
          BY:  PETER A. PATTERSON, ESQUIRE
               DAVID H. THOMPSON, ESQUIRE
 8        FOR THE PLAINTIFF

 9

          OFFICE OF THE ATTORNEY GENERAL
10        BY:  JOSEPH C. FANAROFF, ESQUIRE
               BRYAN E. LUCAS, ESQUIRE
11             VALERIA DOMINGUEZ, ESQUIRE
          ASSISTANTS ATTORNEY GENERAL
12        FOR THE STATE DEFENDANTS

13

          ALAMPI & De MARRAIS, LLC
14        BY:  JENNIFER ALAMPI, ESQUIRE
          FOR DEFENDANT O'CONNOR
15

16        McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP
          BY:  GEORGE C. JONES, ESQUIRE
17        FOR DEFENDANT WILLIVER

18

19

20

21

22

23

24

25
```

1       THE COURT:  So this is the Association of New Jersey

2   Rifle and Pistol Clubs, Inc., et al, versus Attorney General

3   Grewal and others.  So, could we enter appearances?  We'll

4   start with the plaintiff.

00:00   5       MR. SCHMUTTER:  Good afternoon, your Honor, Daniel

6   Schmutter from the firm of Hartman and Winnicki for

7   plaintiffs, and may I present my pro hac vice counsel from the

8   District of Columbia law firm Cooper and Kirk David Thompson

9   and Peter Patterson.

00:00   10      MR. THOMPSON:  Good afternoon, your Honor.

11      THE COURT:  Good afternoon, Mr. Schmutter, Mr.

12  Thompson and Mr. Patterson.

13      And for the defendant?

14      MR. WARNER:  Good afternoon, your Honor, Assistant

00:00   15  Attorney General Joe Fanaroff on behalf of the defendants, and

16  with me are Deputy Attorney General Bryan Lucas and Deputy

17  Attorney General Valeria Dominguez.

18      THE COURT:  Good afternoon, Mr. Fanaroff, Mr. Lucas

19  and Ms. Dominguez.

00:00   20      MS. ALAMPI:  Good afternoon, your Honor, Jennifer

21  Alampi from the law firm of Alampi and De Marrais for Chief

22  James B. O'Connor in his official capacity as Chief of Police

23  for the Township of Lyndhurst.

24      THE COURT:  Good afternoon, Ms. Alampi.

00:01   25      MR. JONES:  Good afternoon, your Honor, George Jones

1   from McElroy, Deutsch, Mulvaney and Carpenter representing

2   defendant Thomas Williver.

3           THE COURT:  Good afternoon, Mr. Jones.

4           So, I had a pre-hearing conference with the parties,

00:01   5   and we discussed how we were going to proceed on this matter.

6   Does anyone issue wish to report on that, or do you just wish

7   me to do it?  I might as well do it.

8           So, my view of was after I read all the papers that

9   a hearing with witnesses would be better than hearing just

00:01   10   oral argument today.  So I postponed the application for the

11   preliminary injunction until August 13th, 14th and 17th when

12   we'll have a hearing.  And then after that period of time it

13   will be one week to August 24th when I receive briefs from the

14   parties, and thereafter I'll make a decision.

00:02   15           And I believe everybody agreed to that; right?

16           (Counsel say yes.)

17           THE COURT:  So I have no objections to that.  It was

18   my thought, this is a rather substantial dealing with a

19   provision in state law, so the Court should consider it very

00:02   20   carefully.  And I thought a hearing as opposed to just briefs

21   and certifications would be a better way to get a handle on

22   all the facts that may be in controversy.  So it just seemed

23   from my standpoint that was a better way of going about doing

24   it.  So we'll proceed with that.

00:03   25           While we were in there, counsel indicated that they

1   would like to make some preliminary remarks about the case and

2   arguments, and I have agreed to that.  I believe 15 minutes

3   each side?  All right.  So we'll start with the plaintiffs.

4            MR. PATTERSON:  Thank you, your Honor.  It's Pete

00:03   5   Patterson for the plaintiffs.  And I'll just start out by

6   sketching the purely legal reasons why we think we are not

7   only likely to success on the merits, but in fact do succeed

8   on the matters in this case based on what's before the Court.

9            Starting with the Second Amendment, in the *District*

00:04   10   *of Columbia v. Heller*, the United States Supreme Court said

11   that the Second Amendment elevates above all other interests

12   the right of law-abiding responsible citizens to use arms in

13   defense of hearth and home.  And the court also established

14   the test for determining which arms law-abiding citizens are

00:04   15   responsible to use, and that test is whether those arms are in

16   common use by law-abiding citizens.

17            And here it is absolutely clear that the magazines

18   New Jersey has banned, inaccurately called large capacity

19   really standard capacity magazines, are in common use.  The

00:04   20   evidence shows there 133 million of them.  Even if there's

21   some, you know, margin around the edges of that Justice Alito

22   in his *Caetano* concurrence said that stun guns were in common

23   use because there were approximately 200,000 of them owned by

24   Americans.  So it's not even anywhere or orders of magnitude

00:04   25   above that.  There's evidence from -- you know, that these are

1   sold standard with many of the most common firearms in the

2   nation.

3           So the fact that they're commonly possessed by

4   law-abiding citizens, it follows from that under *Heller* that

5   law-abiding citizens are entitled to possess them.  And the

6   ban on their possession is flatly unconstitutional.

7           Now, to be sure there have been three -- three or

8   four Court of Appeals decisions that have gone the other way

9   on this issue, but respectfully they have all not complied

10  with *Heller*'s reasoning; and in fact the author of *Heller*

11  joined a dissent from denial of certiori in one of those

12  cases, saying that it the not comply with *Heller*.  So it's

13  pretty clear that they've gone astray and I can run through

14  them quickly.

15          So first we have the DC Circuit panel decision

16  there, accepted that these magazines are protected by the

17  Second Amendment; but nevertheless held by applying an

18  intermediate scrutiny balancing test that the state could

19  still ban them.  Judge Kavanaugh in a compelling and

20  convincing dissent in that case, explained why that's flatly

21  contrary to *Heller*, and indeed employed the same methodology

22  that Justice Breyer did in dissent in *Heller* essentially.

23          So, *Heller* makes clear -- and we're not taking issue

24  -- we know the Third Circuit has applied levels of scrutiny

25  analysis in Second Amendment cases, but if *Heller*'s clear

1   about anything it's that when it's a ban on commonly possessed

2   arms that reaches into the home, that fails any stayed of

3   scrutiny is what *Heller* says.  So it follows directly from

4   that.

00:06   5            THE COURT:  So when you use the word ban, that's

6   different than some regulatory limitation; right?

7            MR. PATTERSON:  Yes, absolutely.  And one thing --

8   you know before I go further I wanted to emphasize what's

9   distinct about this case from these other Court of Appeals

00:07   10  cases, is there they weren't dealing with the issue of moving

11  from a 15-round limit to a 10-round limit; that's what New

12  Jersey has to defend.  There's absolutely no evidence that

13  somehow the 10-round limit is going to be better than the

14  15-round limit.  So that right there distinguishes it from all

00:07   15  these other cases.

16           So moving along from the DC Circuit, the next was

17  the Seventh Circuit in *Friedman* which applied an idiosyncratic

18  test that the court came up with that no other court has

19  applied and that every factor of that test is directly

00:07   20  contrary to *Heller*.  For example, one of them whether the arms

21  were in existence at the founding; *Heller* made clear that's

22  not the right question, the question is whether they're in

23  common use now by law-abiding citizens.  So that was directly

24  contrary to *Heller*.

00:07   25           Then came the Fourth Circuit in the *Kolbe* case, and

*United States District Court*
*Trenton, New Jersey*

1  that case held that the magazines aren't protected by the

2  Second Amendment because in the court's judgment, contrary to

3  the tens of millions of Americans that own these magazines,

4  they were most useful in warfare.  But that again is directly

00:08      5  contrary to *Heller*, which the test is not whether arms are

6  most directly useful in warfare under the judiciary's

7  conception, it's whether law-abiding citizens use them for

8  lawful purposes.

9         And *Heller* to be sure said that machine guns and the

00:08     10  like it's possible may be banned, but that was not because of

11  some analysis of their military utility, it was because of the

12  *Heller*'s conclusion that they're not in common use.  And

13  *Heller* had to defend that because that puts the right in some

14  tension with its purpose which is to protect the militia.  So

00:08     15  the Fourth Circuit turned that on its head and established a

16  test that's directly contrary to the meaning and purpose of

17  the Second Amendment.

18         So given that plaintiffs as a pure matter of law,

19  are likely and indeed destined to prevail on the Second

00:09     20  Amendment claim.

21         Moving quickly to takings, New Jersey not only

22  prospectively bans these magazines but they require

23  law-abiding citizens who owned them lawfully to either dispose

24  of them or disfigure them by blocking five rounds permanently.

00:09     25  And New Jersey does not -- the ban does not provide for any

1   compensation for this destruction of property rights.

2         And the State makes essentially two arguments in

3   response to this.  First they say that there's a police power

4   exception to the takings clause, but that is not true.  The

00:09   5   Supreme Court has expressly and repeatedly rejected that

6   argument.  For example in *Loretto*, the court said it's a

7   separate question whether something is within the police power

8   and whether something constitutes a taking.

9         THE COURT:  I thought it was one of these cases

00:09   10   indicated that the Fifth Amendment there says that the

11   government can't take private property without compensation

12   for public use or something of that nature; but the key was

13   the public use part.  You're saying well, they're taking these

14   magazines, but there's no public use for them, so therefore

00:10   15   they don't fit within that exception -- or they fit within the

16   requirement, the constitutional requirement.

17         MR. PATTERSON:  Well, the court essentially --

18         THE COURT:  Am I right on that?

19         MR. PATTERSON:  Yes.  So the court essentially in

00:10   20   *Lucas* dealt with this issue, which is they were saying we need

21   to preserve the beach front, you can't build anything there.

22   So the state -- and the state tried to raise this police power

23   exception; and the court said, you know, any competent

24   attorney for the government can either say this is benefit

00:11   25   conferring to the state or harm reducing, and we're not going

1    to have the takings clause turn on the competence of the

2    government's counsel and the arguments they make before a

3    court.

4          And similarly the *Yancey* decision that we cited from

5    the Federal Circuit, was about a quarantine on turkeys.  So

6    the state wasn't using the turkeys, but that was still a

7    taking because the proper focus is on the deprivation of

8    property.  So here our clients are being deprived of their

9    property in the magazines.

10          And the State's second argument is that sure, one

11    option is that you turn your magazines into the government but

12    you have two other options; you can sell them or expose them

13    lawfully permitted to possess them, or you can permanently

14    alter them so that they only accept 10 rounds rather than more

15    than 10 rounds.  But those are no answers.

16          First with respect to the sale option, again,

17    *Loretto* footnote 9 makes abundantly clear, when government

18    appropriates property it doesn't matter if they do it directly

19    or if they direct the property to a third-party, that's still

20    a taking.  So the fact that we can transfer our property to a

21    third-party does not affect the analysis of whether a takings

22    has taken place.

23          And then also with respect to the alteration option,

24    the court dealt with this in *Horne*, where there was a program

25    there where the government said to raisin growers you've got

1    to turn over a certain percentage of your crop to us; and the

2    government argued well, they can -- if they don't want to turn

3    those over they can sell their grapes as table grapes or for

4    making wine.  And the court said that the government cannot

5    escape its compensation obligation by giving someone an

6    opportunity to retool their property.  And so that's exactly

7    what New Jersey is doing here.

8         And then finally moving on to the equal protection

9    clause, your Honor, New Jersey's ban is rendered

10   unconstitutional by the fact that they exempt retired law

11   enforcement officials while banning all other civils,

12   including veterans of the armed forces, from possessing the

13   banned magazines.  And this does not treat like citizens

14   alike.  Because it implicates a fundamental right it must pass

15   heightened scrutiny, and it clearly cannot, because there's an

16   obvious less restrictive alternative.

17        And under the Supreme Court's decision in *McCullen*,

18   which is an intermediate scrutiny case, the court said if

19   there are obvious less restrictive alternatives, the state has

20   to try those first before it goes to a drastic remedy like a

21   ban.

22        And here New Jersey justifies the retired law

23   enforcement exception by saying that the law enforcement

24   officials give training.  And the training -- but from a

25   declaration the training it looks like is proficiency in the

*United States District Court*
*Trenton, New Jersey*

1  use of firearms, not anything magazine specific.

2          But even putting that to the side the obvious less

3  restrictive alternative is to say okay, if you're a

4  law-abiding citizen there's a training course you can take to

5  earn an exemption from the ban.  And we're not here to concede

6  that would be constitutional, and *McCullen* makes clear that

7  the court there wasn't conceding that the alternatives they

8  propose would be constitutional.  But the fact is that there

9  is this alternative that's obviously less restrictive that

10  would address the issue that the State says that they have,

11  and that demonstrates that the exemption renders the ban

12  unconstitutional.

13          THE COURT:  You lost me there.  So what are you

14  asking me to do with regard to the retired law enforcement

15  officers?

16          MR. PATTERSON:  We're asking you to strike down the

17  ban, and the Supreme Court's decisions make -- you know, in an

18  equal protection you can either level up or level down and the

19  default is not to make something that is lawful criminal,

20  which is if you were to strike down the retired law

21  enforcement exception you would be making something the State

22  has decided is not criminal into a crime; versus you strike

23  down the -- you level up so that the person who is being

24  deprived the right is extended to that person.

25          And since it's an -- you know, if the legislature

1    disagreed with that, assuming that the statute was otherwise

2    constitutional which we could not concede, they could come

3    back and address that so long as everyone was treated equally.

4    But what we're asking for, your Honor, is to strike down the

5    ban on the basis of the equal protection violation.

6           THE COURT:  Okay.

7           MR. PATTERSON:  And the State has two defenses I'll

8    address very quickly.  One they say that retired law

9    enforcement and all other civilian law-abiding citizens

10   including again retired military members are not similarly

11   situated; but the State's argument on that score misses the

12   mark, because the similarly situated analysis, the purpose of

13   it, as the *Shuman* case the State itself cites, is to determine

14   what the basis in law for the distinction is.

15          So for example in the *Shuman* case, they said the

16   plaintiff has to show he's similarly situated, which was what

17   the State quoted; then the next sentence said particularly

18   they have to show in a sex discrimination case that the

19   discrimination is on the basis of sex.  So here the point is

20   we have to show that the discrimination is on the basis of

21   your status of if you're a retired law enforcement official or

22   not, and here it's clear in law that that is the basis for the

23   distinction.

24          They raise the training as a justification, but

25   that's not the basis for the distinction in law, the basis is

1    the status and that's demonstrated by the fact that if the

2    law-abiding citizen has the exact same training as a police

3    officer they're not qualified for the exemption.  So the

4    reason for the distinction is whether or not you're retired

5    law enforcement --

6             THE COURT:  So when you say that a private citizen

7    has the same background as the police officer, you're talking

8    about training in firearms; right?

9             MR. PATTERSON:  What I'm saying is that the basis in

10   law for making the distinction is not the amount of training

11   someone has; if you look at the law that's nowhere in the law.

12   What's in the law is are you a retired law enforcement

13   official or not.  And if I'm a law-abiding citizen I could go

14   and take those same proficiency courses that the law

15   enforcement officials have to take, and I can't qualify for

16   the exemption.  So that makes clear that it's not the training

17   that's the basis in law for making the --

18             THE COURT:  So you don't see any distinction between

19   a police officer or a retired police officer, who has spent a

20   substantial amount of time policing, you know, the practice of

21   policing, and handling an emergent situation, you don't see

22   any distinction between that person and a layperson?

23             MR. PATTERSON:  Well there's no distinction for

24   purposes of the similarly situated analysis.  That distinction

25   your Honor is proposing would go to the justification for the

1   distinction that the State is making, but if you --

2          THE COURT:  If you find that the police officer is

3   really not similar to the others, then doesn't that overcome

4   the problem?

00:18   5          MR. PATTERSON:  Well, they are similar because the

6   thing that makes them eligible for the exemption is the fact

7   of being a retired police officer.  That's the distinction

8   that we're attacking.  And the similarly situated analysis

9   asks is that in fact a distinction that the State is making,

00:18   10   and the answer -- and again the *Shuman* case makes that clear

11   in the sex context; is the state in fact distinguishing on the

12   basis of sex.  That's the similarly situated inquiry, and we

13   clearly meet that here.

14          Now, you know, the training and the different things

00:19   15   retired police officers may have goes to the justification for

16   it, which would be the -- you know, the actual equal

17   protection analysis.  And here the State says rational basis

18   review applies if the law doesn't violate the Second

19   Amendment; but that's wrong because the Supreme Court has said

00:19   20   when a law implicates or affects the exercise of a fundamental

21   right and makes a distinction on that basis, it has to be

22   justified by heightened scrutiny.

23          And so long as these firearms are protected, these

24   magazines are protected by the Second Amendment, which as I've

00:19   25   explained is clear under *Heller*, the distinction implicates

1   the Second Amendment regardless of the outcome of -- if

2   there's a Second Amendment scrutiny analysis.

3          And as I explained before there's no -- you know, if

4   the State's concern really is training, then they could open

00:19   5   up a training program for law-abiding citizens to earn an

6   exemption.  The fact that it can't be justified by lack of

7   training is made clear by the fact that, you know,

8   retired military veterans are not eligible for the exemption;

9   active security guards who by law have to train continuously

00:20   10   do not qualify for the exemption; so it simply cannot meet the

11   standards that it's required to meet.

12          And, you know, those are the reasons why we think we

13   prevail as a matter of law on the merits.  In terms of the

14   preliminary injunction, because we believe we're likely to

00:20   15   succeed on constitutional claims, it follows that the other

16   factors are met because the violation of constitutional rights

17   is irreparable harm.  And when the government is opposing

18   party the other two factors merge and there's no public

19   interest in enforcing an unconstitutional law.

00:20   20          So unless your Honor has any questions.

21          THE COURT:  No, I'm good.  Thank you,

22          MR. PATTERSON:  Thank you.

23          THE COURT:  Mr. Fanaroff?

24          MR. FANAROFF:  Thank you, your Honor.  Good

00:21   25   afternoon and may it please the Court.

*United States District Court*
*Trenton, New Jersey*

1          Your Honor, while the issues that you are being

2   presented with today are weighty, you are not reviewing them

3   on a blank slate.  Not one or two or as counsel indicated

4   four, but it's actually five Circuit Courts of Appeal have

00:21   5   considered substantially similar legal arguments, the ones

6   raised by the plaintiffs challenging substantially similar

7   laws from the District of Columbia all the way to California,

8   and in every case the arguments plaintiffs are raising here

9   today have been rejected.

00:21   10         And while your Honor is not obligated to simply

11  follow the decisions of sister Circuits, it is important to

12  note that while they speak with one voice in upholding LCM

13  restrictions, they arrived at their conclusions using separate

14  but equally compelling legal rationales.

00:22   15         In other words, for the plaintiffs to show that they

16  have a likelihood of success on the merits, your Honor would

17  have to not only reject the collective conclusions of five

18  Circuit Courts of Appeals, but at least three distinguishable

19  legal justifications for the conclusions they reached.

00:22   20         Each decision and the legal basis underlying it,

21  provides its own independent basis for denying plaintiffs'

22  request for a preliminary injunction.  But you must find that

23  all of those cases were decide incorrectly in order to grant

24  the preliminary injunction.

00:22   25         Nothing in this record, which again is substantially

1  similar to the records in other cases challenging LCM

2  restrictions, suggests much less requires a ruling contrary to

3  the recent decisions of the Second, Fourth, Seventh, Ninth and

4  DC Circuit Courts of Appeal.

00:22     5          Now, at the outset opposing counsel made what is

6  really an extraordinary argument.  He basically said that the

7  common use test prevails over every other consideration that

8  your Honor would look at with regard to the Second Amendment.

9  And not only does *Heller* not stand for that proposition, but

00:23    10  that broad reading of that case would have potentially serious

11  ramifications.

12          Now, of course the common use test been looked at in

13  other situations.  Opposing counsel's primary argument is that

14  there's 133 million of these things in circulation therefore

00:23    15  they must in common use, but -- and I know we're going to be

16  taking further testimony about this; the evidence indicates

17  that the majority of guns are owned by a minority of gun

18  owners.  And moreover, there's no indication that these LCMs

19  are widely owned, much less possessed by most of these gun

00:23    20  owners.

21          In fact, three Circuit Courts of Appeal that looked

22  at this sort of common use argument said that evidence of

23  common use was "allusive", that was the Second Circuit in the

24  *New York State Rifle & Pistol Association case;* in *Fyock* which

00:24    25  was the Ninth Circuit case, they said that it does not

1   necessarily show that LCMs are in common use; and also the *San*
2   *Francisco Veterans Police Officers* case noted that there was
3   no showing that there was common or prevalent ownership, just
4   that a large number of these LCMs had been sold.  There's
5   nothing in the complaint that indicates nationwide much less
6   in New Jersey that LCMs are in common use.

7        And of course what opposing counsel also did was
8   read out of the rest of the *Heller* decision important
9   limitations that the Supreme Court put on the Second Amendment
10  right.  Specifically the fact that there's nothing that
11  prohibits the restriction on dangerous and unusual weapons or
12  on weapons that are most appropriately used in the military
13  setting.  And of course those were issues that the Circuit
14  Courts of Appeal that have looked at these LCM restrictions
15  also considered.

16        Now with regard to the dangerous and unusual it's
17  sort of the other side of the coin to common use.  What
18  opposing counsel cannot show you is any situation where an
19  LCMs was necessary for that fundamental right that was
20  recognized in *Heller*, which is defense of the hearth and home
21  with the handgun.

22        What the evidence does indicate however, is that
23  LCMs are overwhelmingly used in mass shootings, they're
24  overwhelmingly used in situations where more ammunition is
25  fired, more people are injured, and people who are potential

1   victims of gun violence have less of a chance to flee from

2   those circumstances, because shooters are using those LCMs.

3        Our declarants have indicated that more than half of

4   the mass shootings that have occurred in the country in the

00:26   5   past few decades implicate at least one LCM, and in fact your

6   Honor's probably well aware that a mass shooting that -- well

7   it's not defined as a mass shooting because not enough people

8   died, this is a paradox of the terminology, but 17 people were

9   injured at a shooting event in Trenton less than a mile from

00:26   10   this courthouse less than a month ago.

11        THE COURT:  That's a good example, and I understand

12   your facts with regard to the magazines.  But on the other

13   hand, just knowing a little bit about that case, it was

14   reported that the individual was incarcerated for a period of

00:26   15   years and was subject to solitary confinement for a number of

16   years.  So as I understand it there were some mental handicap

17   issues with regard to that individual.

18        So where do you put the importance, on the magazine

19   or on the mental ability of the person that's firing?  I don't

00:27   20   how that helps you or hurts you to tell you the truth.

21        MR. FANAROFF:  Your Honor --

22        THE COURT:  It presents an issue I believe.

23        MR. FANAROFF:  Forgive me for interrupting, your

24   Honor.  I think the point here is that when magazines have

00:27   25   fewer rounds of ammunition in them, fewer rounds are going to

*United States District Court*
*Trenton, New Jersey*

1   be fired by a law breaker when they are engaging in that type

2   of activity.  And again the declarants indicate and other

3   cases that have looked at these restrictions have shown that

4   that pause when someone has to reload is very critical, not

5   just for potential victims who can try to get to safety, but

6   also for law enforcement officers who are risking their lives

7   to engage with those individuals.

8        And I should also note, your Honor, that one of the

9   other findings from the research is that these LCMs are also

10  used in somewhere between one-third up to one-half of attacks

11  on law enforcement.  So the fact that these are out there

12  where we have police officers who are risking their lives to

13  protect us certainly is another consideration.

14       But again, just to go back to this issue of

15  dangerous and unusual, your Honor, the other aspect of this

16  that is absent during the plaintiffs' pleadings, and again

17  this goes to the question of whether or not they're unusual,

18  is the fact that self-defense which is again everything -- we

19  all agree that is the core right, self-defenders report that

20  they fire fewer than three bullets in self-defense when they

21  are -- when they are utilizing their firearms to protect

22  themselves.

23       In fact most of the times that individuals use their

24  firearms to ward off assailants, merely brandishing the gun is

25  sufficient for that purpose.  And indeed one of the plaintiffs

1   in this case illustrates that point where he brandished a gun

2   when there were intruders in his home, he didn't fire a single

3   shot.

4          The *Kolbe* majority did identify, your Honor, the

5   fact that LCMs are most appropriate for military use.  Sort of

6   the same side of the coin of whether something is dangerous

7   and unusual, there's a lengthy discussion about the historical

8   antecedents of M-16s and AR-15s and how those are basically

9   produced in the 1960s and a more efficient firearm for our

10  military; and the AR-15 of course being the civilian version

11  of the M-16.

12         But these large capacity magazines were not intended

13  to be utilized in the civilian capacity, and in fact until the

14  1980s most of the handguns that were sold in the United States

15  of America were the so-called six-shooter.  That was also the

16  typical sidearm that was used by law enforcement, and in fact

17  the sidearm that was issued by the U.S. Army until 1986 was

18  the seven-round M1911, it had a seven-round magazine.

19         So the *Kolbe* court identified the fact that LCMs and

20  weapons like the AR-15 are dangerous and unusual, they are

21  utilized primarily in the military, which is one of three

22  different rationales that Courts of Appeal have utilized in

23  terms of upholding these restrictions.  And again opposing

24  counsel would have your Honor ignore all of those different

25  rationales by merely saying something is in common use

1    therefore there can be no restriction.

2         And as was discussed by Judge Easterbrook in the

3    Seventh Circuit *Friedman* case, you simply cannot -- a law's

4    existence can't be the source of its own constitutional

00:30    5    validity.  So these arguments again are not being presented to

6    you on a blank slate, your Honor, judges across the country

7    have looked at these issues and have rejected the arguments

8    like common use above all else; which parenthetically holds no

9    majority opinion at the Supreme Court either for that

00:30    10    decision.

11         Now of course the grant of a preliminary injunction

12    in any case is an extraordinary remedy that the moving party

13    must carry the burden in meeting, but that obligation was

14    enhanced even more, your Honor, where as here the plaintiffs

00:31    15    are asking this Court to block implementation of a duly

16    enacted law which carries with it the presumption of validity.

17         And without simply repeating the arguments that have

18    been made in our brief, it is enough to point out that LCMs

19    have been found to be outside the protections afforded by the

00:31    20    Second Amendment which we discussed in *Kolbe*; that they were

21    not in common use at the time of the ratification of the

22    Second Amendment; and also that provided law-abiding gun

23    owners were given an alternative means of self-defense an LCM

24    restriction was appropriate, that was *Friedman*.

00:31    25         And even assuming LCMs laws infringed on the rights

1   afforded under the Second Amendment they are a constitutional

2   means of addressing a substantial governmental interest in

3   public safety, and that's *Fyock Heller II* and *New York State*.

4          And again the intermediate scrutiny standard that

5   those three Courts of Appeal utilized, opposing counsel would

6   get rid of those entirely because his argument is that

7   provided common use can be shown, no restriction is

8   appropriate.  And that's just simply -- there's no support for

9   that in any of the five Circuit Courts of Appeal that have

10  looked at this case.

11         I would just note also, because they didn't talk

12  about it your Honor I just want to tough briefly on

13  intermediate scrutiny because I think plaintiffs would concede

14  I don't know they argue this seriously in their papers, that

15  protecting the public safety is not a substantial interest of

16  the government; that was recognized certainly in *Drake* and the

17  Third Circuit Court of Appeals.

18         So really the only two questions, your Honor, is

19  whether or not the LCM restriction is a reasonable fit, and

20  whether or not it impedes more conduct than is necessary.  And

21  on the first account the answer to that is yes and on the

22  second it is no.

23         Again, courts that have looked at these restrictions

24  have found based on, as I said before and I won't repeat the

25  argument, the extensive research and tragic recent history

1   that involves large capacity magazines being used in mass

2   shootings; there are studies that have shown that LCM

3   restrictions are one of the most effective ways to reduce gun

4   violence.  In fact once study raises the very simple question

00:33      5   of I will tell you the rate of mass shootings in a state if

6   you tell me whether or not that state has an LCM restriction.

7          There is a clear nexus between the substantial

8   interest in public safety, and the reasonably fit of

9   restricting an LCM from 15 rounds down to 10, which was

00:33     10   another point that opposing counsel raised.  And I just wanted

11   to mention rhetorically; would it have been okay if we had a

12   30-round limit but are not dropping it down to 10 but for some

13   reason going from 15 to 10 is inappropriate.  It just doesn't

14   make sense, your Honor.

00:33     15          And if anything what we were doing is moving our

16   state into line with other states that have recently enacted

17   LCM restrictions.  And in that way as we discussed in our

18   brief it reduces the likelihood that individuals will be able

19   to purchase them, that is large capacity magazines, at all.

00:34     20          And in addition, to say that there's no evidence

21   that it matters is belied by the fact -- and I believe it is

22   in the Every Town For Gun Safety amicus brief that cited the

23   fact that a young victim of gun violence was killed as the

24   brief put it I believe by the 12th round in a magazine.  So

00:34     25   there is a difference between having 15 rounds and 10.

1          THE COURT:  But that one incident -- you know, I'm

2     very sensitive to gun violence, but on the other hand, that's

3     anecdotal as opposed to the huge study about magazine usage.

4     How does the Court handle anecdotes versus concerns about the

5     safety of large magazines?

6          MR. FANAROFF:  Sure.  I mean, your Honor, with due

7     respect if you're concerned about anecdotes I would just point

8     out the fact that plaintiffs cannot point to a single

9     situation in the entire United States of America where a large

10    capacity magazine was necessary for a self-defender to

11    properly defend themselves.  Obviously we are not banning all

12    handguns --

13         THE COURT:  There was some expert that said the

14    large capacity magazines provided law enforcement and others

15    with a sufficient firepower, that they didn't have to stop to

16    change their magazine, so it provided additional safety.  I

17    read all those briefs and documents over the last couple of

18    days, so I'm not sure my facts are a hundred percent clear or

19    I'm expressing it perfectly, but that was in there.

20         MR. FANAROFF:  Right.  And your Honor I think that

21    we have to understand that we invest in law enforcement a

22    different responsibility when they're carrying firearms than

23    we do ordinary citizens, and indeed just as an illustration

24    there are certain weapons that civilians cannot possess in the

25    State of New Jersey that law enforcement is permitted and

1   utilizes as part of their law enforcement mission.

2         So, I don't think there's any tension between saying

3   that law enforcement has a different role to play when they're

4   utilizing firearms than somebody who's engaging in

5   self-defense.  But again, we are number one not precluding

6   law-abiding citizens from purchasing weapons that have

7   magazines of up to 10 rounds; we are not prohibiting them from

8   purchasing a certain number of those weapons, they purchase as

9   many of them as they want, in addition to purchasing as many

10  10-round magazines as they want.  The issue and the question

11  is whether or not New Jerseyans are provided a continuing

12  right to defend themselves in a way that is sufficient; that

13  is clearly the case here because they are purchase as many

14  firearms as they want and as many magazines as they want for

15  that purpose.  At *Fyock* put it, it only limits a subset of

16  magazines, not an entire class of arms which is what --

17         THE COURT:  If I can just change the subject a

18  little bit, what about the taking part?

19         MR. FANAROFF:  So we obviously have a different view

20  than opposing counsel about his representations as to whether

21  or not the state can in an exercise of its police power engage

22  in this type of activity.  The *Wiese* court, which looked at

23  this case similarly, concluded that it was not a violation of

24  the takings clause, as did *Rupp* which is another of -- the

25  district courts in California have been very active in terms

1    of interpreting various case law.

2         And I just will quote it directly from *Rupp*, your

3    Honor, which is cited in our brief:  "Legislation pursuant to

4    the police power generally is not a taking, but there are

00:38    5    exceptions under limited circumstances such as where land will

6    no longer have any economically valuable use."  This is not

7    that situation, this is a situation where something that our

8    legislature has deemed dangerous is going to be taken out of

9    commission, but again it doesn't preclude individuals who own

00:38    10   these large capacity magazines from transferring or selling

11   them from individuals who are lawfully permitted to possess

12   them, or from modifying them in a way that reduces their

13   capacity from 15 rounds down to 10.

14        I would just -- again I don't want to repeat all of

00:38    15   the arguments in our brief on the takings clause your Honor, I

16   think we fleshed out those arguments robustly in our papers.

17   And if your Honor would permit me I just wanted to close the

18   loop on the intermediate scrutiny standard with regard to the

19   Second Amendment.

00:39    20        The other aspect of it is the question of whether or

21   not it burdens more conduct than necessary.  And as I

22   mentioned, there are multiple alternative channels for

23   self-defense, and I should also note that the legislation

24   exempts firearms with a fixed magazine capacity of 15 rounds,

00:39    25   and it also exempts firearms with detachable magazines of

1    15-round that cannot be converted to accept a smaller

2    ammunition clip.  Those are identical to exemptions that were

3    included in the City of Sunnyvale's prohibition that was

4    upheld in *Fyock*.

5            And so when you put these issues all together, your

6    Honor, you are offered with multiple avenues through which the

7    LCM restriction could be upheld.  But putting that to the

8    side, it's important to note the standard that's before you as

9    you know is whether or not the plaintiffs have met their

10   burden of showing that they have a substantial likelihood of

11   success on the merits; and I would argue to you, your Honor,

12   that the five Circuit Courts of Appeals that have looked at

13   this would certainly argue in the negative on that question.

14           Then finally, your Honor, very briefly, I just

15   wanted to touch on the equal protection argument, because I

16   thought it was interesting the use of the word could was

17   thrown around by opposing counsel in several situations; they

18   could get these -- regular citizens could get certain

19   certifications; there could be this training program for

20   people who wanted to get the certification.  But the point

21   here on rationale basis standard is not whether a legislature

22   could or couldn't do something or should or shouldn't do

23   something, it's whether or not they've drawn a rational basis

24   for their actions.

25           And again I don't want to repeat everything we said

1   in our briefs, but one important distinction other than the

2   fact that people have to be similarly situated, and again I

3   will if the Court will indulge me, just quote from our brief

4   on this point.  "They have to be similarly situated when they

5   are like in all relevant respects."

6         And one of the key distinctions here is that law

7   enforcement has to go through twice-a-year certification

8   training on firearms.  That is not only while they're active

9   duty, but also while they're retired so that they can carry

10  their firearm, which is as separate issue entirely because in

11  the State of New Jersey civilians generally are prohibited

12  from carrying firearms in public.  That was a separate

13  argument that occurred in *Drake v. Filco* which discussed that

14  point.

15        And so law enforcement is not similarly situated to

16  the average law-abiding gun owner in the State of New Jersey;

17  not just because they have to go through twice-a-year

18  certification on their use of firearms, but also they have to

19  continue doing that after they retire so that they can

20  continue availing themselves of that benefit that is not

21  extended to other members of the public.

22        So your Honor, when you get to the other three

23  element involved in preliminary injunction, once a

24  determination is made that no constitutional right is

25  infringed, the rest of the elements fall away.  There's

1  obviously no concern over irreparable harm because if there's

2  no injury there's no harm.

3          But moreover, your Honor, as we mentioned in our

4  brief, firearms owners have until December to dispossess

00:42  5  themselves of these LCMs, so the need for a preliminary

6  injunction in July or even in August when we are again before

7  you is minimized.

8          Secondly, with regard to the balancing of the

9  equities, obviously this was a law that was put into place by

00:42  10  the peoples' elected representatives.  There's discussion in

11  both the Seventh Circuit and the Second Circuit cases by Judge

12  Easterbrook -- excuse me, in the Fourth Circuit in Judge

13  Wilkinson, who both spoke to the fact that courts are not in

14  as good a position as the legislature to make these types of

00:43  15  decisions as it relates to important issues such as whether or

16  not large capacity magazines should be restricted or not.

17          And then finally, your Honor, the harm obviously

18  would be far greater to the defendants and to the people of

19  New Jersey, who elected their legislators, the legislators

00:43  20  speak for the people and have determined that it is an

21  appropriate exercise to restrict these large capacity

22  magazines in the interest of protecting the public safety.

23  And for all of those reasons your Honor we think that a

24  preliminary injunction should be denied.

00:43  25          And if you had any other questions your Honor I'd be

1    happy to answer them.

2         THE COURT:  No, no, I'm satisfied with what you've

3    stated.  My point in going to this hearing is that I think

4    that the evidence from the experts is different on both sides,

00:44    5    and it needs to be fleshed out somehow, and the best way to do

6    it is to have them come and testify so we can explore their

7    credibility, and how broadly they define their underlying

8    statements about the use of magazines, when they're used, how

9    they're used, how many of used and things of that nature.

00:44   10         So I appreciate all the oral argument, but quite

11   frankly I think it's a pretty intense factual inquiry that we

12   have to do.

13         MR. FANAROFF:  Thank you, your Honor.

14         THE COURT:  Thank you.

00:44   15         So both side have had their opportunity; are there

16   any other matters you wish to do today?

17         MR. THOMPSON:  Nothing further for the plaintiffs,

18   your Honor.

19         MR. FANAROFF:  Nothing further, your Honor.

00:44   20         THE COURT:  All right.  So we'll adjourn until

21   August 13th.

22         I wish to make one note; today we had a call, I

23   don't even know who it was from, but it was a person within

24   the media, and they wished to either provide television

00:45   25   coverage or to tape the oral argument and things of that

1    nature.  And generally the answer to that is no.

2            But we do have certain rules.  One is Local Rule

3    401.1, we have local Rule 501.1, and quite frankly if anyone

4    wishes to object to that ruling and wishes to be heard on

5    that, all you have to do is write a letter and I'll place it

6    on the calendar and we'll go through those issues.  So anyone

7    that wishes to do so.  It's not just the lawyers that are

8    here, but it's any of you folks that are listening in.

9            Any other issues?

10           MR. JONES:  Your Honor, before we adjourn, I just

11   want a point of clarification on the dates of the hearing; in

12   chambers I thought we had discussed the 13th, the 16th and the

13   17th, but from the bench I believe your Honor said the 13th,

14   the 14th and the 17th.  Is that what we're talking about?

15           THE COURT:  Well, we'll issue an order, but I'm

16   pretty sure it's the 13th, 16th -- it's Thursday and Friday,

17   Monday, Thursday, Friday.

18           MR. JONES:  Thank you.

19           THE COURT:  Any other issues?  All right.  Thank you

20   for coming in today.

21           (Matter concluded.)

22

23

24

25

## /

**/S** [1] - 1:24

## 0

**08608** [1] - 1:12

## 1

**10** [8] - 10:14, 10:15, 25:9, 25:12, 25:13, 25:25, 27:7, 28:13
**10-round** [3] - 7:11, 7:13, 27:10
**12** [1] - 1:10
**12th** [1] - 25:24
**133** [2] - 5:20, 18:14
**13th** [5] - 4:11, 32:21, 33:12, 33:13, 33:16
**14th** [2] - 4:11, 33:14
**15** [6] - 5:2, 25:9, 25:13, 25:25, 28:13, 28:24
**15-round** [3] - 7:11, 7:14, 29:1
**16th** [2] - 33:12, 33:16
**17** [1] - 20:8
**17th** [3] - 4:11, 33:13, 33:14
**18-10507** [1] - 1:6
**1960s** [1] - 22:9
**1980s** [1] - 22:14
**1986** [1] - 22:17

## 2

**200,000** [1] - 5:23
**2018** [1] - 1:10
**24th** [1] - 4:13
**28** [1] - 1:23

## 3

**30-round** [1] - 25:12

## 4

**401.1** [1] - 33:3
**402** [1] - 1:11

## 5

**501.1** [1] - 33:3

## 7

**753** [1] - 1:23

## 8

**856** [1] - 1:25
**889-4761** [1] - 1:25

## 9

**9** [1] - 10:17

## A

**abiding** [16] - 5:12, 5:14, 5:16, 6:4, 6:5, 7:23, 8:7, 8:23, 12:4, 13:9, 14:2, 14:13, 16:5, 23:22, 27:6, 30:16
**ability** [1] - 20:19
**able** [1] - 25:18
**absent** [1] - 21:16
**absolutely** [3] - 5:17, 7:7, 7:12
**abundantly** [1] - 10:17
**accept** [2] - 10:14, 29:1
**accepted** [1] - 6:16
**account** [1] - 24:21
**actions** [1] - 29:24
**active** [3] - 16:9, 27:25, 30:8
**activity** [2] - 21:2, 27:22
**actual** [1] - 15:16
**addition** [2] - 25:20, 27:9
**additional** [1] - 26:16
**address** [3] - 12:10, 13:3, 13:8
**addressing** [1] - 24:2
**adjourn** [2] - 32:20, 33:10
**affect** [1] - 10:21
**affects** [1] - 15:20
**afforded** [2] - 23:19, 24:1
**afternoon** [10] - 3:5, 3:10, 3:11, 3:14, 3:18, 3:20, 3:24, 3:25, 4:3, 16:25
**ago** [1] - 20:10
**agree** [1] - 21:19
**agreed** [2] - 4:15, 5:2
**al** [2] - 1:7, 3:2
**Alampi** [3] - 3:21, 3:24
**ALAMPI** [3] - 2:13, 2:14, 3:20
**alike** [1] - 11:14
**Alito** [1] - 5:21
**allusive** [1] - 18:23
**alter** [1] - 10:14
**alteration** [1] - 10:23
**alternative** [5] - 11:16, 12:3, 12:9, 23:23, 28:22
**alternatives** [2] - 11:19, 12:7
**Amendment** [18] - 5:9, 5:11, 6:17, 6:25, 8:2, 8:17, 8:20, 9:10, 15:19, 15:24, 16:1, 16:2, 18:8, 19:9, 23:20, 23:22, 24:1, 28:19
**America** [2] - 22:15, 26:9
**Americans** [2] - 5:24, 8:3
**amicus** [1] - 25:22
**ammunition** [3] - 19:24, 20:25, 29:2
**amount** [2] - 14:10, 14:20
**analysis** [8] - 6:25, 8:11, 10:21, 13:12, 14:24, 15:8, 15:17, 16:2
**anecdotal** [1] - 26:3
**anecdotes** [2] - 26:4, 26:7
**answer** [4] - 15:10, 24:21, 32:1, 33:1
**answers** [1] - 10:15
**antecedents** [1] - 22:8
**Appeal** [7] - 17:4, 18:4, 18:21, 19:14, 22:22, 24:5, 24:9
**Appeals** [5] - 6:8, 7:9, 17:18, 24:17, 29:12
**appearances** [1] - 3:3
**APPLICATION** [1] - 1:20
**application** [1] - 4:10
**applied** [3] - 6:24, 7:17, 7:19
**applies** [1] - 15:18
**applying** [1] - 6:17
**appreciate** [1] - 32:10
**appropriate** [4] - 22:5, 23:24, 24:8, 31:21
**appropriately** [1] - 19:12
**appropriates** [1] - 10:18

**AR-15** [2] - 22:10, 22:20
**AR-15s** [1] - 22:8
**argue** [3] - 24:14, 29:11, 29:13
**argued** [1] - 11:2
**argument** [13] - 4:10, 9:6, 10:10, 13:11, 18:6, 18:13, 18:22, 24:6, 24:25, 29:15, 30:13, 32:10, 32:25
**arguments** [10] - 5:2, 9:2, 10:2, 17:5, 17:8, 23:5, 23:7, 23:17, 28:15, 28:16
**armed** [1] - 11:12
**arms** [7] - 5:12, 5:14, 5:15, 7:2, 7:20, 8:5, 27:16
**Army** [1] - 22:17
**arrived** [1] - 17:13
**aspect** [2] - 21:15, 28:20
**assailants** [1] - 21:24
**Assistant** [1] - 3:14
**ASSISTANTS** [1] - 2:11
**ASSOCIATION** [1] - 1:4
**Association** [2] - 3:1, 18:24
**assuming** [2] - 13:1, 23:25
**astray** [1] - 6:13
**attacking** [1] - 15:8
**attacks** [1] - 21:20
**attorney** [1] - 9:24
**ATTORNEY** [2] - 2:9, 2:11
**Attorney** [4] - 3:2, 3:15, 3:16, 3:17
**August** [4] - 4:11, 4:13, 31:6, 32:21
**author** [1] - 6:10
**availing** [1] - 30:20
**avenues** [1] - 29:6
**average** [1] - 30:16
**aware** [1] - 20:6

## B

**background** [1] - 14:7
**balancing** [2] - 6:18, 31:8
**ban** [11] - 6:6, 6:19, 7:1, 7:5, 8:25, 11:9, 11:21, 12:5, 12:11, 12:17, 13:5
**banned** [3] - 5:18,

8:10, 11:13
**banning** [2] - 11:11, 26:11
**bans** [1] - 8:22
**based** [2] - 5:8, 24:24
**basis** [16] - 13:5, 13:14, 13:19, 13:20, 13:22, 13:25, 14:9, 14:17, 15:12, 15:17, 15:21, 17:20, 17:21, 29:21, 29:23
**beach** [1] - 9:21
**behalf** [1] - 3:15
**belied** [1] - 25:21
**bench** [1] - 33:13
**benefit** [2] - 9:24, 30:20
**best** [1] - 32:5
**better** [4] - 4:9, 4:21, 4:23, 7:13
**between** [6] - 14:18, 14:22, 21:10, 25:7, 25:25, 27:2
**bit** [2] - 20:13, 27:18
**blank** [2] - 17:3, 23:6
**block** [1] - 23:15
**blocking** [1] - 8:24
**brandished** [1] - 22:1
**brandishing** [1] - 21:24
**breaker** [1] - 21:1
**Breyer** [1] - 6:22
**brief** [8] - 23:18, 25:18, 25:22, 25:24, 28:3, 28:15, 30:3, 31:4
**briefly** [2] - 24:12, 29:14
**briefs** [4] - 4:13, 4:20, 26:17, 30:1
**broad** [1] - 18:10
**broadly** [1] - 32:7
**BRYAN** [1] - 2:10
**Bryan** [1] - 3:16
**build** [1] - 9:21
**bullets** [1] - 21:20
**burden** [2] - 23:13, 29:10
**burdens** [1] - 28:21
**BY** [5] - 2:4, 2:7, 2:10, 2:14, 2:16

## C

**C.C.R** [1] - 1:24
**Caetano** [1] - 5:22
**calendar** [1] - 33:6
**California** [2] - 17:7, 27:25

cannot [8] - 11:4, 11:15, 16:10, 19:18, 23:3, 26:8, 26:24, 29:1
capacity [14] - 3:22, 5:18, 5:19, 22:12, 22:13, 25:1, 25:19, 26:10, 26:14, 28:10, 28:13, 28:24, 31:16, 31:21
carefully [1] - 4:20
CARPENTER [1] - 2:16
Carpenter [1] - 4:1
carries [1] - 23:16
carry [2] - 23:13, 30:9
carrying [2] - 26:22, 30:12
case [24] - 5:1, 5:8, 6:20, 7:9, 7:25, 8:1, 11:18, 13:13, 13:15, 13:18, 15:10, 17:8, 18:10, 18:24, 18:25, 19:2, 20:13, 22:1, 23:3, 23:12, 24:10, 27:13, 27:23, 28:1
cases [9] - 6:12, 6:25, 7:10, 7:15, 9:9, 17:23, 18:1, 21:3, 31:11
certain [5] - 11:1, 26:24, 27:8, 29:18, 33:2
certainly [3] - 21:13, 24:16, 29:13
certification [3] - 29:20, 30:7, 30:18
certifications [2] - 4:21, 29:19
Certified [1] - 1:23
certiori [1] - 6:11
challenging [2] - 17:6, 18:1
chambers [1] - 33:12
chance [1] - 20:1
change [2] - 26:16, 27:17
channels [1] - 28:22
Chief [2] - 3:21, 3:22
Circuit [21] - 6:15, 6:24, 7:16, 7:17, 7:25, 8:15, 10:5, 17:4, 17:18, 18:4, 18:21, 18:23, 18:25, 19:13, 23:3, 24:9, 24:17, 29:12, 31:11, 31:12
Circuits [1] - 17:11
circulation [1] - 18:14
circumstances [2] -

20:2, 28:5
cited [3] - 10:4, 25:22, 28:3
cites [1] - 13:13
citizen [4] - 12:4, 14:2, 14:6, 14:13
citizens [14] - 5:12, 5:14, 5:16, 6:4, 6:5, 7:23, 8:7, 8:23, 11:13, 13:9, 16:5, 26:23, 27:6, 29:18
City [1] - 29:3
CIVIL [1] - 1:6
civilian [3] - 13:9, 22:10, 22:13
civilians [2] - 26:24, 30:11
civils [1] - 11:11
claim [1] - 8:20
claims [1] - 16:15
clarification [1] - 33:11
CLARKSON [1] - 1:11
class [1] - 27:16
clause [5] - 9:4, 10:1, 11:9, 27:24, 28:15
clear [14] - 5:17, 6:13, 6:23, 6:25, 7:21, 10:17, 12:6, 13:22, 14:16, 15:10, 15:25, 16:7, 25:7, 26:18
clearly [3] - 11:15, 15:13, 27:13
clients [1] - 10:8
clip [1] - 29:2
close [1] - 28:17
Clubs [1] - 3:2
CLUBS [1] - 1:4
coin [2] - 19:17, 22:6
collective [1] - 17:17
Columbia [3] - 3:8, 5:10, 17:7
coming [1] - 33:20
commission [1] - 28:9
common [19] - 5:16, 5:19, 5:22, 6:1, 7:23, 8:12, 18:7, 18:12, 18:15, 18:22, 18:23, 19:1, 19:3, 19:6, 19:17, 22:25, 23:8, 23:21, 24:7
commonly [2] - 6:3, 7:1
compelling [2] - 6:19, 17:14
compensation [3] - 9:1, 9:11, 11:5
competence [1] - 10:1
competent [1] - 9:23
complaint [1] - 19:5

complied [1] - 6:9
comply [1] - 6:12
concede [3] - 12:5, 13:2, 24:13
conceding [1] - 12:7
conception [1] - 8:7
concern [2] - 16:4, 31:1
concerned [1] - 26:7
concerns [1] - 26:4
concluded [2] - 27:23, 33:21
conclusion [1] - 8:12
conclusions [3] - 17:13, 17:17, 17:19
concurrence [1] - 5:22
conduct [2] - 24:20, 28:21
conference [1] - 4:4
conferring [1] - 9:25
confinement [1] - 20:15
consider [1] - 4:19
consideration [2] - 18:7, 21:13
considered [2] - 17:5, 19:15
constitutes [1] - 9:8
constitutional [9] - 9:16, 12:6, 12:8, 13:2, 16:15, 16:16, 23:4, 24:1, 30:24
context [1] - 15:11
continue [2] - 30:19, 30:20
continuing [1] - 27:11
continuously [1] - 16:9
contrary [7] - 6:21, 7:20, 7:24, 8:2, 8:5, 8:16, 18:2
controversy [1] - 4:22
converted [1] - 29:1
convincing [1] - 6:20
COOPER [1] - 2:6
Cooper [1] - 3:8
core [1] - 21:19
correct [1] - 1:23
Counsel [1] - 4:16
counsel [12] - 3:7, 4:25, 10:2, 17:3, 18:5, 19:7, 19:18, 22:24, 24:5, 25:10, 27:20, 29:17
counsel's [1] - 18:13
country [2] - 20:4, 23:6
couple [1] - 26:17
course [6] - 12:4, 18:12, 19:7, 19:13,

22:10, 23:11
courses [1] - 14:14
Court [14] - 4:19, 5:8, 5:10, 6:8, 7:9, 9:5, 15:19, 16:25, 19:9, 23:9, 23:15, 24:17, 26:4, 30:3
court [14] - 5:13, 7:18, 9:6, 9:17, 9:19, 9:23, 10:3, 10:24, 11:4, 11:18, 12:7, 22:19, 27:22
COURT [28] - 1:1, 1:15, 3:1, 3:11, 3:18, 3:24, 4:3, 4:17, 7:5, 9:9, 9:18, 12:13, 13:6, 14:6, 14:18, 15:2, 16:21, 16:23, 20:11, 20:22, 26:1, 26:13, 27:17, 32:2, 32:14, 32:20, 33:15, 33:19
court's [1] - 8:2
Court's [2] - 11:17, 12:17
courthouse [1] - 20:10
COURTHOUSE [1] - 1:11
Courts [9] - 17:4, 17:18, 18:4, 18:21, 19:14, 22:22, 24:5, 24:9, 29:12
courts [3] - 24:23, 27:25, 31:13
coverage [1] - 32:25
credibility [1] - 32:7
crime [1] - 12:22
criminal [2] - 12:19, 12:22
critical [1] - 21:4
crop [1] - 11:1

D

dangerous [6] - 19:11, 19:16, 21:15, 22:6, 22:20, 28:8
DANIEL [1] - 2:4
Daniel [1] - 3:5
dates [1] - 33:11
David [1] - 3:8
DAVID [1] - 2:7
days [1] - 26:18
DC [3] - 6:15, 7:16, 18:4
De [2] - 2:13, 3:21
dealing [2] - 4:18, 7:10

dealt [2] - 9:20, 10:24
decades [1] - 20:5
December [1] - 31:4
decide [1] - 17:23
decided [1] - 12:22
decision [7] - 4:14, 6:15, 10:4, 11:17, 17:20, 19:8, 23:10
decisions [5] - 6:8, 12:17, 17:11, 18:3, 31:15
declarants [1] - 20:3, 21:2
declaration [1] - 11:25
deemed [1] - 28:8
default [1] - 12:19
defend [4] - 7:12, 8:13, 26:11, 27:12
DEFENDANT [2] - 2:14, 2:17
defendant [2] - 3:13, 4:2
DEFENDANTS [2] - 1:7, 2:12
defendants [2] - 3:15, 31:18
defender [1] - 26:10
defenders [1] - 21:19
defense [7] - 5:13, 19:20, 21:18, 21:20, 22:23, 27:5, 28:23
defenses [1] - 13:7
define [1] - 32:7
defined [1] - 20:7
demonstrated [1] - 14:1
demonstrates [1] - 12:11
denial [1] - 6:11
denied [1] - 31:24
denying [1] - 17:21
deprivation [1] - 10:7
deprived [2] - 10:8, 12:24
Deputy [2] - 3:16
destined [1] - 8:19
destruction [1] - 9:1
detachable [1] - 28:25
determination [1] - 30:24
determine [1] - 13:13
determined [1] - 31:20
determining [1] - 5:14
DEUTSCH [1] - 2:16
Deutsch [1] - 4:1
died [1] - 20:8
difference [1] - 25:25
different [8] - 7:6, 15:14, 22:22, 22:24,

26:22, 27:3, 27:19, 32:4

**direct** [1] - 10:19
**directly** [8] - 7:3, 7:19, 7:23, 8:4, 8:6, 8:16, 10:18, 28:2
**disagreed** [1] - 13:1
**discrimination** [3] - 13:18, 13:19, 13:20
**discussed** [6] - 4:5, 23:2, 23:20, 25:17, 30:13, 33:12
**discussion** [2] - 22:7, 31:10
**disfigure** [1] - 8:24
**dispose** [1] - 8:23
**dispossess** [1] - 31:4
**dissent** [3] - 6:11, 6:20, 6:22
**distinct** [1] - 7:9
**distinction** [15] - 13:14, 13:23, 13:25, 14:4, 14:10, 14:18, 14:22, 14:23, 14:24, 15:1, 15:7, 15:9, 15:21, 15:25, 30:1
**distinctions** [1] - 30:6
**distinguishable** [1] - 17:18
**distinguishes** [1] - 7:14
**distinguishing** [1] - 15:11
**District** [3] - 3:8, 5:9, 17:7
**DISTRICT** [4] - 1:1, 1:1, 1:15, 1:16
**district** [1] - 27:25
**documents** [1] - 26:17
**Dominguez** [2] - 3:17, 3:19
**DOMINGUEZ** [1] - 2:11
**down** [8] - 12:16, 12:18, 12:20, 12:23, 13:4, 25:9, 25:12, 28:13
**Drake** [2] - 24:16, 30:13
**drastic** [1] - 11:20
**drawn** [1] - 29:23
**dropping** [1] - 25:12
**due** [1] - 26:6
**duly** [1] - 23:15
**during** [1] - 21:16
**duty** [1] - 30:9

**E**

**earn** [2] - 12:5, 16:5
**EAST** [1] - 1:11
**Easterbrook** [2] - 23:2, 31:12
**economically** [1] - 28:6
**edges** [1] - 5:21
**effective** [1] - 25:3
**efficient** [1] - 22:9
**either** [5] - 8:23, 9:24, 12:18, 23:9, 32:24
**elected** [2] - 31:10, 31:19
**element** [1] - 30:23
**elements** [1] - 30:25
**elevates** [1] - 5:11
**eligible** [2] - 15:6, 16:8
**emergent** [1] - 14:21
**emphasize** [1] - 7:8
**employed** [1] - 6:21
**enacted** [2] - 23:16, 25:16
**enforcement** [20] - 11:11, 11:23, 12:14, 12:21, 13:9, 13:21, 14:5, 14:12, 14:15, 21:6, 21:11, 22:16, 26:14, 26:21, 26:25, 27:1, 27:3, 30:7, 30:15
**enforcing** [1] - 16:19
**engage** [2] - 21:7, 27:21
**engaging** [2] - 21:1, 27:4
**enhanced** [1] - 23:14
**enter** [1] - 3:3
**entire** [2] - 26:9, 27:16
**entirely** [2] - 24:6, 30:10
**entitled** [1] - 6:5
**equal** [5] - 11:8, 12:18, 13:5, 15:16, 29:15
**equally** [2] - 13:3, 17:14
**equities** [1] - 31:9
**escape** [1] - 11:5
**ESQUIRE** [8] - 2:4, 2:7, 2:7, 2:10, 2:10, 2:11, 2:14, 2:16
**essentially** [4] - 6:22, 9:2, 9:17, 9:19
**established** [2] - 5:13, 8:15
**et** [2] - 1:7, 3:2
**event** [1] - 20:9
**evidence** [8] - 5:20,

5:25, 7:12, 18:16, 18:22, 19:22, 25:20, 32:4
**exact** [1] - 14:2
**exactly** [1] - 11:6
**example** [4] - 7:20, 9:6, 13:15, 20:11
**exception** [5] - 9:4, 9:15, 9:23, 11:23, 12:21
**exceptions** [1] - 28:5
**excuse** [1] - 31:12
**exempt** [1] - 11:10
**exemption** [6] - 12:5, 12:11, 14:3, 14:16, 15:6, 16:6, 16:8, 16:10
**exemptions** [1] - 29:2
**exempts** [2] - 28:24, 28:25
**exercise** [3] - 15:20, 27:21, 31:21
**existence** [2] - 7:21, 23:4
**expert** [1] - 26:13
**experts** [1] - 32:4
**explained** [3] - 6:20, 15:25, 16:3
**explore** [1] - 32:6
**expose** [1] - 10:12
**expressing** [1] - 26:19
**expressly** [1] - 9:5
**extended** [2] - 12:24, 30:21
**extensive** [1] - 24:25
**extraordinary** [2] - 18:6, 23:12

**F**

**fact** [28] - 5:7, 6:3, 6:10, 10:20, 11:10, 12:8, 14:1, 15:6, 15:9, 15:11, 16:6, 16:7, 18:21, 19:10, 20:5, 21:11, 21:18, 21:23, 22:5, 22:13, 22:16, 22:19, 25:4, 25:21, 25:23, 26:8, 30:2, 31:13
**factor** [1] - 7:19
**factors** [2] - 16:16, 16:18
**facts** [3] - 4:22, 20:12, 26:18
**factual** [1] - 32:11
**fails** [1] - 7:2
**fall** [1] - 30:25
**FANAROFF** [9] - 2:10,

16:24, 20:21, 20:23, 26:6, 26:20, 27:19, 32:13, 32:19
**Fanaroff** [3] - 3:15, 3:18, 16:23
**far** [1] - 31:18
**Federal** [1] - 10:5
**few** [1] - 20:5
**fewer** [2] - 20:25, 21:20
**Fifth** [1] - 9:10
**Filco** [1] - 30:13
**finally** [3] - 11:8, 29:14, 31:17
**findings** [1] - 21:9
**fire** [2] - 21:20, 22:2
**firearm** [2] - 22:9, 30:10
**firearms** [15] - 6:1, 12:1, 14:8, 15:23, 21:21, 21:24, 26:22, 27:4, 27:14, 28:24, 28:25, 30:8, 30:12, 30:18, 31:4
**fired** [2] - 19:25, 21:1
**firepower** [1] - 26:15
**firing** [1] - 20:19
**firm** [3] - 3:6, 3:8, 3:21
**first** [3] - 6:15, 11:20, 24:21
**First** [2] - 9:3, 10:16
**FISHER** [1] - 1:11
**fit** [4] - 9:15, 24:19, 25:8
**five** [5] - 8:24, 17:4, 17:17, 24:9, 29:12
**fixed** [1] - 28:24
**flatly** [2] - 6:6, 6:20
**flee** [1] - 20:1
**fleshed** [2] - 28:16, 32:5
**focus** [1] - 10:7
**folks** [1] - 33:8
**follow** [1] - 17:11
**follows** [3] - 6:4, 7:3, 16:15
**footnote** [1] - 10:17
**FOR** [6] - 1:20, 2:5, 2:8, 2:12, 2:14, 2:17
**forces** [1] - 11:12
**Forgive** [1] - 20:23
**founding** [1] - 7:21
**four** [2] - 6:8, 17:4
**Fourth** [4] - 7:25, 8:15, 18:3, 31:12
**Francis** [1] - 1:24
**FRANCIS** [1] - 1:24
**Francisco** [1] - 19:2
**frankly** [2] - 32:11, 33:3

**Friday** [2] - 33:16, 33:17
**Friedman** [3] - 7:17, 23:3, 23:24
**front** [1] - 9:21
**fundamental** [3] - 11:14, 15:20, 19:19
**Fyock** [4] - 18:24, 24:3, 27:15, 29:4

**G**

**Gable** [1] - 1:24
**GABLE** [1] - 1:24
**GENERAL** [2] - 2:9, 2:11
**General** [4] - 3:2, 3:15, 3:16, 3:17
**generally** [3] - 28:4, 30:11, 33:1
**GEORGE** [1] - 2:16
**George** [1] - 3:25
**given** [2] - 8:18, 23:23
**government** [9] - 9:11, 9:24, 10:11, 10:17, 10:25, 11:2, 11:4, 16:17, 24:16
**government's** [1] - 10:2
**governmental** [1] - 24:2
**grant** [2] - 17:23, 23:11
**grapes** [1] - 11:3
**greater** [1] - 31:18
**GREWAL** [1] - 1:7
**Grewal** [1] - 3:3
**growers** [1] - 10:25
**guards** [1] - 16:9
**gun** [10] - 18:17, 18:19, 20:1, 21:24, 22:1, 23:22, 25:3, 25:23, 26:2, 30:16
**Gun** [1] - 25:22
**guns** [3] - 5:22, 8:9, 18:17
**GURBIR** [1] - 1:7

**H**

**hac** [1] - 3:7
**half** [2] - 20:3, 21:10
**hand** [2] - 20:13, 26:2
**handgun** [1] - 19:21
**handguns** [2] - 22:14, 26:12
**handicap** [1] - 20:16
**handle** [2] - 4:21, 26:4

**handling** [1] - 14:21
**happy** [1] - 32:1
**harm** [5] - 9:25, 16:17, 31:1, 31:2, 31:17
**HARTMAN** [1] - 2:4
**Hartman** [1] - 3:6
**head** [1] - 8:15
**heard** [1] - 33:4
**HEARING** [1] - 1:20
**hearing** [7] - 4:4, 4:9, 4:12, 4:20, 32:3, 33:11
**hearth** [2] - 5:13, 19:20
**heightened** [2] - 11:15, 15:22
**held** [2] - 6:17, 8:1
**Heller** [19] - 5:10, 6:4, 6:10, 6:12, 6:21, 6:22, 6:23, 7:3, 7:20, 7:21, 7:24, 8:5, 8:9, 8:13, 15:25, 18:9, 19:8, 19:20, 24:3
**Heller's** [3] - 6:10, 6:25, 8:12
**helps** [1] - 20:20
**historical** [1] - 22:7
**history** [1] - 24:25
**holds** [1] - 23:8
**home** [4] - 5:13, 7:2, 19:20, 22:2
**Honor** [44] - 3:5, 3:10, 3:14, 3:20, 3:25, 5:4, 11:9, 13:4, 14:25, 16:20, 16:24, 17:1, 17:10, 17:16, 18:8, 20:21, 20:24, 21:8, 21:15, 22:4, 22:24, 23:6, 23:14, 24:12, 24:18, 25:14, 26:6, 26:20, 28:3, 28:15, 28:17, 29:6, 29:11, 29:14, 30:22, 31:3, 31:17, 31:23, 31:25, 32:13, 32:18, 32:19, 33:10, 33:13
**Honor's** [1] - 20:6
**HONORABLE** [1] - 1:15
**Horne** [1] - 10:24
**huge** [1] - 26:3
**hundred** [1] - 26:18
**hurts** [1] - 20:20

**I**

**identical** [1] - 29:2
**identified** [1] - 22:19
**identify** [1] - 22:4

**idiosyncratic** [1] - 7:17
**ignore** [1] - 22:24
**II** [1] - 24:3
**illustrates** [1] - 22:1
**illustration** [1] - 26:23
**impedes** [1] - 14:20
**implementation** [1] - 23:15
**implicate** [1] - 20:5
**implicates** [1] - 11:14, 15:20, 15:25
**importance** [1] - 20:18
**important** [5] - 17:11, 19:8, 29:8, 30:1, 31:15
**inaccurately** [1] - 5:18
**inappropriate** [1] - 25:13
**INC** [1] - 1:4
**Inc** [1] - 3:2
**incarcerated** [1] - 20:14
**incident** [1] - 26:1
**included** [1] - 29:3
**including** [2] - 11:12, 13:10
**incorrectly** [1] - 17:23
**indeed** [4] - 6:21, 8:19, 21:25, 26:23
**independent** [1] - 17:21
**indicate** [2] - 19:22, 21:2
**indicated** [4] - 4:25, 9:10, 17:3, 20:3
**indicates** [2] - 18:16, 19:5
**indication** [1] - 18:18
**individual** [2] - 20:14, 20:17
**individuals** [5] - 21:7, 21:23, 25:18, 28:9, 28:11
**indulge** [1] - 30:3
**infringed** [2] - 23:25, 30:25
**INJUNCTION** [1] - 1:20
**injunction** [8] - 4:11, 16:14, 17:22, 17:24, 23:11, 30:23, 31:6, 31:24
**injured** [2] - 19:25, 20:9
**injury** [1] - 31:2
**inquiry** [2] - 15:12, 32:11
**intended** [1] - 22:12
**intense** [1] - 32:11

**interest** [5] - 16:19, 24:2, 24:15, 25:8, 31:22
**interesting** [1] - 29:16
**interests** [1] - 5:11
**intermediate** [5] - 6:18, 11:18, 24:4, 24:13, 28:18
**interpreting** [1] - 28:1
**interrupting** [1] - 20:23
**intruders** [1] - 22:2
**invest** [1] - 26:21
**involved** [1] - 10:23
**involves** [1] - 25:1
**irreparable** [2] - 16:17, 31:1
**issue** [11] - 4:6, 6:9, 6:23, 7:10, 9:20, 12:10, 20:22, 21:14, 27:10, 30:10, 33:15
**issued** [1] - 22:17
**issues** [9] - 17:1, 19:13, 20:17, 23:7, 29:5, 31:15, 33:6, 33:9, 33:19
**itself** [1] - 13:13

**J**

**James** [1] - 3:22
**JENNIFER** [1] - 2:14
**Jennifer** [1] - 3:20
**Jersey** [12] - 3:1, 5:18, 7:12, 8:21, 8:25, 11:7, 11:22, 19:6, 26:25, 30:11, 30:16, 31:19
**JERSEY** [4] - 1:1, 1:4, 1:12, 1:16
**Jersey's** [1] - 11:9
**Jerseyans** [1] - 27:11
**Joe** [1] - 3:15
**joined** [1] - 6:11
**Jones** [2] - 3:25, 4:3
**JONES** [4] - 2:16, 3:25, 33:10, 33:18
**JOSEPH** [1] - 2:10
**Judge** [4] - 6:19, 23:2, 31:11, 31:12
**JUDGE** [1] - 1:15
**judges** [1] - 23:6
**judgment** [1] - 8:2
**judiciary's** [1] - 8:6
**July** [1] - 31:6
**JULY** [1] - 1:10
**Justice** [2] - 5:21, 6:22
**justification** [3] - 13:24, 14:25, 15:15

**justifications** [1] - 17:19
**justified** [2] - 15:22, 16:6
**justifies** [1] - 11:22

**K**

**Kavanaugh** [1] - 6:19
**key** [2] - 9:12, 30:6
**killed** [1] - 25:23
**KIRK** [1] - 2:6
**Kirk** [1] - 3:8
**knowing** [1] - 20:13
**Kolbe** [4] - 7:25, 22:4, 22:19, 23:20

**L**

**lack** [1] - 16:6
**land** [1] - 28:5
**large** [11] - 5:18, 19:4, 22:12, 25:1, 25:19, 26:5, 26:9, 26:14, 28:10, 31:16, 31:21
**last** [1] - 26:17
**law** [57] - 3:8, 3:21, 4:19, 5:12, 5:14, 5:16, 6:4, 6:5, 7:23, 8:7, 8:18, 8:23, 11:10, 11:22, 11:23, 12:4, 12:14, 12:20, 13:8, 13:9, 13:14, 13:21, 13:22, 13:25, 14:2, 14:5, 14:10, 14:11, 14:12, 14:13, 14:14, 14:17, 15:18, 15:20, 16:5, 16:9, 16:13, 16:19, 21:1, 21:6, 21:11, 22:16, 23:16, 23:22, 26:14, 26:21, 26:25, 27:1, 27:3, 27:6, 28:1, 30:6, 30:15, 30:16, 31:9
**law's** [1] - 23:3
**law-abiding** [16] - 5:12, 5:14, 5:16, 6:4, 6:5, 7:23, 8:7, 8:23, 12:4, 13:9, 14:2, 14:13, 16:5, 23:22, 27:6, 30:16
**lawful** [2] - 8:8, 12:19
**lawfully** [3] - 8:23, 10:13, 28:11
**laws** [2] - 17:7, 23:25
**lawyers** [1] - 33:7
**layperson** [1] - 14:22
**LCM** [11] - 17:12, 18:1,

19:14, 20:5, 23:23, 24:19, 25:2, 25:6, 25:9, 25:17, 29:7
**LCMs** [13] - 18:18, 19:1, 19:4, 19:6, 19:19, 19:23, 20:2, 21:9, 22:5, 22:19, 23:18, 23:25, 31:5
**least** [2] - 17:18, 20:5
**legal** [5] - 5:6, 17:5, 17:14, 17:19, 17:20
**Legislation** [1] - 28:3
**legislation** [1] - 28:23
**legislators** [2] - 31:19
**legislature** [4] - 12:25, 28:8, 29:21, 31:14
**lengthy** [1] - 22:7
**less** [10] - 11:16, 11:19, 12:2, 12:9, 18:2, 18:19, 19:5, 20:1, 20:9, 20:10
**letter** [1] - 33:5
**level** [2] - 12:18, 12:23
**levels** [1] - 6:24
**likelihood** [3] - 17:16, 25:18, 29:10
**likely** [3] - 5:7, 8:19, 16:14
**limit** [5] - 7:11, 7:13, 7:14, 25:12
**limitation** [1] - 7:6
**limitations** [1] - 19:9
**limited** [1] - 28:5
**limits** [1] - 27:15
**line** [1] - 25:16
**listening** [1] - 33:8
**lives** [2] - 21:6, 21:12
**LLC** [1] - 2:13
**LLP** [1] - 2:16
**Local** [1] - 33:2
**local** [1] - 33:3
**look** [2] - 14:11, 18:8
**looked** [9] - 18:12, 18:21, 19:14, 21:3, 23:7, 24:10, 24:23, 27:22, 29:12
**looks** [1] - 11:25
**loop** [1] - 28:18
**Loretto** [2] - 9:6, 10:17
**lost** [1] - 12:13
**LUCAS** [1] - 2:10
**Lucas** [3] - 3:16, 3:18, 9:20
**Lyndhurst** [1] - 3:23

**M**

**M-16** [1] - 22:11
**M-16s** [1] - 22:8

**M1911** [1] - 22:18
**machine** [1] - 8:9
**magazine** [8] - 12:1, 20:18, 22:18, 25:24, 26:3, 26:10, 26:16, 28:24
**magazines** [27] - 5:17, 5:19, 6:16, 8:1, 8:3, 8:22, 9:14, 10:9, 10:11, 11:13, 15:24, 20:12, 20:24, 22:12, 25:1, 25:19, 26:5, 26:14, 27:7, 27:10, 27:14, 27:16, 28:10, 28:25, 31:16, 31:22, 32:8
**magnitude** [1] - 5:24
**majority** [3] - 18:17, 22:4, 23:9
**margin** [1] - 5:21
**mark** [1] - 13:12
**Marrais** [1] - 3:21
**MARRAIS** [1] - 2:13
**mass** [6] - 19:23, 20:4, 20:6, 20:7, 25:1, 25:5
**Matter** [1] - 33:21
**matter** [4] - 4:5, 8:18, 10:18, 16:13
**matters** [3] - 5:8, 25:21, 32:16
**McCullen** [2] - 11:17, 12:6
**McElroy** [2] - 2:16, 4:1
**mean** [1] - 26:6
**meaning** [1] - 8:16
**means** [2] - 23:23, 24:2
**media** [1] - 32:24
**meet** [3] - 15:13, 16:10, 16:11
**meeting** [1] - 23:13
**members** [2] - 13:10, 30:21
**mental** [2] - 20:16, 20:19
**mention** [1] - 25:11
**mentioned** [2] - 28:22, 31:3
**merely** [2] - 21:24, 22:25
**merge** [1] - 16:18
**merits** [4] - 5:7, 16:13, 17:16, 29:11
**met** [2] - 16:16, 29:9
**methodology** [1] - 6:21
**might** [1] - 4:7
**mile** [1] - 20:9
**military** [7] - 8:11,

13:10, 16:8, 19:12, 22:5, 22:10, 22:21
**militia** [1] - 8:14
**million** [2] - 5:20, 18:14
**millions** [1] - 8:3
**minimized** [1] - 31:7
**minority** [1] - 18:17
**minutes** [1] - 5:2
**misses** [1] - 13:11
**mission** [1] - 27:1
**modifying** [1] - 28:12
**Monday** [1] - 33:17
**month** [1] - 20:10
**moreover** [2] - 18:18, 31:3
**most** [9] - 6:1, 8:4, 8:6, 18:19, 19:12, 21:23, 22:5, 22:14, 25:3
**Moving** [1] - 8:21
**moving** [5] - 7:10, 7:16, 11:8, 23:12, 25:15
**MS** [1] - 3:20
**multiple** [2] - 28:22, 29:6
**MULVANEY** [1] - 2:16
**Mulvaney** [1] - 4:1
**must** [4] - 11:14, 17:22, 18:15, 23:13

### N

**nation** [1] - 6:2
**nationwide** [1] - 19:5
**nature** [3] - 9:12, 32:9, 33:1
**necessarily** [1] - 19:1
**necessary** [4] - 19:19, 24:20, 26:10, 28:21
**need** [2] - 9:20, 31:5
**needs** [1] - 32:5
**negative** [1] - 29:13
**nevertheless** [1] - 6:17
**NEW** [4] - 1:1, 1:4, 1:12, 1:16
**New** [16] - 3:1, 5:18, 7:11, 8:21, 8:25, 11:7, 11:9, 11:22, 18:24, 19:6, 24:3, 26:25, 27:11, 30:11, 30:16, 31:19
**next** [2] - 7:16, 13:17
**nexus** [1] - 25:7
**Ninth** [2] - 18:3, 18:25
**NO** [1] - 1:6
**note** [6] - 17:12, 21:8,

24:11, 28:23, 29:8, 32:22
**noted** [1] - 19:2
**Nothing** [3] - 17:25, 32:17, 32:19
**nothing** [2] - 19:5, 19:10
**nowhere** [1] - 14:11
**number** [4] - 19:4, 20:15, 27:5, 27:8

### O

**O'CONNOR** [1] - 2:14
**O'Connor** [1] - 3:22
**object** [1] - 33:4
**objections** [1] - 4:17
**obligated** [1] - 17:10
**obligation** [2] - 11:5, 23:13
**obvious** [3] - 11:16, 11:19, 12:2
**Obviously** [1] - 26:11
**obviously** [5] - 12:9, 27:19, 31:1, 31:9, 31:17
**occurred** [2] - 20:4, 30:13
**OF** [4] - 1:1, 1:4, 1:16, 2:9
**offered** [1] - 29:6
**OFFICE** [1] - 2:9
**officer** [6] - 14:3, 14:7, 14:19, 15:2, 15:7
**Officers** [1] - 19:2
**officers** [4] - 12:15, 15:15, 21:6, 21:12
**official** [3] - 3:22, 13:21, 14:13
**OFFICIAL** [1] - 1:25
**officials** [3] - 11:11, 11:24, 14:15
**ON** [1] - 1:20
**once** [2] - 25:4, 30:23
**one** [20] - 4:13, 6:11, 7:7, 7:20, 9:9, 10:10, 17:3, 17:12, 20:5, 21:8, 21:10, 21:25, 22:21, 25:3, 26:1, 27:5, 30:1, 30:6, 32:22
**One** [2] - 13:8, 33:2
**one-half** [1] - 21:10
**one-third** [1] - 21:10
**ones** [1] - 17:5
**open** [1] - 16:4
**opinion** [1] - 23:9
**opportunity** [2] - 11:6, 32:15

**opposed** [2] - 4:20, 26:3
**Opposing** [1] - 18:13
**opposing** [9] - 16:17, 18:5, 19:7, 19:18, 22:23, 24:5, 25:10, 27:20, 29:17
**option** [3] - 10:11, 10:16, 10:23
**options** [1] - 10:12
**oral** [3] - 4:10, 32:10, 32:25
**order** [2] - 17:23, 33:15
**orders** [1] - 5:24
**ordinary** [1] - 26:23
**otherwise** [1] - 13:1
**outcome** [1] - 16:1
**outset** [1] - 18:5
**outside** [1] - 23:19
**overcome** [1] - 15:3
**overwhelmingly** [2] - 19:23, 19:24
**own** [4] - 8:3, 17:21, 23:4, 28:9
**owned** [4] - 5:23, 8:23, 18:17, 18:19
**owner** [1] - 30:16
**owners** [4] - 18:18, 18:20, 23:23, 31:4
**ownership** [1] - 19:3

### P

**panel** [1] - 6:15
**papers** [3] - 4:8, 24:14, 28:16
**paradox** [1] - 20:8
**parenthetically** [1] - 23:8
**part** [3] - 9:13, 27:1, 27:18
**particularly** [1] - 13:17
**parties** [2] - 4:4, 4:14
**party** [4] - 10:19, 10:21, 16:18, 23:12
**pass** [1] - 11:14
**past** [1] - 20:5
**PATTERSON** [11] - 2:7, 5:4, 7:7, 9:17, 9:19, 12:16, 13:7, 14:9, 14:23, 15:5, 16:22
**Patterson** [3] - 3:9, 3:12, 5:5
**pause** [1] - 21:4
**PC** [1] - 2:4
**people** [8] - 19:25, 20:7, 20:8, 29:20,

30:2, 31:18, 31:20
**peoples'** [1] - 31:10
**percent** [1] - 26:18
**percentage** [1] - 11:1
**perfectly** [1] - 26:19
**period** [2] - 4:12, 20:14
**permanently** [2] - 8:24, 10:13
**permit** [1] - 28:17
**permitted** [2] - 10:13, 26:25, 28:11
**person** [5] - 12:23, 12:24, 14:22, 20:19, 32:23
**Pete** [1] - 5:4
**PETER** [2] - 1:15, 2:7
**Peter** [1] - 3:9
**PGS** [1] - 1:6
**Pistol** [2] - 3:2, 18:24
**PISTOL** [1] - 1:4
**place** [3] - 10:22, 31:9, 33:5
**plaintiff** [2] - 3:4, 13:16
**PLAINTIFF** [3] - 1:5, 2:5, 2:8
**PLAINTIFF'S** [1] - 1:20
**plaintiffs** [13] - 3:7, 5:3, 5:5, 8:18, 17:6, 17:8, 17:15, 21:25, 23:14, 24:13, 26:8, 29:9, 32:17
**plaintiffs'** [2] - 17:21, 21:16
**play** [1] - 27:3
**pleadings** [1] - 21:16
**PLLC** [1] - 2:6
**point** [12] - 13:19, 20:24, 22:1, 23:18, 25:10, 26:7, 26:8, 29:20, 30:4, 30:14, 32:3, 33:11
**police** [13] - 9:3, 9:7, 9:22, 14:2, 14:7, 14:19, 15:2, 15:7, 15:15, 21:12, 27:21, 28:4
**Police** [2] - 3:22, 19:2
**policing** [2] - 14:20, 14:21
**position** [1] - 31:14
**possess** [4] - 6:5, 10:13, 26:24, 28:11
**possessed** [3] - 6:3, 7:1, 18:19
**possessing** [1] - 11:12
**possession** [1] - 6:6

possible [1] - 8:10
postponed [1] - 4:10
potential [2] - 19:25, 21:5
potentially [1] - 18:10
power [5] - 9:3, 9:7, 9:22, 27:21, 28:4
practice [1] - 14:20
pre [1] - 4:4
pre-hearing [1] - 4:4
preclude [1] - 28:9
precluding [1] - 27:5
preliminary [9] - 4:11, 5:1, 16:14, 17:22, 17:24, 23:11, 30:23, 31:5, 31:24
PRELIMINARY [1] - 1:20
present [1] - 3:7
presented [2] - 17:2, 23:5
presents [1] - 20:22
preserve [1] - 9:21
presumption [1] - 23:16
pretty [3] - 6:13, 32:11, 33:16
prevail [2] - 8:19, 16:13
prevails [1] - 18:7
prevalent [1] - 19:3
primarily [1] - 22:21
primary [1] - 18:13
private [2] - 9:11, 14:6
pro [1] - 3:7
problem [1] - 15:4
proceed [2] - 4:5, 4:24
produced [1] - 22:9
proficiency [2] - 11:25, 14:14
program [1] - 10:24, 16:5, 29:19
prohibited [1] - 30:11
prohibiting [1] - 27:7
prohibition [1] - 29:3
prohibits [1] - 19:11
proper [1] - 10:7
properly [1] - 26:11
property [8] - 9:1, 9:11, 10:8, 10:9, 10:18, 10:19, 10:20, 11:6
propose [1] - 12:8
proposing [1] - 14:25
proposition [1] - 18:9
prospectively [1] - 8:22
protect [3] - 8:14, 21:13, 21:21

protected [4] - 6:16, 8:1, 15:23, 15:24
protecting [2] - 24:15, 31:22
protection [5] - 11:8, 12:18, 13:5, 15:17, 29:15
protections [1] - 23:19
provide [2] - 8:25, 32:24
provided [5] - 23:22, 24:7, 26:14, 26:16, 27:11
provides [1] - 17:21
provision [1] - 4:19
public [10] - 9:12, 9:13, 9:14, 16:18, 24:3, 24:15, 25:8, 30:12, 30:21, 31:22
purchase [2] - 25:19, 27:8, 27:13
purchasing [3] - 27:6, 27:8, 27:9
pure [1] - 8:18
purely [1] - 5:6
purpose [5] - 8:14, 8:16, 13:12, 21:25, 27:15
purposes [2] - 8:8, 14:24
pursuant [1] - 28:3
put [6] - 19:9, 20:18, 25:24, 27:15, 29:5, 31:9
puts [1] - 8:13
putting [2] - 12:2, 29:7

Q

qualified [1] - 14:3
qualify [2] - 14:15, 16:10
quarantine [1] - 10:5
questions [3] - 16:20, 24:18, 31:25
quickly [3] - 6:14, 8:21, 13:8
quite [2] - 32:10, 33:3
quote [2] - 28:2, 30:3
quoted [1] - 13:17

R

raise [2] - 9:22, 13:24
raised [2] - 17:6, 25:10
raises [1] - 25:4

raisin [1] - 10:25
raising [1] - 17:8
ramifications [1] - 18:11
rate [1] - 25:5
rather [2] - 4:18, 10:14
ratification [1] - 23:21
rational [2] - 15:17, 29:23
rationale [1] - 29:21
rationales [3] - 17:14, 22:22, 22:25
reached [1] - 17:19
reaches [1] - 7:2
read [3] - 4:8, 19:8, 26:17
reading [1] - 18:10
really [5] - 5:19, 15:3, 16:4, 18:6, 24:18
reason [2] - 14:4, 25:13
reasonable [1] - 24:19
reasonably [1] - 25:8
reasoning [1] - 6:10
reasons [3] - 5:6, 16:12, 31:23
receive [1] - 4:13
recent [2] - 18:3, 24:25
recently [1] - 25:16
recognized [2] - 19:20, 24:16
record [1] - 17:25
records [1] - 18:1
reduce [1] - 25:3
reduces [2] - 25:18, 28:12
reducing [1] - 9:25
regard [7] - 12:14, 18:8, 19:16, 20:12, 20:17, 28:18, 31:8
regardless [1] - 16:1
regular [1] - 29:18
regulatory [1] - 7:6
reject [1] - 17:17
rejected [3] - 9:5, 17:9, 23:7
relates [1] - 31:15
relevant [1] - 30:5
reload [1] - 21:4
remarks [1] - 5:1
remedy [2] - 11:20, 23:12
rendered [1] - 11:9
renders [1] - 12:11
repeat [3] - 24:24, 28:14, 29:25
repeatedly [1] - 9:5
repeating [1] - 23:17

report [2] - 4:6, 21:19
reported [1] - 20:14
REPORTER [1] - 1:25
representations [1] - 27:20
representative [1] - 31:10
representing [1] - 4:1
request [1] - 17:22
require [1] - 8:22
required [2] - 1:23, 16:11
requirement [2] - 9:16
requires [1] - 18:2
research [2] - 21:9, 24:25
respect [3] - 10:16, 10:23, 26:7
respectfully [1] - 6:9
respects [1] - 30:5
response [1] - 9:3
responsibility [1] - 26:22
responsible [2] - 5:12, 5:15
rest [2] - 19:8, 30:25
restrict [1] - 31:21
restricted [1] - 31:16
restricting [1] - 25:9
restriction [7] - 19:11, 23:1, 23:24, 24:7, 24:19, 25:6, 29:7
restrictions [8] - 17:13, 18:2, 19:14, 21:3, 22:23, 24:23, 25:3, 25:17
restrictive [4] - 11:16, 11:19, 12:3, 12:9
retire [1] - 30:19
retired [14] - 11:10, 11:22, 12:14, 12:20, 13:8, 13:10, 13:21, 14:4, 14:12, 14:19, 15:7, 15:15, 16:8, 30:9
retool [1] - 11:6
review [1] - 15:18
reviewing [1] - 17:2
rhetorically [1] - 25:11
rid [1] - 24:6
Rifle [2] - 3:2, 18:24
RIFLE [1] - 1:4
rights [3] - 9:1, 16:16, 23:25
risking [2] - 21:6, 21:12
robustly [1] - 28:16
role [1] - 27:3
round [3] - 22:18, 25:24

rounds [10] - 8:24, 10:14, 10:15, 20:25, 25:9, 25:25, 27:7, 28:13, 28:24
Rule [2] - 33:2, 33:3
rules [1] - 33:2
ruling [2] - 18:2, 33:4
run [1] - 6:13
Rupp [2] - 27:24, 28:2

S

Safety [1] - 25:22
safety [7] - 21:5, 24:3, 24:15, 25:8, 26:5, 26:16, 31:22
sale [1] - 10:16
San [1] - 19:1
satisfied [1] - 32:2
SCHMUTTER [2] - 2:4, 3:5
Schmutter [2] - 3:6, 3:11
score [1] - 13:11
scrutiny [10] - 6:18, 6:24, 7:3, 11:15, 11:18, 15:22, 16:2, 24:4, 24:13, 28:18
Second [20] - 5:9, 5:11, 6:17, 6:25, 8:2, 8:17, 8:19, 15:18, 15:24, 16:1, 16:2, 18:3, 18:8, 18:23, 19:9, 23:20, 23:22, 24:1, 28:19, 31:11
second [2] - 10:10, 24:22
Secondly [1] - 31:8
Section [1] - 1:23
security [1] - 16:9
see [2] - 14:18, 14:21
self [7] - 21:18, 21:19, 21:20, 23:23, 26:10, 27:5, 28:23
self-defender [1] - 26:10
self-defenders [1] - 21:19
self-defense [5] - 21:18, 21:20, 23:23, 27:5, 28:23
sell [2] - 10:12, 11:3
selling [1] - 28:10
sense [1] - 25:14
sensitive [1] - 26:2
sentence [1] - 13:17
separate [4] - 9:7, 17:13, 30:10, 30:12
serious [1] - 18:10

**seriously** [1] - 24:14
**setting** [1] - 19:13
**seven** [2] - 22:18
**seven-round** [2] - 22:18
**Seventh** [4] - 7:17, 18:3, 23:3, 31:11
**several** [1] - 29:17
**sex** [4] - 13:18, 13:19, 15:11, 15:12
**SHERIDAN** [1] - 1:15
**shooter** [1] - 22:15
**shooters** [1] - 20:2
**shooting** [3] - 20:6, 20:7, 20:9
**shootings** [4] - 19:23, 20:4, 25:2, 25:5
**shot** [1] - 22:3
**show** [6] - 13:16, 13:18, 13:20, 17:15, 19:1, 19:18
**showing** [2] - 19:3, 29:10
**shown** [3] - 21:3, 24:7, 25:2
**shows** [1] - 5:20
**Shuman** [3] - 13:13, 13:15, 15:10
**side** [6] - 5:3, 12:2, 19:17, 22:6, 29:8, 32:15
**sidearm** [2] - 22:16, 22:17
**sides** [1] - 32:4
**similar** [5] - 15:3, 15:5, 17:5, 17:6, 18:1
**similarly** [11] - 10:4, 13:10, 13:12, 13:16, 14:24, 15:8, 15:12, 27:23, 30:2, 30:4, 30:15
**simple** [1] - 25:4
**simply** [5] - 16:10, 17:10, 23:3, 23:17, 24:8
**single** [2] - 22:2, 26:8
**sister** [1] - 17:11
**situated** [9] - 13:11, 13:12, 13:16, 14:24, 15:8, 15:12, 30:2, 30:4, 30:15
**situation** [5] - 14:21, 19:18, 26:9, 28:7
**situations** [3] - 18:13, 19:24, 29:17
**six** [1] - 22:15
**six-shooter** [1] - 22:15
**sketching** [1] - 5:6
**slate** [2] - 17:3, 23:6

**smaller** [1] - 29:1
**so-called** [1] - 22:15
**sold** [3] - 6:1, 19:4, 22:14
**solitary** [1] - 20:15
**someone** [3] - 11:5, 14:11, 21:4
**somewhere** [1] - 21:10
**Sort** [1] - 22:5
**sort** [2] - 18:22, 19:17
**source** [1] - 23:4
**specific** [1] - 12:1
**Specifically** [1] - 19:10
**spent** [1] - 14:19
**stand** [1] - 18:9
**standard** [6] - 5:19, 6:1, 24:4, 28:18, 29:8, 29:21
**standards** [1] - 16:11
**standpoint** [1] - 4:23
**start** [3] - 3:4, 5:3, 5:5
**Starting** [1] - 5:9
**State** [14] - 9:2, 12:10, 12:21, 13:7, 13:13, 13:17, 15:1, 15:9, 15:17, 18:24, 24:3, 26:25, 30:11, 30:16
**state** [12] - 4:19, 6:18, 9:22, 9:25, 10:6, 11:19, 15:11, 25:5, 25:6, 25:16, 27:21
**STATE** [2] - 1:11, 2:12
**State's** [3] - 10:10, 13:11, 16:4
**statements** [1] - 32:8
**states** [1] - 25:16
**STATES** [1] - 1:1
**States** [3] - 5:10, 22:14, 26:9
**status** [2] - 13:21, 14:1
**statute** [1] - 13:1
**stayed** [1] - 7:2
**still** [3] - 6:19, 10:6, 10:19
**stop** [1] - 26:15
**STREET** [1] - 1:1
**strike** [4] - 12:16, 12:20, 12:22, 13:4
**studies** [1] - 25:2
**study** [2] - 25:4, 26:3
**stun** [1] - 5:22
**subject** [2] - 20:15, 27:17
**subset** [1] - 27:15
**substantial** [4] - 4:18, 14:20, 24:2, 24:15, 25:7, 29:10

**substantially** [3] - 17:5, 17:6, 17:25
**succeed** [2] - 5:7, 16:15
**success** [3] - 5:7, 17:16, 29:11
**sufficient** [3] - 21:25, 26:15, 27:12
**suggests** [1] - 18:2
**Sunnyvale's** [1] - 29:3
**support** [1] - 24:8
**Supreme** [7] - 5:10, 9:5, 11:17, 12:17, 15:19, 19:9, 23:9

---

**T**

**table** [1] - 11:3
**takings** [5] - 8:21, 9:4, 10:1, 10:21, 27:24, 28:15
**tape** [1] - 32:25
**television** [1] - 32:24
**tens** [1] - 8:3
**tension** [2] - 8:14, 27:2
**terminology** [1] - 20:8
**terms** [3] - 16:13, 22:23, 27:25
**test** [9] - 5:14, 5:15, 6:18, 7:18, 7:19, 8:5, 8:16, 18:7, 18:12
**testify** [1] - 32:6
**testimony** [1] - 18:16
**themselves** [5] - 21:22, 26:11, 27:12, 30:20, 31:5
**thereafter** [1] - 4:14
**therefore** [3] - 9:14, 18:14, 23:1
**they've** [2] - 6:13, 29:23
**third** [3] - 10:19, 10:21, 21:10
**Third** [2] - 6:24, 24:17
**third-party** [2] - 10:19, 10:21
**Thomas** [1] - 4:2
**THOMPSON** [3] - 2:7, 3:10, 32:17
**Thompson** [2] - 3:8, 3:12
**three** [8] - 6:7, 17:18, 18:21, 21:20, 22:21, 24:5, 30:22
**thrown** [1] - 29:17
**Thursday** [2] - 33:16, 33:17
**Title** [1] - 1:23

**today** [6] - 4:10, 17:2, 17:9, 32:16, 32:22, 33:20
**together** [1] - 29:5
**touch** [1] - 29:15
**tough** [1] - 24:12
**Town** [1] - 25:22
**Township** [1] - 3:23
**tragic** [1] - 24:25
**train** [1] - 16:9
**training** [15] - 11:24, 11:25, 12:4, 13:24, 14:2, 14:8, 14:10, 14:16, 15:14, 16:4, 16:5, 16:7, 29:19, 30:8
**transfer** [1] - 10:20
**transferring** [1] - 28:10
**treat** [1] - 11:13
**treated** [1] - 13:3
**Trenton** [1] - 20:9
**TRENTON** [1] - 1:12
**tried** [1] - 9:22
**true** [2] - 1:23, 9:4
**truth** [1] - 20:20
**try** [2] - 11:20, 21:5
**turkeys** [2] - 10:5, 10:6
**turn** [4] - 10:1, 10:11, 11:1, 11:2
**turned** [1] - 8:15
**twice** [2] - 30:7, 30:17
**twice-a-year** [2] - 30:7, 30:17
**two** [6] - 9:2, 10:12, 13:7, 16:18, 17:3, 24:18
**type** [2] - 21:1, 27:22
**types** [1] - 31:14
**typical** [1] - 22:16

---

**U**

**U.S** [3] - 1:15, 1:25, 22:17
**U.S.C** [1] - 1:23
**unconstitutional** [4] - 6:6, 11:10, 12:12, 16:19
**under** [6] - 6:4, 8:6, 11:17, 15:25, 24:1, 28:5
**underlying** [2] - 17:20, 32:7
**UNITED** [1] - 1:1
**United** [3] - 5:10, 22:14, 26:9
**unless** [1] - 16:20

**unusual** [6] - 19:11, 19:16, 21:15, 21:17, 22:7, 22:20
**up** [6] - 7:18, 12:18, 12:23, 16:5, 21:10, 27:7
**upheld** [2] - 29:4, 29:7
**upholding** [2] - 17:12, 22:23
**usage** [1] - 26:3
**useful** [2] - 8:4, 8:6
**utility** [1] - 8:11
**utilized** [4] - 22:13, 22:21, 22:22, 24:5
**utilizes** [1] - 27:1
**utilizing** [2] - 21:21, 27:4

---

**V**

**VALERIA** [1] - 2:11
**Valeria** [1] - 3:17
**validity** [2] - 23:5, 23:16
**valuable** [1] - 28:6
**various** [1] - 28:1
**version** [1] - 22:10
**versus** [3] - 3:2, 12:22, 26:4
**Veterans** [1] - 19:2
**veterans** [2] - 11:12, 16:8
**vice** [1] - 3:7
**victim** [1] - 25:23
**victims** [2] - 20:1, 21:5
**view** [2] - 4:8, 27:19
**violate** [1] - 15:18
**violation** [3] - 13:5, 16:16, 27:23
**violence** [4] - 20:1, 25:4, 25:23, 26:2
**voice** [1] - 17:12
**Vs** [1] - 1:6

---

**W**

**ward** [1] - 21:24
**warfare** [2] - 8:4, 8:6
**WARNER** [1] - 3:14
**ways** [1] - 25:3
**weapons** [6] - 19:11, 19:12, 22:20, 26:24, 27:6, 27:8
**week** [1] - 4:13
**weighty** [1] - 17:2
**widely** [1] - 18:19
**Wiese** [1] - 27:22
**Wilkinson** [1] - 31:13

**WILLIVER** [1] - 2:17
**Williver** [1] - 4:2
**wine** [1] - 11:4
**WINNICKI** [1] - 2:4
**Winnicki** [1] - 3:6
**wish** [4] - 4:6, 32:16, 32:22
**wished** [1] - 32:24
**wishes** [3] - 33:4, 33:7
**witnesses** [1] - 4:9
**word** [2] - 7:5, 29:16
**words** [1] - 17:15
**write** [1] - 33:5

## Y

**Yancey** [1] - 10:4
**year** [2] - 30:7, 30:17
**years** [2] - 20:15, 20:16
**York** [2] - 18:24, 24:3
**young** [1] - 25:23