# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY
# TRENTON VICINAGE

|  |  |
|---|---|
| ASSOCIATION OF NEW JERSEY RIFLE & PISTOL CLUBS, INC., BLAKE ELLMAN, and ALEXANDER DEMBOWSKI,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>GURBIR GREWAL, in his official capacity as Attorney General of New Jersey, PATRICK J. CALLAHAN, in his official capacity as Superintendent of the New Jersey Division of State Police, THOMAS WILLIVER, in his official capacity as Chief of Police of the Chester Police Department, and JAMES B. O'CONNOR, in his official capacity as Chief of Police of the Lyndhurst Police Department,<br><br>　　　　Defendants. | Hon. Peter G. Sheridan, U.S.D.J.<br>Hon. Lois H. Goodman, U.S.M.J.<br><br><br>Docket No. 3:18-cv-10507-PGS-LHG<br><br><br>**<u>CIVIL ACTION</u>**<br><br>**(ELECTRONICALLY FILED)**<br><br>Motion Return Date: April 15, 2019 |

**REPLY BRIEF IN SUPPORT OF STATE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56(a) AND IN OPPOSITION TO PLAINTIFFS' CROSS-MOTIONS FOR A STAY AND FOR SUMMARY JUDGMENT**

Joseph Fanaroff    GURBIR S. GREWAL
Jeremy Feigenbaum   ATTORNEY GENERAL OF NEW JERSEY
Stuart M. Feinblatt    124 Halsey Street
Assistant Attorneys General  P.O. Box 45029
  Of Counsel and on the Brief Newark, New Jersey 07101
           Attorney for Defendants, Gurbir S. Grewal and
           Patrick J. Callahan
Evan A. Showell     973-648-7811
Bryan Edward Lucas   Bryan.Lucas@law.njoag.gov
Deputy Attorneys General
    On the Brief

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...................................................................... ii

PRELIMINARY STATEMENT ................................................................1

ARGUMENT ..........................................................................................3

    PLAINTIFFS' REQUEST FOR A STAY SHOULD BE DENIED. ..............3

CONCLUSION ......................................................................................13

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**                                                                                                      **<u>Page</u>**

*Akishev v. Kasputin*, 23 F. Supp. 3d 440 (D.N.J. 2014) ............................................4

*Bechtel Corp. v. Local 215, Laborers' Int'l Union of N. Am.*,
    544 F.2d 1207 (3d Cir. 1976) ...............................................................11

*Clinton v. Jones*, 520 U.S. 681 (1997)........................................................................4

*CTF Hotel Holdings, Inc. v. Marriott Int'l, Inc.*,
    381 F.3d 131 (3d Cir. 2004) .................................................................4

*Dist. of Colum. v. Heller*, 554 U.S. 570 (2008) .........................................................7

*Drake v. Filko*, 724 F.3d 426 (3d Cir. 2013) .............................................................8

*Duncan v. Becerra*, No. 17-cv-1017 (C.D. Cal.) .....................................................10

*In Re Michaels Stores, Inc.*,
    2016 WL 947150 (D.N.J. Mar. 14, 2016) ...........................................11

*International Refugee Assistance Project v. Trump*,
    323 F. Supp. 3d 726 (D. Md. 2018)................................................ 10, 11

*Maryland v. King*, 567 U.S. 1301 (2012) ...................................................9

*N.J. Rifle & Pistol Club v. Grewal*,
    910 F.3d 106 (3d Cir. 2018) ......................................................... 5, 7, 8

*N.J. Rifle & Pistol Club v. Grewal,* No. 3:18-cv-10507,
    2018 WL 4688345 (D.N.J. Sept. 28, 2018).......................................5, 7

*New York State Rifle & Pistol Association, Inc. v. City of New York*,
    No. 18-280 ................................................................................. passim

*Nken v. Holder*, 556 U.S. 418 (2009) .......................................................4

*Takacs v. Middlesex Cty.*,
   2011 WL 1375682 (D.N.J. Apr. 12, 2011) ........................................................... 11

*Worman v. Healey*, No. 18-1545 (1st Cir.) ................................................................ 10

*Young v. Hawaii*, No. \_\_-\_\_\_ (9th Cir.) .................................................................... 11

## **Statutes**

N.J. Stat. Ann. § 2C:39-3(j) ...................................................................................... 5

N.J. Stat. Ann. § 2C:39-6(f) ...................................................................................... 5

N.J. Stat. Ann. § 2C:58-3 ........................................................................................... 5

## PRELIMINARY STATEMENT

This Court should grant summary judgment because the Third Circuit has now reviewed—and rejected—all of Plaintiffs' challenges to New Jersey's large capacity magazine law, A2761. Plaintiffs do not (and cannot) dispute that the Third Circuit's decision is now binding on this Court. Instead, they seek an undefined stay of this case based on mere speculation—the possibility that, in a year or more, in a lawsuit addressing an entirely different question and having nothing to do with LCM laws, the Supreme Court will hand down an opinion essentially rewriting the entire, well-established body of Second Amendment jurisprudence. That is far too thin a reed on which to rest a stay application, especially one that plunges into doubt (for roughly a year) a state law designed to protect public safety and law enforcement safety.

At bottom, *New York State Rifle & Pistol Association, Inc. v. City of New York* (*NYSRPA*), No. 18-280, has nothing in common with this case. Plaintiffs assert that the *NYSRPA* petition involves a "challeng[e] to the constitutionality of a New York City firearm regulation under the Second Amendment," but they never mention the actual—and far more specific—question presented: "Whether New York City's ban on transporting a licensed, locked and unloaded handgun to a home or shooting range outside city limits is consistent with the Second Amendment, the commerce clause and the constitutional right to travel." Petn. for

Cert. i. The contrast with this case is obvious. This case is not about the validity of regulations governing licensed, locked, and unloaded handguns; it has nothing to do with handguns at all. This lawsuit bears only on the validity of LCM laws, given the strong public safety interests supporting them. Plaintiffs' logic is not that the laws are the same; they think the mere fact that both include Second Amendment claims suffices to stay this already-complete suit. But the Court also has cases that involve, for example, the Fourth Amendment, the Eighth Amendment, Securities and Exchange Commission rules, and antitrust law. Lower courts are not disempowered from adjudicating all these issues solely because the Court could, in theory, provide unspecified "further instruction" on any of these provisions. No wonder, then, that other courts adjudicating the constitutionality of a state LCM law have not stayed their proceedings in light of *NYSRPA*.

Given the sweeping nature of Plaintiffs' request, it is unsurprising that they cannot meet their burden of establishing the stay criteria are met here. As explained above, Plaintiffs' do not need a stay because they cannot show the eventual decision in *NYSRPA* will require a different result. Further, as this Court held in its underlying opinion, Plaintiffs' Second Amendment rights will be unaffected even absent a stay, as they can still purchase as many firearms, magazines, and bullets as they wish. On the other hand, the State would suffer harm from a stay, which deprives the State of a final judgment upholding its law to

which it is entitled. Any individual arrested for LCM sale, trafficking, or possession could point to this stay and argue that they, too, cannot face sanctions while *NYSRPA* remains pending—undermining enforcement of this valid law. Plaintiffs should not get via a stay what they could not get on the merits.[1] Finally, there is no reason to worry about the burden of future proceedings because the Third Circuit's decision has resolved this case. There is just one step left after rejecting the stay: grant summary judgment to the State.

## ARGUMENT

### PLAINTIFFS' REQUEST FOR A STAY SHOULD BE DENIED.

In deciding whether to grant a stay of litigation, "courts generally weigh a number of factors . . . including: (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether denial of the stay would create a clear case of hardship or inequity for the moving party; (3) whether a stay would simplify the issues and the trial of the case; and (4) whether discovery is complete and/or trial date has been set." *Akishev v. Kasputin*, 23 F.

---

[1] Courts have considered and rejected Plaintiffs' request to prevent implementation of this law five times. This Court rejected denied a request for a stay and preliminary injunction when it upheld A2761's constitutionality. This Court denied Plaintiffs' request for a stay pending appeal. The Third Circuit then issued in its precedential ruling, affirming denial of a preliminary injunction on the merits. Finally, the Third Circuit denied *en banc* rehearing of that decision. Plaintiffs' sixth bite at the apple, seeking again to cast doubt on the legitimacy of A2761, merits the same treatment.

Supp. 3d 440, 446 (D.N.J. 2014) (internal quotations and citations omitted). The party seeking a stay "bears the burden of showing that the circumstances justify an exercise of [the court's] discretion," *Nken v. Holder*, 556 U.S. 418, 433-34 (2009) (citing *Clinton v. Jones*, 520 U.S. 681, 708 (1997)), and "must state a clear countervailing interest to abridge a party's right to litigate," *CTF Hotel Holdings, Inc. v. Marriott Int'l, Inc.*, 381 F.3d 131, 141 (3d Cir. 2004). Plaintiffs cannot meet that heavy burden.

Begin with Plaintiffs' claim that they will suffer hardship or inequity absent a stay. Plaintiffs' entire theory rests on the view that this LCM law "cannot be resolved before the Supreme Court issues its decision in *NYSRPA*," Br. 5, because (they say) the decision "will likely abrogate the Third Circuit's analysis and force this Court to re-adjudicate the parties' summary judgment motions in the future," Br. 12. That is baseless. The question that *NYSRPA* presents is as discrete as it is narrow: "Whether New York City's ban on transporting a licensed, locked and unloaded handgun to a home or shooting range outside city limits is consistent with the Second Amendment, the commerce clause and the constitutional right to travel." Petn. for Cert. i. It is not just the question that differs; the underlying laws have nothing in common. The law at issue here limits the lawful capacity of a single magazine, which interrupts would-be mass shooters by forcing them to pause during their attacks, but does not stop law-abiding citizens from buying as

4

many firearms, magazines, and/or bullets as they choose. *See N.J. Rifle & Pistol Club v. Grewal,* No. 3:18-cv-10507, 2018 WL 4688345, *13 (D.N.J. Sept. 28, 2018) ("*NJRPC I*"); *aff'd*, 910 F.3d 106, 118 (3d Cir. 2018) ("*NJRPC II*"). As the *NYSRPA* petitioners describe the New York City ordinance, by contrast, it "prohibits its residents from removing their lawfully purchased and duly registered handguns from the city limits, even to transport them (unloaded, and locked up) to second homes at which they are constitutionally entitled to possess them, or to out-of-city shooting ranges or competitions at which they are constitutionally entitled to hone their safe and effective use." Petn. 10.[2] The petition in fact argues that the New York City law is a "novel," "one-of-a-kind prohibition," *id.* at 1, and an "extreme outlier three times over" among firearm safety laws, *id.* at 3—quite unlike common and well-established state LCM laws.

In fact, the *NYSRPA* petitioners are asking the Court to rule in ways that come nowhere near abrogating the Third Circuit's decision here. Even assuming

---

[2] To be more precise, the petitioners challenge the ordinance's requirement that gun owners obtain a separate "premises permit" for possessing a handgun in a non-New York City residence in New York. They also argue the ordinance restricts owners' right to "engage in training and target shooting" because it limits transportation of firearms to ranges within New York City. That is nothing like New Jersey law, which (1) issues gun purchase permits for firearms statewide, rather than limiting a permit to a specific municipality, and (2) grants exemptions to gun owners transporting their firearms to shooting ranges within the state. *See generally* N.J. Stat. Ann. §§ 2C:39-3(j), 2C:39-6(f) (shooting ranges); N.J. Stat. Ann. § 2C:58-3 (process for purchasing a gun). *NYSRPA* thus involves an ordinance with no New Jersey analogues.

the Court will invalidate that law (an assumption that is premature), it could do so on the two other grounds those petitioners raised—namely, the commerce clause or the right to travel, rights that are not implicated by this LCM law. And even if the Court reaches the Second Amendment, the *NYSRPA* petitioners argue the city ordinance "cannot plausibly withstand *any* level of constitutional scrutiny," so the Court has no need to say much of anything regarding the proper application of intermediate scrutiny. *Id.* at 10 (emphasis added); *see also id.* at 12 (explaining that *NYSRPA* is "an easy case, no matter what mode of constitutional analysis one applies to Second Amendment rights"); *id.* at 13 ("The City's transport ban just as plainly cannot withstand strict, intermediate—or even rational basis—scrutiny.").

But even *if* the Court rules for petitioners on Second Amendment grounds and even *if* the Court delves into heightened scrutiny, there is no reason to think that the Court's opinion will abrogate the Third Circuit's ruling here. After all, the *NYSRPA* petitioners argue the New York City ordinance falls if the Court begins its analysis "as most lower courts presently do"—*i.e.,* with the severity of the burden imposed on Second Amendment rights." *Id.* at 12. That is so, the petitioners contend, because a restriction on transporting handguns between homes constitutes a severe burden. *Id.* But if the Court follows that approach, then nothing in its opinion will undercut the decisions here; both this Court and the Third Circuit employed that same analysis and simply held LCM laws do not severely burden

the right. Additionally, assuming the truth of the *NYSRPA* petition, then the evidence supporting the need for the New York City ordinance and the New Jersey law could not differ more. *Compare* Petn. 2 (stating "the City has presented precisely zero empirical evidence that transporting an *unloaded* handgun *locked up* in a container *separate from* its ammunition … poses any material safety risk"), *with NJRPC II*, 910 F.3d at 119-22 (detailing the expert evidence on the significant safety risks LCMs present). Finally, a holding in *NYSRPA* may be limited to handguns, as the *Heller* decision was. *Compare Dist. of Colum. v. Heller*, 554 U.S. 570, 629 (2008) (noting that "the American people have considered the handgun to be the quintessential self-defense weapon," and "[t]here are many reasons that a citizen may prefer a handgun"), *with NJRPC II*, 910 F.3d at 118 (adding that "unlike the handgun ban in *Heller*, a prohibition on '[LCMs] does not … substantially affect their ability to defend themselves'"). There is no reason to conclude *NYSRPA* will abrogate the Third Circuit's opinion, and no reason to stay this case for a year on the basis of Plaintiffs' sheer speculation.

That alone proves that Plaintiffs cannot establish the requisite "clear case of hardship or inequity" absent a stay. But there is more. For one, this Court already noted that Plaintiffs would not suffer much, if any, harm from a judgment upholding A2761. *See NJRPC I*, 2018 WL 4688345, *16 n.10 ("[I]t is noteworthy that … gun owners still possess the right to own a weapon without any numerical

limit on the quantity of bullets and magazines one can own. There is no evidence this regulation on the capacity of the magazine places any burden on Plaintiffs' Second Amendment right."). Because A2761 does not impinge on the "core" of the right, *see NJRPC II*, 910 F.3d at 122, Plaintiffs can still exercise all their constitutionally-protected rights even if this Court denies the stay. For another, Plaintiffs admit they have had to come into compliance with A2761, Br. 5, so a judgment upholding that law will not harm them on a day-to-day basis. There is ultimately no reason to stay this case.

By contrast, the harm to the State (unfortunately) does not rest on speculation. The State, of course, has an interest in seeing its LCM law go into effect, free from residual litigation doubt. *See, e.g., Drake v. Filko*, 724 F.3d 426, 437 (3d Cir. 2013) ("New Jersey, has, undoubtedly, a significant, substantial and important interest in protecting its citizens' safety."). While Plaintiffs accept that A2761 would be good law even if this Court stays this pending case, Plaintiffs' assertion ignores the serious doubts that would plague A2761's implementation and enforcement. If this Court denies a stay, there is no question that New Jersey could enforce its LCM law against anyone who seeks to sell, traffic, possess, or use such deadly weapons in the state. If, on the other hand, this Court stays this litigation and refuses to grant summary judgment, then any individual arrested for LCM trafficking could point to this ruling and argue they cannot face prosecution

while *NYSRPA* remains pending. That could functionally enjoin implementation of this law for a year or more—an untenable result. *Maryland v. King*, 567 U.S. 1301 (2012) ("Any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury."). Troublingly, this might even have a chilling effect on prosecutors considering bringing such charges, especially if there are other charges available, for fear that the case will drag on for such a long time. Plaintiffs had every right to challenge the law on the merits, but this Court and the Third Circuit upheld it. The State must now be free to enforce its law.

Last, Plaintiffs cannot justify a stay based on the remaining criteria—namely, whether a stay would simplify the issues and whether discovery is complete and/or a trial date has been set. Contrary to Plaintiffs' claim that the parties are at a "natural place to pause this litigation," Br. 10, the case is at an end. The Third Circuit reached the merits of Plaintiffs' complaint and rejected their arguments wholesale. There is thus no more need for discovery, no basis for additional fact-finding, and no reason for a trial. This Court and the Third Circuit have "resolved the issues" involved and their decisions are "law of the case." *See*

*generally* Def. Br. at 9-15. Rather than stay the decision, this Court should grant summary judgment.[3]

In light of these criteria, then, it is no surprise that other courts facing similar challenges to LCM laws have not stayed their decisions.   To Defendants' knowledge, at the time the Court granted certiorari in *NYSRPA*, there were two similar pending cases addressing LCM laws—the First Circuit and the Central District of California (Plaintiffs have not cited others). *Worman v. Healey*, No. 18-1545 (1st Cir.); *Duncan v. Becerra*, No. 17-cv-1017 (C.D. Cal.). In *Worman*, the First Circuit heard argument on January 9, 2019, and has not subsequently stayed its decision. And in *Duncan*—as Plaintiffs admit in their notice of supplemental authority—the district court ruled on a motion for a permanent injunction (and even enjoined the law) after the Court granted certiorari in *NYSRPA*. *See* Dkt. 96, Ex. 1. There is no basis for this Court to act differently. If anything, the arguments for a stay here are *weaker* than in *Worman* and *Duncan*, because these merits proceedings are all but complete.

Plaintiffs' cases are inapposite. In *International Refugee Assistance Project v. Trump*, 323 F. Supp. 3d 726 (D. Md. 2018), for example, a district court stayed the lawsuit because the case raised the same constitutional challenges to the exact

---

[3] As Plaintiffs' admit, their cross-motion for summary judgment must be denied. As noted, their claims have all been rejected by the Third Circuit. Parties are not entitled to summary judgment based on future Supreme Court decisions that they hope will abrogate the relevant binding precedents.

same Presidential Proclamation (which barred "entry of nationals from certain designated countries into the United States") as a pending Supreme Court case. *Id.* at 729. (And there, unlike here, lower courts repeatedly had been staying challenges to the same Proclamation. *Id.*) The same is true of other cases relied on by Plaintiffs. *See e.g.*, *In Re Michaels Stores, Inc.*, 2016 WL 947150, *13 (D.N.J. Mar. 14, 2016) (issuing a stay where the lower court case and the Supreme Court case both turned on the same Article III standing issue under the Fair Credit Reporting Act, and where a Supreme Court decision was just months away); *Takacs v. Middlesex Cty.*, 2011 WL 1375682, *7-8 (D.N.J. Apr. 12, 2011) (issuing stay for a challenge to the constitutionality of jailhouse strip searches for non-indictable offenses where the Supreme Court granted certiorari to consider that precise issue); *Bechtel Corp. v. Local 215, Laborers' Int'l Union of N. Am.*, 544 F.2d 1207, 1215 (3d Cir. 1976) (affirming a stay of proceedings in light of ongoing arbitration, where a ruling in arbitration in favor of the plaintiff would moot out the judicial proceedings). And the only Second Amendment case on which Plaintiffs rely—the Ninth Circuit's decision to stay a case about the *public carrying of firearms* in light of *NYSRPA*, *Young v. Hawaii*, No. __-___ (9th Cir.)—just underscores the differences between this case and *NYSRPA*. At the end of the day, had the Court granted certiorari in a case involving the constitutionality of LCM laws, a stay would be appropriate. But the mere fact that the Court granted

certiorari to answer a question about the Second Amendment's application to a dissimilar law falls short. The Supreme Court will also be hearing cases involving important issues under the Fourth Amendment, the Eighth Amendment, SEC rules, and antitrust law this Term, but no one would seriously argue that lower courts must stay all ongoing proceedings involving those provisions due to possible "further instruction."

Ultimately, Plaintiffs will not be harmed absent a stay—and their predictions about *NYSRPA* reflect unwarranted speculation. The State, on the other hand, will be harmed by a stay, which would make it harder to enforce the LCM law for at least one year. After months of litigation in multiple courts, this case is at an end.

## <u>CONCLUSION</u>

For these reasons, this Court should grant Defendants' motion for summary judgment and deny Plaintiffs' motions for a stay and for summary judgment.

Respectfully Submitted,

GURBIR S. GREWAL
ATTORNEY GENERAL OF NEW JERSEY

By:  /s/ Bryan Edward Lucas

Joseph Fanaroff
Jeremy Feigenbaum
Stuart M. Feinblatt
Assistant Attorneys General

Evan A. Showell
Bryan Edward Lucas
Deputy Attorneys General

DATE: April 8, 2019