UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

No. <u>19-3142</u>

ASSOCIATION OF NEW JERSEY RIFLE AND PISTOL CLUBS INC;
BLAKE ELLMAN; ALEXANDER DEMBOWSKI, Appellants

v.

ATTORNEY GENERAL NEW JERSEY;
SUPERINTENDENT NEW JERSEY STATE POLICE;
THOMAS WILLIVER, in his official capacity as
Chief of Police of the Chester Police Department;
JAMES B. O'CONNOR, in his official capacity as
Chief of Police of the Lyndhurst Police Department

(D.N.J. No. 3-18-cv-10507)

Present: JORDAN, MATEY and ROTH, <u>Circuit Judges</u>

_____ORDER_____

This matter having been remanded for further consideration in light of the Supreme Court's decision in *New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022), and upon consideration of the parties' positions on whether it should in turn be remanded to the District Court for decision in the first instance under the standard announced in *Bruen*, it is hereby ORDERED that the matter is so remanded. Judge Matey dissents from this order, as described in the attached opinion.[1]

---

[1] We recognize that there are good arguments to be made for resolving this case now, on the record before us, and our dissenting colleague has ably articulated them. Even so, we are mindful that "we are a court of review, not of first view[.]" *Cutter v. Wilkinson*, 544 U.S. 709, 718 n.7 (2005). The Dissent rightly notes that, even prior to the Supreme Court's latest Second Amendment decision, we have regularly "trace[d] the [Second

By the Court,

s/ Kent A. Jordan
Circuit Judge

Dated:  25 August 2022
AWI/CC: All Counsel

A True Copy:

Patricia S. Dodszuweit, Clerk
Certified Order Issued in Lieu of Mandate

---

Amendment's] reach by studying the historical record[,]" *Drummond v. Robinson Twp.*, 9 F.4th 217, 225-26 (3d Cir. 2021) (citing *District of Columbia v. Heller*, 554 U.S. 570, 603 (2008)) – the same approach recently endorsed and "made … more explicit" by the Court, *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2134 (2022).  But the Court's decision in *Bruen* also provided lower courts with new and significant guidance on the scope of the Second Amendment and the particular historical inquiry that courts must undertake when deciding Second Amendment claims.  *Id.* at 2126-27, 2131-38.  In light of that guidance, the State has requested a remand for further record development, targeted at the legal and historical analysis required under *Bruen*.  Given the additional guidance provided in *Bruen* – and given that our last decision in this case turned on law-of-the-case considerations that are no longer in play – it is appropriate to afford the State that opportunity, consistent with our prior practice.  *See In re Blood Reagents Antitrust Litig.*, 783 F.3d 183, 186 (3d Cir. 2015) (vacating and remanding "[b]ecause the District Court did not have the opportunity to consider [the Supreme Court's] later-issued guidance in the first instance"); *Higgins v. Burroughs*, 834 F.2d 76, 77-78 (3d Cir. 1987) (remanding "because the parties may require additional evidence in connection with the standard now announced by the Supreme Court").

MATEY, *Circuit Judge*, dissenting.

Two years ago, I stated that "determining whether magazines enjoy the guarantees of the Second Amendment, and whether that protection varies based on their capacity," are issues that "affect the rights of individuals throughout our Circuit." *Ass'n of N.J. Rifle & Pistol Clubs Inc. v. Att'y Gen.*, 974 F.3d 237, 263 (3d Cir. 2020) (Matey, J., dissenting), *abrogated by N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022) ("*N.J. Rifle II*"). Likewise, I noted that "resolving those questions [would] allow state governments to design public safety solutions that respect the freedoms guarded by the Second Amendment." *Id.* Drawing on the rich historical evidence readily available, I then explained that the constitutional character of a magazine cannot "rise[] and fall[] on a single extra round of ammunition." *Id.* at 250. Nor could "I imagine [that] the Second Amendment allows any government to diminish an individual's rights through nomenclature." *Id.* Failing to answer those questions, I feared, saddled "District Court judges with the difficult task of determining whether a magazine is small enough to satisfy the Second Amendment or large enough to slip outside its guarantee." *Id.*

Today, nothing has changed. Not the law, which remains focused on the history of firearms regulations, as explained by the Supreme Court fourteen years ago. Not the facts about restrictions on repeating firearms, already exhaustively surveyed by the courts, and ably briefed by the parties. Not New Jersey's prohibition on magazines holding more than ten rounds of ammunition which may, or may not, be a "large capacity" in the State's eyes. And certainly not the Second Amendment, which "codified a pre-existing right" of the people "to keep and bear arms." *District of Columbia v. Heller*, 554 U.S.

570, 592 (2008) (emphasis omitted). Respectfully, we should not wait for more of the same to lurch through litigation before turning to the task at hand. A task that remains as it always was: applying "a test rooted in the Second Amendment's text, as informed by history." *Bruen*, 142 S. Ct. at 2127.

**I.**

Refreshing our recollection illustrates the problem with remand. In 2008, the Supreme Court held that the "18th-century meaning" of "arms" is "no different from the meaning today," and the Second Amendment was not limited to "only those arms in existence in the 18th century." *Heller*, 554 U.S. at 581–82. Instead, *Heller* directed courts to apply a "methodology centered on constitutional text and history" to determine whether the challenged regulation touched upon protected conduct. *Bruen*, 142 S. Ct. at 2128–29; *see also Heller*, 554 U.S. at 592 (explaining that we look to "the historical background of the Second Amendment" because it "codified a pre-existing right" (emphasis omitted)). *Heller* directed us to look backwards—not to new and novel claims of necessity by the government.

Even a glance is sufficient here.[2] Repeating firearms grew in use throughout the 18th century, when early technical advances paved the way to Samuel Colt's famous rotating cylinder revolver. *See N.J. Rifle II*, 974 F.3d at 255 (Matey, J., dissenting). By 1866, rifles holding more than ten rounds of ammunition were widely available, with handguns holding more than ten rounds appearing in stores by 1935. *Id.* at 256. Both

---

[2] I summarize, rather than repeat, my earlier historical analysis.

quickly proved popular, and Americans came to hold tens of millions of magazines holding over ten rounds. *Id.*

Despite this popularity, regulations on magazine capacity arrived slowly. *Id.* at 257–58. A few accompanied the Prohibition Era, all except one later repealed. *Id.* Slower still, New Jersey did not limit magazine capacity to fifteen rounds until 1990. *Id.* at 258. Or reduce that number to ten until 2018. *Ass'n of N.J. Rifle & Pistol Clubs Inc. v. Att'y Gen.*, 910 F.3d 106, 110 (3d Cir. 2018), *abrogated by Bruen*, 142 S. Ct. 2111 ("*N.J. Rifle I*"). All showing, as we summarized the record of the District Court's three-day hearing, "that millions of magazines are owned, often come factory standard[,] . . . are typically possessed by law-abiding citizens[,] . . . and there is no longstanding history" of magazine regulation. *Id.* at 116–17 (citations omitted). And all revealing "a long gap between the development and commercial distribution of magazines, on the one hand, and limiting regulations, on the other." *N.J. Rifle II*, 974 F.3d at 258 (Matey, J., dissenting). Facts found and the law settled, deciding this case is appropriate.

## II.

Slow down, cries the State. *Bruen*, it argues, changed everything by announcing a "new legal test." N.J. Letter Br. 3. Deciding the case now would be unfair because "the State has not yet been given the opportunity to provide the historical evidence of weapons that were regulated at the Founding." N.J. Reply Letter Br. 5 (emphasis omitted). Neither point proves persuasive.

For one thing, *Bruen* confirmed, rather than created, the historical inquiry informing the Second Amendment's guarantee. 142 S. Ct. at 2131 ("The test that we set

forth in *Heller* and apply today requires courts to assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding."). A point we have repeatedly recognized in Second Amendment challenges. *See United States v. Marzzarella*, 614 F.3d 85, 91 (3d Cir. 2010) (describing "the historical approach [that] *Heller* used to define the scope of the right"); *see also Drummond v. Robinson Twp.*, 9 F.4th 217, 225 (3d Cir. 2021) (noting that *Heller* directed us to "look[] to historical evidence and long-settled traditions" (cleaned up)); *Beers v. Att'y Gen.*, 927 F.3d 150, 155 (3d Cir. 2019), *vacated as moot*, 140 S. Ct. 2758 (2020) (explaining "the historical approach the Court applied in *Heller*"); *United States v. One (1) Palmetto State Armory PA-15 Machinegun Receiver/Frame, Unknown Caliber Serial No. LW001804*, 822 F.3d 136, 141 (3d Cir. 2016) (commenting that *Heller* "[g]round[ed] its inquiry in historical analysis"); *Drake v. Filko*, 724 F.3d 426, 431 (3d Cir. 2013) (citing *Heller* and noting its "extensive consideration of the history and tradition of the Second Amendment"). That is also the test we applied here, citing "17th century commentary on gun use in America that the possession of arms also implied the possession of ammunition." *N.J. Rifle I*, 910 F.3d at 116 (discussing *United States v. Miller*, 307 U.S. 174, 180 (1939)).

      The State's follow-on—that it missed the chance to provide historical evidence—fares no better. Round after round, in both the District Court and this Court, history took center stage. The State joined that discussion, arguing unsuccessfully that laws regulating ammunition capacity were longstanding. It strains credibility for New Jersey to now suggest it simply overlooked the focus on history and practice outlined in *Heller*,

repeatedly applied by this Court, and vigorously advocated in this case. That the State *decided* not to press those points harder, whether as clever strategy or careless slip, is not relevant. We have been far less forgiving of that sort of waiver by far less sophisticated litigants.

With no new law to apply, and the historical record firm, there would seem no work remaining on remand.³ But what is the harm, some might ask? Why the rush? A question rarely raised when other fundamental rights are at issue and answered, again, by the Supreme Court: bearing arms "is not a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees." *Bruen*, 142 S. Ct. at 2156 (cleaned up). As always, "[t]he basic guarantees of our Constitution are warrants for the here and now and, unless there is an overwhelmingly compelling reason, they are to be promptly fulfilled." *Watson v. City of Memphis*, 373 U.S. 526, 533 (1963). And "[a]t its core, the Second Amendment recognizes the widely accepted principle at the Founding that the right to self-defense derived directly from the natural right to life, giving the people predictable protections for securing the 'Blessings of Liberty.'" *N.J. Rifle II*, 974 F.3d at 262 (Matey, J., dissenting) (quoting U.S. Const. pmbl.). That balance tips easily toward decision, not further delay.

---

³ Indeed, we have explained that "[w]e may decide a question not addressed by the District Court when the record has been sufficiently developed for us to resolve the legal issue." *Chehazeh v. Att'y Gen.*, 666 F.3d 118, 140 (3d Cir. 2012) (cleaned up); *see also Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 213 n.17 (3d Cir. 2019) (same). Similarly, we have found that "remand is not required" where "it would not affect the outcome of the case." *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005). Standards seemingly satisfied here.

**III.**

Finally, I note a bunker to avoid in future proceedings: the protean "large capacity magazine."[4] Throughout this case, exactly what is being regulated has not been clear. In 1990, New Jersey first prohibited a "large capacity ammunition magazine," defined as "a box, drum, tube or other container which is capable of holding more than [fifteen] rounds of ammunition to be fed continuously and directly therefrom into a semi-automatic firearm." *N.J. Rifle I*, 910 F.3d at 110 n.2. In 2018, the State amended that definition by reducing the maximum capacity to ten rounds. *Id.* The 2018 law is what Plaintiffs challenge. Any discussion of "large capacity magazines," therefore, should refer only to the 2018 law.

That has not happened. The State and this Court have twice altered the definition. First, what began as an inquiry into whether "magazines" are constitutionally protected became a discussion over whether a specific kind of magazine fell outside the Second Amendment's guarantee. *See N.J. Rifle II*, 974 F.3d at 249–50 (Matey, J., dissenting). Second, the arguments and analysis soon sank into a survey of all magazine restrictions, then firearms with "combat-functional ends" capable of "rapidly" discharging ammunition, and finally fully automatic rifles. *Id.* at 250. But those are not the same and each is subject to different regulations in New Jersey—not to mention other states and federal law. *Id.* Blurring these lines improperly boosted the State's claims of regulatory interest. Doing so again will hopelessly complicate the otherwise straightforward

---

[4] Again, I summarize my prior points.

historical inquiry of *Heller* and *Bruen*, producing a search for an analogy to an object that did not exist at the founding, and does not exist today.

To avoid further confusion, there simply is no such thing as a "large capacity magazine." It is a regulatory term created by the State, meaning no more than the maximum amount of ammunition the State has decided may be loaded into any firearm at one time. Sixteen rounds was large yesterday, eleven rounds is large today. The State is welcome to market its policy goals using catchy slogans, but the rights of our Republic are built on sturdier stuff. Stripping away the buzzwords reveals the real question: whether "the Second Amendment's plain text" protects possession of a firearm magazine, in which case "the Constitution presumptively protects that conduct." *Bruen*, 142 S. Ct. at 2126. The only avenue around that presumption is proof—presented by the State—that its cap on magazine capacity "is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id*. at 2127.

Remand is unnecessary as both questions have already been answered. First, "[b]ecause magazines feed ammunition into certain guns, and ammunition is necessary for such a gun to function as intended, magazines [fall] within the meaning of the Second Amendment." *N.J. Rifle I*, 910 F.3d at 116 (cleaned up). And second, "there is no longstanding history of" magazine capacity regulation. *Id*. at 116–17. Another four years of proceedings to reach those conclusions again is not needed. Nor can the United States remain "a government of laws . . . if the laws furnish no remedy for the violation of a vested legal right." *Marbury v. Madison*, 5 U.S. 137, 163 (1803). I respectfully dissent.