**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ASSOCIATION OF NEW JERSEY RIFLE & PISTOL CLUBS, INC., <br><br> BLAKE ELLMAN, *and* <br><br> MARC WEINBERG, <br><br>    *Plaintiffs*, <br><br> v. <br><br> MATTHEW PLATKIN, in his official capacity as Attorney General of New Jersey, <br><br> PATRICK J. CALLAHAN, in his official capacity as Superintendent of the New Jersey Division of State Police, <br><br> RYAN MCNAMEE, in his official capacity as Chief of Police of the Chester Police Department, and <br><br> JOSEPH MADDEN, in his official capacity as Chief of Police of the Park Ridge Police Department <br><br>    *Defendants*. | Civil Action No. 3:18-cv-10507-PGS-LHG |

**AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Daniel L. Schmutter
HARTMAN & WINNICKI, P.C.
74 Passaic Street
Ridgewood, New Jersey 07450
(201) 967-8040
(201) 967-0590 (fax)
dschmutter@hartmanwinnicki.com
*Attorneys for Plaintiffs*

## LOCAL CIVIL RULE 10.1 STATEMENT

The mailing addresses of the parties to this action are:

Association of New Jersey Rifle & Pistol Clubs, Inc.
5 Sicomac Road
Suite 292
North Haledon, New Jersey 07508

Blake Ellman
#3 Christina Court
Chester, New Jersey 07930

Marc Weinberg
70 Spring Valley Road
Park Ridge, New Jersey 07656

Matthew Platkin
Office of the Attorney General
RJ Hughes Justice Complex
25 Market Street, Box 080
Trenton, New Jersey 08625

Patrick J. Callahan
Office of the Superintendent
New Jersey State Police
P.O. Box 7068
West Trenton, New Jersey 08628

Ryan McNamee
Chester Police Department
1 Parker Road
Chester, New Jersey 07930

Joseph Madden
Park Ridge Police Department
33 W Park Ave.
Park Ridge, New Jersey 07656

## INTRODUCTION

Plaintiffs Association of New Jersey Rifle & Pistol Clubs, Inc., Blake Ellman, and Marc Weinberg (collectively "Plaintiffs"), by and through the undersigned attorneys, file this Amended Complaint against the above-captioned Defendants, in their official capacities as the state officials responsible under New Jersey law for administering and enforcing the State's laws and regulations governing the possession of firearms and ammunition magazines. Plaintiffs seek declaratory and injunctive relief: a declaration that New Jersey's ban on the possession of ammunition magazines capable of holding more than 10 rounds of ammunition is facially unconstitutional under the Second and Fourteenth Amendments; a declaration that the ban effects a taking of property without just compensation in violation of the Fifth and Fourteenth Amendments; and an injunction compelling Defendants to refrain from enforcing the invalid ban. In support of their Amended Complaint against Defendants, Plaintiffs hereby allege as follows:

1. The State of New Jersey has criminalized one of the most common and important means by which its citizens exercise their fundamental right of self-defense. By banning the possession of standard-capacity firearm magazines that can carry more than 10 rounds of ammunition, the State has reached into the homes of its law-abiding citizens, invading their constitutional right to keep and bear arms for the defense of themselves and their families in the most intimate of private spaces. It has put its citizens to the choice of rendering their personal property useless, permanently altering it, or handing it over to the government for no public purpose and without any prospect of compensation.

2. Absent relief from this Court, Defendants will continue to violate the constitutional rights of New Jersey's law-abiding citizens and reinforce the erroneous notion that the right to keep and bear arms is nothing more than "a second-class right, subject to an entirely different body

3

of rules than the other Bill of Rights guarantees." *McDonald v. City of Chicago*, 561 U.S. 742, 780 (2010).

3. Importantly, the banned standard capacity magazines are commonly possessed by law abiding citizens for lawful purposes, and there is no historical tradition of regulating them, nor any aspect of firearm capacity. The ban is therefore plainly unconstitutional. *New York State Rifle & Pistol Ass'n, Inc. v. Bruen,* 142 S. Ct. 2111 (2022).

4. All it does is leave law-abiding citizens more vulnerable to attack from better-armed and more ruthless assailants.

5. Plaintiffs, law-abiding residents of New Jersey and a state organization dedicated to defending the right to self-defense, bring this action to vindicate the constitutional rights being denied them by the State of New Jersey.

## JURISDICTION AND VENUE

6. This Court has subject-matter jurisdiction over Plaintiffs' claim under 28 U.S.C. §§ 1331 and 1343.

7. Plaintiffs seek remedies under 28 U.S.C. §§ 1651, 2201, and 2202 and 42 U.S.C. §§ 1983 and 1988.

8. Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) & (b)(2).

## PARTIES

9. Plaintiff Association of New Jersey Rifle & Pistol Clubs, Inc. (the "ANJRPC") is a not for profit membership corporation, incorporated in the State of New Jersey in 1936, which represents its members. Its address is 5 Sicomac Road, Suite 292, North Haledon, New Jersey 07508. ANJRPC represents the interests of target shooters, hunters, competitors, outdoors people, and other law-abiding firearms owners. Among the ANJRPC's purposes is aiding such persons in

every way within its power and supporting and defending the people's right to keep and bear arms, including the right of its members and the public to purchase and possess firearms and magazines. The New Jersey restrictions on magazine size at issue in this case are thus a direct affront to ANJRPC's central mission. ANJRPC has tens of thousands of members who reside in New Jersey. ANJRPC brings the claims herein on behalf of its members.

10. Plaintiff Blake Ellman is a law-abiding resident and citizen of the United States and the State of New Jersey. He is a member of ANJRPC.

11. Plaintiff Marc Weinberg is a law-abiding resident and citizen of the United States and the State of New Jersey. He is a member of ANJRPC.

12. Defendant Matthew Platkin is the Attorney General of New Jersey. As Attorney General, he exercises, delegates, or supervises all the powers and duties of the New Jersey Department of Law and Public Safety, including the Division of State Police within that Department, which is responsible for executing and enforcing New Jersey's laws and regulations governing the possession of firearms and magazines. His official address is Office of the Attorney General, RJ Hughes Justice Complex, 25 Market Street, Box 080, Trenton, New Jersey 08625. He is being sued in his official capacity.

13. Defendant Patrick J. Callahan is the Superintendent of the New Jersey Division of State Police. As Superintendent, subject to the oversight and supervision of the Attorney General, he exercises, delegates, or supervises all the powers and duties of the New Jersey Division of State Police, including executing and enforcing New Jersey's laws and regulations governing the possession of firearms and magazines. His official address is Office of the Superintendent, New Jersey State Police, P.O. Box 7068, West Trenton, New Jersey 08628. He is being sued in his official capacity.

14. Defendant Ryan McNamee is the Chief of Police for the Chester Police Department and is the chief law enforcement officer in the jurisdiction in which Plaintiff Ellman resides. His official address is Chester Police Department, 1 Parker Road, Chester, New Jersey 07930. He is being sued in his official capacity.

15. Defendant Joseph Madden is the Chief of Police for the Park Ridge Police Department and is the chief law enforcement officer in the jurisdiction in which Plaintiff Weinberg resides. His official address is Park Ridge Police Department, 33 W Park Ave., Park Ridge, New Jersey 07656. He is being sued in his official capacity.

## FACTUAL ALLEGATIONS

### New Jersey's Ban on Standard-Capacity Magazines

16. Since 1990, New Jersey has criminalized the possession of a "large capacity ammunition magazine," which it defined to include "a box, drum, tube or other container which is capable of holding more than 15 rounds of ammunition to be fed continuously and directly therefrom into a semi-automatic firearm." N.J.S.A. §§ 2C:39-1(y), 2C:39-3(j). On June 7, 2018, the New Jersey legislature passed Assembly Bill No. 2761 (hereinafter "Act A2761")[1], which (among other things) amended that definition to lower the threshold at which a magazine qualifies as "large capacity." The Governor signed the Act into law on June 13, 2018.

17. And yet, "there simply is no such thing as a 'large capacity magazine.' It is a regulatory term created by the State, meaning no more than the maximum amount of ammunition the State has decided may be loaded into any firearm at one time." *Association of New Jersey Rifle*

---

[1] The full title of the act is an Act Concerning Firearms and Amending N.J.S. 2C:39-1, N.J.S. 2C:39-3, and N.J.S. 2C:39-12, and Supplementing Chapter 39 of Title 2C of the New Jersey Statutes.

6

*and Pistol Clubs, Inc. v. Attorney General of New Jersey*, No. 19- 3142, at *9 (3d Cir. Aug. 25, 2022) (Matey, J. dissenting from Order remanding case back to the district court) (Dkt. 147-1).

18. New Jersey now defines as "large capacity," and criminalizes the possession of, any magazine capable of holding more than *10* rounds of ammunition (with a narrow carve-out designed to accommodate a small class of tube-fed, low-powered .22-caliber semi-automatic firearms like the Marlin Model 60). Act A2761 §§ 1, 2, to be codified at N.J.S.A. §§ 2C:39-1(y), 2C:39-3(j).

19. The same law altered the definition of "assault firearm" to include any semi-automatic rifle with a fixed magazine capacity exceeding 10 rounds, thereby generally criminalizing the possession of such firearms. *Id.* §§ 2C:39-1(w)(4), 2C:39-5(f).

20. While state law provides a narrow exception for certain firearms purchased before the bill's effective date—namely for a theoretical class of firearms "incapable of being modified to accommodate 10 or less rounds"—there is no general "grandfather clause" for firearms and magazines lawfully owned and possessed before the effective date, effectively turning an estimated one million New Jersey gun owners into criminals if they fail to follow the legislation's new mandates.

21. Instead, the law gave New Jersey residents lawfully in possession of a banned firearm or magazine prior to the effective date 180 days after the effective date to transfer their firearms or magazines, to render them inoperable, to permanently modify them to accept 10 rounds or less, or to voluntarily surrender them to Defendant Callahan or the chief of police of the municipality in which the owner resides. Act A2761 § 7.

22. The law does not provide for surrendered firearms or magazines to be put to any particular use, apparently allowing the police unfettered discretion to destroy the arms.

23. Violating New Jersey's "assault firearm" ban is a crime of the second degree, punishable by between five and ten years' imprisonment and a fine of up to $150,000, with harsh minimum mandatory sentences with no judicial discretion. *Id.* §§ 2C:39-5(b), 2C:43-3(a)(2), 2C43-6(a)(2).

24. Violating the "large capacity ammunition magazine" ban is a crime of the fourth degree, punishable by up to 18 months' imprisonment and a fine of up to $10,000. *Id.* §§ 2C:39-3(j), 2C:43-3(b)(2), 2C:43-6(a)(4).

### New Jersey Has Banned and Criminalized a Common and Important Means of Self-Defense

25. Although Act A2761 describes magazines that can accept more than 10 rounds of ammunition as "large capacity ammunition magazines," this is actually a gross and misleading misnomer. Magazines capable of holding more than 10 rounds of ammunition are a normal feature of firearms in the United States and are more accurately described as "standard-capacity magazines."

26. Approximately half of all magazines owned in America can accept more than 10 rounds. There are tens of millions—if not more—of these standard-capacity magazines throughout the United States, with at least one estimate putting the total number at more than 100 million.

27. Indeed, many of the most popular pistols in the Nation are typically manufactured with magazines holding more than 10 rounds of ammunition, and the standard-issue magazines for many popular rifles—including the most popular semiautomatic rifle in the country—have a capacity of more than 10 rounds.

28. Magazines such as these are spread throughout the country. Standard-capacity magazines are legal under both federal law and the laws of at least 43 states.

8

29. The ubiquity of standard-capacity magazines among law-abiding Americans demonstrates that they are used for lawful purposes, such as self-defense, hunting, competition, and target shooting.

30. In line with the widespread possession and use of standard-capacity magazines, there is no longstanding or historical tradition of prohibiting such magazines. Magazine bans were unknown in the United States before the twentieth century. Bans like New Jersey's are recent phenomena in American history. New Jersey, for example, had never limited magazine capacity to 10 rounds before the enactment of Act A2761, and no such limitation of which Plaintiffs are aware existed anywhere in the United States before the 1990s.

31. There are many sound reasons why the average citizen might want to use magazines that accept more than 10 rounds of ammunition. Most obviously, a law-abiding citizen would not want to run out of ammunition and have to reload while under criminal attack, which could involve multiple assailants, an assailant using a magazine containing more than 10 rounds, or an assailant using multiple firearms or magazines. Particularly given the stressful and often-unexpected nature of such encounters, forcing the victim to reload puts her at a significant disadvantage relative to her assailant. And that assumes that the victim will have additional magazines or rounds of ammunition at the ready, which is highly unlikely.

32. For example, one of ANJRPC's members was sleeping at his grandparents' house in Camden, New Jersey, when he was awoken by his grandmother's screams. He ran to the room in which she had been sleeping and found her in a struggle with a man attempting to stab her. Two other armed men were also present at the house. The member screamed at the top of his lungs and startled them. Fortunately, they fled, but had they not done so, they would have discovered that he was completely unarmed. The member now owns a semi-automatic pistol that would normally

come standard with a 15-round magazine in most other states and is concerned about the effect of the standard-capacity magazine ban on his safety.

33. Another member was threatened at his home when two men started beating on his door asking for someone who did not live there. The men forced the door open. Only when the member drew his firearm did the men flee. At the time, prior to the effective date of the ban, the member owned a Glock 19 pistol with a 15-round magazine and is concerned about the effect of the standard-capacity magazine ban on his safety.

34. Law enforcement data confirm what real-life stories and common sense show: that law-abiding citizens will frequently need standard-capacity magazines to defend themselves from those wishing to do them harm. Police departments typically issue handguns with magazines that hold more than 10 rounds. *See* MASSAD AYOOB, THE COMPLETE BOOK OF HANDGUNS 50, 87–90 (2013). And they do so for good reason. For example, in 2011, New York City police officers fired more than 10 rounds in 29% of incidents in which they fired their weapons to defend themselves and others. The fact that police officers frequently need to fire more than 10 rounds to defend themselves suggests that law-abiding citizens likewise will sometimes find themselves in a similar situation. Law-abiding citizens, no less than police officers, are entitled to defend themselves with commonly owned firearms equipped with standard-capacity magazines.

35. Unlike law-abiding citizens, violent criminals will not be meaningfully constrained by New Jersey's magazine ban. Given the tens of millions of standard-capacity magazines in circulation in the country, it will not be difficult for violent criminals to acquire them despite New Jersey's ban. And unlike law-abiding citizens, violent criminals will have no compunction about violating the magazine ban. Even if violent criminals were prevented from acquiring banned magazines, they could easily compensate by bringing multiple firearms or magazines with them

to the scene of the crime. Their ability to do so is made possible by the fact that violent criminals, and not their law-abiding victims, choose the time and place of crimes and can plan accordingly. New Jersey's law thus clearly favors criminals bent on mass mayhem, as they will ignore the law and continue using banned magazines; use multiple magazines, which can be switched out in a matter of seconds; use multiple firearms; or employ all of these strategies simultaneously. Law-abiding citizens will be reduced to countering this threat with a single firearm equipped with a single sub-standard capacity magazine, as people generally are not in the habit of having spare firearms and magazines readily accessible to them at all times.

**The Magazine Ban Deprives Plaintiffs of Their Property and Prevents Them from Keeping or Acquiring Arms for Self-Defense**

36. Plaintiff Ellman is an adult citizen and resident of New Jersey. He is not a retired law enforcement officer, and he does not fall within any of the other exceptions enumerated in New Jersey's ban on ammunition magazines capable of holding more than 10 rounds of ammunition.

37. Prior to the effective date of Act A2761 Plaintiff Ellman lawfully owned and kept in New Jersey ammunition magazines that qualified as "large capacity ammunition magazines" under the amended law because they were capable of holding more than 10 but fewer than 16 rounds of ammunition. Mr. Ellman owned these magazines for lawful purposes, including self-defense in the home. But for the newly enacted ban, Plaintiff Ellman would have continued to own and keep these magazines in his New Jersey home. Instead, Mr. Ellman was forced to, in some instances, transfer non-compliant magazines and purchase new replacement magazines at considerable cost and in other instances, spend money to permanently modify other magazines thereby significantly impairing their value. Further, since the ban went into effect, Mr. Ellman has

purchased several new pistols for which he was required to pay money to permanently modify the magazines down to 10 rounds prior to receiving them in New Jersey.

38. If it were lawful, Plaintiff Ellman would also acquire new magazines capable of holding more than 10 rounds of ammunition. Because of New Jersey's ban and the associated criminal penalties, he refrains from doing so.

39. Plaintiff Weinberg is an adult citizen and resident of New Jersey. He is not a retired law enforcement officer, and he does not fall within any of the other exceptions enumerated in New Jersey's ban on ammunition magazines capable of holding more than 10 rounds of ammunition.

40. Plaintiff Weinberg lawfully owned and kept in New Jersey ammunition magazines that qualified as "large capacity ammunition magazines" under the amended law because they were capable of holding more than 10 but fewer than 16 rounds of ammunition. Mr. Weinberg owned these magazines for lawful purposes, including self-defense in the home. But for the newly enacted ban, Plaintiff Weinberg would have continued to own and keep these magazines in his New Jersey home. Instead, Mr. Weinberg was forced to sell these magazines at a substantial loss. Further, since the ban went into effect, Mr. Weinberg has purchased two new pistols for which he was required to pay money to permanently modify the magazines down to 10 rounds prior to receiving them in New Jersey.

41. If permitted to do so, Plaintiff Weinberg would also acquire new magazines capable of holding more than 10 rounds of ammunition. Because of New Jersey's ban and the associated criminal penalties, he refrains from doing so.

42. Plaintiff ANJRPC has many members who owned and kept in New Jersey ammunition magazines that qualified as "large capacity" or firearms that qualified as "assault

firearms" due to their magazine capacity under the revised definitions of those terms enacted by Act A2761. But for the law, ANJRPC members would have continued to possess these magazines and firearms in New Jersey for lawful purposes, including self-defense in the home.

43. Plaintiff ANJRPC also has numerous members who wish to acquire—and but for the newly enacted law would acquire—for purposes of self-defense or other lawful purposes a magazine that qualifies as a "large capacity ammunition magazine" or a firearm that qualifies as an "assault firearm" due to its magazine capacity under the revised definitions of those terms enacted by Act A2761.

## COUNT ONE
### Deprivation of Plaintiffs' Rights Under U.S. CONST. amends. II and XIV

44. Plaintiffs incorporate by reference the allegations of the preceding paragraphs.

45. The Second Amendment to the U.S. Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." The Second Amendment applies against the States via the Fourteenth Amendment. *See McDonald v. City of Chicago*, 561 U.S. 742, 791 (2010).

46. Ammunition, including ammunition magazines, are "Arms" within the meaning of the Second Amendment. "[W]ithout bullets, the right to bear arms would be meaningless." *Jackson v. City & Cty. of San Francisco*, 746 F.3d 953, 967 (9th Cir. 2014).

47. New Jersey's definition of "large capacity magazines" includes many firearm magazines that come standard with or are common for firearms typically possessed by law-abiding citizens for lawful purposes nationwide (and, before the ban, in New Jersey). New Jersey law therefore generally prohibits residents of New Jersey, including Plaintiff Ellman, Plaintiff Weinberg , and other members of ANJRPC, from possessing magazines protected by the Second Amendment, subject to significant criminal penalties, including imprisonment.

13

48. New Jersey's ban on standard-capacity magazines extends its prohibition into the home. "[W]hatever else [the Second Amendment] leaves to future evaluation, it surely elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008).

49. Further, New Jersey's ban on standard capacity magazines infringes on the fundamental constitutional right to bear arms outside the home. *New York State Rifle & Pistol Ass'n, Inc. v. Bruen,* 142 S. Ct. 2111 (2022).

50. Because standard-capacity magazines are in common use and because there is no historical tradition supporting their prohibition, the ban is invalid under the Second Amendment. *Id.* at 629; *Bruen*, 142 S. Ct. at 2129-30.

## COUNT TWO
### Deprivation of Plaintiffs' Rights Under U.S. CONST. amends. V and XIV

51. Plaintiffs incorporate by reference the allegations of the preceding paragraphs.

52. The Fifth Amendment provides that "property [shall not] be taken for public use, without just compensation." U.S. CONST. amend. V.

53. This Fifth Amendment's takings clause applies against the State of New Jersey under U.S. CONST. amend. XIV.

54. Act A2761 takes property by requiring owners of specified firearms and magazines to turn them over to state officials, transfer them, destroy them, or permanently alter them.

55. Act A2761 does not provide for the property so taken to be put to a public use.

56. Act A2761 does not provide for just compensation for the surrender, transfer, destruction, or alteration of the firearms and magazines.

57. Plaintiffs Ellman and Weinberg and other members of Plaintiff ANJRPC owned firearms included within the amended definition of "large capacity ammunition magazine" or "assault firearms."

58. Accordingly, Act A2761 violates Plaintiffs' rights under the Fifth and Fourteenth Amendments by taking their property without putting it to a public use and without providing just compensation.

59. Alternatively, Act A2761 effects an unconstitutional regulatory taking, either by depriving Plaintiffs of all economically beneficial use of their firearms or magazines or by upsetting their reasonable investment-backed expectations of possessing firearms or magazines capable of holding more than 10 rounds.

## PRAYER FOR RELIEF

60. WHEREFORE, Plaintiffs pray for an order and judgment:

   a. Declaring that New Jersey's ban on certain magazines and firearms effects an unconstitutional taking of the property of Plaintiffs Ellman and Weinberg and members of Plaintiff ANJRPC;

   b. Declaring that New Jersey's ban on certain magazines and firearms, as amended by Act A2761, violates the Second, Fifth, and Fourteenth Amendments and is thus devoid of any legal force or effect;

   c. Preliminary and permanently enjoining Defendants Platkin, Callahan, McNamee, Madden, and their employees and agents from enforcing Act A2761 and any implementing regulations;

   d. Awarding Plaintiffs their reasonable costs, including attorneys' fees, incurred in bringing this action, pursuant to 42 U.S.C. § 1988; and

      e.      Granting such other and further relief as this Court deems just and proper.

Dated: October 28, 2022                              Respectfully submitted,

                                                      s/ Daniel L. Schmutter
                                                      Daniel L. Schmutter
                                                      HARTMAN & WINNICKI, P.C.
                                                      74 Passaic Street
                                                      Ridgewood, New Jersey 07450
                                                      (201) 967-8040
                                                      (201) 967-0590 (fax)
                                                      dschmutter@hartmanwinnicki.com
                                                      *Attorneys for Plaintiffs*

## DECLARATION OF COUNSEL PURSUANT TO LOCAL CIV. R. 11.2

The undersigned hereby states that the matter in controversy is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding.

I declare under penalty of perjury that the foregoing is true and correct.

                                                      s/ Daniel L. Schmutter
                                                      Daniel L. Schmutter
                                                      HARTMAN & WINNICKI, P.C.
                                                      74 Passaic Street
                                                      Ridgewood, New Jersey 07450
                                                      (201) 967-8040
                                                      (201) 967-0590 (fax)
                                                      dschmutter@hartmanwinnicki.com
                                                      *Attorney for Plaintiffs*