# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY
## TRENTON VICINAGE

| | |
|---|---|
| ASSOCIATION OF NEW JERSEY RIFLE & PISTOL CLUBS, INC., BLAKE ELLMAN, and MARC WEINBERG, | HON. PETER G. SHERIDAN |
| Plaintiffs, | Civil Action No. 3:18-cv-10507 |
| v. | |
| MATTHEW PLATKIN, in his official capacity as Attorney General of New Jersey, PATRICK J. CALLAHAN, in his official capacity as Superintendent of the New Jersey Division of State Police, RYAN MCNAMEE, in his official capacity as Chief of Police of the Chester Police Department, and JOSEPH MADDEN, in his official capacity as Chief of Police of the Park Ridge Police Department, | |
| Defendants. | |
| MARK CHEESEMAN, TIMOTHY CONNELLY, and FIREARMS POLICY COALITION, INC., | HON. RENEE M. BUMB |
| Plaintiffs, | Civil Action No. 1:22-cv-4360 |
| v. | |
| MATTHEW J. PLATKIN, in his official capacity as Acting Attorney General of New Jersey, PATRICK J. CALLAHAN, in his official capacity as Superintendent of the New Jersey | |

State Police, CHRISTINE A.
HOFFMAN, in her official capacity as
Acting Gloucester County Prosecutor,
and BRADLEY D. BILLHIMER, in
his official capacity as Ocean County
Prosecutor,

     Defendants.

BLAKE ELLMAN, THOMAS R.
ROGERS, and ASSOCIATION OF
NEW JERSEY RIFLE & PISTOL
CLUBS, INC.,

     Plaintiffs,

v.

MATTHEW J. PLATKIN, in his
official capacity as Attorney
General of New Jersey, PATRICK J.
CALLAHAN, in his official capacity
as Superintendent of the New Jersey
Division of State Police, LT. RYAN
MCNAMEE, in his official capacity as
Officer in Charge of the Chester Police
Department, and KENNETH BROWN, JR.,
in his official capacity as Chief of the Wall
Township Police Department,

     Defendants.

HON. FREDA L. WOLFSON

Civil Action No.
3:22-cv-04397

# BRIEF IN SUPPORT OF STATE DEFENDANTS' MOTION FOR CONSOLIDATION

MATTHEW J. PLATKIN
ATTORNEY GENERAL OF NEW JERSEY
R.J. Hughes Justice Complex
P.O. Box 116
Trenton, New Jersey 08625
Attorney for Defendants Matthew J. Platkin and
Patrick J. Callahan

By:  Stuart M. Feinblatt
     Assistant Attorney General
     (609) 376-3202
     Stuart.Feinblatt@law.njoag.gov

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...................................................................................ii

TABLE OF AUTHORITIES ................................................................................ii

PRELIMINARY STATEMENT................................................................. 1

STATEMENT OF FACTS AND PROCEDURAL HISTORY.............................. 2

ARGUMENT ...................................................................................... 6

    THESE CASES SHOULD BE CONSOLIDATED BECAUSE THEY
    INVOLVE MULTIPLE COMMON QUESTIONS OF LAW AND
    FACT ……………………………………………………………….6

CONCLUSION ................................................................................... 12

EXHIBIT A………………………………………………………………..14

EXHIBIT B………………………………………………………………..18

# TABLE OF AUTHORITIES

## Cases

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022)…..2, 4, 8

*ANJRPC v. Grewal*, No. 3:18-cv-10507, 2018 WL 4688345 (D.N.J. Sept. 28, 2018)
……………………………………………………………………………….4

*ANJRPC v. Attorney Gen. N.J.*, 910 F.3d 106 (3d Cir. 2018)………………………4

*ANJRPC v. Grewal*, No. 3:18-cv-10507, 2019 WL 3430101 (D.N.J. July 29, 2019)
……………………………………………………………………………….4

*ANJRPC v. Attorney Gen. N.J.*, 974 F.3d 237 (3d Cir. 2020)………………………4

*ANJRPC v. Bruck*, 142 S. Ct. 2894 (2022)…………………………………………4

*A.S. ex rel. Miller v. SmithKline Beecham Corp.*, 769 F.3d 204 (3d Cir. 2014)………6

*Hall v. Hall*, 138 S. Ct. 1118 (2018)……………………………………………...6

*Liberty Lincoln Mercury, Inc. v. Ford Marketing Corp.*, 149 F.R.D. 65
   (D.N.J. 1993) ..............................................................................................7

*In re Lucent Techs. Inc. Sec. Litig.*, 221 F. Supp. 2d 472 (D.N.J. 2001)………..7, 11

*Waste Distillation Tech., Inc. v. Pan Am. Res., Inc.*, 775 F. Supp. 759, 761 (D. Del.
1991)………………………………………………………………………...7

*A.F.I.K. Holding SPRL v. Fass*, 216 F.R.D. 567 (D.N.J. 2003)……………………7

*Kolbe v. Hogan*, 849 F.3d 114 (4th Cir. 2017)……………………………...........9

*Eastman Chem. Co. v. AlphaPet Inc.*, No. 09-cv-971, 2011 WL 7121180 (D. Del.
Dec. 29, 2011)………………………………………………………………..10

*Borough of Edgewater v. Waterside Constr., LLC*, No. 14-cv-5060, 2017 WL
1758062 (D.N.J. May 3, 2017)………………………………………………10

*Re: Shire LLC v. Watson Lab'ys, Inc.*, No. 12-cv-83, 2012 WL 12902495 (D.N.J.
June 20, 2012)
……………………………………………………………………………..10

*In re TMI Litig.*, 193 F.3d 613 (3d Cir. 1999)…………………………………………..11

*Nat'l Ass'n of Mortg. Brokers v. Bd. of Governors of Fed. Reserve Sys.*, 770 F. Supp. 2d 283 (D.D.C. 2011) …………………………………………………………11

*Galicki v. New Jersey*, No. 14-cv-169, 2014 WL 4105441 (D.N.J. Aug. 18, 2014) ...................................................................................................................12

## **Statutes**

N.J. Stat. Ann. § 2C:39-1(w)…………………………………………………..1, 8, 9

N.J. Stat. Ann. § 2C:39-1(y)…………………………………………………...1, 3, 8

N.J. Stat. Ann. § 2C:39-3(j)…………………………………………………….1, 3

N.J. Stat. Ann. § 2C:39-5……………………………………………………….1

N.J. Stat. Ann. § 2C:39-9……………………………………………………….1

N.J. Stat. Ann. § 2C:39-12……………………………………………………..1

N.J. Stat. Ann. § 2C:58-5………………………………………………………1

Ch. 32, 1990 N.J. Laws 217; Senate Judiciary Committee Statement, S.166, 204th Leg. (N.J. Mar. 12, 1990)………………………………………………2, 3, 8

N.J. Stat. Ann. § 2C:39-1 (1991)……………………………………………….3

Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322, §§ 110102, 110103……………………………………………………………...3

## **Rules**

Fed. R. Civ. P. 42 .............................................................................6

L. Civ. R. 42.1 .............................................................................................6

**PRELIMINARY STATEMENT**

Pursuant to Federal Rule of Civil Procedure Rule 42(a) and Local Civil Rule 42.1, Defendants Attorney General Matthew J. Platkin and Superintendent Patrick J. Callahan (hereinafter, "the State") seek an order consolidating three actions that challenge the constitutionality of New Jersey's statutory scheme for regulating dangerous weapons and munitions capable of inflicting a broad amount of damage.[1] In *Association of New Jersey Rifle and Pistol Clubs, Inc., et al. v. Attorney General New Jersey, et al.*, No. 18-cv-10507, Plaintiffs ask this Court to enjoin enforcement of New Jersey's regulation of large capacity magazines ("LCMs")[2] and declare it unconstitutional under the Second, Fifth, and Fourteenth Amendments.   In *Cheeseman, et al. v. Platkin, et al.*, No. 22-cv-4360, and *Ellman, et al. v. Platkin, et al.*, No. 22-cv-4397, Plaintiffs seek the same relief as to New Jersey's law regulating assault firearms[3] pursuant to the Second and Fourteenth Amendments.

These three actions challenge components of New Jersey's legal framework for regulating dangerous weapons capable of inflicting a broad amount of damage. Modern-day mass shootings and other shooting attacks frequently involve the use of assault firearms equipped with LCMs, as the combination increases the number of bullets that perpetrators can shoot within a given timeframe. New Jersey's LCM and

---

[1] Plaintiffs' counsel has not consented to this motion.

[2] N.J. Stat. Ann. §§ 2C:39-1(y), 2C:39-3(j), and 2C:39-12.

[3] N.J. Stat. Ann. §§ 2C:39-1(w), 2C:39-5, 2C:39-9, and 2C:58-5.

1

assault weapons restrictions were originally enacted together in 1990 as part of a single statutory response aimed at reducing fatalities and injuries from such attacks. Moreover, Defendants will rely on largely the same experts in all three suits to demonstrate that the State's regulation of LCMs and assault firearms is "consistent with this Nation's historical tradition of firearm regulation." *See New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2126 (2022).

As such, not only do myriad common questions of fact and law exist, but allowing the cases to proceed separately would waste judicial resources and present the potential for inconsistent adjudications of common factual and legal issues. All three cases are in a similar procedural posture, and there are overlapping plaintiffs, counsel, and defendants. Defendants therefore seek an order consolidating *Cheeseman* and *Ellman* into the instant action, which bears the earlier docket number, for all pretrial and trial purposes.

## **STATEMENT OF FACTS AND PROCEDURAL HISTORY**[4]

All three cases challenge New Jersey's law regulating dangerous weapons and munitions capable of inflicting significant injuries and fatalities. In 1990, the New Jersey Legislature enacted a statute restricting the manufacture, sale, or possession of assault firearms and large capacity ammunition magazines. *See* Ch. 32, 1990 N.J.

---

[4] Because they are closely related, the Procedural History and Statement of Facts are combined for the Court's convenience.

2

Laws 217; Senate Judiciary Committee Statement, S.166, 204th Leg. (N.J. Mar. 12, 1990), Ex. A ("Pursuant to the provisions of the bill, manufacture, sale, or possession of assault firearms and large capacity ammunition magazines would be prohibited except for use by military or law enforcement authorities.").[5] Recognizing the "wholesale destruction" that assault firearms equipped with LCMs could inflict, the State intended the bill to prevent "innocent people [from] be[ing] gunned down in vast numbers." News Release, N.J. Governor's Office, Florio Signs Nation's Toughest Assault Weapon Law (May 30, 1990), Ex. B. At the time, LCMs were defined as a container "capable of holding more than 15 rounds of ammunition to be fed continuously and directly therefrom into a semi-automatic firearm." Ch. 32, 1990 N.J. Laws 217, 221; N.J. Stat. Ann. § 2C:39-1 (1991). In 2018, the New Jersey Legislature updated that definition to reduce the maximum number of allowable rounds from fifteen to ten. *See* N.J. Stat. Ann. §§ 2C:39-1(y) and 39-3(j).

In *ANJRPC*, Plaintiffs Association of New Jersey Rifle and Pistol Clubs, Inc., Blake Ellman, and Alexander Dembowski, represented by Daniel L. Schmutter, filed suit to enjoin enforcement of the State's LCM law in 2018, alleging that it violates

---

[5] The federal government took the same approach when it chose to regulate both assault weapons and LCMs in the Public Safety and Recreational Firearms Use Protection Act, which was passed as part of the Violent Crime Control and Law Enforcement Act of 1994. *See* Pub. L. No. 103-322, §§ 110102 ("restriction on manufacture, transfer, and possession of certain semi-automatic assault weapons") and 110103 ("ban of large capacity ammunition feeding devices"), 108 Stat. 1996 (1994). The Act expired in September 2004.

the Second, Fifth, and Fourteenth Amendments. *See* Mot. for a Prelim. Inj., No. 3:18-cv-10507 (D.N.J. June 21, 2018), ECF No. 7. This Court denied the requested relief, *ANJRPC v. Grewal*, No. 3:18-cv-10507, 2018 WL 4688345, at *1 (D.N.J. Sept. 28, 2018), and the Third Circuit affirmed, *ANJRPC v. Attorney Gen. N.J.*, 910 F.3d 106, 110 (3d Cir. 2018). The parties then filed cross-motions for summary judgment, and this Court granted the State's motion and denied Plaintiffs' motion. *ANJRPC v. Grewal*, No. 3:18-cv-10507, 2019 WL 3430101, at *3 (D.N.J. July 29, 2019). On appeal, the Third Circuit again affirmed. *ANJRPC v. Attorney Gen. N.J.*, 974 F.3d 237, 240 (3d Cir. 2020). On June 30, 2022, after the Supreme Court decided *Bruen*, the Court granted Plaintiffs' petition for certiorari, vacated the Third Circuit's judgment, and remanded the case for further consideration in light of its *Bruen* decision. *ANJRPC v. Bruck*, 142 S. Ct. 2894 (2022). The Third Circuit then remanded the matter for further development of the record. Order, No. 19-3142 (3d Cir. Aug. 25, 2022), ECF No. 147. Plaintiffs filed an amended complaint before this Court on October 28, 2022. Am. Compl., No. 3:18-cv-10507 (Oct. 28, 2022), ECF No. 122,[6] and the State's answer and proposed schedule for the development of evidence are due on November 18, 2022, ECF No. 121.

---

[6] The Amended Complaint in *ANJRPC* dropped the equal protection claim included in Count III of the initial complaint. In addition, Plaintiff Marc Weinberg replaced Plaintiff Alexander Dembowski.

In *Ellman*, Plaintiffs Association of New Jersey Rifle and Pistol Clubs, Inc., Blake Ellman, and Thomas R. Rogers, represented by Daniel L. Schmutter, filed suit in July 2022 challenging the State's regulation of assault firearms under the Second and Fourteenth Amendments.  Compl., No. 3:22-cv-4397 (D.N.J. July 1, 2022), ECF No. 1. The State filed its answer to Plaintiffs' complaint on November 15, 2022. ECF No. 15.

In *Cheeseman*, Plaintiffs Mark Cheeseman, Timothy Connelly, and Firearms Policy Coalition, Inc., filed suit in July 2022 also challenging the State's regulation of assault firearms under the Second and Fourteenth Amendments. Amended Compl. No. 1:22-cv-04360 (D.N.J. July 14, 2022), ECF No. 4. Plaintiffs are represented by Bradley Lehman.  The district court recently set a discovery schedule and ordered initial disclosures to be filed by November 30, 2022. ECF No. 32.

Plaintiffs in all three actions name as Defendants Matthew J. Platkin in his official capacity as Attorney General of New Jersey and Patrick J. Callahan as Superintendent of the New Jersey Division of State Police.[7]

---

[7] In addition to the State defendants, the three actions also name as defendants several county or local officials in their official capacities. Plaintiffs in *ANJRPC* additionally name Ryan McNamee, Chief of the Chester Police Department, and Joseph Madden, Chief of the Park Ridge Police Department. Plaintiffs in *Ellman* additionally name Ryan McNamee, Chief of the Chester Police Department, and Kenneth Brown Jr., Chief of the Wall Township Police Department. Plaintiffs in *Cheeseman* additionally name Christine A. Hoffman, Acting Gloucester County Prosecutor, and Bradley D. Billhimer, Ocean County Prosecutor. The following co-defendants have consented to this motion: Ryan McNamee, Christine Hoffman,

In short, *ANJRPC*, *Cheeseman*, and *Ellman*:

- Challenge New Jersey statutes that concern dangerous weapons and munitions capable of inflicting a broad amount of damage;

- Have overlapping defendants, plaintiffs, and plaintiffs' counsel;

- Allege violations of the Plaintiffs' Second and Fourteenth Amendment rights;

- Seek declaratory and injunctive relief;

- Are in similar procedural postures, with operative complaints having been filed recently and having just begun or are about to begin fact and expert discovery.

## ARGUMENT

### THESE CASES SHOULD BE CONSOLIDATED BECAUSE THEY INVOLVE MULTIPLE COMMON QUESTIONS OF LAW AND FACT.

The three cases should be consolidated. Fed. R. Civ. P. 42(a); L. Civ. R. 42.1 (requiring such a motion to be filed "in the cases bearing the earliest docket number"). Rule 42(a) gives courts "broad power to consolidate cases that share common question[s] of law or fact." *A.S. ex rel. Miller v. SmithKline Beecham Corp.*, 769 F.3d 204, 212 (3d Cir. 2014) (alteration in original) (internal quotation marks omitted). Consolidation "enabl[es] more efficient case management while

---

and Bradley D. Billhimer. Christine Hoffman does not consent to venue in Trenton.

preserving the distinct identities of the cases and the rights of the separate parties in them." *Hall v. Hall*, 138 S. Ct. 1118, 1125 (2018). "Consolidation is appropriate in order to avoid unnecessary costs and/or delay, and to promote judicial economy." *Liberty Lincoln Mercury, Inc. v. Ford Mktg. Corp.*, 149 F.R.D. 65, 80-81 (D.N.J. 1993) (internal citations omitted).

In deciding whether to consolidate different actions, courts balance "[t]he savings of time and effort gained through consolidation … against the inconvenience, delay or expense that might result from simultaneous disposition of the separate actions." *Id.* at 81. Rule 42 does not "require[] that pending suits be identical before they can be consolidated." *In re Lucent Techs. Inc. Sec. Litig.*, 221 F. Supp. 2d 472, 480 (D.N.J. 2001). And "[i]n the absence of an articulated basis to assert confusion or prejudice, consolidation is generally appropriate." *A.F.I.K. Holding SPRL v. Fass*, 216 F.R.D. 567, 570 (D.N.J. 2003).

Consolidation is plainly appropriate in these three actions, where common parties raise the same constitutional challenge against common defendants regarding the same state laws, which concern dangerous weapons capable of inflicting a broad amount of damage.  All three actions challenge New Jersey's statutory scheme to address fatalities from dangerous weapons and all three sound in legal claims under

the Second and Fourteenth Amendments.[8]  Plaintiffs in *Ellman* and *Cheeseman* challenge New Jersey's ban on possessing assault firearms and Plaintiffs in *ANJRPC* challenge New Jersey's restriction on possessing large capacity magazines.  Under *Bruen*, the same legal inquiry governs all three cases: Plaintiffs bear the initial burden to show that the Second Amendment protects the regulated activity, and if so, the State must justify its regulations by demonstrating that they are consistent with the nation's historical tradition of firearm regulation. *Bruen*, 142 S. Ct. at 2129-30.

All three cases also involve the common questions of whether historical regulations of dangerous weapons and munitions existed and whether they are analogous to the State's modern-day firearms regulations.  The State intends to rely on largely the same fact and historical experts to answer these questions in all three cases.    Assault weapons and LCMs are interrelated and complementary technologies. Recognizing that both contribute to increased fatalities and injuries, New Jersey's Legislature passed a law regulating both at the same time. *See* Ch. 32, 1990 N.J. Laws 217.

---

[8] Although plaintiffs in *ANJRPC* also raise a takings claim under the Fifth Amendment in their amended complaint, that does not foreclose consolidation. *See Waste Distillation Tech., Inc. v. Pan Am. Res., Inc*., 775 F. Supp. 759, 761 (D. Del. 1991) (consolidating cases where "[t]he only appreciable difference between the two complaints is an additional claim for relief").

8

Notably, many of the assault weapons prohibited under the challenged statute are capable of accepting LCMs.[9] Semiautomatic weapons—including those defined as "assault firearms" under N.J. Stat. Ann. § 2C:39-1(w)—are often equipped with LCMs to increase the number of rounds a shooter can fire without needing to reload. *See Kolbe v. Hogan*, 849 F.3d 114, 137 (4th Cir. 2017) ("Large-capacity magazines enable a shooter to hit 'multiple human targets very rapidly'; 'contribute to the unique function of any assault weapon to deliver extraordinary firepower'; and are a 'uniquely military feature[ ]' of both the banned assault weapons and other firearms to which they may be attached.") (alteration in original).  Indeed, assault firearms equipped with LCMs have been used in some of the nation's most fatal mass shootings in recent years, including those in Aurora, Sandy Hook, Newtown, Parkland, Orlando, Sutherland Springs, and Las Vegas.[10]  In other words, the two

---

[9] LCMs are designed to feed ammunition "continuously and directly . . . into a semiautomatic firearm."  N.J. Stat. Ann. § 2C:39-1(y). New Jersey's statutory definition of "assault firearm" includes numerous specified semiautomatic firearms, *see* N.J. Stat. Ann. § 2C:39-1(w)(1), firearms that are "substantially identical" to those listed firearms, N.J. Stat. Ann. § 2C:39-1(w)(2), as well as broader categories of semiautomatic firearms with certain features, *see* N.J. Stat. Ann. § 2C:39-1(w)(3) and (4). *See also Guidelines Regarding the "Substantially Identical" Provision in the State's Assault Firearms Laws*, N.J. DIV. OF CRIM. JUST., (Aug. 19, 1996), https://nj.gov/lps/dcj/agguide/assltf.htm ("[A] semi-automatic firearm should be considered to be 'substantially identical,' that is, identical in all material respects, to a named assault weapon [in 2C:39-1(w)] if it meets the below listed criteria . . .").

[10] *See What Are Assault Weapons and High-Capacity Magazines?*, BRADY, https://www.bradyunited.org/fact-sheets/what-are-assault-weapons-and-high-

technologies are interrelated in their functionality and use. As a result, historical restrictions on firearms analogous to the State's LCM and assault firearm restrictions are likely to overlap. *See Eastman Chem. Co. v. AlphaPet Inc.*, No. 09-cv-971, 2011 WL 7121180, at *3 (D. Del. Dec. 29, 2011) ("This Court has frequently ordered consolidation where the technology at issue in the separate actions appeared to be similarly related.").

Given these common questions of law and fact, consolidation would promote judicial economy and avoid potentially inconsistent judgements. Because the State intends to present overlapping factual and expert evidence, consolidation would avoid the costs of issuing duplicative discovery requests, reduce burdens on fact and expert witnesses, and facilitate a more efficient and economic resolution of these related challenges. *See Borough of Edgewater v. Waterside Constr., LLC*, No. 14-cv-5060, 2017 WL 1758062, at *3 (D.N.J. May 3, 2017) (consolidating cases where "discovery in both cases will likely involve many of the same documents and witnesses").

---

capacity-magazines (last visited Nov. 8, 2022); *National Law Enforcement Partnership to Prevent Gun Violence (NLEPPGV) 2010-2021: Partnership Report*, NAT'L POLICE FOUND. 123-26 (July 2021), https://www.policinginstitute.org/wp-content/uploads/2021/07/NPF_
NLEPPGV_Partnership-Report_Final2_2021.pdf#:~:text=The%20National
%20Law%20Enforcement%20Partnership%20to%20Prevent%20Gun,devastating
%20impact%20of%20firearms%20in%20the%20United%20States.

Consolidation would also avoid the risk of three different judges reviewing the same evidentiary submissions and rendering separate—and potentially inconsistent—decisions on closely related factual evidence and causes of action. *See Re: Shire LLC v. Watson Lab'ys, Inc.*, No. 12-cv-83, 2012 WL 12902495, at *2 (D.N.J. June 20, 2012) (the "purpose of consolidation is 'to streamline and economize pretrial proceedings so as to avoid duplication of effort, and to prevent conflicting outcomes in cases involving similar legal and factual issues.'" (quoting *In re TMI Litig.*, 193 F.3d 613, 724 (3d Cir. 1999)).

Nor will consolidation prejudice the Plaintiffs in these cases or cause undue delay. To the contrary, consolidation will only redound to their benefit. First, the cases share common parties: the New Jersey Attorney General and Superintendent of State Police are defendants in all three cases. ANJRPC and Blake Ellman are named plaintiffs in both *ANJRPC* and *Ellman*.[11] Plaintiffs in *ANJRPC* and *Ellman* are also represented by the same counsel. Consolidation would create efficiencies by saving the parties from having to litigate multiple parallel cases at once. Indeed, challenges to assault weapons and LCM regulations in other states are often brought

---

[11] Although the parties are not identical in all three cases, "[i]dentity of the parties is not a prerequisite. To the contrary, cases may be consolidated even where certain defendants are named in only one of the Complaints or where, as here, the plaintiffs are different but are asserting identical questions of law against the same defendant." *Nat'l Ass'n of Mortg. Brokers v. Bd. of Governors of Fed. Reserve Sys.*, 770 F. Supp. 2d 283, 286 (D.D.C. 2011); *see also In re Lucent Techs. Inc. Sec. Litig.*, 221 F. Supp. 2d 472, 479, 482 (D.N.J. 2001).

in a single lawsuit. *See, e.g.*, Second Am. Compl., *Nat'l Ass'n for Gun Rights, et al. v. Lamont, et al.*, No. 3:22-cv-1118 (D. Conn. Oct. 25, 2022), ECF No. 26; Compl., *Nat'l Ass'n for Gun Rights, et al. v. Shikada*, No. 1:22-cv-404 (D. Haw. Sept. 6, 2022), ECF No. 1; Compl., *Rocky Mountain Gun Owners, et al. v. City of Boulder*, No. 22-cv-2112 (D. Colo. Aug. 18, 2022), ECF No. 1; Compl., *Rocky Mountain Gun Owners, et al. v. Town of Superior, et al.*, No. 22-cv-1685 (D. Colo. July 7, 2022), ECF No. 1.

Second, all three cases are in similar procedural postures. In each case, the operative complaint was filed recently after the Supreme Court's *Bruen* decision. Discovery has just begun in *Cheeseman* and is about to begin in *ANJRPC*.  In *Ellman*, the State recently filed an answer to Plaintiffs' complaint and a discovery schedule will soon follow.  Consolidation would therefore not inconvenience the parties or delay adjudication of any of these cases. *See Galicki v. New Jersey*, No. 14-cv-169, 2014 WL 4105441, at *4 (D.N.J. Aug. 18, 2014) (consolidating two cases "given that both actions are still in their relative infancy and have nearly identical procedural postures").

In sum, adjudicating these cases separately would be a waste of judicial resources and needlessly create a risk of inconsistent judgments. The potential for inefficiency and unnecessary cost that separate actions would entail overwhelmingly favors immediate consolidation.

## <u>CONCLUSION</u>

This motion for consolidation should be granted and *Cheeseman* and *Ellman*

should be consolidated into the instant action.

Respectfully submitted,

MATHEW J. PLATKIN
ATTORNEY GENERAL OF NEW JERSEY


By:     /s/ Stuart M. Feinblatt
Stuart M. Feinblatt (NJ Bar # 018781979)
Assistant Attorney General

Dated: November 18, 2022

13

# EXHIBIT A

SENATE JUDICIARY COMMITTEE

STATEMENT TO

# SENATE, No. 166

with committee amendments

# STATE OF NEW JERSEY

DATED: MARCH 12, 1990

The Senate Judiciary Committee reports favorably and with committee amendments Senate Bill No. 166.

This bill would prohibit the manufacture, sale, or possession of assault firearms and large capacity ammunition magazines except under certain circumstances.

Pursuant to the provisions of the bill, manufacture, sale, or possession of assault firearms and large capacity ammunition magazines would be prohibited except for use by military or law enforcement authorities; purchase and possession of an assault firearm would be prohibited unless a person obtains a license, similar to the current machine gun license, to purchase, possess or carry an assault firearm. The license and the licensing procedure would be identical to the current procedure for machine gun licenses set forth in N.J.S.2C:58-5.

A person who possesses an assault firearm as of the day the bill takes effect would have to have obtained a license or must render it permanently inoperable, sell it, turn it over to the police, or dispose of it in some other legal manner.

In addition, the bill would impose mandatory minimum prison terms for the commission of certain crimes while in possession of a machine gun or an assault firearm.

The following is a summary of the major provisions of the major provisions of the bill.

This bill was pre-filed for introduction in the 1990 session pending technical review. As reported, the bill includes the changes required by technical review which has been performed.

DEFINITIONS:

"Assault firearm" means:

A semi-automatic rifle of a certain barrel length which was originally designed to take a detachable magazine with a capacity exceeding 15 rounds or a semi-automatic rifle with a fixed magazine with a capacity exceeding 15 rounds;

A semi-automatic shotgun with magazine capacity exceeding six rounds, or with pistol grip or folding stock;

A semi-automatic handgun originally designed to take a magazine with a capacity exceeding 17 rounds; or

A firearm which may be readily restored to an operable assault firearm.

2

The definition specifically includes: Avtomat Kalashnikov semi-automatic firearms; Uzi semi-automatic firearms; Intratec TEC 9 or 22 semi-automatic firearms; Ruger Mini-14 semi-automatic firearms; Colt AR-15 semi-automatic firearms; Beretta AR-70 semi-automatic firearms; FN-FAL or FN-FNC semi-automatic firearms; Steyr A.U.G. semi-automatic firearms; Heckler and Koch HK91, HK93, HK94 semi-automatic rifles and carbines; USAS 12 semi-automatic shotgun; Valmet M-76 and M-78 semi-automatic firearms; Shotguns like "Street Sweeper" or "Striker 12".

The definition specifically excludes the following:

      Remington Model 1100 shotgun;

      Remington Model 870 shotgun;

      Ruger 10/22 carbine;

      HK Model 300 rifle;

      Marlin Model 9 camp carbine;

      Stevens Model 987 rifle;

      Remington Nylon 66 autoloading rifle;

      a firearm which does not use fixed ammunition;

      a manually operated bolt action weapon that is not a semi-automatic firearm, such as a Winchester bolt action rifle;

      a lever action weapon that is not a semi-automatic firearm, such as a Marlin lever action carbine;

      a slide action weapon that is not a semi-automatic firearm;

      a BB gun;

      a gas and pnuematic powered pellet gun;

      an air rifle;

      an assault firearm rendered permanently inoperable.

"Large capacity ammunition magazine" means a box, drum, tube or other container capable of holding more than 15 rounds of ammunition.

## CRIMINAL OFFENSES:

The bill would establish as a crime of the third degree, the possession of an assault firearm. Manufacturing, selling or disposing of an assault rifle without being registered or licensed would be a crime of the third degree.

Possession of a large capacity magazine except for military or law enforcement use would be a crime of the fourth degree. The manufacture, transport or sale of a large capacity magazine would also be a fourth degree crime.

## MANDATORY MINIMUM PRISON TERMS:

Under the bill, if a person commits a crime of the first or second degree with a machine gun or assault firearm, the mandatory minimum term of imprisonment would be ten years. For crimes of the third degree, the term would be 5 years and for fourth degree crimes, 18 months.

For those offenders eligible for an extended term of imprisonment, if the crime involved was of the first or second degree

3

and a machine gun or assault firearm was used, the mandatory term of imprisonment would be 15 years. In cases involving crimes of the third degree, eight years and for crimes of the fourth degree, five years.

AMENDMENTS:

The committee adopted the following amendments:

1. The definition of "semi–automatic rifle" was changed to include a requirement of a barrel length of between 16 and 22 inches.

2. The Attorney General is required to compile a list of assault firearms by name within 30 days of the bill's enactment.

3. A person who is awaiting a decision on an appeal of an assault license denial on the bill's effective date must turn the firearm over to the police. If the denial is upheld on appeal, the police will either render the firearm permanently inoperable and return it to the owner or keep it as a voluntarily surrendered firearm.

4. The amendments delete a provision which would have allowed a person who intended to apply for a license to turn that firearm over to the law enforcement authorities.

# EXHIBIT B

# OFFICE OF THE GOVERNOR
## NEWS RELEASE

**CN-001**
**Contact:**

Emma Byrne
609/292-8956

**TRENTON, N.J. 08625**
**Release:**

Wednesday
May 30, 1990

## FLORIO SIGNS NATION'S TOUGHEST ASSAULT WEAPON LAW

PATERSON -- Keeping a promise made during the campaign, Governor Jim Florio today signed a bill banning the sale and sharply restricting current possession of assault weapons in New Jersey, making it the toughest law in the nation.

Florio signed the bill during a ceremony in Paterson, the home of the late state Senator Frank Graves, the bill's original sponsor.

"One of our most basic rights is to be safe. But when the police are outgunned and innocent people can be gunned down in vast numbers, all of our other rights become meaningless," Governor Florio said. "I promised that I would ban assault weapons in New Jersey and I am proud to sign this bill into law today. It's the toughest law in the nation. It's right. It's fair, and it will make New Jersey a better place."

Under the law, no person will be able to legally purchase an assault weapon in the state. Unlike a California assault weapon ban, which exempts all current owners, the New Jersey law severely restricts possession of any assault weapon not used for legitimate collecting or target-shooting purposes.

"This is a common sense bill -- one that recognized that hunters don't need Uzis to shred their prey, and law abiding citizens don't need 'street-sweepers'," Florio said. "The ban on military-style assault weapons was Frank Graves' last fight. He believed, as I do, that guns capable of wholesale destruction are a direct threat to our police, our citizens and especially our children."

Current owners have one year to either sell their weapon or render it inoperable by certifying that the parts necessary to fire the weapon have been removed from his immediate possession, making it purely a collector's piece. Owners also have seven months to join a chartered rifle/pistol club, but may do so only if their firearm was purchased as of May 1, 1990, and is included on a list

currently being drawn up by the Attorney General based on those weapons used in U.S. Army-sanctioned competitions.

"This bill says that no one can walk off the street and purchase a gun that is designed to wipe out the greatest number of people in the shortest possible time," Florio said. "I call that common sense. So do the majority of people in New Jersey and so does the State Legislature."

# # #