# EXHIBIT 5

# AMERICA'S RIFLE



## THE CASE FOR THE AR-15

### STEPHEN P. HALBROOK

Author of *The Right to Bear Arms*

# AMERICA'S RIFLE:

## THE CASE FOR THE AR-15

**BY STEPHEN P. HALBROOK**



BOMBARDIER
BOOKS

Published by Bombardier Books
An Imprint of Post Hill Press
ISBN: 978-1-63758-680-8
ISBN (eBook): 978-1-63758-073-8

America's Rifle:
The Case for the AR-15
© 2022 by Stephen P. Halbrook
All Rights Reserved

Cover Design by Tiffani Shea

Interior Design by Yoni Limor

No part of this book may be reproduced, stored in a retrieval system, or transmitted by any means without the written permission of the author and publisher.



Post Hill Press
New York • Nashville
posthillpress.com

Published in the United States of America

Finally, the First Circuit upheld Massachusetts' ban based on "combat features" that it never identified.[26]

The U.S. District Court for the Northern Mariana Islands saw through the haze and found that the pistol grip, adjustable stock, and flash suppressor make a rifle more accurate and safer to use for the law-abiding citizen. It, therefore, found that a ban violated the Second Amendment.[27]

Some common myths must be cast aside at the outset for a serious consideration of the issue. The term "assault weapon," while usually applied to some kind of rifle, is actually a pejorative term without a definite meaning. It was invented to sow confusion in the public between semiautomatic rifles and fully automatic military weapons like the M16 rifle. The banned rifles are semiautomatic firearms, just like other semiautomatic firearms, that fire one round for each pull of the trigger. The features that make an otherwise legal semiautomatic firearm an "assault weapon" under various laws do nothing to affect the firearm's functional operation and, if anything, promote safe and accurate use.

One purported feature called a "conspicuously protruding pistol grip" may be found on many diverse types of rifles, including those used in the Olympics, and it promotes accurate fire. Another frequently targeted feature, a telescoping stock, allows rifles to be better fitted to the stature of the user, much like wearing shoes that fit, and hence promotes comfort and accuracy. Each feature that was included in the 1994 federal ban is dissected in chapter 14 of this work. Features included in the California and other state bans are put under the microscope in chapters 12 and 15. Each banned feature is entirely legitimate and desirable for the safe and accurate use of rifles. Throughout, this work explains why such features are not mere "secondary characteristics" that may be banned without adverse consequences to accuracy and safety.[28]

Surveys frequently show that self-defense is a primary reason individuals choose to own AR-15s and similar firearms. They are particularly attractive for women and older individuals because of their light weight and ease of use, particularly in comparison to shotguns. Rifles are used in crime far more rarely than handguns, and there is no evidence that any of the prohibited "assault weapon" features has been the causal factor of any person's death in a crime.

Bans have been enacted in only a handful of states—only seven ban certain long guns and handguns, while only one more just bans certain handguns—and that some have been upheld is hardly a reason to infer that the federal judiciary, in general, agrees that the bans are constitutional. Judges from the few states with an anti-gun political culture may reflect that culture in their decisions.

More telling is that forty-three states have *not* defined "assault weapons" as certain long guns and handguns and banned them; this could reflect that most lawmakers consider such bans to be unconstitutional and unproductive. Of course, the courts have had no occasion to uphold or invalidate bans that do not exist in these states. It's no accident that eight of the thirteen federal circuits have never considered, post-*Heller*, an "assault