Bradley P. Lehman
Gellert Scali Busenkell & Brown, LLC
1201 N. Orange Street, Suite 300
Wilmington, DE 19801
Phone: 302-416-3344
Email: blehman@gsbblaw.com

Raymond M. DiGuiseppe
The DiGuiseppe Law Firm, P.C.
116 N. Howe Street, Suite A
Southport, NC 28461
Phone: 910-713-8804
Email: law.rmd@gmail.com
(Admitted *pro hac vice*)

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ASSOCIATION OF NEW JERSEY RIFLE & PISTOL CLUBS, INC., et al, <br><br> Plaintiffs, <br><br> v. <br><br> MATTHEW J. PLATKIN, in his official capacity as Acting Attorney General of New Jersey, et al, <br><br> Defendants. | Civil Action No. 3:18-cv-10507-PGS-LHG |
| MARK CHEESEMAN, et al, <br><br> Plaintiffs, <br><br> v. | Civil Action No. 1:22-cv-04360-PGS-LHG |

1

| | |
|---|---|
| MATTHEW J. PLATKIN, in his official capacity as Acting Attorney General of New Jersey, et al,<br><br>       Defendants. | **Plaintiffs' Statement of Undisputed Material Fact in Support of Plaintiffs' Motion for Summary Judgment** |
| BLAKE ELLMAN et al,<br><br>       Plaintiffs,<br><br>v.<br><br>MATTHEW J. PLATKIN, in his official capacity as Acting Attorney General of New Jersey, et al,<br><br>       Defendants. | Civil Action No. 3:22-cv-04397-PGS-LHG |

## PLAINTIFFS' STATEMENT OF UNDISPUTED MATERIAL FACTS

In support of their contemporaneously filed motion for summary judgment, Plaintiffs respectfully submit that the following facts[1] are undisputed:

## SOUMF No. 1

Former New Jersey Attorney General Peter Verniero issued "Guidelines Regarding the 'Substantially Identical' Provision in the State's Assault Firearms Laws" dated August 19, 1996, https://www.nj.gov/lps/dcj/agguide/assltf.htm

---

[1] Other than those facts that relate to the standing of the parties, all of the facts related herein are so-called "legislative facts" which are not concerned with the particular facts of the parties but are rather generalized facts about the world. FED. R. EVID. 201, 1972 Advisory Committee Note; *see Ezell v. City of Chicago*, 651 F.3d 684, 697 (7th Cir. 2011). This Court's review of legislative facts is unrestricted. *Id.*

("Guidelines"), which the current Attorney General (Defendant Platkin) and Superintendent of the New Jersey State Police (Defendant Callahan) continue to enforce.

*Supporting Citations*:

- Ans. to FAC ¶¶ 15, 18 (Admitted that Defendant Platkin "continues to publish the Guidelines").

## SOUMF No. 2

The Guidelines direct that they "should be followed by all county prosecutors and all law enforcement officers in this State so that the State's assault firearms laws will be uniformly enforced throughout the State."

*Supporting Citations*:

- *Guidelines* at 3
- Ans. to FAC ¶ 17 (Admitted)

## SOUMF No. 3

The exceptions are largely limited to exemptions for: (1) those in the military or law enforcement, § 2C:39-6(a), (j); (2) rifles that the Attorney General designates as "legitimate" target-shooting firearms (which can only qualify for such designation if registered and owned by an individual who has been a member of a rifle or pistol club since at least 1990), § 2C:58-12; (3) "assault firearms" rendered "inoperable" (or else voluntarily surrendered or transferred to an exempt person or entity), §

3

2C:58-13; and (4) those who satisfy the statutory criteria for a license to purchase, possess, and carry an assault firearm, § 2C:58-5(a)-(b).

*Supporting Citations*:

- Ans. to FAC ¶ 19 (State Defendants do not deny the exemptions are limited as stated).

## SOUMF No. 4

To lawfully purchase, possess, or carry any *operable* firearm falling within the classification of an "assault firearm" under this scheme—other than an "assault firearm" deemed "legitimate" by the Attorney General for target-shooting purposes—an ordinary, law-abiding person must demonstrate to the satisfaction of a judge that such a license is *required* in the interest of public safety and welfare.

*Supporting Citations*:

- Ans. to FAC ¶ 19 (State Defendants do not deny this interpretation of the law)

## SOUMF No. 5

The New Jersey Legislature has recognized that this statutory scheme operates as a general "ban" on the so-called "assault firearms."

*Supporting Citations*:

- *Statement of the New Jersey State Legislature on Assembly Concurrent Resolution No. 106*, 220th Leg. (2022),

4

https://www.njleg.state.nj.us/bill-search/2022/ACR106/bill-text?f=ACR&n=106_I1 ("in 1990 New Jersey enacted legislation *banning* assault weapons and certain large capacity ammunition feeding devices") (italics added).

## SOUMF No. 6

The Attorney General's Office itself characterizes the regulatory scheme in this way on its public website.

*Supporting Citations*:

- State of New Jersey, Department of Law & Public Safety, Office of the Attorney General, https://nj.gov/njsp/firearms/firearms-faqs.shtml (FAQ No. 15: "What type of firearms are considered assault weapons in New Jersey? [¶] "A complete list of *banned* firearms can be found in N.J.S. 2C:39-1.w as well as N.J.A.C. 13:54-1.2.") (italics added)

- Readington Township Police Department, New Jersey, Frequently Asked Questions, https://www.readingtontwpnj.gov/firearms/firearms-faq (FAQ No. 17: characterizing the scheme in the same way)

## SOUMF No. 7

Courts in New Jersey and elsewhere have also recognized this scheme as a general "ban."

*Supporting Citations*:

- *See e.g.*, *Coalition of New Jersey Sportsmen v. Florio*, 744 F. Supp. 602, 608 (D. N.J. 1990) ("the prohibition is de facto, for that person [seeking to purchase an 'assault firearm'] must go through the extremely rigorous qualification process required for receiving a license[,]" and, "[t]his regulatory scheme vests unbridled discretion over the licensing process with the State"); *Gun Owners' Action League, Inc. v. Swift*, 284 F.3d 198, 207 (1st Cir. 2002) ("The New Jersey law examined in *Coalition* [*of New Jersey Sportsmen, Inc. v. Whitman*, 44 F. Supp. 2d 666, 673 n. 10] was effectively a ban on assault weapons.")

## **SOUMF No. 8**

Anyone who "manufactures, causes to be manufactured, transports, ships, sells or disposes of an assault firearm" in violation of the scheme "is guilty of a crime of the third degree." N.J. Stat. Ann. § 2C:39-9(g).

*Supporting Citations*:

- Ans. to FAC ¶ 24 (admitted)

## **SOUMF No. 9**

One who knowingly possesses such an arm illegally "is guilty of a crime of the second degree." N.J. Stat. Ann. §§ 2C:39-5(f).

*Supporting Citations*:

- Ans. to FAC ¶ 25 (admitted)

6

**SOUMF No. 10**

A crime in the second degree generally carries a term of imprisonment of five to ten years and a fine of up to $150,000, and a crime in the third degree generally carries a term of imprisonment of three to five years and a fine of up to $15,000. §§ 43-3(a)-(b), 43-6(a).

*Supporting Citations*:

- Ans. to FAC ¶ 26 (not denied)

**SOUMF No. 11**

Moreover, a conviction would result in a lifetime ban on the possession of firearms and ammunition under federal and state law. *See* 18 U.S.C. § 922(g).

*Supporting Citations*:

- Ans. to FAC ¶ 27 (not denied)

**SOUMF No. 12**

Plaintiff Cheeseman is a law-abiding resident of Gloucester County, New Jersey.

*Supporting Citations*:

- Decl. of Mark Cheeseman (Ex. 1) ¶ 1

**SOUMF No. 13**

Plaintiff Connolly is a law-abiding resident of Ocean County, New Jersey.

*Supporting Citations*:

- Decl. of Connolly (Ex. 2) ¶ 1

**SOUMF No. 14**

Plaintiff Cheeseman is not disqualified from possessing and acquiring firearms under federal and state law.

*Supporting Citations*:

- Decl. of Mark Cheeseman (Ex. 1) ¶ 1

**SOUMF No. 15**

Plaintiff Connolly is not disqualified from possessing and acquiring firearms under federal and state law.

*Supporting Citations*:

- Decl. of Connolly (Ex. 2) ¶ 1

**SOUMF No. 16**

Plaintiff Cheeseman is a member of Plaintiff FPC.

*Supporting Citations*:

- Ex. 1 ¶ 2

**SOUMF No. 17**

Plaintiff Connolly is a member of Plaintiff FPC.

*Supporting Citations*:

- Ex. 2 ¶ 2

**SOUMF No. 18**

Plaintiff Cheeseman intends and desires to exercise his rights to keep and bear firearms classified as "assault firearms" under New Jersey's Ban, including but not limited to an AR-15 style rifle, for lawful purposes, especially for home defense, target shooting, and proficiency training.

*Supporting Citations*:

- Ex. 1 ¶ 3

**SOUMF No. 19**

Plaintiff Connolly intends and desires to exercise his rights to keep and bear firearms classified as "assault firearms" under New Jersey's Ban, including but not limited to an AR-15 style rifle, for lawful purposes, especially for home defense, target shooting, and proficiency training.

*Supporting Citations*:

- Ex. 2 ¶ 3.

**SOUMF No. 20**

But for the Ban, Plaintiff Cheeseman would acquire, purchase, and/or receive, and lawfully use this firearm, and other "assault firearms," including prohibited shotguns and handguns.

*Supporting Citations*:

- Ex. 1 ¶ 4

**SOUMF No. 21**

But for the Ban, Plaintiff Connolly would acquire, purchase, and/or receive, and lawfully use this firearm, and other "assault firearms," including prohibited shotguns and handguns.

*Supporting Citations*:

- Ex. 2 ¶ 4

**SOUMF No. 22**

The Ban nonetheless renders it illegal for either of them to do so.

*Supporting Citations*:

- Ex. 1 ¶¶ 3-4

- Ex. 2 ¶¶ 3-4

**SOUMF No. 23**

In light of the State's enforcement of this Ban, Plaintiff Cheeseman continues to refrain from acquiring, possessing, and using for self-defense and other lawful purposes any AR-15 rifle, any other firearm prohibited under the Ban, or any "substantially identical" firearm as defined under the Guidelines, based on the reasonable fear and threat of arrest, confiscation, prosecution, fine, and imprisonment for violating the Ban.

*Supporting Citations*:

- Ex. 1 ¶ 5

**SOUMF No. 24**

In light of the State's enforcement of this Ban, Plaintiff Connolly continues to refrain from acquiring, possessing, and using for self-defense and other lawful purposes any AR-15 rifle, any other firearm prohibited under the Ban, or any "substantially identical" firearm as defined under the Guidelines, based on the reasonable fear and threat of arrest, confiscation, prosecution, fine, and imprisonment for violating the Ban.

*Supporting Citations*:

- Ex. 2 ¶ 5

**SOUMF No. 25**

Plaintiff FPC is a nonprofit membership organization, the purposes of which include defending and promoting the People's rights, especially, but not limited to, the fundamental, individual Second Amendment right to keep and bear arms, advancing individual liberty, and restoring freedom.

*Supporting Citations*:

- Decl. of Brandon Combs (Ex. 3) ¶ 2

**SOUMF No. 26**

Plaintiff FPC serves its members and the public through legislative advocacy, grassroots advocacy, litigation and legal efforts, research, education, outreach, and other programs.

*Supporting Citations*:

- Ex. 3 ¶ 2

## **SOUMF No. 27**

Plaintiff FPC brings this action on behalf its New Jersey resident members, including Plaintiffs Cheeseman and Connolly, who seek to exercise their right to keep and bear common semi-automatic arms for lawful purposes in New Jersey but who are prohibited from doing so under the Ban.

*Supporting Citations*:

- Ex. 3 ¶ 3.

## **SOUMF No. 28**

Law-abiding New Jersey resident members of Plaintiff FPC intend and desire to, *inter alia*, acquire, receive, transport, possess, lawfully use, and dispose of various semiautomatic rifles, shotguns, and handguns labeled by the State as "assault firearms," but they are subject to, adversely affected by, and prevented from doing so under the prohibitions of the Ban against "assault firearms."

*Supporting Citations*:

- Ex. 3 ¶ 4

**SOUMF No. 29**

But for the enactment and enforcement of the Ban, these FPC members would forthwith, *inter alia*, acquire, receive, transport, possess, lawfully use, and dispose of such rifles, shotguns, and handguns targeted under the Ban.

*Supporting Citations*:

- Ex. 3 ¶ 5

**SOUMF No. 30**

However, they cannot and do not do so because the weapons are labeled "assault firearms," such that they reasonably fear and face a threat of arrest, confiscation, prosecution, fine, and imprisonment in light of the Ban's prohibitions.

*Supporting Citations*:

- Ex. 3 ¶ 5

**SOUMF No. 31**

But for the enactment and enforcement of this Ban, and the criminal penalties (including a life-long ban on the individuals' exercise of their Second Amendment protected rights) associated with violations of the Ban, these members of Plaintiff FPC would exercise their right to keep and bear the banned firearms for lawful purposes, including self-defense, without the fear or risk of arrest and prosecution for engaging in otherwise protected, lawful conduct.

*Supporting Citations*:

- Ex. 3 ¶ 6

**SOUMF No. 32**

The injuries suffered by these members are germane to the core purposes of Plaintiff FPC.

*Supporting Citations*:

- Ex. 3 ¶ 7

**SOUMF No. 33**

As Attorney General of New Jersey, Defendant Platkin is the head of the State's Office of the Attorney General and Department of Law and Public Safety, which includes the New Jersey State Police, and this Office holds statewide criminal jurisdiction to investigate and prosecute any indictable offense.

*Supporting Citations*:

- *See* State of New Jersey, Department of Law & Public Safety website, https://www.njoag.gov/about/ ("the Attorney General oversees the New Jersey State Police (NJSP), the state's largest law enforcement agency, and the Division of Criminal Justice (DCJ), which has statewide authority to investigate and prosecute criminal offenses")

**SOUMF No. 34**

In this official capacity, Defendant Platkin is thus responsible for executing, delegating, and/or supervising the laws and regulations governing the possession of

14

firearms and magazines and impose criminal sanctions for violations of the same, including the "assault firearms" regulatory scheme at issue in this case.

*Supporting Citations*:

- *See* State of New Jersey, Department of Law & Public Safety website, https://www.njoag.gov/about/ ("the Attorney General oversees the state's 21 County Prosecutors, and may assume responsibility for, or 'supersede,' investigations or prosecutions handled by a County Prosecutor's Office")

- *Kendrick v. Bruck*, 586 F. Supp. 3d 300, 307 (D. N.J. 2022) (the Attorney General oversees the Division of State Police, "which is responsible for executing and enforcing New Jersey's laws and regulations governing the possession of firearms")

- Ans. to FAC ¶ 9 (admitting that "Defendant Platkin is the Acting Attorney General of New Jersey, and serves as the head of the New Jersey Office of the Attorney General and Department of Law and Public Safety, which includes the New Jersey State Police")

## SOUMF No. 35

Defendant Callahan is the Superintendent of the New Jersey Division of State Police, which is responsible for executing and enforcement of all criminal laws in the State, including those regulating the possession of firearms and magazines.

15

*Supporting Citations*:

- *See* State of New Jersey, Department of Law & Public Safety, State Police website, https://www.nj.gov/njsp/about/core-functions.shtml (the New Jersey Division of State Police performs "all functions associated with the statewide enforcement of laws, the prevention of crime, the pursuit and apprehension of offenders, and the gathering of legal evidence to ensure conviction of such offenders")
- *Kendrick*, 586 F. Supp. 3d at 307
- Ans. to FAC ¶ 10 (admitting that "Defendant Patrick J. Callahan is the Superintendent of the New Jersey State Police")

## SOUMF No. 36

Defendant Callahan's division acts under the general oversight and supervision of the Attorney General.

*Supporting Citations*:

- Plaintiffs incorporate the citations in support of SOUMF No. 35 as equally applicable and supportive here.

## SOUMF No. 37

Defendant Hoffman is the County Prosecutor of Gloucester County, where Plaintiff Cheeseman resides.

*Supporting Citations*:

16

- https://www.gloucestercountynj.gov/Directory.aspx?did=69

- Ex. 1 ¶ 1

**SOUMF No. 38**

Defendant Billhimer serves as the County Prosecutor for Ocean County, where Plaintiff Connolly resides.

*Supporting Citations*:

- https://ocponj.gov/staff/bradley-d-billhimer/

- Ex. 2 ¶ 1

**SOUMF No. 39**

As the County Prosecutors for their respective counties, Defendants Hoffman and Billhimer are "responsible for the prosecution of crimes committed in the county" and have "authority to use all reasonable and lawful diligence for the detection, arrest, indictment and conviction of offenders against the laws."

*Supporting Citations*:

- *Yurick v. State*, 875 A.2d 898, 903 (N.J. 2005) (quotations omitted).

**SOUMF No. 40**

In addition, they would be responsible for preparing the necessary investigation and recommendation to law enforcement as to any individual in their respective counties who applies through the Superior Court for a license to purchase, possess, and carry any of otherwise prohibited "assault firearms."

*Supporting Citations*:

- N.J. Stat. Ann. §§ 2C:58-5(a)

**SOUMF No. 41**

Accordingly, Defendants Hoffman and Billhimer would be responsible for prosecuting Plaintiff Cheeseman and Plaintiff Connolly, respectively, for any violation of the Ban that they may be accused of committing in their respective counties of residence.

*Supporting Citations*:

- Plaintiffs incorporate the citations in support of SOUMF Nos. 37-40 as equally applicable and supportive here.

**SOUMF No. 42**

Similarly, Defendants Hoffman and Billhimer would be responsible for the investigation and recommendation as to Plaintiff Cheeseman and Connolly, respectively, concerning any application for a license to purchase, possess, and carry any "assault firearm."

*Supporting Citations*:

- Plaintiffs incorporate the citations in support of SOUMF Nos. 37-40 as equally applicable and supportive here.

**SOUMF No. 43**

The Court has jurisdiction over this case and controversy, with the full power to adjudicate all claims for relief in the FAC, pursuant to 28 U.S.C. §§ 1331, 1343, 2201, and 2202, and 42 U.S.C. §§ 1983 and 1988, and venue properly lies in this district for purposes of adjudicating these claims, pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2).

*Supporting Citations*:

- Ans. to FAC ¶¶ 4-5 (not disputing jurisdiction or venue)

**SOUMF No. 44**

The term "assault firearm" (or "assault weapon," as used in other states that have enacted similar weapons bans) is a pejorative term that does not refer to any identifiable class of firearms.

*Supporting Citations*:

- "Prior to 1989, the term 'assault weapon' did not exist in the lexicon of firearms. It is a political term, developed by anti-gun publicists." *Stenberg v. Carhart*, 530 U.S. 914, 1001 n.16 (2000) (Thomas, J., dissenting) (citation and quotation marks omitted).

**SOUMF No. 45**

It is semiautomatic firearms that the State bans and that Plaintiffs seek to acquire.

19

*Supporting Citations*:

- Ex. 1 ¶¶ 3-4
- Ex. 2 ¶¶ 3-4
- Ex. 3 ¶¶ 3-6

## SOUMF No. 46

Unlike an automatic firearm, a semiautomatic firearm will not fire continuously with one pull of its trigger. Instead, a semiautomatic firearm requires the user to pull the trigger each time he or she wants to discharge a round.

*Supporting Citations*:

- *See Staples v. United States*, 511 U.S. 600, 602 n.1 (1994)

## SOUMF No. 47

Semiautomatic firearms have "traditionally have been widely accepted as lawful possessions."

*Supporting Citations*:

- *See Staples v. United States*, 511 U.S. 600, 602 n.1 (1994)

## SOUMF No. 48

Indeed, semiautomatic firearms have been commercially available for over a century.

*Supporting Citations*:

- *See Heller v. District of Columbia (Heller II)*, 670 F.3d 1244, 1287 (D.C. Cir. 2011) (Kavanaugh, J., dissenting); David B. Kopel, *Rational Basis Analysis of "Assault Weapon" Prohibition*, 20 J. CONTEMP. 381, 413 (1994), https://davekopel.org/2A/LawRev/rational.htm

## SOUMF No. 49

Apart from the now-expired ten-year federal "assault weapons" ban, the federal government has not banned semiautomatic firearms.

*Supporting Citations*:

- Associated Press, *Congress lets assault weapons ban expire*, Sept. 8, 2004, https://www.nbcnews.com/id/wbna5946127

## SOUMF No. 50

The only states that have enacted bans on "assault weapons" (with varying definitions of that term) are California, Connecticut, Hawaii, Illinois, Maryland, Massachusetts, Delaware, New York, and Washington.

*Supporting Citations*:

- *See* Shawna Chen, *10 states with laws restricting assault weapons*, AXIOS (Apr. 28, 2023), https://bit.ly/3pukU02

**SOUMF No. 51**

An AR-15 can only fire as often as a person can pull its trigger, while an M249 light machine gun, commonly used by the U.S. military, can fire 750 to 1,000 rounds per minute.

*Supporting Citations*:

- *See Squad Automatic Weapon (SAW), M249 Light Machine Gun*, Military Analysis Network, https://bit.ly/3tsQGtd

**SOUMF No. 52**

"Heavy" machine guns like the M61 series can fire significantly larger caliber ammunition (20mm) much faster yet (6,000 rounds per minute).

*Supporting Citations*:

- *See M61A1/M61A2 20mm Automatic Gun, Military Analysis Network*, https://bit.ly/3ttnemV

**SOUMF No. 53**

Most AR-style firearms are chambered for 5.56 x 45mm NATO (similar to .223 Remington) ammunition, a relatively inexpensive and very common cartridge that is particularly well suited for home-defense purposes because it has sufficient stopping power in the event a home intruder is encountered but loses velocity relatively quickly after passing through a target and other objects, thus decreasing the chance that an errant shot will strike an unintended target.

*Supporting Citations*:

- *See Modern Sporting Rifle Comprehensive Consumer Report*, National Shooting Sports Foundation (NSSF) ("*Comprehensive Consumer Report*"), https://bit.ly/3GLmErS (noting that self/home-defense is the second most important reason that Americans reported for owning AR-style firearms, second only to recreational target shooting)

- FRANK MINITER, *The Future of the Gun* at 35 (2014) (Ex. 4) ("ARs are popular with civilians and law enforcement around the world because they're accurate, light, portable and modular. . . . It's also easy to shoot and has little recoil, making it popular with women.")

## SOUMF No. 54

A telescoping or folding stock is merely an adjustable shoulder stock, which allows one to change the length of his gun to fit his stature, in the same way that he can change the height of an adjustable chair; some people have shorter arms than others, so it promotes accuracy by allowing the stock to be adjusted to fit the individual user's physique, thickness of clothing, and shooting position.

*Supporting Citations*:

- *See* E. Gregory Wallace, *Assault Weapon Myths*, 43 S. ILL. U. L. J. 193, 232                                                                                  (2018),

23

https://scholarship.law.campbell.edu/cgi/viewcontent.cgi?article=1265&context=fac_sw;

- STEPHEN P. HALBROOK, AMERICA'S RIFLE: THE CASE FOR THE AR-15 at 8 (2022) (Ex. 5)

**SOUMF No. 55**

Similarly, a pistol grip makes it easier to hold and stabilize a rifle or shotgun when fired from the shoulder and thus also promotes accuracy and reduces the risk of stray shots.

*Supporting Citations*:

- *See* Wallace, *Assault Weapon Myths* at 228; Kopel, *Rational Basis*, *supra*, 20 J. CONTEMP. L. 381, 396 (1994)

**SOUMF No. 56**

A flash suppressor is merely a device that reduces the flash of light from firing a round, "prevent[ing] the night-time home defender from being blinded by her own muzzle flash."

*Supporting Citations*:

- *Miller*, 542 F. Supp. 3d at 1035;

- *See also* Wallace, *Assault Weapon Myths* at 233–34

**SOUMF No. 57**

Most common semiautomatic firearms, including those banned under the State's law, can accept a detachable magazine.

*Supporting Citations*:

- NRA Shooting Sports USA, *Handgun Operation: Types Of Semi-Automatic Pistol Mechanisms*, https://www.ssusa.org/content/handgun-operation-types-of-semi-automatic-pistol-mechanisms/ ("Most semi-automatic firearms use detachable box magazines, which afford one of the main advantages of such arms")

**SOUMF No. 58**

Detachable magazines not only help law-abiding shooters to reload their weapon in stressful defense circumstances, but in the case of some platforms, including the AR-15, they are required to remedy malfunctions safely and quickly.

*Supporting Citations*:

- *See* Dennis Chapman, *Features and Lawful Common Uses of Semi-Automatic Rifles* 29-30 (Oct. 5, 2021) (working paper), https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3436512 (explaining the propensity of self-loading weapons to overheat and malfunction)

**SOUMF No. 59**

The AR-15 is America's "most popular semi-automatic rifle."

*Supporting Citations*:

- *Heller II*, 670 F.3d at 1287 (Kavanaugh, J., dissenting)

**SOUMF No. 60**

In recent years, the AR-15 has been "the best-selling rifle type in the United States."

*Supporting Citations*:

- Nicholas J. Johnson, *Supply Restrictions at the Margins of Heller and the Abortion Analogue*, 60 HASTINGS L.J. 1285, 1296 (2009), https://papers.ssrn.com/sol3/papers.cfm?abstract_id=1494634

**SOUMF No. 61**

Today, the number of AR-rifles and other similar "modern sporting rifles" in circulation in the United States exceeds *twenty-four million*.

*Supporting Citations*:

- *Commonly Owned: NSSF Announces Over 24 Million MSRs in Circulation*, NSSF (July 20, 2022), https://bit.ly/3QBXiyv

- *See also* William English, *2021 National Firearms Survey: Updated Analysis Including Types of Firearms Owned* at 1–2 (May 13, 2022),

https://bit.ly/3yPfoHw (finding that an estimated 24.6 million American gun owners have owned AR-15s or similar rifles)

**SOUMF No. 62**

In recent years they have been the second- most common type of firearm sold, at approximately 20% of all firearm sales, behind only semiautomatic handguns.

*Supporting Citations*:

- *See 2021 Firearms Retailer Survey Report* at 9, NSSF (2021), https://bit.ly/3gWhI8E

**SOUMF No. 63**

And the English survey is not limited to the semiautomatic firearms that the State enumerates by name, but rather extends to the "AR-15 *or similarly styled rifle[s]*."

*Supporting Citations*:

- *National Firearms Survey*, *supra*, at 33

**SOUMF No. 64**

Just like the rifles, handguns are semiautomatic firearms and semiautomatic firearms are indisputably common.

*Supporting Citations*

- *See, e.g.*, *Firearms Retailer Survey Report*, *supra*, at 9, NSSF

**SOUMF No. 65**

The legislative facts documenting the ubiquity of detachable magazines associated with these firearms further illustrate the commonality of the banned arms.

*Supporting Citations*:

- *See e.g., ANJRPC*, 910 F.3d at 116 (finding that magazines capable of holding more than ten rounds are owned by the "millions, . . . often come factory standard with semi-automatic weapons, [and] are typically possessed by law-abiding citizens for hunting, pest-control, and occasionally self-defense");

- *National Firearms Survey*, *supra*, at 23–25 (documenting that approximately 39 million Americans have owned at least one magazine capable of owning more than 10 rounds and that Americans have owned as many as 542 million of such magazines).

**SOUMF No. 66**

It is clear that these arms (detachable magazines) are overwhelmingly used for                                      lawful                                      purposes.

*Supporting Citations*:

- *See* Gary Kleck, *Targeting Guns: Firearms and Their Control* 112 (1997) (Ex. 6) (evidence indicates that "well under 1% [of crime guns] are 'assault rifles.'")

28

**SOUMF No. 67**

According to FBI statistics, in 2019 there were only 364 homicides known to be committed with rifles of any type, compared to 6,368 with handguns, 1,476 with knives or other cutting instruments, 600 with personal weapons (hands, feet, etc.) and 397 with blunt objects.

*Supporting Citations*:

- *See Expanded Homicide Table 8, Crime in the United States* (FBI 2019), https://bit.ly/3HdolNd

**SOUMF No. 68**

According to a report by the U.S. Department of Justice, Bureau of Justice Statistics, household members are present for almost a third of all burglaries and become victims of violent crimes in more than a quarter of those cases.

*Supporting Citations*:

- https://bjs.ojp.gov/content/pub/pdf/vdhb.pdf

**SOUMF No. 69**

Studies on the frequency of defensive gun uses in the United States have determined that up to 2.5 million instances occur each year in which civilians use firearms to defend themselves or their property.

*Supporting Citations*:

- Gary Kleck, Marc Gertz, *Armed Resistance to Crime: The Prevalence and Nature of Self-Defense with a Gun*, 86 J. OF CRIM. L. & CRIMINOLOGY 150, 164 (1995), https://scholarlycommons.law.northwestern.edu/cgi/viewcontent.cgi?article=6853&context=jclc

- *See also* English, *National Firearms Survey*, *supra* at 5 (finding 31.1% of firearms owners, or approximately 25.3 million adult Americans, have used a firearm in self-defense and there are 1.67 million defensive firearm uses a year).

## SOUMF No. 70

At least a third of all gun owners own a firearm for hunting or sport shooting, and recreational target shooting has been cited as the top reason, albeit closely followed by home defense, for owning semiautomatic firearms like those banned by the State.

*Supporting Citations*:

- *See Modern Sporting Rifle Comprehensive Consumer Report* and *Sport Shooting Participation in the U.S. in 2020*, *supra*

## SOUMF No. 71

All semiautomatic firearms that insert cartridges into a firing chamber, burn powder to expel projectiles through barrels, and are functionally semiautomatic in

30

nature the same cyclical rate of fire: one round fired per pull of the trigger until ammunition is exhausted or the firearm or feeding device malfunctions.

*Supporting Citations*:

- *Staples*, 511 U.S. at 602 n.1 ("We use the term 'semiautomatic' to designate a weapon that fires only one shot with each pull of the trigger, and which requires no manual manipulation by the operator to place another round in the chamber after each round is fired.")

- Wallace, *Assault Weapon Myths* at 216 ("Because a semiautomatic firearm fires only one round with each pull of the trigger, it can fire only as fast as the individual shooter can pull the trigger.")

Respectfully submitted,

Dated: October 6, 2023
s/ *Bradley P. Lehman*
Bradley P. Lehman
Gellert Scali Busenkell & Brown, LLC
1201 N. Orange Street, Suite 300
Wilmington, DE 19801
Phone: 302-416-3344
Email: blehman@gsbblaw.com