# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ASSOCIATION OF NEW JERSEY RIFLE & PISTOL CLUBS, INC., et al. | Civil Action No. 3:18-cv-10507-PGS-LHG |
| *Plaintiffs*, | |
| v. | |
| MATTHEW PLATKIN, et al. | |
| *Defendants*. | |
| MARK CHEESEMAN, et al. | |
| *Plaintiffs*, | |
| v. | Civil Action No. 3:22-cv-4360-PGS-LHG |
| MATTHEW PLATKIN, et al. | |
| *Defendants*. | |
| BLAKE ELLMAN, et al. | |
| *Plaintiffs*, | |
| v. | |
| MATTHEW PLATKIN, et al. | Civil Action No. 1:22-cv-4397-PGS-LHG |
| *Defendants*. | |

**BRIEF OF *ASSOCIATION OF NEW JERSEY RIFLE & PISTOL CLUBS, INC.* ("*ANJRPC*") AND *ELLMAN* PLAINTIFFS IN SUPPORT OF THEIR DAUBERT MOTIONS**

i

Daniel L. Schmutter
HARTMAN & WINNICKI, P.C.
74 Passaic Street
Ridgewood, New Jersey 07450
(201) 967-8040
(201) 967-0590 (fax)
dschmutter@hartmanwinnicki.com
*Attorneys for ANJRPC and Ellman Plaintiffs*

## Table of Contents

**MOTION – FRE 702** ....................................................................... 1

**INTRODUCTION** ........................................................................... 1

**LEGAL STANDARDS** .................................................................... 3

**ARGUMENT** .................................................................................. 5

I.   Several Of Defendants' Experts Offer Testimony That Is Legally Impermissible And/Or Irrelevant Under Binding Supreme Court Precedent ...................................................................................5

    A.   Some of Defendants' Historical Experts Offer Impermissible Legal Interpretation or Legal-Conclusion Testimony. ...................................... 5

    B.   Some of Defendants' Experts Offer Testimony that Is Not Relevant to the Legal Inquiry that Bruen Requires this Court to Conduct. ........... 9

II.   Dennis Baron's Testimony Lacks a Proper Foundation and Should be Excluded Under *Daubert*. ........................................................ 14

**CONCLUSION** ............................................................................. 16

## Table of Authorities

**Page(s)**

<u>**CASES**</u>

*Aguilar v. Int'l Longshoremen's Union Loc. No. 10*, 66 F.2d 443 (9th Cir. 1992) ................................................................................................ 2, 9

*Association of New Jersey Rifle and Pistol Clubs, Inc. v. Attorney General New Jersey*, 910 F.3d 106 (3d Cir. 2018) ...................................................... 15

*Bridgetown Condo. Homeowner's Ass'n*, 2009 WL 1743759 (D. Or. 2009). ........... 11

*Burkhart v. Wash. Metro. Area Transit Auth.,* 112 F.3d 1207 (D.C. Cir. 1997).......... 8

*Caetano v. Massachusetts*, 577 U.S. 411 (2016) ....................................................... 16

*Chaney v. Wadsworth,* 2015 WL 4388420  (D. Mont. July 15, 2015)............... 3, 9, 10

*Daubert v. Merrell Dow Pharms. Co.*, 509 U.S. 579 (1993); ............................. 4, 5, 6

*Duncan v. Becerra,* 366 F. Supp. 3d 1131  (S.D. Cal. 2019) ..................................... 18

*Duncan v. Bonta,* 19 F.4th 1087 (9th Cir. 2021) ....................................................... 16

*Fyock v. Sunnyvale,* 25 F. Supp. 3d 1267, 1279-80 (N.D. Cal. 2014), ............... 16, 17

*Gen. Elec. v. Joiner,* 522 U.S. 136 (1997).................................................................... 6

*Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998 (9th Cir. 2004).......... 8, 12

*District of Columbia v. Heller*, 554 U.S. 570 (2008) ................................. 3, 12, 13, 14

*In re Paoli R.R. Yard PCB Litigation,* 35 F.3d 717 (3d Cir. 1994).............................. 5

*Indep. Living Res. v. Oregon Arena Corp.*, 982 F. Supp. 698 (D. Or. 1997).............. 9

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).................................................. 5

*Magistrini v. One Hour Martinizing Dry Cleaning*, 180 F. Supp. 2d 584 (D.N.J. 2013) ......................................................................................................... 5

*McDonald v. City of Chicago,* 561 U.S. 742 (2010) .................................................. 14

*New York State Rifle & Pistol Association v. Bruen*, 142 S. Ct. 2111 (2022) ...................................................................................... 1, 2, 3, 10

*Primiano v. Cook,* 598 F.3d 558 (9th Cir. 2010) ................................ 2, 4, 13

*Specht v. Jensen*, 853 F.2d 805 (10th Cir. 1988) ........................................ 8

*Stobie Creek Invs., LLC v. United States*, 81 Fed. Cl. 358 (Fed. Cl. 2008) ................ 8

*UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres*, 949 F.3d 825 (3d Cir. 2020) ................................................................. 6

*Walker v. Gordon,* 46 Fed. Appx. 691 (3d Cir. 2002) ................................ 4

*Worman v. Healey*, 922 F.3d 26 (1st Cir. 2019) ........................................ 16

## RULES

Fed. R. Evid. 704(a) ................................................................ 8

Fed. R. Evid. 401 .................................................................. 4

Fed. R. Evid. 402 .............................................................. 2, 16

Fed. R. Evid. 702 .............................................................. 1, 6

## OTHER AUTHORITIES

Louis Klarevas, Closing the Gap, The New Republic (Jan. 13, 2011), https://bit.ly/3o3PKfg ......................................................... 18

29 Wright & Miller, Fed. Prac. & Proc. Evid. §6265.2 & nn.23 (2d ed. 2023) ........... 4

## **MOTION – FRE 702**

Plaintiffs respectfully submit this *Daubert* motion pursuant to Federal Rule of Evidence 702 and this Court's Order of September 6, 2023 (Dkt. 176).  For the reasons set forth in the motion below, this Court should:

1. Exclude Saul Cornell's, Robert Spitzer's, and Randolph Roth's testimony in their entirety.

2. Exclude Stephen Hargarten's, Louis Klarevas's, Lucy Allen's, Daniel Webster's, and James Yurgealitis's testimony in their entirety.

3. Exclude Dennis Baron's testimony in its entirety.

This motion is supported by the accompanying Memorandum, the record in this matter, the declaration of Daniel L. Schmutter and the attachments thereto, and all other matters properly before this Court.

## **INTRODUCTION**

The Supreme Court could not have been clearer in *New York State Rifle & Pistol Association v. Bruen*, 142 S. Ct. 2111 (2022) that it was rejecting the till-then-prevalent practice of "[f]ederal courts … making … empirical judgments regarding firearm regulations under the banner of 'intermediate scrutiny.'"  *Id.* at 2131.  Yet the bulk of Defendants' nine expert witnesses have been offered to do exactly that—discuss the relative wisdom of the challenged laws as a policy matter, including by offering in many instances the exact same testimony they offered in pre-*Bruen* cases.  Because such testimony is not relevant under *Bruen*, it is not "relevant" under the Federal Rules of

Evidence either, and the witnesses offering it should be excluded.  *See* Fed. R. Evid. 402, 702; *Primiano v. Cook*, 598 F.3d 558, 567 (9th Cir. 2010) ("What is relevant depends on what must be proved, and that is controlled by [the underlying substantive] law.").

*Bruen* made equally clear who is responsible for doing what under its new history-focused test.  While historians perform historical research and parties' lawyers present argument, "'legal inquiry is a refined subset' of a broader 'historical inquiry,'" and that *legal* inquiry is "[t]he job of judges." *Bruen* 142 S. Ct. at 2130 n.6.  But Defendants in this case offer witnesses who testify at length to the correct interpretations of statutes. This flies in the face not only of *Bruen*, but of black letter law: "[m]atters of law" are "for the court's determination." *Aguilar v. Int'l Longshoremen's Union Loc. No. 10*, 66 F.2d 443, 447 (9th Cir. 1992).  "An expert witness may not testify as to conclusions of law … or provide an interpretation of what a particular statute requires—tasks that are exclusively reserved for the court." *Chaney v. Wadsworth*, 2015 WL 4388420, at *10 (D. Mont. July 15, 2015).  This rule—as *Bruen* shows—does not have an exception for old statutes.  Defendants' witnesses offering legal testimony should be excluded.

Five of Defendants' witnesses engage in pure impermissible interest balancing, focusing entirely on the negative impacts that arise when criminals misuse protected arms – something *Bruen* plainly disallows. 142 S. Ct. at 2128-30.

Finally, several of Defendants' witnesses offer testimony that is flawed for additional reasons.  Dennis Baron may be a qualified linguist, but he knows nothing about firearms—and as a result, he chose a linguistic comparator, "cartridge box," that has no equivalence to modern magazines.  He made this choice, moreover, in an unreliable way.  His testimony is thus both irrelevant and unreliable.

## LEGAL STANDARDS

To be offered at trial, expert opinion testimony must meet two threshold requirements.  *See Daubert v. Merrell Dow Pharms. Co.*, 509 U.S. 579, 595-97 (1993); *Walker v. Gordon*, 46 Fed. Appx. 691, 694 (3d Cir. 2002) ("These gatekeeping requirements have been extended to apply to all expert testimony.").  First, like all evidence, expert opinion testimony must be relevant.  "What is relevant depends on what must be proved, and that is controlled by [the underlying substantive] law." *Primiano*, 598 F.3d at 567.  "Clearly, expert testimony does not 'help' if it is unrelated to facts at issue or is based on factual assumptions that are not supported by the evidence."  29 Wright & Miller, *Fed. Prac. & Proc. Evid.* §6265.2 & nn.23 (2d ed. 2023) (collecting cases).  Expert opinion testimony is thus typically relevant if the knowledge underlying it has a "valid . . . connection to the pertinent inquiry." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *see* Fed. R. Evid. 401, 402; *see also In re Paoli R.R. Yard PCB Litigation,* 35 F.3d 717, 713 n.13 (3d Cir. 1994) (Rule 702's requirement that an expert

witness's specialized knowledge will assist the trier of fact "'goes primarily to relevance.'" (quoting *Daubert*, 509 U.S. at 591)).

Second, expert opinions—*i.e.*, testimony "in the form of an opinion" by "a witness who is qualified as an expert by knowledge, skill, experience, training, or education"— must be reliable.  So, in addition to being relevant, expert opinion must have "a reliable basis in the knowledge and experience of the relevant discipline." *Kumho Tire Co.*, 526 U.S. at 149; *see Magistrini v. One Hour Martinizing Dry Cleaning*, 180 F. Supp. 2d 584, 594 (D.N.J. 2013) (identifying additional factors that might be considered, "including . . . whether an expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion … or whether an expert has adequately accounted for alternative explanations").  "In addition, a court may exclude expert testimony on the ground that an expert's purported methodology fails to explain his final conclusion." *Pooshs*, 287 F.R.D. at 546.  "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert." *Gen. Elec. v. Joiner*, 522 U.S. 136, 146 (1997); *see Kumho Tire*, 526 U.S. at 152.

"Rule 702 applies whether the trier of fact is a judge or a jury." *UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres*, 949 F.3d 825, 832 (3d Cir. 2020) ("By using the term 'trier of fact,' rather than specifying judge or jury, Rule 702 does not distinguish between proceedings.").

## ARGUMENT

**I.     Several Of Defendants' Experts Offer Testimony That Is Legally Impermissible And/Or Irrelevant Under Binding Supreme Court Precedent.**

### A.     Some of Defendants' Historical Experts Offer Impermissible Legal Interpretation or Legal-Conclusion Testimony.

Expert witnesses may not provide legal analysis or offer conclusions of law, period. "Each courtroom comes equipped with a 'legal expert,' called a judge." *Burkhart v. Wash. Metro. Area Transit Auth.*, 112 F.3d 1207, 1213 (D.C. Cir. 1997) (reversing admission of expert testimony on legal issues at trial); *Specht v. Jensen*, 853 F.2d 805, 807 (10th Cir. 1988) (same). "This holds just as true when the finder of fact is the court, if not more so; the court is well equipped to instruct itself on the law." *Stobie Creek Invs., LLC v. United States*, 81 Fed. Cl. 358, 360-61 (Fed. Cl. 2008) (collecting cases). Thus, although "expert testimony that is 'otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact' …, 'an expert witness cannot give an opinion as to her *legal conclusion,* i.e., an opinion on an ultimate issue of law.'" *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) (emphasis in original) (quoting Fed. R. Evid 704(a) and *Mukhtar v. Cal State Univ., Hayward*, 299 F.3d 1053, 1066 n.10 (9th Cir. 2002)). Such "legal matters" are instead "for the court's determination" alone. *Aguilar*, 966 F.2d 443 at 447.

This rule has a wide sweep: "An expert witness may not testify as to conclusions of law … or provide an interpretation of what a particular statute requires—tasks that are

exclusively reserved for the court." *Chaney v. Wadsworth*, 2015 WL 4388420, at *10 (D. Mont. July 15, 2015); *see also Indep. Living Res. v. Oregon Arena Corp.*, 982 F.Supp. 698, 765 (D. Or. 1997) ("As a general rule … the interpretation of a law is peculiarly within the court's own expertise and thus is not a proper subject for expert testimony."), *supplemented*, 1 F. Supp. 2d 1159 (D. Or. 1998).

That bedrock principle renders much of the expert testimony that Defendants have offered impermissible.  Defendants have offered nine expert witnesses.  Of these, three are historians who address the history of firearms regulations.[1]  In so doing, they tread over the line into impermissible legal interpretation.  *See supra*, pp.5-6.  This happens in two ways.  The most obvious is that defense experts have testified straightforwardly to how they think statutes or regulations should be interpreted.  *See Chaney*, 2015 WL 4388420, at *10 ("An expert witness may not … provide an interpretation of what a particular statute requires—[a] task[] that [is] exclusively reserved for the court.").

Given this, it is unsurprising to find their expert reports full of pages upon pages of statutory interpretation and interpretations of case law.  *See* Declaration of Daniel Schmutter ("Schmutter Decl'"), Ex C., Cornell Report; Schmutter Decl., Ex. G, Spitzer Report; Schmutter Decl., Ex. F, Roth Report.  This is not appropriate testimony for expert witnesses, and it should be disallowed.  *See Chaney*, 2015 WL 4388420, at *10; *Indep.*

---

1 Saul Cornell; Robert Spitzer; and Randolph Roth.

*Living Res.*, 982 F. Supp. at 765 ("[T]he interpretation of a law is peculiarly within the court's own expertise and thus is not a proper subject for expert testimony.").  Defendants' *counsel* are free to cite any statutes or regulations they want to this Court and urge, at the appropriate times at trial or in briefing, that the Court give those laws certain interpretations.  But they are *not* free to offer experts to do the job in the Court's stead.

 *Bruen* itself clearly illustrates this point.  There, the Court wrestled with interpretations of statutes stretching back to the 13th century, yet it never once suggested that the normal rule against expert testimony interpreting them could or should be altered. To the contrary, the Court resolved the question before it without considering any expert testimony at all, instead relying on the arguments of counsel, amici, and ultimately, its own expertise in analyzing such statutes.  In doing so, moreover, the Court specifically emphasized that "'legal inquiry is a refined subset' of a broader 'historical inquiry,'" and that the *legal* inquiry is "[t]he job of judges."  *Bruen*, 142 S. Ct. at 2130 n.6.  Thus, *Bruen* reinforces the general rule that "the role of experts is to interpret and to analyze factual evidence rather than to testify about the law."  *Bridgetown Condo. Homeowner's Ass'n*, 2009 WL 1743759, *1 (D. Or. 2009).

 The Court should be particularly wary of the expert testimony Defendants have offered because most of their experts disagree with—indeed openly disdain—the *Bruen*

decision, including the binding historical conclusions that the Supreme Court reached.[2] Indeed, their reports provide good reason to think that, in the guise of (impermissible) statutory interpretation, experts are trying to persuade this Court to repudiate some of the very same historical analysis that the Supreme Court has already conducted.  There is thus particular reason in this case to adhere to the well-established rule against allowing experts to offer legal interpretation.

Finally, these defense experts offer "legal conclusion[s]," *Hangarter*, 373 F.3d at 1016 (emphasis removed), whether built on legal interpretations or simply by making an impermissible leap from other types of testimony rendering "an opinion on an ultimate issue of law,'" *Hangarter*, 373 F.3d at 1016, under *Bruen*, which asks whether "the regulation is consistent with this Nation's historical tradition of firearm regulation," 142 S. Ct. at 2126, and thus it is an impermissible "legal conclusion."  *Hangarter*, 373 F.3d at 1016 (emphasis removed).

Accordingly, this Court should exclude: Cornell's testimony in its entirety; Spitzer's testimony in its entirety; and Roth's testimony in its entirety.

---

2 *E.g.*, "In NYSRPA v. Bruen, the high court has tossed aside the lessons—and facts—of law, history and good public policy."  Robert J. Spitzer, *How the Supreme Court Rewrote History to Justify its Flawed Gun Decision*, NBC News (June 23, 2022), https://nbcnews.to/3NAFzZM.

**B.**     **Some of Defendants' Experts Offer Testimony that Is Not Relevant to the Legal Inquiry that Bruen Requires this Court to Conduct.**

"What is relevant depends on what must be proved."  *Primiano*, 598 F.3d at 567. And that, in turn, "is controlled by [the underlying substantive] law."  *Id.*  Here, the underlying substantive law is set by *Bruen*, which prescribes two inquiries: [1] whether "the Second Amendment's plain text covers an individual's conduct"; and [2] whether "the regulation is consistent with this Nation's historical tradition of firearm regulation." 142 S. Ct. at 2126.  In assessing these questions, courts also ask whether the firearms and magazines banned by the challenged laws are within the Second Amendment's definition of "arms," which includes all "modern instruments that facilitate armed self-defense," *id.* at 2132; whether they are "in common use today" for lawful purposes or are instead "dangerous *and* unusual," *i.e.*, "'highly unusual in society at large,'" *id.* at 2143 (emphasis added) (quoting *District of Columbia v. Heller*, 554 U.S. 570, 627 (2008)); whether the regulation "addresses a general societal problem that has persisted since the 18th century," and if so, whether there is a "distinctly similar historical regulation addressing that problem," *id.* at 2131; or whether the regulation is justified by "unprecedented societal concerns or dramatic technological changes," and if so, whether the regulation is "relevantly similar" to historical regulations, including consideration of "two metrics: how and why the regulations burden a law-abiding citizen's right to armed self-defense," *id.* at 2132-33.  But *Bruen* explicitly *forbids* conducting interest balancing or generalized policy inquiries.  142 S. Ct. at 2129 (citing *Heller*, 554 at U.S. at 334; *McDonald v. City*

9

*of Chicago*, 561 U.S. 742, 790-91 (2010)); *id.*at 2131, 2133 n.7; *see id.* at 2127 n.4 (overturning prior circuit-level precedent incorporating an interest-balancing element). And the Supreme Court's decision in *Heller* rejected as "bordering on the frivolous" the idea that courts should use whether a certain arm was common *at the time of the founding* to determine whether it is lawful *now*.  554 U.S. at 582.

Given this underlying substantive law, a significant proportion of defendants' expert witness testimony is not relevant. More than half of defendants' experts— Louis Klarevas, Lucy Allen, Daniel Webster, Stephen Hargarten, and James Yurgealitis—offer testimony that goes to the now-forbidden interest-balancing inquiry, and that could *only* be considered relevant under that old, pre-*Bruen* standard.  Before *Bruen*, Third Circuit law required courts to first ask if the challenged law affects conduct that is protected by the Second Amendment, then (generally) to apply intermediate scrutiny, under which the court asked whether there was a reasonable fit between the challenged law and that objective.  *Association of New Jersey Rifle and Pistol Clubs, Inc. v. Attorney General New Jersey*, 910 F.3d 106, 116-120 (3d Cir. 2018).  Both in selecting the tier of scrutiny and in applying intermediate scrutiny, this involved weighing the burden the law imposed on a citizen's right against the public-safety benefits of the law as asserted by the state (to which deference was owed).  *See id.*  But *Bruen* explicitly rejected the second step of that inquiry "as one step too many," holding that courts may not engage in means-ends balancing.  142 S. Ct. at 2127, 2129.

10

Yet defendants offer evidence that goes (and could only go) to just such inquiry now. Perhaps the most egregious examples of this are the testimony of Dr. Hargarten. Dr. Hargarten is an emergency medicine specialist whose opinions are solely about the nature of gunshot wounds and injuries. Schmutter Decl., Ex. D., Hargarten Report at 4-5. These opinions clearly bear no relationship to the *Bruen* inquiries of whether "the Second Amendment's plain text covers an individual's conduct" and whether "the regulation is consistent with this Nation's historical tradition of firearm regulation." 142 S. Ct. at 2126. Nor can they be justified as relating to whether a given weapon is "dangerous *and* unusual": "[T]his is a conjunctive test: A weapon may not be banned unless it is *both* dangerous *and* unusual," because of course *all* firearms are deadly. *Caetano v. Massachusetts*, 577 U.S. 411, 417 (2016) (Alito, J., concurring in the judgment). Dr. Hargarten's testimony is plainly being offered for the same reason that similar testimony was offered in pre-*Bruen* cases—to argue that the state has a particularly strong justification for banning these particular sorts of weapons. *See, e.g.*, *Worman v. Healey*, 922 F.3d 26, 39 (1st Cir. 2019) (testimony of trauma surgeon weighed in intermediate scrutiny analysis), *abrogated by Bruen*, 142 S. Ct. 2111. The showing Dr. Hargarten tries to make has been ruled out by *Bruen*. Such arguments were a staple of pre-*Bruen* interest balancing decisions.[3] And yet again, this evidence is irrelevant under the inquiries

---

[3] *See, e.g.*, *Duncan v. Bonta*, 19 F.4th 1087, 1109-11 (9th Cir. 2021); *Fyock v. Sunnyvale*, 779 F.3d 991, 1000 (9th Cir. 2015); *Kolbe v. Hogan*, 849 F.3d 114, 127 (4th Cir. 2017) (en banc), *abrogated by Bruen*, 142 S. Ct. 2111.

prescribed by *Bruen*, *see supra*, p.9.  Thus the expert testimony to that effect is irrelevant under *Daubert* and *Kumho Tire*.

While Dr. Hargarten's report provides a particularly stark illustration of this tendency to offer irrelevant testimony going to pre-*Bruen* interest balancing—after all, *Bruen* does not provide for consulting medical doctors on whether constitutional rights are being infringed—it is by no means unique in that regard.  Defense expert Lucy Allen never discusses whether the magazines and firearms at issue in this case are in "common use" or "commonly owned" for self-defense (the relevant inquiries under *Bruen*), but instead speaks only of mass shootings and the number of rounds the average person uses in self-defense (both irrelevant inquiries under *Bruen*).  *See* Schmutter Decl. Exhibit A, Allen Report ("Allen Report") at para 4.  Indeed, Allen offered the exact same testimony previously in this case and another in a pre-*Bruen* case, *Fyock v. City of Sunnyvale*, in which it was used in the intermediate-scrutiny interest-balancing inquiry.  *See* 25 F. Supp. 3d 1267, 1279-80 (N.D. Cal. 2014), *aff'd sub nom. Fyock v. Sunnyvale*, 779 F.3d 991 (9th Cir. 2015); *see also Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Grewal*, 2018 WL 4688345, at *5 (D.N.J. Sept. 28, 2018).

Likewise, Louis Klarevas was retained to opine that "restrictions on assault weapons and LCMs have the potential to save lives . . ." which is almost an exact recitation of the pre-*Bruen* balancing inquiry. Schmutter Decl., Ex. E., Klarevas Report. at 5; *compare Fyock*, 779 F.3d at 1000 ("Sunnyvale also presented evidence that large-

capacity magazines are disproportionately used in mass shootings as well as crimes against law enforcement, and it presented studies showing that a reduction in the number of large-capacity magazines in circulation may decrease the use of such magazines in gun crimes.").[4]

Daniel Webster offers the same, having been "asked by the Attorney General's Officce for the State of New Jersey to provide information about current research on gun violence and its prevention. . . ." Schmutter Decl, Ex. H, Webster Report at 2.

And Yurgealitis seeks to testify that some of the subject arms trace their origins to arms developed for use in combat, that they are "capable of inflicting significant carnage," and that they pose a threat to law enforcement – all prohibited interest balancing inquires under *Bruen*. *See* Schmutter Decl., Ex. I., Yurgalitis Report at 3.

Moreover, the effects of allowing such testimony will spiral:  Because of Allen's, Klarevas's, Webster's, and Yurgealitis's opinions on improper policy balancing, this compels plaintiffs had to offer responsive testimony. The result is dozens of pages of expert testimony—and, if not stopped, hours and hours of trial time—spent on questions that were *ruled out of bounds* by the Supreme Court in *Bruen*.  *See* 142 S. Ct. at 2131

---

4 Even in a pre-*Bruen* posture, Klarevas's testimony was actually rejected by one court because, while he maintained, there as here, that banning magazines with a capacity of over ten rounds would "reduce violence and force shooters to take a critical pause," this was contradicted by his admission elsewhere that "'a person set on inflicting mass casualties will get around any clip prohibitions by having additional clips on his person … or by carrying more than one fully loaded weapon.'"  *Duncan v. Becerra*, 366 F. Supp. 3d 1131, 1173 (S.D. Cal. 2019) (citing Louis Klarevas, *Closing the Gap*, The New Republic (Jan. 13, 2011), https://bit.ly/3o3PKfg).

(rejecting "federal courts … making … empirical judgments regarding firearms regulations"), 2133 n.7 (courts may not "engage in independent means-ends scrutiny").

That Defendants' experts continue to offer such opinions is perhaps unsurprising, given that they nigh-uniformly think *Bruen* was wrongly decided.  But expert testimony seeking to relitigate *Bruen* is neither relevant nor permissible.  As much as Defendants may wish to litigate this case in a pre-*Bruen* world, this Court is bound by the holdings of the Supreme Court.  And it certainly would not serve the interests of either reasoned analysis or judicial economy to hear hours upon hours of testimony speaking to issues that the Supreme Court has declared legally irrelevant.

Accordingly, this Court should exclude:  Hargarten's, Allen's, Klarevas's, Webster's, and Yurgealitis's testimony in their entirety.

## II.     Dennis Baron's Testimony Lacks a Proper Foundation and Should be Excluded Under *Daubert*.

Defendants offer the testimony of Professor Dennis Baron as an expert in corpus linguistics.   Baron would testify that lexical evidence leads him to conclude that ammunition and ammunition storage containers were considered accoutrements and not arms during the Founding and Reconstruction Eras. Schmutter Decl. Ex B, Baron Report. This opinion rests on Baron's survey of linguistic corpora for the term "cartridge box" (and close synonyms), which he identified as analogues to modern firearm magazines. Baron Report at 12. Though Plaintiffs do not challenge Baron's qualifications as a

linguist, his entire analysis turns out to rest on an improper foundation:  He simply *assumed* that "cartridge box" is an appropriate 18th century linguistic analogue for "magazine"—even though common sense dictates that it is not.

In the first instance, Baron did not follow reliable methods in selecting this analogue.  He consulted no other experts or written sources on firearms in choosing "cartridge boxes" as the analogue to "magazines."  And nowhere does he claim any knowledge of how firearms or magazines worked, or how or when they have evolved. To the extent Baron eventually did settle on an explanation for his choice, it was that the two purportedly share functional similarity because both hold ammunition.  Only someone who knows nothing about how firearms actually work could make such a fundamentally flawed claim.

At the time of the Founding, while the cartridge box did indeed "hold ammunition," it did nothing more than that.  It was simply a box in which ammunition was stored.  Firing the gun.  A modern magazine, by contrast, plays a critical role in the *functionality* of a firearm.  The magazine is attached to the firearm, and it actively feeds a fresh round into the chamber automatically after each shot is fired. This is part of New Jersey's statutory definition of large capacity magazine. N.J.S. 2C:39-1(y). Baron entirely ignored this.

The analogy between "firearms magazine" and "cartridge box" is the foundation of Barons' report.  Yet, as seen, that foundation does not bear weight, as this case is not about an effort to ban boxes that merely hold ammunition.  It is about an effort to ban

15

devices that actually feed ammunition into a firearms.  Baron is thus unable to "establish[] that his interpretations of … words and phrases … were supported by reliable methods." *United States v. Hermanek*, 289 F.3d 1076, 1093 (9th Cir. 2002) (holding that a *Daubert* challenge should have been granted on this basis).  His testimony should be excluded in its entirety under *Daubert*.

## **CONCLUSION**

For the reasons set forth above, this Court should:

1.  Exclude Saul Cornell's, Robert Spitzer's, and Randolph Roth's testimony in their entirety.

2.  Exclude Stephen Hargarten's, Louis Klarevas's, Lucy Allen's, Daniel Webster's, and James Yurgealitis's testimony in their entirety.

3.  Exclude Dennis Baron's testimony in its entirety.

Respectfully submitted,

s/ Daniel L. Schmutter
Daniel L. Schmutter
Hartman & Winnicki, P.C.
74 Passaic Street
Ridgewood, New Jersey 07450
(201) 967-8040
(201) 967-0590 (fax)
dschmutter@hartmanwinnicki.com