Bradley P. Lehman (NJ #129762014)
Gellert Scali Busenkell & Brown, LLC
1201 N. Orange Street, Suite 300
Wilmington, DE 19801
Phone: 302-416-3344
Email: blehman@gsbblaw.com

Raymond M. DiGuiseppe
The DiGuiseppe Law Firm, P.C.
116 N. Howe Street, Suite A
Southport, NC 28461
Phone: 910-713-8804
Email: law.rmd@gmail.com
(Admitted *pro hac vice*)

*Attorneys for Cheeseman Plaintiffs*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ASSOCIATION OF NEW JERSEY RIFLE & PISTOL CLUBS, INC., et al,<br><br>Plaintiffs,<br><br>v.<br><br>MATTHEW J. PLATKIN, in his official capacity as Acting Attorney General of New Jersey, et al,<br><br>Defendants. | Civil Action No. 3:18-cv-10507-PGS-LHG |

1

| | |
|---|---|
| MARK CHEESEMAN, et al, <br><br> Plaintiffs, <br><br> v. <br><br> MATTHEW J. PLATKIN, in his official capacity as Acting Attorney General of New Jersey, et al, <br><br> Defendants. | Civil Action No. 1:22-cv-04360-PGS-LHG <br><br> **Cheeseman Plaintiffs' Reply to Defendants' Response to Statement of Undisputed Material Fact in Support of Plaintiffs' Motion for Summary Judgment** |
| BLAKE ELLMAN et al, <br><br> Plaintiffs, <br><br> v. <br><br> MATTHEW J. PLATKIN, in his official capacity as Acting Attorney General of New Jersey, et al, <br><br> Defendants. | Civil Action No. 3:22-cv-04397-PGS-LHG |

## <u>CHEESEMAN PLAINTIFFS' REPLY TO STATE DEFENDANTS' RESPONSE TO PLAINTIFFS' STATEMENT OF UNDISPUTED MATERIAL FACTS</u>

In support of their contemporaneously filed motion for summary judgment, the Cheeseman Plaintiffs (hereinafter, "Plaintiffs") respectfully submit this reply to State Defendants' Response to Plaintiffs' Statement of Undisputed Materials Facts ("SOUMF") (Dkt. No. 183-4).

As to County Defendants, they have not opposed Plaintiffs' motion for summary judgment or responded to Plaintiffs' SOUMF in any fashion; nor have they

even joined in the State Defendants' opposition to Plaintiffs' motion or in any of the State Defendants' responses to Plaintiffs' SOUMF. They have taken no action within the timeframes specified in the Court's scheduling order for the briefing on the cross-motions. "If the nonmoving party fails to oppose the motion by written objection, memorandum, affidavits and other evidence, the Court 'will accept as true all material facts set forth by the moving party with appropriate record support.' " *Arroyo v. Pleasant Garden Apartments*, 14 F.Supp.2d 696, 699 (D. N.J. 1998) (quoting *Anchorage Assocs. v. Virgin Islands Bd. of Tax Rev.*, 922 F.2d 168, 175 (3d Cir. 1990)). So it should be here: as a consequence of County Defendants' failure to oppose Plaintiffs' motion and to respond to any of the Plaintiffs' SOUMF, all the same should be accepted as true and as established as to County Defendants.

## SOUMF No. 1

Former New Jersey Attorney General Peter Verniero issued "Guidelines Regarding the 'Substantially Identical' Provision in the State's Assault Firearms Laws" dated August 19, 1996, https://www.nj.gov/lps/dcj/agguide/assltf.htm ("Guidelines"), which the current Attorney General (Defendant Platkin) and Superintendent of the New Jersey State Police (Defendant Callahan) continue to enforce.

*Supporting Citations*:

- Ans. to FAC ¶¶ 15, 18 (Admitted that Defendant Platkin "continues to publish the Guidelines").

| Defendants' Response to No. 1 | Plaintiffs' Reply to Response |
|---|---|
| Undisputed. | Therefore, this statement stands undisputed. |

## SOUMF No. 2

The Guidelines direct that they "should be followed by all county prosecutors and all law enforcement officers in this State so that the State's assault firearms laws will be uniformly enforced throughout the State."

*Supporting Citations*:

- *Guidelines* at 3

- Ans. to FAC ¶ 17 (Admitted)

| Defendants' Response to No. 2 | Plaintiffs' Reply to Response |
|---|---|
| Undisputed that the Guidelines include this quoted statement. | Therefore, this statement stands undisputed. |

## SOUMF No. 3

The exceptions are largely limited to exemptions for: (1) those in the military or law enforcement, § 2C:39-6(a), (j); (2) rifles that the Attorney General designates as "legitimate" target-shooting firearms (which can only qualify for such designation if registered and owned by an individual who has been a member of a rifle or pistol club since at least 1990), § 2C:58-12; (3) "assault firearms" rendered "inoperable" (or else voluntarily surrendered or transferred to an exempt person or entity), § 2C:58-13; and (4) those who satisfy the statutory criteria for a license to purchase, possess, and carry an assault firearm, § 2C:58-5(a)-(b).

*Supporting Citations*:

- Ans. to FAC ¶ 19 (State Defendants do not deny the exemptions are limited as stated).

| Defendants' Response to No. 3 | Plaintiffs' Reply to Response |
|---|---|
| Undisputed that the statute contains limited exemptions. | Therefore, this statement stands undisputed. |

## SOUMF No. 4

To lawfully purchase, possess, or carry any *operable* firearm falling within the classification of an "assault firearm" under this scheme—other than an "assault firearm" deemed "legitimate" by the Attorney General for target-shooting

purposes—an ordinary, law-abiding person must demonstrate to the satisfaction of a judge that such a license is *required* in the interest of public safety and welfare.

*Supporting Citations*:

- Ans. to FAC ¶ 19 (State Defendants do not deny this interpretation of the law)

| Defendants' Response to No. 4 | Plaintiffs' Reply to Response |
|---|---|
| Undisputed that the statute contains limited exemptions. | Therefore, this statement stands undisputed. |

## SOUMF No. 5

The New Jersey Legislature has recognized that this statutory scheme operates as a general "ban" on the so-called "assault firearms."

*Supporting Citations*:

- *Statement of the New Jersey State Legislature on Assembly Concurrent Resolution No. 106*, 220th Leg. (2022), https://www.njleg.state.nj.us/bill-search/2022/ACR106/bill-text?f=ACR&n=106_I1 ("in 1990 New Jersey enacted legislation *banning* assault weapons and certain large capacity ammunition feeding devices") (italics added).

| Defendants' Response to No. 5 | Plaintiffs' Reply to Response |
|---|---|
| Undisputed that the 2022 statement reads, in part, that "in 1990 New Jersey enacted legislation banning assault weapons and certain large capacity ammunition feeding devices." | Therefore, this statement stands undisputed. |

**SOUMF No. 6**

The Attorney General's Office itself characterizes the regulatory scheme in this way on its public website.

*Supporting Citations*:

- State of New Jersey, Department of Law & Public Safety, Office of the Attorney General, https://nj.gov/njsp/firearms/firearms-faqs.shtml (FAQ No. 15: "What type of firearms are considered assault weapons in New Jersey? [¶] "A complete list of *banned* firearms can be found in N.J.S. 2C:39-1.w as well as N.J.A.C. 13:54-1.2.") (italics added)

- Readington Township Police Department, New Jersey, Frequently Asked Questions, https://www.readingtontwpnj.gov/firearms/firearms-faq (FAQ No. 17: characterizing the scheme in the same way)

| Defendants' Response to No. 6 | Plaintiffs' Reply to Response |
|---|---|
| Undisputed only that the cited web pages include the statements quoted in the "Supporting Citations." Disputed that the website for the Readington Township Police Department is "The Attorney General's Office itself," or speaks on behalf of it. | Therefore, it is undisputed that:<br><br>1.  The website of the State of New Jersey, Department of Law & Public Safety, Office of the Attorney General, characterizes the arms targeted by the Attorney General's regulatory scheme as "*banned firearms*."<br><br>2.  The website of the Readington Township Police Department, New Jersey characterizes the arms targeted by the Attorney General's regulatory scheme in the same way. Further, the essential statement of fact that the Attorney General's Office itself characterizes the regulatory scheme as a "ban" is not subject to any reasonable dispute particularly given State Defendants' |

|  | acknowledgement in response to SOUMF No. 5 that the New Jersey Legislature has itself recognized that this statutory scheme operates as a general "ban." |
|---|---|

**SOUMF No. 7**

Courts in New Jersey and elsewhere have also recognized this scheme as a general "ban."

*Supporting Citations*:

- *See e.g.*, *Coalition of New Jersey Sportsmen v. Florio*, 744 F. Supp. 602, 608 (D. N.J. 1990) ("the prohibition is de facto, for that person [seeking to purchase an 'assault firearm'] must go through the extremely rigorous qualification process required for receiving a license[,]" and, "[t]his regulatory scheme vests unbridled discretion over the licensing process with the State"); *Gun Owners' Action League, Inc. v. Swift*, 284 F.3d 198, 207 (1st Cir. 2002) ("The New Jersey law examined in *Coalition* [*of New Jersey Sportsmen, Inc. v. Whitman*, 44 F. Supp. 2d 666, 673 n. 10] was effectively a ban on assault weapons.")

| Defendants' Response to No. 7 | Plaintiffs' Reply to Response |
|---|---|

| | |
|---|---|
| Undisputed that the cases contain the language cited. | Therefore, this statement stands undisputed. Further, this statement is not subject to any reasonable dispute particularly given State Defendants' acknowledgement in response to SOUMF No. 5 that the New Jersey Legislature has itself recognized that this statutory scheme operates as a general "ban." |

**SOUMF No. 8**

Anyone who "manufactures, causes to be manufactured, transports, ships, sells or disposes of an assault firearm" in violation of the scheme "is guilty of a crime of the third degree." N.J. Stat. Ann. § 2C:39-9(g).

*Supporting Citations*:

- Ans. to FAC ¶ 24 (admitted)

| Defendants' Response to No. 8 | Plaintiffs' Reply to Response |
|---|---|
| Undisputed that the statute includes the language quoted. | Therefore, this statement stands undisputed. |

## SOUMF No. 9

One who knowingly possesses such an arm illegally "is guilty of a crime of the second degree." N.J. Stat. Ann. §§ 2C:39-5(f).

*Supporting Citations*:

- Ans. to FAC ¶ 25 (admitted)

| Defendants' Response to No. 9 | Plaintiffs' Reply to Response |
|---|---|
| The State objects that this paragraph calls for a legal conclusion, and/or mischaracterizes and/or offers argument and/or improper opinion concerning the meaning of laws, and mischaracterizes the State Defendants' answer to the complaint. In any event, the pertinent laws speak for themselves. | State Defendants' objections are unfounded and their claim that the SOUMF No. 9 "mischaracterizes the State Defendants' answer to the complaint" is wrong because the State in fact admitted this to be true: ¶ 25 of the FAC states the relevant law as follows: "Any person who knowingly has in his possession an assault firearm is guilty of a crime of the second degree except if the assault firearm is licensed pursuant |

11

to N.J.S. 2C:58-5; registered pursuant to section 11 of P.L. 1990, c.32 (C. 2C:58-12); or rendered inoperable pursuant to section 12 of P.L. 1990, c.32 (C. 2C:58-13). N.J. STAT. ANN. §§ 2C:39-5(f)."

In turn, ¶ 25 of State Defendants' Answer to the FAC states: "Admitted."

Further, this statement is not subject to any reasonable dispute particularly given State Defendants' concessions and acknowledgments in response to SOUMF Nos. 6, 7, 8, and 10.

Therefore, the statement that, "One who knowingly possesses such an arm illegally 'is guilty of a crime of the second degree,' " is not disputed or reasonably subject to dispute.

12

**<u>SOUMF No. 10</u>**

A crime in the second degree generally carries a term of imprisonment of five to ten years and a fine of up to $150,000, and a crime in the third degree generally carries a term of imprisonment of three to five years and a fine of up to $15,000. §§ 43-3(a)-(b), 43-6(a).

*Supporting Citations*:

- Ans. to FAC ¶ 26 (not denied)

| Defendants' Response to No. 10 | Plaintiffs' Reply to Response |
|---|---|
| Undisputed that N.J. Stat. Ann. § 2C:43-3 and -6 contain the maximum fines and sentence ranges for second and third degree crimes in the State of New Jersey. | Therefore, this statement stands undisputed. |

**<u>SOUMF No. 11</u>**

Moreover, a conviction would result in a lifetime ban on the possession of firearms and ammunition under federal and state law. *See* 18 U.S.C. § 922(g).

*Supporting Citations*:

- Ans. to FAC ¶ 27 (not denied)

| Defendants' Response to No. 11 | Plaintiffs' Reply to Response |
|---|---|
| This paragraph calls for legal conclusion and is not a proper statement of material fact. | State Defendants' response does not dispute the asserted statement but instead avoids responding at all, on the basis that "the statement calls for legal conclusion and is not a proper statement of material fact." The basis for their non-responsiveness is incorrect and, in any event, does not excuse the obligation to affirmatively dispute the asserted fact in order to avoid an implied concession. *See New Jersey Carpenters Pension Fund v. Housing Auth. and Urban Development Agency*, 68 F.Supp.3d 545, 549 (3d Cir. 2014) ("Indeed, where, as in this case, a party fails to respond to the movant's statement of undisputed |

|  | material facts with a point-by-point indication whether the stated fact is undisputed or, if disputed, with a citation to the factual record where contrary evidence exists, and where no contrary fact is readily apparent in the opponent's evidence, then the Court assumes that the opponent has no evidence raising a genuine dispute with the movant's stated fact for purposes of this motion."). Therefore, this statement is effectively undisputed.

Further, the statement is not subject to any reasonable dispute given the plain meaning and effect of 18 U.S.C. § 922(g) and the related laws and regulations that come into operation upon such a conviction. |

15

**SOUMF No. 12**

Plaintiff Cheeseman is a law-abiding resident of Gloucester County, New Jersey.

*Supporting Citations*:

- Decl. of Mark Cheeseman (Ex. 1) ¶ 1

| Defendants' Response to No. 12 | Plaintiffs' Reply to Response |
|---|---|
| The State objects that this paragraph calls for a legal conclusion that Plaintiff Cheeseman is "law-abiding." Subject to those objections, undisputed. | The meaning of "law-abiding" is well-established and not subject to reasonable dispute or objection as calling for a legal conclusion. *See New York State Rifle & Pistol Assoc. v. Bruen*, 142 S. Ct. 2111, 2122 (2022) ("the Second and Fourteenth Amendments protect the right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense"); *Range v. Attorney General*, 69 F.4th 96, 114 (3d Cir. 2023) (Shwartz, J., dissenting) |

("[T]here is no question that one who has a felony or felony-equivalent conviction is not law abiding. Thus, the Supreme Court's jurisprudence tells us that the right to bear arms is limited to law abiders, and that felon bans are presumptively lawful."); *Holloway v. Attorney General*, 948 F.3d 164, 175 (3d Cir. 2020) ("whether labeled a felon or misdemeanant, those who commit serious crimes are not the kinds of 'law-abiding' citizens whose rights *Heller* vindicated") (abrogated on other grounds in *Range*, 69 F.4th at 100).

State Defendants' objection to the use of "law-abiding" here is also disingenuous given that they have readily conceded to SOUMF No. 4

17

|  | without any such objection when SOUMF No. 4 uses the same term. Further, any such objection does not excuse the obligation to affirmatively dispute the asserted fact in order to avoid an implied concession and the resulting assumption that State Defendants have "no evidence raising a genuine dispute with the movant's stated fact for purposes of this motion." *New Jersey Carpenters Pension Fund v. Housing Auth. and Urban Development Agency*, 68 F.Supp.3d 545, 549 (3d Cir. 2014). |

**SOUMF No. 13**

Plaintiff Connolly is a law-abiding resident of Ocean County, New Jersey.

*Supporting Citations*:

- Decl. of Connolly (Ex. 2) ¶ 1

| Defendants' Response to No. 13 | Plaintiffs' Reply to Response |
|---|---|
| The State objects that this paragraph calls for a legal conclusion that Plaintiff Connolly is "law-abiding." Subject to those objections, undisputed. | *See* Plaintiffs' Reply to State Defendants' Response to SOUMF No. 12, incorporated herein as equally applicable to State Defendants' Response to SOUMF No. 13. |

**SOUMF No. 14**

Plaintiff Cheeseman is not disqualified from possessing and acquiring firearms under federal and state law.

*Supporting Citations*:

- Decl. of Mark Cheeseman (Ex. 1) ¶ 1

| Defendants' Response to No. 14 | Plaintiffs' Reply to Response |
|---|---|
| The State objects that this paragraph calls for a legal conclusion. | State Defendants' response does not dispute the asserted statement but instead avoids responding at all, on the basis that "the statement calls for legal conclusion." The basis for their non-responsiveness is incorrect and, |

|  | in any event, does not excuse the obligation to affirmatively dispute the asserted fact in order to avoid an implied concession and the resulting assumption that State Defendants have "no evidence raising a genuine dispute with the movant's stated fact for purposes of this motion." *New Jersey Carpenters Pension Fund v. Housing Auth. and Urban Development Agency*, 68 F.Supp.3d 545, 549 (3d Cir. 2014). Therefore, this statement is effectively undisputed. |
|---|---|

**SOUMF No. 15**

Plaintiff Connolly is not disqualified from possessing and acquiring firearms under federal and state law.

*Supporting Citations*:

- Decl. of Connolly (Ex. 2) ¶ 1

20

| Defendants' Response to No. 15 | Plaintiffs' Reply to Response |
|---|---|
| The State objects that this paragraph calls for a legal conclusion. | *See* Plaintiffs' Reply to State Defendants' Response to SOUMF No. 14, incorporated herein as equally applicable to State Defendants' Response to SOUMF No. 15. |

## SOUMF No. 16

Plaintiff Cheeseman is a member of Plaintiff FPC.

*Supporting Citations*:

- Ex. 1 ¶ 2

| Defendants' Response to No. 16 | Plaintiffs' Reply to Response |
|---|---|
| Undisputed. | Therefore, this statement stands undisputed. |

## SOUMF No. 17

Plaintiff Connolly is a member of Plaintiff FPC.

*Supporting Citations*:

- Ex. 2 ¶ 2

21

| Defendants' Response to No. 17 | Plaintiffs' Reply to Response |
|---|---|
| Undisputed. | Therefore, this statement stands undisputed. |

**SOUMF No. 18**

Plaintiff Cheeseman intends and desires to exercise his rights to keep and bear firearms classified as "assault firearms" under New Jersey's Ban, including but not limited to an AR-15 style rifle, for lawful purposes, especially for home defense, target shooting, and proficiency training.

*Supporting Citations*:

- Ex. 1 ¶ 3

| Defendants' Response to No. 18 | Plaintiffs' Reply to Response |
|---|---|
| The State objects that this paragraph calls for a legal conclusion and/or argument and/or improper opinion, including as to "New Jersey's Ban" and the scope of the "rights to keep and bear firearms." | State Defendants' response does not dispute the asserted statement but instead avoids responding at all, on the basis that the statement "calls for a legal conclusion and/or argument and/or improper opinion." The basis for their non-responsiveness is incorrect, and the use of the terms |

|  | "and/or" renders the actual nature of the objections vague and ambiguous. In any event, the stated objections do not excuse the obligation to affirmatively dispute the asserted fact in order to avoid an implied concession and the resulting assumption that State Defendants have "no evidence raising a genuine dispute with the movant's stated fact for purposes of this motion." *New Jersey Carpenters Pension Fund v. Housing Auth. and Urban Development Agency*, 68 F.Supp.3d 545, 549 (3d Cir. 2014). Therefore, this statement is effectively undisputed. |
|--|--|

**SOUMF No. 19**

Plaintiff Connolly intends and desires to exercise his rights to keep and bear firearms classified as "assault firearms" under New Jersey's Ban, including but not limited to an AR-15 style rifle, for lawful purposes, especially for home defense, target shooting, and proficiency training.

*Supporting Citations*:

- Ex. 2 ¶ 3.

| Defendants' Response to No. 19 | Plaintiffs' Reply to Response |
|---|---|
| The State objects that this paragraph calls for a legal conclusion and/or argument and/or improper opinion, including as to "New Jersey's Ban" and the scope of the "rights to keep and bear firearms." | *See* Plaintiffs' Reply to State Defendants' Response to SOUMF No. 18, incorporated herein as equally applicable to State Defendants' Response to SOUMF No. 19. |

**SOUMF No. 20**

But for the Ban, Plaintiff Cheeseman would acquire, purchase, and/or receive, and lawfully use this firearm, and other "assault firearms," including prohibited shotguns and handguns.

*Supporting Citations*:

- Ex. 1 ¶ 4

| Defendants' Response to No. 20 | Plaintiffs' Reply to Response |
| --- | --- |
| Undisputed to the extent Plaintiff Cheeseman attests interest in acquiring and using "assault firearms." | Therefore, this statement stands undisputed. |

## SOUMF No. 21

But for the Ban, Plaintiff Connolly would acquire, purchase, and/or receive, and lawfully use this firearm, and other "assault firearms," including prohibited shotguns and handguns.

*Supporting Citations*:

- Ex. 2 ¶ 4

| Defendants' Response to No. 21 | Plaintiffs' Reply to Response |
| --- | --- |
| Undisputed to the extent Plaintiff Connolly attests interest in acquiring and using "assault firearms." | Therefore, this statement stands undisputed. |

## SOUMF No. 22

The Ban nonetheless renders it illegal for either of them to do so.

*Supporting Citations*:

- Ex. 1 ¶¶ 3-4

- Ex. 2 ¶¶ 3-4

| Defendants' Response to No. 22 | Plaintiffs' Reply to Response |
|---|---|
| Undisputed that New Jersey law prohibits non-exempt individuals from acquiring and using "assault firearms." | Therefore, this statement stands undisputed. |

## SOUMF No. 23

In light of the State's enforcement of this Ban, Plaintiff Cheeseman continues to refrain from acquiring, possessing, and using for self-defense and other lawful purposes any AR-15 rifle, any other firearm prohibited under the Ban, or any "substantially identical" firearm as defined under the Guidelines, based on the reasonable fear and threat of arrest, confiscation, prosecution, fine, and imprisonment for violating the Ban.

*Supporting Citations*:

- Ex. 1 ¶ 5

| Defendants' Response to No. 23 | Plaintiffs' Reply to Response |
|---|---|
| The State objects that this paragraph calls for a legal conclusion and/or argument and/or improper opinion. Undisputed as to Plaintiff Cheeseman's attested reasons for not acquiring an "assault firearm." | Therefore, this statement stands undisputed as to Plaintiff Cheeseman's attested reasons for not acquiring an "assault firearm" as those reasons are articulated herein. Further, in having not disputed Plaintiff Cheeseman's attested reasons for not acquiring an "assault firearm," State Defendants have conceded the essential fact underlying SOUMF No. 23 and thereby negated the effect of any objections to the statement as "call[ing] for a legal conclusion and/or argument and/or improper opinion." In any event, such objections are vague and ambiguous in their use of the terms "and/or," and they do not excuse the obligation |

27

|  | to affirmatively dispute the asserted fact in order to avoid an implied concession and the resulting assumption that State Defendants have "no evidence raising a genuine dispute with the movant's stated fact for purposes of this motion." *New Jersey Carpenters Pension Fund v. Housing Auth. and Urban Development Agency*, 68 F.Supp.3d 545, 549 (3d Cir. 2014). |
|---|---|

**SOUMF No. 24**

In light of the State's enforcement of this Ban, Plaintiff Connolly continues to refrain from acquiring, possessing, and using for self-defense and other lawful purposes any AR-15 rifle, any other firearm prohibited under the Ban, or any "substantially identical" firearm as defined under the Guidelines, based on the reasonable fear and threat of arrest, confiscation, prosecution, fine, and imprisonment for violating the Ban.

*Supporting Citations*:

- Ex. 2 ¶ 5

| Defendants' Response to No. 24 | Plaintiffs' Reply to Response |
|---|---|
| The State objects that this paragraph calls for a legal conclusion and/or argument and/or improper opinion. Undisputed as to Plaintiff Connolly's attested reasons for not acquiring an "assault firearm." | *See* Plaintiffs' Reply to State Defendants' Response to SOUMF No. 23, incorporated herein as equally applicable to State Defendants' Response to SOUMF No. 24. |

## SOUMF No. 25

Plaintiff FPC is a nonprofit membership organization, the purposes of which include defending and promoting the People's rights, especially, but not limited to, the fundamental, individual Second Amendment right to keep and bear arms, advancing individual liberty, and restoring freedom.

*Supporting Citations*:

- Decl. of Brandon Combs (Ex. 3) ¶ 2

| Defendants' Response to No. 25 | Plaintiffs' Reply to Response |
|---|---|

29

| | |
|---|---|
| Undisputed that FPC is a nonprofit membership organization whose self-described purposes are as stated. | Therefore, this statement stands undisputed. |

## SOUMF No. 26

Plaintiff FPC serves its members and the public through legislative advocacy, grassroots advocacy, litigation and legal efforts, research, education, outreach, and other programs.

*Supporting Citations*:

- Ex. 3 ¶ 2

| Defendants' Response to No. 26 | Plaintiffs' Reply to Response |
|---|---|
| Undisputed that FPC's self-described mission is as stated. | Therefore, this statement stands undisputed. |

## SOUMF No. 27

Plaintiff FPC brings this action on behalf its New Jersey resident members, including Plaintiffs Cheeseman and Connolly, who seek to exercise their right to keep and bear common semi-automatic arms for lawful purposes in New Jersey but who are prohibited from doing so under the Ban.

*Supporting Citations*:

- Ex. 3 ¶ 3.

| Defendants' Response to No. 27 | Plaintiffs' Reply to Response |
|---|---|
| The State objects that this paragraph calls for a legal conclusion and/or argument and/or improper opinion. Subject to those objections, undisputed only that individual Plaintiffs Cheeseman and Connolly have each attested interest in possessing semi-automatic firearms. Disputed as to the remainder of the paragraph. Plaintiff FPC has produced no evidence that, aside from the individually named Plaintiffs Cheeseman and Connolly, any of their other members would possess semiautomatic firearms in their homes, whether or not New Jersey law permitted it. Further, when asked in interrogatories if any | Therefore, it is undisputed that "Plaintiffs Cheeseman and Connolly have each attested interest in possessing semi-automatic firearms" as stated in SOUMF No. 27. The objections on the grounds that this "calls for a legal conclusion and/or argument and/or improper opinion" are not only vague and ambiguous as to their meaning, but they do not excuse the obligation to affirmatively dispute the asserted fact in order to avoid an implied concession and the resulting assumption that State Defendants have "no evidence raising a genuine dispute with the movant's stated fact for purposes of this motion." *New* |

| | |
|---|---|
| of its members has applied for a license to possess an assault firearm in New Jersey, Plaintiff ANJRPC responded on May 4, 2023, "[u]nknown at this time." Cheeseman Interrogatory Response #9. | *Jersey Carpenters Pension Fund v. Housing Auth. and Urban Development Agency*, 68 F.Supp.3d 545, 549 (3d Cir. 2014). Moreover, Plaintiff FPC has indeed presented evidence that "other members would possess semiautomatic firearms in their homes, whether or not New Jersey law permitted it," through the Declaration of Brandon Combs on behalf of FPC, which clearly states its other members "intend and desire to, inter alia, acquire, receive, transport, possess, lawfully use, and dispose of various semiautomatic rifles, shotguns, and handguns labeled by the State as 'assault firearms,' " and but for the enactment and enforcement of the |

| | |
|---|---|
| | ban at issue, they would do so. Pltf. Ex. 3 (Dkt No. 174-4) ¶¶ 3-6. |
| | Lastly, the reference to the discovery response of Plaintiff *ANJRPC* not only does not create any material fact in dispute here, but is also irrelevant as inapplicable to the *Cheeseman* Plaintiffs. |
| | Therefore, State Defendants' response does not generate any material fact in dispute here. |

**SOUMF No. 28**

Law-abiding New Jersey resident members of Plaintiff FPC intend and desire to, *inter alia*, acquire, receive, transport, possess, lawfully use, and dispose of various semiautomatic rifles, shotguns, and handguns labeled by the State as "assault firearms," but they are subject to, adversely affected by, and prevented from doing so under the prohibitions of the Ban against "assault firearms."

*Supporting Citations*:

- Ex. 3 ¶ 4

| Defendants' Response to No. 28 | Plaintiffs' Reply to Response |
|---|---|
| The State objects that this paragraph calls for a legal conclusion and/or argument and/or improper opinion. Subject to those objections, undisputed only that individual Plaintiffs Cheeseman and Connolly have each attested interest in possessing semi-automatic firearms. Disputed as to the remainder of the paragraph for the same reasons set forth in the State's Response to #27. | *See* Plaintiffs' Reply to State Defendants' Response to SOUMF No. 27, incorporated herein as equally applicable to State Defendants' Response to SOUMF No. 28. |

**<u>SOUMF No. 29</u>**

But for the enactment and enforcement of the Ban, these FPC members would forthwith, *inter alia*, acquire, receive, transport, possess, lawfully use, and dispose of such rifles, shotguns, and handguns targeted under the Ban.

*Supporting Citations*:

- Ex. 3 ¶ 5

| Defendants' Response to No. 29 | Plaintiffs' Reply to Response |
|---|---|

| | |
|---|---|
| The State objects that this paragraph calls for a legal conclusion and/or argument and/or improper opinion. Subject to those objections, undisputed only that individual Plaintiffs Cheeseman and Connolly have each attested interest in possessing semi-automatic firearms. Disputed as to the remainder of the paragraph for the same reasons set forth in the State's Response to #27. | *See* Plaintiffs' Reply to State Defendants' Response to SOUMF No. 27, incorporated herein as equally applicable to State Defendants' Response to SOUMF No. 29. |

**SOUMF No. 30**

However, they cannot and do not do so because the weapons are labeled "assault firearms," such that they reasonably fear and face a threat of arrest, confiscation, prosecution, fine, and imprisonment in light of the Ban's prohibitions.

*Supporting Citations*:

- Ex. 3 ¶ 5

| Defendants' Response to No. 30 | Plaintiffs' Reply to Response |
|---|---|

35

| | |
|---|---|
| The State objects that this paragraph calls for a legal conclusion and/or argument and/or improper opinion. Subject to those objections, undisputed only that individual Plaintiffs Cheeseman and Connolly have each attested interest in possessing certain semi-automatic firearms. Disputed as to the remainder of the paragraph for the same reasons set forth in the State's Response to #27. | *See* Plaintiffs' Reply to State Defendants' Response to SOUMF No. 27, incorporated herein as equally applicable to State Defendants' Response to SOUMF No. 30. |

**SOUMF No. 31**

But for the enactment and enforcement of this Ban, and the criminal penalties (including a life-long ban on the individuals' exercise of their Second Amendment protected rights) associated with violations of the Ban, these members of Plaintiff FPC would exercise their right to keep and bear the banned firearms for lawful purposes, including self-defense, without the fear or risk of arrest and prosecution for engaging in otherwise protected, lawful conduct.

36

*Supporting Citations*:

- Ex. 3 ¶ 6

| Defendants' Response to No. 31 | Plaintiffs' Reply to Response |
|---|---|
| The State objects that this paragraph calls for a legal conclusion and/or argument and/or improper opinion. Subject to those objections, undisputed only that individual Plaintiffs Cheeseman and Connolly have each attested interest in possessing certain semi-automatic firearms. Disputed as to the remainder of the paragraph for the same reasons set forth in the State's Response to #27. | *See* Plaintiffs' Reply to State Defendants' Response to SOUMF No. 27, incorporated herein as equally applicable to State Defendants' Response to SOUMF No. 31. |

## SOUMF No. 32

The injuries suffered by these members are germane to the core purposes of Plaintiff FPC.

*Supporting Citations*:

- Ex. 3 ¶ 7

| Defendants' Response to No. 32 | Plaintiffs' Reply to Response |
|---|---|
| The State objects that this paragraph calls for a legal conclusion and/or argument and/or improper opinion. Disputed as to the remainder of the paragraph for the same reasons set forth in the State's Response to #27. | *See* Plaintiffs' Reply to State Defendants' Response to SOUMF No. 27, incorporated herein as equally applicable to State Defendants' Response to SOUMF No. 32. |

**<u>SOUMF No. 33</u>**

As Attorney General of New Jersey, Defendant Platkin is the head of the State's Office of the Attorney General and Department of Law and Public Safety, which includes the New Jersey State Police, and this Office holds statewide criminal jurisdiction to investigate and prosecute any indictable offense.

*Supporting Citations*:

- *See* State of New Jersey, Department of Law & Public Safety website, https://www.njoag.gov/about/ ("the Attorney General oversees the New Jersey State Police (NJSP), the state's largest law enforcement agency, and the Division of Criminal Justice (DCJ), which has statewide authority to investigate and prosecute criminal offenses")

| Defendants' Response to No. 33 | Plaintiffs' Reply to Response |
|---|---|
| Undisputed. | Therefore, this statement stands undisputed. |

**SOUMF No. 34**

In this official capacity, Defendant Platkin is thus responsible for executing, delegating, and/or supervising the laws and regulations governing the possession of firearms and magazines and impose criminal sanctions for violations of the same, including the "assault firearms" regulatory scheme at issue in this case.

*Supporting Citations*:

- *See* State of New Jersey, Department of Law & Public Safety website, https://www.njoag.gov/about/ ("the Attorney General oversees the state's 21 County Prosecutors, and may assume responsibility for, or 'supersede,' investigations or prosecutions handled by a County Prosecutor's Office")

- *Kendrick v. Bruck*, 586 F. Supp. 3d 300, 307 (D. N.J. 2022) (the Attorney General oversees the Division of State Police, "which is responsible for executing and enforcing New Jersey's laws and regulations governing the possession of firearms")

- Ans. to FAC ¶ 9 (admitting that "Defendant Platkin is the Acting Attorney General of New Jersey, and serves as the head of the New Jersey Office of the Attorney General and Department of Law and Public Safety, which includes the New Jersey State Police")

| Defendants' Response to No. 34 | Plaintiffs' Reply to Response |
|---|---|
| Undisputed that the Attorney General of New Jersey is the chief law enforcement officer of the State. | Therefore, this statement stands undisputed. |

### SOUMF No. 35

Defendant Callahan is the Superintendent of the New Jersey Division of State Police, which is responsible for executing and enforcement of all criminal laws in the State, including those regulating the possession of firearms and magazines.

*Supporting Citations*:

- *See* State of New Jersey, Department of Law & Public Safety, State Police website, https://www.nj.gov/njsp/about/core-functions.shtml (the New Jersey Division of State Police performs "all functions associated with the statewide enforcement of laws, the prevention of crime, the pursuit and apprehension of offenders, and the gathering of legal evidence to ensure conviction of such offenders")

- *Kendrick*, 586 F. Supp. 3d at 307

- Ans. to FAC ¶ 10 (admitting that "Defendant Patrick J. Callahan is the Superintendent of the New Jersey State Police")

| Defendants' Response to No. 35 | Plaintiffs' Reply to Response |
|---|---|
| Undisputed. | Therefore, this statement stands undisputed. |

## SOUMF No. 36

Defendant Callahan's division acts under the general oversight and supervision of the Attorney General.

*Supporting Citations*:

- Plaintiffs incorporate the citations in support of SOUMF No. 35 as equally applicable and supportive here.

| Defendants' Response to No. 36 | Plaintiffs' Reply to Response |
|---|---|
| Undisputed. | Therefore, this statement stands undisputed. |

## SOUMF No. 37

Defendant Hoffman is the County Prosecutor of Gloucester County, where Plaintiff Cheeseman resides.

41

*Supporting Citations*:

- https://www.gloucestercountynj.gov/Directory.aspx?did=69

- Ex. 1 ¶ 1

| Defendants' Response to No. 37 | Plaintiffs' Reply to Response |
|---|---|
| Undisputed that Christine A. Hoffman is the Acting County Prosecutor of Gloucester County. | Therefore, this statement stands undisputed. |

**SOUMF No. 38**

Defendant Billhimer serves as the County Prosecutor for Ocean County, where Plaintiff Connolly resides.

*Supporting Citations*:

- https://ocponj.gov/staff/bradley-d-billhimer/

- Ex. 2 ¶ 1

| Defendants' Response to No. 38 | Plaintiffs' Reply to Response |
|---|---|
| Undisputed that Bradley D. Billhimer is the County Prosecutor of Ocean County. | Therefore, this statement stands undisputed. |

**SOUMF No. 39**

As the County Prosecutors for their respective counties, Defendants Hoffman and Billhimer are "responsible for the prosecution of crimes committed in the county" and have "authority to use all reasonable and lawful diligence for the detection, arrest, indictment and conviction of offenders against the laws."

*Supporting Citations*:

- *Yurick v. State*, 875 A.2d 898, 903 (N.J. 2005) (quotations omitted).

| Defendants' Response to No. 39 | Plaintiffs' Reply to Response |
|---|---|
| Undisputed that county prosecutors generally are responsible for the prosecution of crimes committed in their respective county. | Therefore, this statement stands undisputed. |

**SOUMF No. 40**

In addition, they would be responsible for preparing the necessary investigation and recommendation to law enforcement as to any individual in their respective counties who applies through the Superior Court for a license to purchase, possess, and carry any of otherwise prohibited "assault firearms."

*Supporting Citations*:

- N.J. Stat. Ann. §§ 2C:58-5(a)

43

| Defendants' Response to No. 40 | Plaintiffs' Reply to Response |
|---|---|
| This paragraph contains improper legal argument. The text of N.J. Stat. Ann. §§ 2C:58-5(a) provides: "Any person who desires to purchase, possess and carry a machine gun or assault firearm in this State may apply for a license to do so by filing in the Superior Court in the county in which he resides, or conducts his business if a nonresident, a written application setting forth in detail his reasons for desiring such a license. The Superior Court shall refer the application to the county prosecutor for investigation and recommendation. A copy of the prosecutor's report, together with a copy of the notice of the hearing on the application, shall be served upon | The statutory language that State Defendants quote here demonstrates that the statement asserted in SOUMF No. 40 is not truly disputed or subject to any reasonable dispute, thereby negating any objection that the statement "contains improper legal argument." Indeed, it contains no "argument" at all and merely neutrally summarizes the meaning of the language State Defendants quote. Moreover, it is disingenuous to contest this statement on any basis when it is not subject to any reasonable dispute particularly given State Defendants' concessions and acknowledgements in response to SOUMF Nos. 2 and 39. |

| | |
|---|---|
| the superintendent and the chief police officer of every municipality in which the applicant intends to carry the machine gun or assault firearm, unless, for good cause shown, the court orders notice to be given wholly or in part by publication." | Additionally, in limiting their response to nothing more than an objection, State Defendants have failed to provide any actual response, and the mere assertion of an objection does not excuse the obligation to affirmatively dispute the asserted fact in order to avoid an implied concession and the resulting assumption that State Defendants have "no evidence raising a genuine dispute with the movant's stated fact for purposes of this motion." *New Jersey Carpenters Pension Fund v. Housing Auth. and Urban Development Agency*, 68 F.Supp.3d 545, 549 (3d Cir. 2014). |

**SOUMF No. 41**

Accordingly, Defendants Hoffman and Billhimer would be responsible for prosecuting Plaintiff Cheeseman and Plaintiff Connolly, respectively, for any violation of the Ban that they may be accused of committing in their respective counties of residence.

*Supporting Citations*:

- Plaintiffs incorporate the citations in support of SOUMF Nos. 37-40 as equally applicable and supportive here.

| Defendants' Response to No. 41 | Plaintiffs' Reply to Response |
|---|---|
| The State objects that this paragraph calls for a legal conclusion and/or argument and/or improper opinion. | The State Defendants' admissions and acknowledgements in response to SOUMF Nos. 37 – 40 above refute the legitimacy of any objections to SOUMF No. 41 as "call[ing] for a legal conclusion and/or argument and/or improper opinion" or as being otherwise objectionable. Rather, based on the facts State Defendants admit or acknowledge in response to SOUMF |

|  | Nos. 37 – 40, the statement in SOUMF No. 41 logically must also be true and thus is not subject to any reasonable dispute.

Additionally, in limiting their response to nothing more than an objection, State Defendants have failed to provide any actual response, and the mere assertion of an objection does not excuse the obligation to affirmatively dispute the asserted fact in order to avoid an implied concession and the resulting assumption that State Defendants have "no evidence raising a genuine dispute with the movant's stated fact for purposes of this motion." *New Jersey Carpenters Pension Fund v. Housing Auth. and Urban* |

|  | *Development Agency*, 68 F.Supp.3d 545, 549 (3d Cir. 2014). |
| --- | --- |

## SOUMF No. 42

Similarly, Defendants Hoffman and Billhimer would be responsible for the investigation and recommendation as to Plaintiff Cheeseman and Connolly, respectively, concerning any application for a license to purchase, possess, and carry any "assault firearm."

*Supporting Citations*:

- Plaintiffs incorporate the citations in support of SOUMF Nos. 37-40 as equally applicable and supportive here.

| Defendants' Response to No. 42 | Plaintiffs' Reply to Response |
| --- | --- |
| The State objects that this paragraph calls for a legal conclusion and/or argument and/or improper opinion. The complete text of N.J. Stat. Ann. §§ 2C:58-5(a) is above at paragraph 40. | *See* Plaintiffs' Reply to State Defendants' Response to SOUMF No. 41, incorporated herein as equally applicable to State Defendants' Response to SOUMF No. 42. |

**SOUMF No. 43**

The Court has jurisdiction over this case and controversy, with the full power to adjudicate all claims for relief in the FAC, pursuant to 28 U.S.C. §§ 1331, 1343, 2201, and 2202, and 42 U.S.C. §§ 1983 and 1988, and venue properly lies in this district for purposes of adjudicating these claims, pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2).

*Supporting Citations*:

- Ans. to FAC ¶¶ 4-5 (not disputing jurisdiction or venue)

| Defendants' Response to No. 43 | Plaintiffs' Reply to Response |
|---|---|
| The State objects that this paragraph calls for a legal conclusion. To the extent the paragraph contains any alleged facts, they are undisputed. | This statement is not subject to any reasonable dispute, as exemplified by State Defendants' Answer to the FAC on the same point. Further, any objection on the grounds that this statement purportedly "calls for a legal conclusion" does not excuse the obligation to affirmatively dispute the asserted fact in order to avoid an implied concession and the resulting assumption that State |

|  | Defendants have "no evidence raising a genuine dispute with the movant's stated fact for purposes of this motion." *New Jersey Carpenters Pension Fund v. Housing Auth. and Urban Development Agency*, 68 F.Supp.3d 545, 549 (3d Cir. 2014). |
|---|---|

**SOUMF No. 44**

The term "assault firearm" (or "assault weapon," as used in other states that have enacted similar weapons bans) is a pejorative term that does not refer to any identifiable class of firearms.

*Supporting Citations*:

- "Prior to 1989, the term 'assault weapon' did not exist in the lexicon of firearms. It is a political term, developed by anti-gun publicists." *Stenberg v. Carhart*, 530 U.S. 914, 1001 n.16 (2000) (Thomas, J., dissenting) (citation and quotation marks omitted).

| Defendants' Response to No. 44 | Plaintiffs' Reply to Response |
|---|---|
| The State objects that this paragraph calls for a legal conclusion and/or | Notwithstanding State Defendants' vague and ambiguous objection(s) |

argument and/or improper opinion. Disputed that the term "assault weapon" or "assault firearm" does not refer to "any identifiable class of firearms." See Decl. of Daniel Vannella, Ex. 11, Rpt. of James Yurgealitis ¶ 85 (documenting firearms industry use of "assault weapons" as early as the 1980s); id. ¶ 89; id. ¶¶ 113-130 (describing defined features).

on the grounds that this statement "calls for a legal conclusion and/or argument and/or improper opinion," their response actually concedes the essential point that "the term 'assault weapon' did not exist in the lexicon of firearms" until the 1980s.

Further, State Defendants do not specifically object to or address the additional statement included in SOUMF No. 44, that the term "assault weapon" "is a political term, developed by anti-gun publicists." The failure to specifically respond, or the mere assertion of an objection in response, does not excuse the obligation to affirmatively dispute the asserted fact in order to avoid an implied concession and the resulting assumption that State Defendants

|  | have "no evidence raising a genuine dispute with the movant's stated fact for purposes of this motion." *New Jersey Carpenters Pension Fund v. Housing Auth. and Urban Development Agency*, 68 F.Supp.3d 545, 549 (3d Cir. 2014). |
|---|---|

**SOUMF No. 45**

It is semiautomatic firearms that the State bans and that Plaintiffs seek to acquire.

*Supporting Citations*:

- Ex. 1 ¶¶ 3-4

- Ex. 2 ¶¶ 3-4

- Ex. 3 ¶¶ 3-6

| Defendants' Response to No. 45 | Plaintiffs' Reply to Response |
|---|---|
| Undisputed that Plaintiffs allege they seek to acquire prohibited firearms. | Therefore, this statement stands undisputed. |

**SOUMF No. 46**

Unlike an automatic firearm, a semiautomatic firearm will not fire continuously with one pull of its trigger. Instead, a semiautomatic firearm requires the user to pull the trigger each time he or she wants to discharge a round.

*Supporting Citations*:

- *See Staples v. United States*, 511 U.S. 600, 602 n.1 (1994)

| Defendants' Response to No. 46 | Plaintiffs' Reply to Response |
|---|---|
| Undisputed, except to the extent that a semiautomatic firearm outfitted with certain additional features prohibited under New Jersey law may simulate automatic fire. | Therefore, it is undisputed as a general matter that "a semiautomatic firearm will not fire continuously with one pull of its trigger" and instead "requires the user to pull the trigger each time he or she wants to discharge a round." As for State Defendants' claim that "a semiautomatic firearm outfitted with certain additional features prohibited under New Jersey law may simulate automatic fire," first, this contradicts their admission that, |

fundamentally, a semiautomatic firearm "will *not* fire continuously with one pull of its trigger" and instead "*requires* the user to pull the trigger each time he or she wants to discharge a round."

Second, State Defendants' assertion here cannot logically be squared with their admission to SOUMF No. 71, where they cite their own expert's explanation that "[s]emi-automatic fire refers to a repeating firearm *that fires one shot for each pull of the trigger* until the ammunition supply is exhausted. The energy of the fired cartridge is utilized to cycle the mechanism of the firearm to feed and chamber the next shot." Yurgealitis Rpt. ¶ 29 (italics added).

| | Therefore, this statement stands undisputed or is not subject to any reasonable dispute based on State Defendants' own admissions. |
|---|---|

**SOUMF No. 47**

Semiautomatic firearms have "traditionally have been widely accepted as lawful possessions."

*Supporting Citations*:

- *See Staples v. United States*, 511 U.S. 600, 602 n.1 (1994)

| Defendants' Response to No. 47 | Plaintiffs' Reply to Response |
|---|---|
| Undisputed that the quoted case states that possession of semiautomatic firearms in general has been lawful. | Therefore, this statement stands undisputed. More specifically, the *statement itself* stands undisputed—not just the fact that the quoted case contains this assertion—because a proper response requires "a point-by-point indication whether the stated fact is undisputed or, if disputed, with a citation to the |

|  | factual record where contrary evidence exists, and where no contrary fact is readily apparent in the opponent's evidence, then the Court assumes that the opponent has no evidence raising a genuine dispute with the movant's stated fact for purposes of this motion." *New Jersey Carpenters Pension Fund v. Housing Auth. and Urban Development Agency*, 68 F.Supp.3d 545, 549 (3d Cir. 2014). |
|--|--|

**SOUMF No. 48**

Indeed, semiautomatic firearms have been commercially available for over a century.

*Supporting Citations*:

- *See Heller v. District of Columbia (Heller II)*, 670 F.3d 1244, 1287 (D.C. Cir. 2011) (Kavanaugh, J., dissenting); David B. Kopel, *Rational*

*Basis Analysis of "Assault Weapon" Prohibition*, 20 J. CONTEMP. 381,

413 (1994), https://davekopel.org/2A/LawRev/rational.htm

| Defendants' Response to No. 48 | Plaintiffs' Reply to Response |
|---|---|
| Undisputed that semiautomatic firearms became commercially available in the beginning of the 20th Century. See Decl. of Daniel Vannella, Ex. 4, Rpt. of Professor Robert Spitzer ¶ 38; Decl. of Daniel Vannella, Ex. 12, Rpt. of Professor Brian DeLay ¶¶ 6; 76. The State objects to Plaintiffs' use of inadmissible hearsay. | Therefore, this statement stands undisputed. As for State Defendants' objection "to Plaintiffs' use of inadmissible hearsay," they fail to identify which statements within which of the cited sources form the basis of their claim that Plaintiffs are "us[ing] … inadmissible hearsay." Because State Defendants' objection leaves Plaintiffs and the Court to simply speculate about the basis of it, the objection must be disregarded or summarily overruled. Further, as Plaintiffs contend in their briefing, there is "a clear record of legislative facts" already |

| | establishing the ubiquitous availability, possession, and use of semiautomatic firearms for lawful purposes throughout the rest of the country, and the normal rules of evidence, including the "hearsay" rule, do not apply and thus do not operate as any bar to the admission of such legislative facts. *See* Pltf. Brief ISO MSJ (Dkt. No. 174-1) at 29-30. |
|---|---|

**SOUMF No. 49**

Apart from the now-expired ten-year federal "assault weapons" ban, the federal government has not banned semiautomatic firearms.

*Supporting Citations*:

- Associated Press, *Congress lets assault weapons ban expire*, Sept. 8, 2004, https://www.nbcnews.com/id/wbna5946127

| Defendants' Response to No. 49 | Plaintiffs' Reply to Response |
|---|---|

| | |
|---|---|
| Undisputed that the Public Safety and Recreational Firearms Use Protection Act expired on September 13, 2004, and that law is not currently in effect. | Therefore, this statement stands undisputed. |

**SOUMF No. 50**

The only states that have enacted bans on "assault weapons" (with varying definitions of that term) are California, Connecticut, Hawaii, Illinois, Maryland, Massachusetts, Delaware, New York, and Washington.

*Supporting Citations*:

- *See* Shawna Chen, *10 states with laws restricting assault weapons*, AXIOS (Apr. 28, 2023), https://bit.ly/3pukU02

| Defendants' Response to No. 50 | Plaintiffs' Reply to Response |
|---|---|
| Disputed that the laws of each of these states "bans" assault firearms. The State objects to Plaintiffs' use of inadmissible hearsay and mischaracterization of the statutes of the states listed. | As for State Defendants' objection "to Plaintiffs' use of inadmissible hearsay," they fail to identify which statements within which of the cited sources form the basis of their claim that Plaintiffs are "us[ing] … |

| | |
|---|---|
| | inadmissible hearsay." Similarly, State Defendants provide no explanation for their conclusory assertion that Plaintiffs have "mischaracteriz[ed]" the effect of these other laws.<br><br>Because State Defendants' objections leave Plaintiffs and the Court to simply speculate about the basis of them, the objections must be disregarded or summarily overruled. Further, the cited laws of other states are a proper matter for judicial notice and the text of those laws speak for themselves in showing that the statement herein is not subject to any reasonable dispute. |

**SOUMF No. 51**

An AR-15 can only fire as often as a person can pull its trigger, while an M249 light machine gun, commonly used by the U.S. military, can fire 750 to 1,000 rounds per minute.

*Supporting Citations*:

- *See Squad Automatic Weapon (SAW), M249 Light Machine Gun*, Military Analysis Network, https://bit.ly/3tsQGtd

| Defendants' Response to No. 51 | Plaintiffs' Reply to Response |
|---|---|
| The State objects to Plaintiffs' use of inadmissible hearsay and use of materials not in the record. | Once again, State Defendants fail to identify which statements within which of the sources cited on this point form the basis of their claim that Plaintiffs are "us[ing] … inadmissible hearsay." They also fail to explain the basis of their objection to Plaintiffs' "use of materials not in the record" by not identifying which "materials" are supposedly objectionable on this basis. |

Further, as Plaintiffs contend in their briefing, there is "a clear record of legislative facts" already establishing the nature and function of AR-15 rifles as contrasted with machine guns, and the normal rules of evidence, including the rules regarding hearsay and foundation, do not apply and thus do not operate as any bar to the admission of such legislative facts. *See* Pltf. Brief ISO MSJ (Dkt. No. 174-1) at 29-30.

Moreover, in having responded with nothing more than objections here, State Defendants have provided no response at all. Again, their failure to specifically respond, or the mere assertion of an objection in response, does not excuse the obligation to affirmatively dispute the asserted

|  | fact in order to avoid an implied concession and the resulting assumption that State Defendants have "no evidence raising a genuine dispute with the movant's stated fact for purposes of this motion." *New Jersey Carpenters Pension Fund v. Housing Auth. and Urban Development Agency*, 68 F.Supp.3d 545, 549 (3d Cir. 2014). |
| --- | --- |

**SOUMF No. 52**

"Heavy" machine guns like the M61 series can fire significantly larger caliber ammunition (20mm) much faster yet (6,000 rounds per minute).

*Supporting Citations*:

- *See M61A1/M61A2 20mm Automatic Gun, Military Analysis Network*, https://bit.ly/3ttnemV

| Defendants' Response to No. 52 | Plaintiffs' Reply to Response |
| --- | --- |

| | |
|---|---|
| The State objects to Plaintiffs' use of inadmissible hearsay and use of materials not in the record. | *See* Plaintiffs' Reply to State Defendants' Response to SOUMF No. 51, incorporated herein as equally applicable to State Defendants' Response to SOUMF No. 52. |

**SOUMF No. 53**

Most AR-style firearms are chambered for 5.56 x 45mm NATO (similar to .223 Remington) ammunition, a relatively inexpensive and very common cartridge that is particularly well suited for home-defense purposes because it has sufficient stopping power in the event a home intruder is encountered but loses velocity relatively quickly after passing through a target and other objects, thus decreasing the chance that an errant shot will strike an unintended target.

*Supporting Citations*:

- *See Modern Sporting Rifle Comprehensive Consumer Report*, National Shooting Sports Foundation (NSSF) ("*Comprehensive Consumer Report*"), https://bit.ly/3GLmErS (noting that self/home-defense is the second most important reason that Americans reported for owning AR-style firearms, second only to recreational target shooting)

- FRANK MINITER, *The Future of the Gun* at 35 (2014) (Ex. 4) ("ARs are popular with civilians and law enforcement around the world because they're accurate, light, portable and modular. . . . It's also easy to shoot and has little recoil, making it popular with women.")

| Defendants' Response to No. 53 | Plaintiffs' Reply to Response |
|---|---|
| The State objects to Plaintiffs' use of inadmissible hearsay and use of materials not in the record. The State objects to the reliability of the methodology employed in the cited documents. | *See* Plaintiffs' Reply to State Defendants' Response to SOUMF No. 51, incorporated herein as equally applicable to State Defendants' Response to SOUMF No. 53 as it relates to their objections to Plaintiffs' supposed "use of inadmissible hearsay and use of materials not in the record." State Defendants' objection "to the reliability of the methodology employed in the cited documents" is similarly defective. Such an objection is far too general and conclusory in reference to the |

|  | supporting citations which consist of lengthy studies, extensive data and analyses, and multiple "methodologies" concerning the subjects studied in these sources. In the absence of any specificity as to "the methodology employed in the cited documents" with which State Defendants purport to take issue and in the absence of any explanation as to how or why this information is unreliable, it is impossible to discern the actual basis of the objection and thus it must be disregarded or summarily overruled. |
|  | Further, as in the other instances where State Defendants asserted merely an objection without any response to the point at issue, the effect is an implied concession and a |

|  | resulting assumption that they have "no evidence raising a genuine dispute with the movant's stated fact for purposes of this motion." *New Jersey Carpenters Pension Fund v. Housing Auth. and Urban Development Agency*, 68 F.Supp.3d 545, 549 (3d Cir. 2014). And there is no reasonable dispute over the facts stated in SOUMF No. 53 anyway, because they are already established within the clear record of legislative facts. *See* Pltf. Brief ISO MSJ (Dkt. No. 174-1) at 29-30. |
|---|---|

**SOUMF No. 54**

A telescoping or folding stock is merely an adjustable shoulder stock, which allows one to change the length of his gun to fit his stature, in the same way that he can change the height of an adjustable chair; some people have shorter arms than

others, so it promotes accuracy by allowing the stock to be adjusted to fit the individual user's physique, thickness of clothing, and shooting position.

*Supporting Citations*:

- *See* E. Gregory Wallace, *Assault Weapon Myths*, 43 S. ILL. U. L. J. 193, 232 (2018), https://scholarship.law.campbell.edu/cgi/viewcontent.cgi?article=1265&context=fac_sw;

- STEPHEN P. HALBROOK, AMERICA'S RIFLE: THE CASE FOR THE AR-15 at 8 (2022) (Ex. 5)

| Defendants' Response to No. 54 | Plaintiffs' Reply to Response |
|---|---|
| The State objects to Plaintiffs' use of inadmissible hearsay and use of materials not in the record and lacking in foundation. Undisputed that "Folding and / or telescoping stocks allow the operator to more easily conceal or maneuver the rifle in a confined space such as a vehicle. They also facilitate easier or more comfortable firing from positions | Therefore, it is undisputed that a telescoping or folding stock serves the utilitarian purposes described in SOUMF No. 54. As for State Defendants' objection to "Plaintiffs' use of inadmissible hearsay and use of materials not in the record and lacking in foundation," they provide no explanation of the basis of these |

68

| | |
|---|---|
| other than the shoulder. U.S. Military origins for this type of stock can be found on the M1 carbine in World War II when modified for paratrooper use." Yurgealitis Rpt. ¶ 124. | objections as to either of the sources cited, both of which are densely packed with information and "materials" concerning this subject. In the absence of any specificity as to which statements State Defendants claim constitute inadmissible "hearsay," which "materials" Plaintiffs are "us[ing]" that are "not in the record," and which materials are "lacking in foundation," it is impossible to discern the actual basis for these exceedingly broad and conclusory objections. Therefore, they must be disregarded or summarily overruled. |

**SOUMF No. 55**

Similarly, a pistol grip makes it easier to hold and stabilize a rifle or shotgun when fired from the shoulder and thus also promotes accuracy and reduces the risk of stray shots.

*Supporting Citations*:

- *See* Wallace, *Assault Weapon Myths* at 228; Kopel, *Rational Basis*, *supra*, 20 J. CONTEMP. L. 381, 396 (1994)

| Defendants' Response to No. 55 | Plaintiffs' Reply to Response |
|---|---|
| The State objects to Plaintiffs' use of inadmissible hearsay and use of materials not in the record and lacking in foundation. Undisputed that a "semiautomatic rifle or shotgun that includes a pistol grip (or does not include a shoulder stock) somewhat increases the ability of the operator to conceal the rifle or shotgun and to maneuver the firearm in confined space such as a vehicle. The pistol grip also facilitates easier | Therefore, it is undisputed that a pistol grip serves the utilitarian purposes described in SOUMF No. 55. As for State Defendants' objection to "Plaintiffs' use of inadmissible hearsay and use of materials not in the record and lacking in foundation," they provide no explanation of the basis of these objections as to either of the sources cited both of which are densely |

| | |
|---|---|
| firing from positions other than the shoulder (firing from the hip or a point position directly in front of the operator)." Yurgealitis Rpt. ¶ 122. | packed with information and "materials" concerning this subject. In the absence of any specification as to which statements State Defendants claim constitute inadmissible "hearsay," which "materials" Plaintiffs are "us[ing]" that are "not in the record," and which materials are "lacking in foundation," it is impossible to discern the actual basis for these exceedingly broad and conclusory objections. Therefore, they must be disregarded or summarily overruled. |

**SOUMF No. 56**

A flash suppressor is merely a device that reduces the flash of light from firing a round, "prevent[ing] the night-time home defender from being blinded by her own muzzle flash."

*Supporting Citations*:

- *Miller*, 542 F. Supp. 3d at 1035;

- *See also* Wallace, *Assault Weapon Myths* at 233–34

| Defendants' Response to No. 56 | Plaintiffs' Reply to Response |
|---|---|
| The State objects to Plaintiffs' use of inadmissible hearsay and use of materials not in the record and lacking in foundation. Undisputed that "A flash suppressor reduces the muzzle flash, allowing the operator to more easily maintain vision in low light conditions and also helps to conceal the flash from view. This allows the operator to more easily acquire additional targets in a shorter period of time without having to wait for their vision to adjust to a brighter muzzle flash as well as helps conceal the shooter's position." Yurgealitis Rpt. ¶ 125. | Therefore, it is undisputed that a flash suppressor serves the utilitarian purposes described in SOUMF No. 56. As for State Defendants' objection to "Plaintiffs' use of inadmissible hearsay and use of materials not in the record and lacking in foundation," they provide no explanation of the basis of these objections as to either of the sources cited both of which are densely packed with information and "materials" concerning this subject. In the absence of any specification as to which statements State Defendants claim constitute |

|  | inadmissible "hearsay," which "materials" Plaintiffs are "us[ing]" that are "not in the record," and which materials are "lacking in foundation," it is impossible to discern the actual basis for these exceedingly broad and conclusory objections. Therefore, they must be disregarded or summarily overruled. |
|---|---|

**SOUMF No. 57**

Most common semiautomatic firearms, including those banned under the State's law, can accept a detachable magazine.

*Supporting Citations*:

- NRA Shooting Sports USA, *Handgun Operation: Types Of Semi-Automatic Pistol Mechanisms*, https://www.ssusa.org/content/handgun-operation-types-of-semi-automatic-pistol-mechanisms/ ("Most semi-automatic firearms use detachable box magazines, which afford one of the main advantages of such arms")

| Defendants' Response to No. 57 | Plaintiffs' Reply to Response |
|---|---|
| The State objects to Plaintiffs' use of inadmissible hearsay and use of materials not in the record and lacking in foundation. Undisputed that most firearms regulated by the statutes at issue can accept a detachable magazine. Yurgealitis Rpt. ¶¶ 131-34. | Therefore, the statement in SOUMF No. 57 stands undisputed. As for State Defendants' objection to "Plaintiffs' use of inadmissible hearsay and use of materials not in the record and lacking in foundation," they provide no explanation of the basis of these objections as to either of the sources cited both of which are densely packed with information and "materials" concerning this subject. In the absence of any specification as to which statements State Defendants claim constitute inadmissible "hearsay," which "materials" Plaintiffs are "us[ing]" that are "not in the record," and which materials are "lacking in |

|  | foundation," it is impossible to discern the actual basis for these exceedingly broad and conclusory objections. Therefore, they must be disregarded or summarily overruled. |
|---|---|

**SOUMF No. 58**

Detachable magazines not only help law-abiding shooters to reload their weapon in stressful defense circumstances, but in the case of some platforms, including the AR-15, they are required to remedy malfunctions safely and quickly.

*Supporting Citations*:

- *See* Dennis Chapman, *Features and Lawful Common Uses of Semi-Automatic Rifles* 29-30 (Oct. 5, 2021) (working paper), https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3436512 (explaining the propensity of self-loading weapons to overheat and malfunction)

| Defendants' Response to No. 58 | Plaintiffs' Reply to Response |
|---|---|
| The State objects to Plaintiffs' use of inadmissible hearsay and use of | State Defendants' response does not dispute the asserted statement but instead avoids responding at all, on |

| | |
|---|---|
| materials not in the record and lacking in foundation**.** | the basis of their objection to "Plaintiffs' use of inadmissible hearsay and use of materials not in the record and lacking in foundation." However, any such objections do not excuse the obligation to affirmatively dispute the asserted fact in order to avoid an implied concession and the resulting assumption that State Defendants have "no evidence raising a genuine dispute with the movant's stated fact for purposes of this motion." *New Jersey Carpenters Pension Fund v. Housing Auth. and Urban Development Agency*, 68 F.Supp.3d 545, 549 (3d Cir. 2014). In any event, State Defendants provide no explanation of the basis of these objections as to the cited |

| | source which is densely packed with information and "materials" concerning this subject. In the absence of any specificity as to which statements State Defendants claim constitute inadmissible "hearsay," which "materials" Plaintiffs are "us[ing]" that are "not in the record," and which materials are "lacking in foundation," it is impossible to discern the actual basis for these exceedingly broad and conclusory objections. Therefore, they must be disregarded or summarily overruled.

And there is no reasonable dispute over the facts stated in SOUMF No. 58, because they are already established within the clear record of legislative facts to which the rules of |
|---|---|

|  | evidence do not apply anyway. *See* Pltf. Brief ISO MSJ (Dkt. No. 174-1) at 29-30. |

## **SOUMF No. 59**

The AR-15 is America's "most popular semi-automatic rifle."

*Supporting Citations*:

- *Heller II*, 670 F.3d at 1287 (Kavanaugh, J., dissenting)

| Defendants' Response to No. 59 | Plaintiffs' Reply to Response |
|---|---|
| Undisputed that then-Judge Kavanaugh's dissent in Heller II contains the quoted statement. | Therefore, this statement stands undisputed. More specifically, the *statement itself* stands undisputed—not just the fact that the quoted case contains this assertion—because a proper response requires "a point-by-point indication whether the stated fact is undisputed or, if disputed, with a citation to the factual record where contrary evidence exists, and where no |

| | contrary fact is readily apparent in the opponent's evidence, then the Court assumes that the opponent has no evidence raising a genuine dispute with the movant's stated fact for purposes of this motion." *New Jersey Carpenters Pension Fund v. Housing Auth. and Urban Development Agency*, 68 F.Supp.3d 545, 549 (3d Cir. 2014). |
|---|---|

**SOUMF No. 60**

In recent years, the AR-15 has been "the best-selling rifle type in the United States."

*Supporting Citations*:

- Nicholas J. Johnson, *Supply Restrictions at the Margins of Heller and the Abortion Analogue*, 60 HASTINGS L.J. 1285, 1296 (2009), https://papers.ssrn.com/sol3/papers.cfm?abstract_id=1494634

| **Defendants' Response to No. 60** | **Plaintiffs' Reply to Response** |
|---|---|

| | |
|---|---|
| The State objects to Plaintiffs' use of inadmissible hearsay and use of materials not in the record and lacking in foundation. | State Defendants' response does not dispute the asserted statement but instead avoids responding at all, on the basis of their objection to "Plaintiffs' use of inadmissible hearsay and use of materials not in the record and lacking in foundation." However, any such objections do not excuse the obligation to affirmatively dispute the asserted fact in order to avoid an implied concession and the resulting assumption that State Defendants have "no evidence raising a genuine dispute with the movant's stated fact for purposes of this motion." *New Jersey Carpenters Pension Fund v. Housing Auth. and Urban Development Agency*, 68 F.Supp.3d 545, 549 (3d Cir. 2014). |

<table>
<tr><td></td><td>Further, as with State Defendants' other exceedingly broad and conclusory objections asserted without any specificity as to what within the lengthy cited source is truly objectionable on the stated grounds, it is impossible to discern the actual basis for the objections and thus they must be disregarded or summarily overruled.

Moreover, the facts stated in SOUMF No. 60 are not subject to reasonable dispute, because they are already established within the clear record of legislative facts to which the rules of evidence do not apply anyway. *See* Pltf. Brief ISO MSJ (Dkt. No. 174-1) at 29-30.</td></tr>
</table>

**SOUMF No. 61**

Today, the number of AR-rifles and other similar "modern sporting rifles" in circulation in the United States exceeds *twenty-four million*.

*Supporting Citations*:

- *Commonly Owned: NSSF Announces Over 24 Million MSRs in Circulation*, NSSF (July 20, 2022), https://bit.ly/3QBXiyv

- *See also* William English, *2021 National Firearms Survey: Updated Analysis Including Types of Firearms Owned* at 1–2 (May 13, 2022), https://bit.ly/3yPfoHw (finding that an estimated 24.6 million American gun owners have owned AR-15s or similar rifles)

| Defendants' Response to No. 61 | Plaintiffs' Reply to Response |
|---|---|
| The State objects to Plaintiffs' use of inadmissible hearsay and use of materials not in the record and lacking in foundation. The State objects to the reliability of the methodology employed in the cited documents. As to the NSSF Survey, the State specifically objects to the reliability of its methodology. James | State Defendants' general objections to "Plaintiffs' use of inadmissible hearsay and use of materials not in the record and lacking in foundation," are defective and must be disregarded or summarily overruled for the same reasons that their other exceedingly broad and conclusory objections without any |

Curcuruto, a former director of research and market development at NSSF, testified in another case that he and Steve Sanetti, the president of NSSF, essentially made estimates between themselves, and that Mr. Sanetti's personal knowledge was the "sources of data" relied upon when they published statistics related to the number of firearm magazines in circulation. Vannella Decl. Ex. 44, Dep. of James Curcuruto, Wiese v. Bonta, 2:17-cv-00903- WBS-KJN (E.D. Ca.). at T:133:4-140:15. Even if the NSSF survey is admissible, the State disputes any conclusion that it shows the weapons in question are commonly owned. The NSSF figures also do not represent civilian

explanation of their basis must be disregarded or summarily overruled. Further, whatever the basis of these general objections, they do not excuse the obligation to affirmatively dispute the asserted fact in order to avoid an implied concession and the resulting assumption that State Defendants have "no evidence raising a genuine dispute with the movant's stated fact for purposes of this motion." *New Jersey Carpenters Pension Fund v. Housing Auth. and Urban Development Agency*, 68 F.Supp.3d 545, 549 (3d Cir. 2014).

State Defendants' specific objections to the NSSF Survey and the English Survey are unfounded. As detailed in Plaintiffs' briefing,

83

ownership, as the figures appear to include law enforcement and security agencies, firearms retailers, and possibly prohibited possessors (e.g. violent criminals). See Decl. of Daniel Vannella, Ex. 9, Rpt. of Professor Louis Klarevas ¶ 14. The surveys and reports by the NSSF also don't necessarily account for AR-15s being amassed in the hands of a relative few. Klarevas Rpt. ¶ 29. Based on the NSSF's own data and Census Bureau statistics, less than 2% of all Americans own a modern sporting rifle. Klarevas Rpt. ¶ 38. As to the English survey, the State specifically objects to the reliability of its methodology. Klarevas Rpt. ¶ 29, n.31 (noting serious violation of Code of Professional Ethics and

these surveys contain clearly established legislative facts to which the rules of evidence do not apply. *See* Pltf. Brief ISO MSJ (Dkt. No. 174-1) at 29-30.

Moreover, the State's own expert evidence relies on this NSSF data along with data from ATF in distilling the actual ownership statistics. *See e.g.*, Expert Report of Luis Klarevas, Def. Ex. 9 (Dkt No. 184-1) at ¶ 14 ("The NSSF estimates that there are approximately 24.4 million modern sporting rifles in civilian hands in the United States as of the end of 2020 (when the most recent data are available)."); *id.* ("[a]ssuming these figures reported by the NSSF and ATF are accurate"). In so doing, the State

Practices of the American Association for Public Opinion Research); Dep. of Gary D. Kleck, Oregon Firearms Fed'n v. Kotek, No. 22-cv-1815 (D. Or.), ECF 175-7 at 12-13 (plaintiff-side expert stating he "would not rely" on it "for any purpose"). Even if the English survey is admissible, the State disputes any conclusion that it shows the weapons in question are commonly owned. The study results indicate that approximately 74,000 people own over 100 such rifles. A conservative calculation of the English study results show that approximately 11 million AR-15 styled rifles are concentrated in the hands of 1.6% of AR-15 owners. Klarevas Rpt. ¶ 29.

neutralizes its own claim that the NSSF data are unreliable, D-MSJ 39-40, and it also neutralizes its objections to the English Survey as unreliable and inadmissible since the Survey is independently corroborated it by the NSSF's data. Even accepting the speculation that the NSSF reports "*appear to* include sales to law enforcement, firearm retailers, and 'possibly prohibited possessors' as well as straw buyers," D-MSJ at 40 (emphasis added), the State fails to show how any inclusion of these categories materially alters the analysis: Even just one million of the more than 24 million documented as being in circulation is quintuple the number that Justice Alito deemed sufficient to be

| | "common" in *Caetano*, 577 U.S. at 420 (Alito, J., concurring) (finding stun guns common because 200,000 civilians own them). |
|---|---|

**SOUMF No. 62**

In recent years they have been the second- most common type of firearm sold, at approximately 20% of all firearm sales, behind only semiautomatic handguns.

*Supporting Citations*:

- *See 2021 Firearms Retailer Survey Report* at 9, NSSF (2021), https://bit.ly/3gWhI8E

| Defendants' Response to No. 62 | Plaintiffs' Reply to Response |
|---|---|
| The State repeats its objection in Paragraph 61. | *See* Plaintiffs' Reply to State Defendants' Response to SOUMF No. 61, incorporated herein as equally applicable to State Defendants' Response to SOUMF No. 62. |

## SOUMF No. 63

And the English survey is not limited to the semiautomatic firearms that the State enumerates by name, but rather extends to the "AR-15 *or similarly styled rifle[s]*."

*Supporting Citations*:

- *National Firearms Survey*, *supra*, at 33

| Defendants' Response to No. 63 | Plaintiffs' Reply to Response |
|---|---|
| The State repeats its objection in Paragraph 61. | *See* Plaintiffs' Reply to State Defendants' Response to SOUMF No. 61, incorporated herein as equally applicable to State Defendants' Response to SOUMF No. 63. |

## SOUMF No. 64

Just like the rifles, handguns are semiautomatic firearms and semiautomatic firearms are indisputably common.

*Supporting Citations*

- *See, e.g.*, *Firearms Retailer Survey Report*, *supra*, at 9, NSSF

87

| Defendants' Response to No. 64 | Plaintiffs' Reply to Response |
|---|---|
| The State repeats its objection in Paragraph 61. | *See* Plaintiffs' Reply to State Defendants' Response to SOUMF No. 61, incorporated herein as equally applicable to State Defendants' Response to SOUMF No. 64. <br><br> Additionally, State Defendants' objection to SOUMF No. 61, concerning AR-rifles and other similar "modern sporting rifles," is inapposite to the statement in SOUMF No. 64, concerning semiautomatic handguns, insofar as the objection to No. 61 relates solely to the data on AR-rifles and similar "modern sporting rifles." |

## SOUMF No. 65

The legislative facts documenting the ubiquity of detachable magazines associated with these firearms further illustrate the commonality of the banned arms.

*Supporting Citations*:

- *See e.g., ANJRPC*, 910 F.3d at 116 (finding that magazines capable of holding more than ten rounds are owned by the "millions, . . . often come factory standard with semi-automatic weapons, [and] are typically possessed by law-abiding citizens for hunting, pest-control, and occasionally self-defense");

- *National Firearms Survey*, *supra*, at 23–25 (documenting that approximately 39 million Americans have owned at least one magazine capable of owning more than 10 rounds and that Americans have owned as many as 542 million of such magazines).

| Defendants' Response to No. 65 | Plaintiffs' Reply to Response |
|---|---|
| The State repeats its objection in Paragraph 61. | *See* Plaintiffs' Reply to State Defendants' Response to SOUMF No. 61, incorporated herein as equally applicable to State Defendants' Response to SOUMF No. 65. |

| | |
|---|---|
| | Additionally, State Defendants' objection to SOUMF No. 61, concerning AR-rifles and other similar "modern sporting rifles," is inapposite to the statement in SOUMF No. 65, concerning the ubiquity of detachable magazines, insofar as the objection to No. 61 relates solely to the data on AR-rifles and similar "modern sporting rifles. |

**SOUMF No. 66**

It is clear that these arms (detachable magazines) are overwhelmingly used for lawful purposes.

*Supporting Citations*:

- *See* Gary Kleck, *Targeting Guns: Firearms and Their Control* 112 (1997) (Ex. 6) (evidence indicates that "well under 1% [of crime guns] are 'assault rifles.'")

| Defendants' Response to No. 66 | Plaintiffs' Reply to Response |
|---|---|
| | |

| | |
|---|---|
| The State objects to Plaintiffs' use of inadmissible hearsay and use of materials not in the record and lacking in foundation. The State also objects to this sentence as improper legal argument. The State's undisputed fact evidence regarding the prevalence of LCMs in crime are as follows:<br><br> a. A study by Christopher Koper in 2017 Journal of Urban Health showed that across ten different cities in the United States, firearms with LCMs accounted for between 15 and 36% of firearms recovered by law enforcement between 2001 and 2014. Vannella Decl. Ex. 10, Rpt. of Daniel Webster ¶ 12.<br><br>b. Firearms with LCMs accounted for 40.6% of the firearms used to | State Defendants' general objections on the grounds of hearsay, "use of materials not in the record," lack of foundation, and "improper legal argument" are, like the rest of their exceedingly broad and conclusory objections, far too general and non-specific for anyone to discern the actual basis of the objections and thus they must be disregarded or summarily overruled.<br><br>Moreover, State Defendants' discussion of their evidence regarding "the prevalence of LCMs in crime are as follows" is inapposite to the statement in SOUMF No. 66, which is that "these arms (detachable magazines) are overwhelmingly used for lawful purposes," an assertion that State Defendants do not dispute. |

murder police nationally between 2009 and 2013, and as much as 57.4% of firearms used in mass shootings with 4 or more fatalities for the period of 2009 to 2015. Webster Rpt. ¶ 12.

c. Assault weapons accounted for between 2.6 and 8.5% of firearms recovered by law enforcement officers from crime scenes in the same ten cities between 2001 and 2014. Webster Rpt. ¶ 12.

d. Assault weapons also accounted for 13.2% of murders of police involving firearms, and up to 35.7% of fatal mass shootings nationally between 2009 and 2015. Webster Rpt. ¶ 12.

e. A study by Wintermute et al. (1998) in Annals of Emergency

Indeed, even accepting the truth of the evidence that the State cites regarding the use of some LCMs for criminal purposes, that does not and cannot *negate* the evidence that they are "*overwhelmingly used* for lawful purposes." Again, State Defendants do not claim otherwise. Thus, *regardless* of any prevalence of LCMs *in crime*, State Defendants have effectively conceded the factual statement actually at issue—that detachable magazines are "overwhelmingly used for lawful purposes." *New Jersey Carpenters Pension Fund v. Housing Auth. and Urban Development Agency*, 68 F.Supp.3d 545, 549 (3d Cir. 2014). Significantly, *this* fact is all that's relevant in this case concerning the

Medicine, using data from handgun purchasers in California and subsequent crimes committed with those handguns prior to the state banning assault-style pistols found that the share of handguns purchased which were assault pistols was 2% if the purchaser had no criminal history, 4.6% if the purchaser had a history of minor criminal offenses, 6.6% for those with a previous criminal gun charge, and 10% for those who had previously been charged with two or more serious violent offenses. Webster Rpt. ¶ 13.

f. A study of mass shooting events from 1982 to October 2022 showed that there were 115 mass shooting events for which magazine capacity was known. Out of those 115 events,

Second Amendment rights of *law-abiding* citizens like Plaintiffs to possess and use such magazines. State Defendants' evidence and argument concerning the supposed prevalence of LCMs in crime are irrelevant, as they are merely an attempt to uphold the challenged ban on the basis of the State's policy judgments and interests about what it believes necessary or prudent in the name of public safety. It's all just a backdoor way of seeking application of the interest-balancing analysis squarely rejected in *Bruen*.

Moreover, to the extent one were to (improperly) focus on the *misuse* of these arms by criminals, abundant evidence shows the opposite of the picture State Defendants try to paint:

there were 73 where the perpetrator used large-capacity magazines (63%). Mass shooting was defined as one where four or more people were killed in a public place in one incident, excluding incidents related to other crimes such as robberies and domestic violence. Decl. of Daniel Vannella, Ex. 7, Rpt. of Lucy Allen ¶¶ 30-31.

g. A study of high-fatality mass shootings (defined as events resulting in 6 or more victims being shot to death) between 1991 and 2022 where magazine capacity used was known showed the percentage of such shootings where the perpetrator employed a large-capacity magazine (with greater than 10 rounds of capacity) has

it is exceedingly rare for the banned magazines and firearms to be used in crime, as detailed in Plaintiffs' briefing. *See* Pltf. Combined Brief Opp. to D-MSJ & Reply to Def. Opp. to P-MSJ at 18-19.

|  |  |
|---|---|
| increased. The overall rate of use of LCMs in such high fatality mass shootings is 77%, but rose to 100% over the past 4 years. Klarevas Rpt. ¶ 13.<br><br>h. Several statistical studies of defensive gun use showed that it is extremely rare for a person, when using firearms in self-defense, to fire more than 10 rounds. Allen Rpt. ¶¶ 9-15 & n.4; Yurgealitis Rpt. ¶ 147. |  |

**SOUMF No. 67**

According to FBI statistics, in 2019 there were only 364 homicides known to be committed with rifles of any type, compared to 6,368 with handguns, 1,476 with knives or other cutting instruments, 600 with personal weapons (hands, feet, etc.) and 397 with blunt objects.

*Supporting Citations*:

- *See Expanded Homicide Table 8, Crime in the United States* (FBI 2019), https://bit.ly/3HdolNd

95

| Defendants' Response to No. 67 | Plaintiffs' Reply to Response |
|---|---|
| Disputed that the FBI UCR report cited to in the "Supporting Citations" concerns "homicides" (which include, but are not limited to, murders), because on its face it is addressing only "Murder Victims." It is also unclear what this report defines as "Other guns" (45 known murders in 2019); or "Firearms, type not stated" (3,281 known murders in 2019). Otherwise, undisputed that this report provides the statistics highlighted in this paragraph. To the extent this paragraph contains any other alleged facts, they are disputed; and Cheeseman Plaintiffs have identified no non-hearsay and otherwise admissible evidence in support. | Therefore, it is undisputed that this report provides the statistics highlighted in this paragraph. More specifically, the essential fact that significantly more homicides were perpetrated by means other than a rifle during the given year stands undisputed, such that the meaning of "homicide," "Other guns," and "Firearms, type," which State Defendants question, are irrelevant to the point at issue and do not generate any sort of material dispute. Further, State Defendants' assertion that "Cheeseman Plaintiffs have identified no non-hearsay and otherwise admissible evidence in support" *implies* that they have relied on "hearsay" and other |

|  | *in*admissible evidence in support of the statement in SOUMF No. 67, but *without* specifying saying so. State Defendants do not specify the evidence that they claim constitutes hearsay or that is otherwise inadmissible, and any such evidence could not include the FBI UCR report cited in SOUMF No. 67, since State Defendants' response is that they do *not* dispute the statistics provided in this report. Therefore, these objections are only baseless but also have no bearing on the point at issue, which stands undisputed. |
|---|---|

**SOUMF No. 68**

According to a report by the U.S. Department of Justice, Bureau of Justice Statistics, household members are present for almost a third of all burglaries and become victims of violent crimes in more than a quarter of those cases.

*Supporting Citations*:

- https://bjs.ojp.gov/content/pub/pdf/vdhb.pdf

| Defendants' Response to No. 68 | Plaintiffs' Reply to Response |
|---|---|
| Undisputed only that the September 2010 Special Report by the Bureau of Justice Statistics listed in the "Supporting Citations" states that from the time period of 2003 to 2007, a household member was present for a household burglary approximately 27.6% of the time; and "[o]n average, household members became victims of violent crimes in about 266,560 burglaries annually" (or, approximately 7.2% of the time). | While State Defendants purport to confine their concession here to the fact that "from the time period of 2003 to 2007, a household member was present for a household burglary approximately 27.6% of the time; and '[o]n average, household members became victims of violent crimes in about 266,560 burglaries annually' (or, approximately 7.2% of the time)," they have failed to provide any response to the actual statement in SOUMF No. 68, that "household members are present for almost a third of all burglaries and become victims of violent crimes in more than a quarter of those cases." |

|  | State Defendants have not even asserted any objections to this statement or any reasons why they are not required to affirmatively address it. Because they have failed to affirmatively address the statement, we must "assume[] that [Defendants] ha[ve] no evidence raising a genuine dispute with the [Plaintiffs'] stated fact for purposes of this motion." *New Jersey Carpenters Pension Fund v. Housing Auth. and Urban Development Agency*, 68 F.Supp.3d 545, 549 (3d Cir. 2014). Thus, the statement stands undisputed. |
|--|--|

**SOUMF No. 69**

Studies on the frequency of defensive gun uses in the United States have determined that up to 2.5 million instances occur each year in which civilians use firearms to defend themselves or their property.

*Supporting Citations*:

- Gary Kleck, Marc Gertz, *Armed Resistance to Crime: The Prevalence and Nature of Self-Defense with a Gun*, 86 J. OF CRIM. L. & CRIMINOLOGY 150, 164 (1995), https://scholarlycommons.law.northwestern.edu/cgi/viewcontent.cgi?article=6853&context=jclc

- *See also* English, *National Firearms Survey*, *supra* at 5 (finding 31.1% of firearms owners, or approximately 25.3 million adult Americans, have used a firearm in self-defense and there are 1.67 million defensive firearm uses a year).

| Defendants' Response to No. 69 | Plaintiffs' Reply to Response |
|---|---|
| The State objects to Plaintiffs' use of inadmissible hearsay and use of materials not in the record and lacking in foundation. The State also objects to this sentence as improper | Again, State Defendants provide no explanation in support of their exceedingly broad and conclusory objections on the basis of "hearsay," "use of materials not in the record," |

| | |
|---|---|
| legal argument. The State repeats its objections contained in paragraph 61. | lack of foundation, and "improper legal argument." In the absence of any specificity as to which statements or aspects of the extensive materials contained in the cited sources are supposedly objectionable on these bases and why, it is impossible to discern the actual basis of the objections, and they must be disregarded or summarily overruled.<br><br>Moreover, the facts cited in this statement are clearly established legislative facts to which the rules of evidence do not apply. *See* Pltf. Brief ISO MSJ (Dkt. No. 174-1) at 29-30. Additionally, State Defendants' objection to SOUMF No. 61, concerning AR-rifles and other similar "modern sporting rifles," is |

|  | inapposite to the statement in SOUMF No. 69, concerning "defensive gun uses," insofar as the objection to No. 61 relates solely to the data on AR-rifles and similar "modern sporting rifles." |
| --- | --- |

## SOUMF No. 70

At least a third of all gun owners own a firearm for hunting or sport shooting, and recreational target shooting has been cited as the top reason, albeit closely followed by home defense, for owning semiautomatic firearms like those banned by the State.

*Supporting Citations*:

- *See Modern Sporting Rifle Comprehensive Consumer Report* and *Sport Shooting Participation in the U.S. in 2020*, *supra*

| **Defendants' Response to No. 70** | **Plaintiffs' Reply to Response** |
| --- | --- |
| The State objects to Plaintiffs' use of inadmissible hearsay and use of materials not in the record and lacking in foundation. The State also | *See* Plaintiffs's Reply to State Defendants' Response to SOUMF No. 69, incorporated herein as equally applicable to State |

| | |
|---|---|
| objects to this sentence as improper legal argument. The State repeats its objections contained in paragraph 61. | Defendants' Response to SOUMF No. 70. |

## **SOUMF No. 71**

All semiautomatic firearms that insert cartridges into a firing chamber, burn powder to expel projectiles through barrels, and are functionally semiautomatic in nature the same cyclical rate of fire: one round fired per pull of the trigger until ammunition is exhausted or the firearm or feeding device malfunctions.

*Supporting Citations*:

- *Staples*, 511 U.S. at 602 n.1 ("We use the term 'semiautomatic' to designate a weapon that fires only one shot with each pull of the trigger, and which requires no manual manipulation by the operator to place another round in the chamber after each round is fired.")

- Wallace, *Assault Weapon Myths* at 216 ("Because a semiautomatic firearm fires only one round with each pull of the trigger, it can fire only as fast as the individual shooter can pull the trigger.")

| Defendants' Response to No. 71 | Plaintiffs' Reply to Response |
|---|---|
| The State objects to Plaintiffs' use of inadmissible hearsay and use of materials not in the record and lacking in foundation. Undisputed that "Semi-automatic fire refers to a repeating firearm that fires one shot for each pull of the trigger until the ammunition supply is exhausted. The energy of the fired cartridge is utilized to cycle the mechanism of the firearm to feed and chamber the next shot." Yurgealitis Rpt. ¶ 29. | Therefore, this statement stands undisputed.<br><br>As for State Defendants' objections to "Plaintiffs' use of inadmissible hearsay and use of materials not in the record and lacking in foundation," they are inapposite in light of State Defendants' concession to the essential facts in this statement. Moreover, again, these objections are improper and should be disregarded or summarily overruled since State Defendants have failed to provide the minimal degree of specificity necessary to determine the actual basis for their claims that Plaintiffs' evidence includes "inadmissible hearsay" and the "use of materials not in the |

| | record," or matters "lacking in foundation." |
|---|---|

Respectfully submitted,

Dated: December 15, 2023

/s/ *Bradley P. Lehman*
Bradley P. Lehman
Gellert Scali Busenkell & Brown, LLC
1201 N. Orange Street, Suite 300
Wilmington, DE 19801
Phone: 302-416-3344
Email: blehman@gsbblaw.com