# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY
### TRENTON VICINAGE

| | |
|---|---|
| ASSOCIATION OF NEW JERSEY RIFLE & PISTOL CLUBS, INC., BLAKE ELLMAN, and MARC WEINBERG, | HON. PETER G. SHERIDAN |
| Plaintiffs, | Civil Action No. 3:18-cv-10507 |
| v. | |
| MATTHEW PLATKIN, in his official capacity as Attorney General of New Jersey, PATRICK J. CALLAHAN, in his official capacity as Superintendent of the New Jersey Division of State Police, RYAN MCNAMEE, in his official capacity as Chief of Police of the Chester Police Department, and JOSEPH MADDEN, in his official capacity as Chief of Police of the Park Ridge Police Department, | |
| Defendants. | |

| | |
|---|---|
| MARK CHEESEMAN, TIMOTHY CONNELLY, and FIREARMS POLICY COALITION, INC., | HON. RENEE M. BUMB |
| Plaintiffs, | Civil Action No. 1:22-cv-4360 |
| v. | |
| MATTHEW J. PLATKIN, in his official capacity as Acting Attorney General of New Jersey, PATRICK J. CALLAHAN, in his official capacity as Superintendent of the New Jersey | |

State Police, CHRISTINE A.
HOFFMAN, in her official capacity as
Acting Gloucester County Prosecutor,
and BRADLEY D. BILLHIMER, in
his official capacity as Ocean County
Prosecutor,

     Defendants.

---

BLAKE ELLMAN, THOMAS R.
ROGERS, and ASSOCIATION OF
NEW JERSEY RIFLE & PISTOL
CLUBS, INC.,

     Plaintiffs,

v.

MATTHEW J. PLATKIN, in his
official capacity as Attorney
General of New Jersey, PATRICK J.
CALLAHAN, in his official capacity
as Superintendent of the New Jersey
Division of State Police, LT. RYAN
MCNAMEE, in his official capacity as
Officer in Charge of the Chester Police
Department, and KENNETH BROWN, JR.,
in his official capacity as Chief of the Wall
Township Police Department,

     Defendants.

HON. PETER G. SHERIDAN

Civil Action No.
3:22-cv-04397

---

**REPLY BRIEF IN SUPPORT OF STATE DEFENDANTS'
MOTION TO EXCLUDE THE EXPERT TESTIMONIES OF
EMANUEL KAPELSOHN AND CLAYTON CRAMER**

MATTHEW J. PLATKIN
ATTORNEY GENERAL OF NEW JERSEY
R.J. Hughes Justice Complex
P.O. Box 116
Trenton, New Jersey 08625
(609) 376-3202
Daniel.Vannella@law.njoag.gov
*Attorney for State Defendants*

Angela Cai, *Deputy Solicitor General*
Daniel Vannella, *Assistant Attorney General*

Nicholas Kant
   *Deputy Attorney General*

Of Counsel And On The Brief

# **TABLE OF CONTENTS**

TABLE OF CONTENTS.............................................................................. i

TABLE OF AUTHORITIES ..................................................................... ii

PRELIMINARY STATEMENT ................................................................1

ARGUMENT ..............................................................................................2

  I.   THE STATE'S *DAUBERT* MOTION SHOULD BE GRANTED.................2

    A.  Mr. Kapelsohn's Testimony Should Be Excluded........................................3

    B.  Mr. Cramer's Testimony Should Be Excluded. ...........................................7

  II.  ALTERNATIVELY, THE STATE'S MOTION TO STRIKE SHOULD BE GRANTED. .......................................................................10

    A.  The August 31, 2023 Cramer Supplemental Report And Kapelsohn Materials Should Be Struck..............................................................11

    B.  Portions Of Kapelsohn's Deposition Errata Sheet Should Be Struck.........14

CONCLUSION ........................................................................................15

# TABLE OF AUTHORITIES

**Cases**                                                                                                   **Pages**

*Baird v. Bonta*,
No. 19-617, 2023 WL 9050959 (E.D. Cal. Dec. 29, 2023) ....................................7

*Chatman v. City of Chicago*,
  No. 13-5697, Dkt. 225 (N.D. Ill. May 12, 2016).....................................................5

*Daggett v. Waterfront Comm'n of N.Y. Harbor*,
  774 F. App'x 761 (3d Cir. 2019) .............................................................................7

*Dandy v. Ethicon Women's Health & Urology*,
  579 F. Supp. 3d 625 (D.N.J. 2022) ............................................................... 11, 14

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
  509 U.S. 579 (1993)...................................................................................... 1, 6, 12

*Duran v. Merline*,
  923 F. Supp. 2d 702 (D.N.J. 2013) .........................................................................7

*EBC, Inc. v. Clark Bldg. Sys., Inc.*,
  618 F.3d 253 (3d Cir. 2010)............................................................................ 14, 15

*Elcock v. Kmart Corp.*,
  233 F.3d 734 (3d Cir. 2000)........................................................................... 4, 6, 10

*Ezaki Glico Kabushiki Kaisha v. Lotte Int'l Am. Corp.*,
  No. 15-5477, 2019 WL 581544 (D.N.J. Feb. 13, 2019)............................... 11, 13

*Garrit v. City of Chicago*,
  No. 16-7319, 2022 WL 124554 (N.D. Ill. Jan. 13, 2022)....................................5, 6

*Hernon v. Webb-McRae*,
  No. 16-1612, 2018 WL 4204440 (D.N.J. Sept. 4, 2018)........................................7

*In re TMI Litig.*,
  193 F.3d 613 (3d Cir. 1999)..................................................................................10

*Jones v. Allen*,
  No. 15-1173, 2016 WL 9443772 (D. Md. Oct. 24, 2016)......................................6

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137 (1999) ...........................................................................................1, 6

*Minebea Co. v. Papst*,
   231 F.R.D. 3 (D.D.C. 2005) .............................................................................11

*Minnesota v. Noor*,
   No. 27-CR-18-6859, Order & Op. at 3  (Minn. Dist. Ct. Apr. 8, 2019) .................5

*Nimely v. City of New York*,
   414 F.3d 381 (2d Cir. 2005) ...............................................................................3

*Rocky Mountain Gun Owners v. Polis*,
   No. 23-2563, ___ F. Supp. 3d ___, 2023 WL 8446495
   (D. Colo. Nov. 13, 2023) .............................................................................8, 9, 10

*United States v. Libutti*,
   No. 92-611, 1994 WL 774644 (D.N.J. Sept. 6, 1994).........................................10

*Waldorf v. Shuta*,
   142 F.3d 601 (3d Cir. 1998).................................................................................4

*Wood v. Showers*,
   822 Fed. App'x 122 (3d Cir. 2020)......................................................................10

**Rules**

Fed. R. Civ. P. 26 ................................................................................ 1, 11, 12, 13

Fed. R. Evid. 702 ................................................................................ 1, 2, 6, 9, 10

iii

## **PRELIMINARY STATEMENT**

Tellingly, *ANJRPC* Plaintiffs' papers hardly reference *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) or Federal Rule of Evidence 702. Although the State provided numerous reasons for why Plaintiffs' proffered experts Emanuel Kapelsohn and Clayton Cramer are unqualified to render many of the opinions they offer and why their lack of reliable methodology renders all of their opinions inadmissible under the governing standards, Plaintiffs' response makes no effort to overcome those fatal flaws.

This Court should follow longstanding precedent to exclude Mr. Kapelsohn and Mr. Cramer's testimony. First, neither have the requisite expertise to offer much of their proffered opinions, since Plaintiffs have done nothing to show they have specialized expertise or experience beyond the average layman in areas like statistics, linguistics, or biomechanics and medicine. As a result, neither individual is qualified to offer "critique" or "statements" in response to the State's actual, qualified experts. Second, neither employ reliable methodology. Plaintiffs essentially concede this, mistakenly believing that non-scientific experts need not meet the methodological requirements of Rule 702. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999) held otherwise decades ago.

Similarly, Plaintiffs make no effort to show why their last-minute submissions and contradictory errata sheets meet the requirements of Federal Rule of Civil

1

Procedure 26, instead acknowledging that these submissions are offered for the impermissible purposes of backfilling inadequate analysis or overwriting what the witness actually testified to under oath. This Court should exclude these witnesses wholesale, but in the alternative, should strike these materials.

## **ARGUMENT**

## I.    **THE STATE'S *DAUBERT* MOTION SHOULD BE GRANTED.**

Plaintiffs make no effort to satisfy the Federal Rules of Evidence 702 and *Daubert* standard for expert testimony. Instead, they ignore those binding standards, taking the position that if an individual is qualified in *some* area of expertise, that individual may present expert testimony on *any* field, even if the actual opinion offered is based on faulty or unreliable methodology or impermissible lay opinion. Indeed, the fact that Plaintiffs acknowledge that Mr. Cramer and Mr. Kapelsohn failed to employ any identifiable methodology—much less reliable methodology required by Rule 702(c) and (d)—confirms that the State's *Daubert* motion should be granted. *See, e.g.*, ECF 197-3, ANJRPC Daubert Opp. 3 ("There is no methodology to discuss …."). And Plaintiffs' efforts to attempt to defend the substance of the proffered lay opinions by Mr. Kapelsohn and Mr. Cramer via counsel argument, *see* ANJRPC Daubert Opp. 2-5, 10-17, only underscores that what Plaintiffs proffer from these witnesses is not admissible expert opinion that would aid a finder of fact. *See* Fed. R. Evid. 702(a).

## A. Mr. Kapelsohn's Testimony Should Be Excluded.

Most of Mr. Kapelsohn's proffered testimony is beyond the scope of his expertise, and all of it is based on unsound methodology. *See* ECF 182-1, N.J. Daubert Br. 12-25. First, as to expertise, Plaintiffs miss the point entirely, advancing a one-line argument that Mr. Kapelsohn has had "training and experience as a firearms consultant, expert, teacher, and author." ANJRPC Daubert Opp. 2. To be clear, the State "does not presently challenge Mr. Kapelsohn's qualifications on general firearms knowledge and police practices." N.J. Daubert Br. 15.[1] But having expertise on firearms training or self-defense tactics, for example, does not grant Mr. Kapelsohn the requisite expertise to offer opinions on fields outside those areas, like linguistics, biomechanics, medicine, statistics, or history. *See Nimely v. City of New York*, 414 F.3d 381, 399 n.13 (2d Cir. 2005). After all, Plaintiffs have offered no

---

[1] Plaintiffs inaccurately state that Mr. Kapelsohn "has recently been *retained by the State of New Jersey as a firearms expert* in a case in Superior Court of New Jersey." ANJRPC Daubert Opp. Br. 1 (emphasis in original). As Mr. Kapelsohn himself correctly stated during his deposition, Vannella Decl., Ex. 16, Kapelsohn Dep. Tr. at T38:2-22, he was retained to serve as an expert on behalf of only an individual state trooper, in the matter of *Gordon v. Wetzel*, No. 21-cv-4861 (D.N.J.). In that matter, he is *not* serving as an expert on behalf of "the State of New Jersey," nor even of all of the individual State employees named as co-defendants in *Gordon*; nor is that individual trooper a party in these consolidated matters. And, per Mr. Kapelsohn's December 14, 2023 "Reply Declaration" in this matter, his "expected areas of testimony" in *Gordon* include "firearms, firearms training, defensive tactics, weapon retention, holsters and holster design, police tactics and procedures, and self-defense by [the individual trooper]." ECF 197-1, Kapelsohn Reply Decl. ¶ 5. And State Defendants, once again, are not contesting his qualifications on general firearms knowledge and police practices.

basis to think that Mr. Kapelsohn has "substantially more knowledge than an average lay person" about any of those fields. *Waldorf v. Shuta*, 142 F.3d 601, 627 (3d Cir. 1998).[2] Thus, the vast majority of Mr. Kapelsohn's proffered testimony is impermissible. *See* N.J. Daubert Br. 12-13; ECF 184-3, Vannella Decl. Ex. 14, Kapelsohn Rebuttal Rpt. (attempting to rebut expert opinions of Professors Cornell, Roth, Spitzer, Baron, Webster, and Klarevas, Ms. Allen, and Dr. Hargarten).

Apparently acknowledging the deficiencies of Mr. Kapelsohn's expertise, Plaintiffs now take the untenable position that he is *not* "offering opinions on linguistics, biomechanics and medicine, history, [or] statistics." ANJRPC Daubert Opp. 3. But they nonetheless insist he can offer "critique" of expert opinions in each of those fields. *Id.* at 3-4. That makes little sense, since a valid, admissible critique of a biomechanical expert's opinion, for example, presupposes the person offering that critical opinion has requisite expertise in the area of biomechanics, which Mr. Kapelsohn does not. Thus, to take an illustrative example, Mr. Kapelsohn cannot offer expert opinions "critiqu[ing]" Dr. Hargarten's biomechanics study results, and

---

[2] By comparison, the Third Circuit concluded that individual who worked with a populations in job readiness, was employed with a Division of Workers' Compensation, "kept abreast of relevant literature in his field," "possessed a degree in a field tangentially related," and "attended conferences" in the field, taken together, constituted the "outer limit" of what would be sufficient to qualify someone as an expert witness in the field of vocational rehabilitation. *Elcock v. Kmart Corp.*, 233 F.3d 734, 744 (3d Cir. 2000). Mr. Kapelsohn lacks *any* of those characteristics with respects to the fields the State identified.

certainly not by offering his own guesstimate of energy transfer in a gelatin model experiment. *See* Kapelsohn Rebuttal Rpt. 8. Indeed, Plaintiffs' attempt to shoehorn Mr. Kapelsohn as an all-weather expert has been rejected by other district courts. *See Garrit v. City of Chicago*, No. 16-7319, 2022 WL 124554, *8 (N.D. Ill. Jan. 13, 2022) (finding Mr. Kapelsohn's testimony regarding, inter alia, an autopsy report's findings inadmissible because he "is neither a medical professional nor a forensic pathologist," and rejecting proponents' attempt to label it as a "statement" as opposed to "an opinion"); *Chatman v. City of Chicago*, No. 13-5697, Dkt. 225 at 4-5 (N.D. Ill. May 12, 2016) (precluding Mr. Kapelsohn from testifying on "bullet trajectory and bodies" because "[h]e's not a forensic pathologist"); *Minnesota v. Noor*, No. 27-CR-18-6859, Order & Op. at 3 (Minn. Dist. Ct. Apr. 8, 2019), http://tinyurl.com/3kwnfukc (Mr. Kapelsohn qualified as expert only on use of force, but not other fields).

Second, Mr. Kapelsohn's lack of reliable methodology independently dooms all of his proffered opinions. As the State detailed in its opening brief, Mr. Kapelsohn was unable to articulate any specific, let alone reliable, methodology he employed in rendering any of his opinions in this case. *See* N.J. Daubert Br. 15-25. Plaintiffs do not try to rehabilitate Mr. Kapelsohn's methodology, instead making the stunning concession that his opinions are devoid of methodology: "There is no methodology to discuss when a witness is describing 45 year worth of personal observations and

experience with a firearm." ANJRPC Daubert Opp. 3. Plaintiffs misunderstand the basic governing law, since it is not the case, as they claim, that "methodology" is a prerequisite solely for "scientists offering scientific testimony." *Id.* As Rule 702 expressly states, not only must an expert's testimony be grounded in some type of "*scientific*, technical, or *other* specialized knowledge" (emphases added), but *any and all* expert testimony—with no qualifications or exceptions—must be "the product of reliable principles and methods," and for that matter, sufficient data. *See Elcock*, 233 F.3d at 745 ("*Daubert*'s gatekeeping obligation cover[s] not only scientific, but also non-scientific, testimony." (citing *Kumho Tire*, 526 U.S. at 151)); *see also* N.J. Daubert Br. 15-16 (collecting cases).[3] Thus, Plaintiffs have already conceded that Mr. Kapelsohn cannot meet *Daubert* and Rule 702.

Finally, were that not enough, Plaintiffs also failed to respond to a host of State's challenges as to Mr. Kapelsohn's qualifications to offer expert opinions in

---

[3] Again, other district courts already have rejected this very argument: while agreeing that Mr. Kapelsohn is generally qualified to opine on certain police practices issues such as use of force, they have struck down opinions for which he was unable to explain the "methodology" behind them. *See Garrit*, 2022 WL 124554, *3-12 (admitting Mr. Kapelsohn's testimony that was "supported by reliable methodology," while rejecting several other opinions that were not, notwithstanding his "experience working with police officers and attending numerous conferences and seminars"); *Jones v. Allen*, No. 15-1173, 2016 WL 9443772, *3-5 (D. Md. Oct. 24, 2016) (admitting Mr. Kapelsohn as an expert of "use of force" and "firearms/incident reconstruction," but striking his additional proffered testimony regarding "force sciences," for which he "provide[d] no scientific or methodologically sound foundation").

several areas, thus waiving them. *See, e.g.*, *Daggett v. Waterfront Comm'n of N.Y. Harbor*, 774 F. App'x 761, 764, n.7 (3d Cir. 2019) (deeming waived argument raised by defendant-movant that "plaintiffs failed to address … in their opposition brief" at the district court); *Duran v. Merline*, 923 F. Supp. 2d 702, 723 (D.N.J. 2013); *Hernon v. Webb-McRae*, No. 16-1612, 2018 WL 4204440, *2 n.2 (D.N.J. Sept. 4, 2018). That includes the State's *Daubert* challenge to Mr. Kapelsohn's proffered opinions about Professor Spitzer; firearms in "common use" in the early 1900s; "common" magazine size; estimated numbers of AR-15 and AK-type semiautomatic firearms in civilian hands; and how "pistol grips," "telescoping stocks," "flash suppressors," and "threaded muzzles" have practical "advantages." N.J. Daubert Br. 13, 17-19. Plaintiffs have no response to these challenges at all.

For all of the above reasons, this Court should exclude Mr. Kapelsohn as an expert witness.

### B. Mr. Cramer's Testimony Should Be Excluded.

The same problems plague Mr. Cramer's proffered expert testimony. For one, he lacks the expertise to offer opinions on statistics or linguistics. *See* N.J. Daubert Br. 33-35.[4] His proffered opinions lack even the minimum indicia of reliable

---

[4] While the State has never challenged Mr. Cramer's expertise on history generally, *see* N.J. Daubert Br. 33-35, the Supreme Court has also never suggested Mr. Cramer can meet the legal standard to offer expert opinion on history merely because he has written law review articles, *see* ANJRPC Daubert Opp. 7. *See also, e.g.*, *Baird v. Bonta*, No. 19-617, 2023 WL 9050959, *17 (E.D. Cal. Dec. 29, 2023) ("Cornell's

methodology, and instead are the product of animus and prejudgment against the State's witnesses and the results of their well-supported expert methodologies. *See id.* at 35-42. Plaintiffs fail to respond to these arguments about admissibility, instead resorting to listing the contents of Mr. Cramer's proffered opinions. *See* ANJRPC Daubert Op at 11-17. That misunderstands the gravamen of the *Daubert* inquiry, which is not whether the court agrees or disagrees with the *substance* of any particular part of the purported expert's testimony. Rather, the inquiry is whether the expert has met the standards of expertise and reliability under *Daubert*. Because Plaintiffs have made no effort to meet that burden, this Court should exclude Mr. Cramer as an expert witness.

In fact, another district court—after the State's opening briefs were submitted—has identified many of the same problems as those argued by the State here. In *Rocky Mountain Gun Owners v. Polis* ("*RMGO*"), No. 23-2563, ___ F. Supp. 3d ___, 2023 WL 8446495 (D. Colo. Nov. 13, 2023), Mr. Cramer was offered as plaintiffs' expert in support of their Second Amendment claims against Colorado. *Id.* at *4. Although no formal *Daubert* motion was before the court in the preliminary-injunction proceedings, the *RMGO* court nonetheless excluded swaths

_____

and Spitzer's opinions may be reliable even though they have often disagreed with the Supreme Court and criticized its conclusions about history; Cramer's views may be unreliable or not credible despite his agreement with the Supreme Court's interpretation of historical evidence.").

of Mr. Cramer's proffered testimony, refusing to "consider his many opinions that are irrelevant to the present facts, that are unsupported, or that relate to opinions not provided by Professors Roth and Spitzer in this case." *Id.* at *6. Next, the court found it "reasonable to question whether Professor Cramer is sufficiently qualified under [Rule] 702 to provide … criticism" of the opinions of Professors Roth and Spitzer. *Id.* Ultimately, in the limited setting of a preliminary injunction posture and without a *Daubert* motion, the court considered some of Mr. Cramer's opinions, but noted "his testimony had significant shortcomings in persuasiveness and credibility." *Id.*

The *RGMO* court's discussion of Mr. Cramer's testimony—very similar to his proffered testimony here—reveals that such testimony would not survive *Daubert*. For example, with respect to Mr. Cramer's "critique" of a statistical study published in a peer-reviewed journal, the *RGMO* court noted that Mr. Cramer "is not a statistician and has not received formal training" in the area, and "does not support his skepticism with any specific evidence." *Id.* at *22. Further, the Court credited Colorado's expert's identification of two basic "methodological errors" that Mr. Cramer committed. *Id.* at *22; *see also id.* at *22 n.29 (noting Mr. Cramer's use of anecdote instead of "data"). Next, the *RGMO* court noted that Mr. Cramer's attempt to respond to Professor Roth's "well-reasoned opinion" with only "anecdotal" or other "scant evidence." *Id.* at *15; *id.* at *14 (noting that Mr. Cramer's opinions were based, in part, on Professor Roth's "submissions in other cases, not his Declaration

in this case"). The court further noted that Mr. Cramer's proffered "calculat[ions]" were based on faulty methods: he "did not show his work" (i.e., "arithmetic or other methodology"); and, on its face, "his analysis seems unsound" and "[i]t appears he did not compare apples to apples." *Id.* at \*14 n.14.

Measured against Rule 702 and *Daubert*, Mr. Cramer's testimony in that case and this one would not meet the minimum standards for admissibility. *See In re TMI Litig.*, 193 F.3d 613, 673 (3d Cir. 1999); *Elcock*, 233 F.3d at 748; *Wood v. Showers*, 822 F. App'x 122, 124 (3d Cir. 2020); *United States v. Libutti*, No. 92-611, 1994 WL 774644, \*16 (D.N.J. Sept. 6, 1994), *aff'd*, 72 F.3d 124 (3d Cir. 1995). For all of these reasons, *see also* N.J. Daubert Br. 33-42, this Court should exclude Mr. Cramer's proffered expert testimony.

## II.   ALTERNATIVELY, THE STATE'S MOTION TO STRIKE SHOULD BE GRANTED.

This Court should exclude Mr. Kapelsohn and Mr. Cramer's testimony in toto under *Daubert*. But even if this Court were inclined to allow their testimony, it should strike the specific expert submissions that blatantly contravene Rule 26 and this Court's orders: 1) the August 31 Cramer supplemental report, Vannella Decl. Ex. 30;  2) the August 31 Kapelsohn ballistics videos and other submissions, *id.* Exs. 24-26; and 3) the challenged portions of Mr. Kapelsohn's errata sheet, *id.* Ex. 28.

### A. The August 31, 2023 Cramer Supplemental Report And Kapelsohn Materials Should Be Struck.

Plaintiffs do not even attempt to meet Rule 26(e)(1)(A)'s requirements—that a late expert submission is permissible only if it "correct[s] inaccuracies or add[s] information that was not available at the time of the original report." *Dandy v. Ethicon Women's Health & Urology*, 579 F. Supp. 3d 625, 629 (D.N.J. 2022) (quoting *Ezaki Glico Kabushiki Kaisha v. Lotte Int'l Am. Corp.*, No. 15-5477, 2019 WL 581544, *3 (D.N.J. Feb. 13, 2019)); *see also Minebea Co. v. Papst*, 231 F.R.D. 3, 6 (D.D.C. 2005) ("Rule 26(e) does not permit parties to file supplemental reports whenever they believe such reports would be 'desirable' or 'necessary' to their case."). The Cramer supplemental report and Kapelsohn home video meet none of these requirements.

First, for the Cramer supplemental report, Plaintiffs acknowledge, as they must, that the materials are "untimely" served at the literal last minute of discovery. *See* ANJRPC Daubert Opp. 17. And they do not dispute that these materials could have been produced earlier. In fact, Plaintiffs acknowledge that the submission provides information that was readily available to Mr. Cramer at the time of his original rebuttal report, but was submitted only after the weaknesses of his analysis were exposed at his deposition. *Id*. Plaintiffs' sole proffered reason is precisely what Rule 26 forbids: an effort to "correct failures of omission because the expert did an

11

inadequate or incomplete preparation, add new opinions, or deepen or strengthen existing opinions." *Dandy*, 579 F. Supp. 3d at 629.

Likewise, for Mr. Kapelsohn's ballistics videos, Plaintiffs essentially acknowledge that the late submission is an effort to fill in gaps in his prior testimony and report, directly contravening Rule 26.[5] The record shows Mr. Kapelsohn offered opinions about the wall penetration ability of various weapons, but was unable to support his opinions with record evidence when questioned at his deposition. Instead, he relied on undisclosed past "testing" as the basis of his opinion, and confirmed he had some recordings of those test results.[6] The State accordingly

---

[5] Plaintiffs' arguments on this score are also self-contradictory. One the one hand, Plaintiffs insist these videos "have nothing to do with Kapelso[h]n's opinions or this case." ANJRPC Daubert Opp. 5; *see id.* ("Those items have no relationship to his opinions in this case."). On the other hand, Plaintiffs appear to refer to these home videos—on which the State was unable to cross-examine during discovery—in their summary-judgment papers. *See* ECF 197, ANJRPC SJ Reply Br. 14, n.3. The State certainly agrees that Kapelsohn's videos and undecipherable notes have little relevance to the issues in this case; they also lack any indicia of reliability or verifiability required under *Daubert*. *See* N.J. Daubert Br. 24, n.8.

[6] *See, e.g.*, Vannella Decl. Ex. 14, Rebuttal Rpt. of Emanuel Kapelsohn 1-2 ("I have done many types of ballistic testing for the past 45 years[.]"); Vannella Decl., Ex. 16, Kapelsohn Dep. Tr. 46:17-47:2 ("Q. If I understand your testimony, you had conducted in the past not necessarily for this case, tests? A. Yes, not for this case, but have done in the past, multiple times."); *id. at* 145:20-146:7 ("Q. Just so I'm clear, is it correct that you did not perform any experiments, testing this projectile specifically for this? … A. First of all, that's incorrect. I already testified that I did test various cartridges, shooting through sheetrock or plaster board if you will, walls with 2 by 4 stud construction. And I said that I would be willing to bring in videos to show the court exactly what I was talking about."); *id.* at 185:1-8 ("Q. … I just want to clarify, have you recorded the results of any ballistic testing? A. Oh, over

requested evidence of that testing, since Rule 26 requires that an expert disclose "the facts or data considered by the witness in forming" his expert opinions. Fed. R. Civ. P. 26(a)(2)(B)(i). Plaintiffs then ignored the request for 27 days after the deposition and 23 days after the State's follow-up letter, and only disclosed the videos and other content at 8:44pm on the last night of expert discovery. And the submission did not appear to include prior evidence of "test [of] various cartridges, shooting through sheetrock or plaster board if you will, walls with 2 by 4 stud construction," as Mr. Kapelsohn had represented. Vannella Decl., Ex. 16, Kapelsohn Dep. Tr. 145:20-146:7. Instead, he submitted a home video dated August 26, 2023—*after* his deposition, and other content that is either undated or indecipherable.

While *inadvertent* failure to timely include some Rule 26(a)(2)(B)(i) materials might not necessarily merit a motion to strike, this situation goes far beyond a mere clerical error or oversight. The belated materials are a blatant effort to "revise [Plaintiffs'] disclosures in light of [their] opponent's challenges to the analysis and conclusions therein." *Ezaki*, 2019 WL 581544, *3. After all, Mr. Kapelsohn was unable to provide the empirical basis for his asserted opinions about ballistics penetration when questioned at deposition, and only performed new analysis after the fact to "correct failures of omission because the expert did an inadequate or

---

the years, I'm sure I have. Not -- not specific to musket balls, however. Q. Okay. And do you have those results still? A. Some I have. Some I don't.").

incomplete preparation, add new opinions, or deepen or strengthen existing opinions." *Dandy*, 579 F. Supp. 3d at 629.[7]

Finally, as the State explained in its moving brief, each of the *Dandy* factors favors granting the motion to strike as the proper remedy. It is telling that *ANJRPC* Plaintiffs made no effort to respond to these arguments. *See* ANJRPC Daubert Opp. 5-7, 16-17. The nature and timing of their conduct was a bad-faith attempt to muddy the evidentiary record of this case and with the maximum possible prejudice to State Defendants. For these reasons, the August 31 Cramer Supplemental Report and Kapelsohn video materials should be struck from the record.

### B. Portions Of Kapelsohn's Deposition Errata Sheet Should Be Struck.

Because Plaintiffs make no effort to justify their efforts to change the substance of Mr. Kapelsohn's deposition testimony via contradictory new answers in an errata sheet. *See* N.J. Daubert Br. 29-32 (citing *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 270 (3d Cir. 2010)). Their only response is that the errata-sheet version of the answers are "directly responsive to questions posed by counsel at a

---

[7] Plaintiffs now apparently insist that Mr. Kapelsohn did *not* previously conduct testing prior to offering his opinions allegedly based on those tests. *See* ANJRPC Daubert Opp. 6 ("[H]e has performed ammunition wall penetration demonstrations (**not testing**) many times in classes he has taught over the years." (emphasis added)); *id.* at 7 (asserting Kapelsohn testified he did not have videos). If Plaintiffs are now taking the position that Mr. Kapelsohn was not conducting any kind of scientific testing with reliable methodology, that only further undermines the admissibility of his opinions.

deposition." ANJRPC Daubert Opp. 6. But if the standard for changing substantive deposition testimony via errata sheet were merely that the new testimony is "responsive to questions posed" at the deposition, that would be no standard at all. *EBC* and this court's caselaw establishes otherwise: that the proponent of the errata sheet must justify its inclusion in the record. Plaintiffs have made no effort to do that. Just as the Third Circuit affirmed the district court's refusal to consider an errata sheet in *EBC*, where the witness similarly attempted to change the substance of her answers in deposition questions via an errata sheet. 618 F.3d at 271 ("These contradictory amendments cannot establish a genuine issue of material fact where the original testimony did not.").

## **CONCLUSION**

For the foregoing reasons, and for the reasons provided in their opening brief, State's *Daubert* motion should be granted. In the alternative, the State's motion to strike certain discovery should be granted.

Dated:  January 19, 2024                    Respectfully submitted,

                                            MATHEW J. PLATKIN
                                            ATTORNEY GENERAL OF NEW JERSEY


                                    By:    /s/ Daniel M. Vannella_____
                                            Daniel M. Vannella
                                            Assistant Attorney General