

## State of New Jersey

PHILIP D. MURPHY
*Governor*

TAHESHA L. WAY
*Lt. Governor*

OFFICE OF THE ATTORNEY GENERAL
DEPARTMENT OF LAW AND PUBLIC SAFETY
DIVISION OF LAW
25 MARKET STREET
PO BOX 112
TRENTON, NJ 08625-0112

MATTHEW J. PLATKIN
*Attorney General*

MICHAEL T.G. LONG
*Director*

March 14, 2024

**VIA ECF**
Hon. Peter G. Sheridan, U.S.D.J.
United States District Court
402 East State Street
Trenton, NJ 08608

      **Re**:   *Association of New Jersey Rifle & Pistol Clubs, Inc., et al. v. Platkin, et al. ("ANJRPC")*
               Docket No. 3:18-cv-10507
          *Cheeseman, et al. v. Platkin, et al.*
               Docket No. 1:22-cv-04360
          *Ellman, et al. v. Platkin, et al.*
               Docket No. 3:22-cv-04397

Dear Judge Sheridan,

     The State writes to advise this Court of the recent decision in *Ocean State Tactical v. Rhode Island*, No. 23-1072, ___ F.4th ____, 2024 WL 980633 (1st Cir. Mar. 7, 2024) ("*OST*"). The First Circuit affirmed the District of Rhode Island's denial of a preliminary injunction against Rhode Island's restrictions on large-capacity magazines, concluding Plaintiffs were not likely to succeed on the merits of their constitutional claims. *Id.* at *3.

     Importantly, the *OST* Court relied on the record evidence—including expert evidence—to conduct the historical analysis required by *Bruen*. *Id.* at *4 (comparing the degree of "burden on the right of armed self-defense" (the "how") and the historical and modern "justification" for the analogous laws (the "why")).



March 14, 2024
Page 2

For example, the Court examined expert evidence "supplied by the record" to examine "how" Rhode Island's LCM restriction burdens the right of self-defense, and compared that burden to the burdens imposed by historical restrictions—again, supplied by the record. *Id.* Next, the Court examined the "why" for modern LCM restrictions, finding "[t]he record indicates that such weapons have indeed been deployed in many of the 'deadliest mass shootings in recent history,'" and that the lethality-enhancing features of LCMs make them especially well-suited for mass shooters. *Id.* at *5. When comparing the modern "why" to the historical one, the Court again looked to what "[t]he record demonstrates," concluding that "our nation's historical tradition recognizes the need to protect against the greater dangers posed by some weapons … as a sufficient justification for firearm regulation," and that "exact justification stands behind" the challenged LCM law. *Id.* at *7-8. Finally, the Court rejected the Plaintiffs' "fixation on the ownership rates of LCMs," concluding that an ownership-tally approach "contravenes case law in addition to logic." *Id.* at *9.[1]

The two courts of appeal to examine large-capacity magazine and/or assault firearm restrictions post-*Bruen* have both rejected the very claims Plaintiffs advance here. This Court should do the same. *See Bevis v. City of Naperville*, 85 F.4th 1175, 1195 (7th Cir. 2023).

Sincerely yours,

MATTHEW J. PLATKIN
ATTORNEY GENERAL OF NEW JERSEY

By: /s/ Daniel M. Vannella
     Daniel M. Vannella
     Assistant Attorney General

cc:    All counsel of record (via ECF)

---

[1] Because the *OST* court ultimately concluded Rhode Island's restrictions are "consistent with our history and tradition," it needed not examine whether "LCMs are 'arms' within the scope of the Second Amendment." *Id.* at 3.