

**State of New Jersey**

| | | |
|---|---|---|
| PHILIP D. MURPHY<br>*Governor* | OFFICE OF THE ATTORNEY GENERAL<br>DEPARTMENT OF LAW AND PUBLIC SAFETY<br>OFFICE OF THE SOLICITOR GENERAL<br>PO BOX 080<br>TRENTON, NJ 08625 | MATTHEW J. PLATKIN<br>*Attorney General* |
| TAHESHA L. WAY<br>*Lt. Governor* | | JEREMY M. FEIGENBAUM<br>*Solicitor General* |

June 19, 2024

**VIA ECF**
Honorable Peter G. Sheridan, U.S.D.J.
United States District Court
Clarkson S. Fisher Building
402 East State Street
Trenton, New Jersey 08608

      Re: *Association of New Jersey Rifle & Pistol Clubs, Inc., et al. v. Platkin, et al. ("ANJRPC")*, No. 3:18-cv-10507; *Cheeseman, et al. v. Platkin, et al.*, No. 1:22-cv-04360; *Ellman, et al. v. Platkin, et al.*, No. 3:22-cv-04397

Dear Judge Sheridan:

      The State responds to letters filed by the *ANJRPC* and *Ellman* Plaintiffs on June 14 and 15, 2024. Dkts. 218-219.[1]

      On the June 14 letter, Plaintiffs' reference to Justice Sotomayor's dissent in *Garland v. Cargill*, No. 22-976, ___ S.Ct. ___, 2024 WL 2981505 (U.S. June 14, 2024), does not help them. In that decision, Justice Sotomayor describes the catastrophic 2017 mass shooting in Las Vegas and mentions that the shooter "affix[ed] bump stocks to commonly available, semiautomatic rifles." *Id.* at *11. Plaintiffs claim that brief sentence reflects a "stunning admission" that "recognizes the unassailable fact that semi-automatic firearms, the very arms banned by the laws at issue in the cases before this court, are in common use." Dkt. 218 at 2.

      Plaintiffs' reliance on Justice Sotomayor's statement fails for multiple reasons. First, *Cargill* has nothing to do with the Second Amendment, a point that the litigants in

---

[1] All docket references are to the lead case, *ANJRPC*, No. 3:18-cv-10507.



HUGHES JUSTICE COMPLEX · TELEPHONE: (862) 350-5800 FAX: (609) 292-3508
*New Jersey is an Equal Opportunity Employer · Printed on Recycled Paper and Recyclable*

that case emphasized at oral argument. *See* No. 22-976, Oral Arg. Tr. at 104:9-18.[2] Second, Justice Sotomayor's dissent in no way suggests that "common availability" is an appropriate test for Second Amendment protection—let alone a dispositive one. It thus has no bearing on the points the State and multiple appellate courts have made refuting this exact test. *See, e.g.*, Dkt. 183-1 at 35-41 (State's Principal Brief); Dkt. 203 at 11-17 (State's Reply Br.); *see also Bevis v. City of Naperville*, 85 F.4th 1175, 1190, 1198-99 (7th Cir. 2023); *Ocean State Tactical, LLC v. Rhode Island*, 95 F.4th 38, 50-51 (1st Cir. 2024). And finally, the dissent in *Cargill* speaks only to the common availability of semiautomatic rifles generally, not *assault weapons*—a subset of semiautomatic firearms that have enumerated and particularly dangerous features, and which are the subject of this litigation. *See* N.J. Stat. Ann. § 2C:39-1(w); *see also, e.g.*, D.I. 184-2 Ex. 11 (Yurgealitis Rpt.) ¶¶ 113-130 (describing the ways these firearms and features are especially dangerous and exacerbate the lethality of mass shootings).

In any event, *Cargill* actually cuts against Plaintiffs' claim that assault weapons may never be prohibited. As the Bureau of Alcohol, Tobacco, Firearms, and Explosives recently stated, there are "280,000–520,000" estimated "bump-stock-type devices in circulation," 83 Fed. Reg. 66514, 66538, 66547 (2018), which is around the number of instruments Plaintiffs suggest suffices to achieve permanent constitutional protection, *see, e.g.*, Dkt. 175-7 at 21-27 (Plaintiffs' Principal Brief). But in *Cargill* itself, Justice Alito concurred to observe that there are no "material difference[s] between a machinegun and a semiautomatic rifle equipped with a bump stock," given "the same lethal effect" between the two, and to declare that "Congress can act" to ban bump stocks just like machineguns. 2024 WL 2981505, at *11 (Alito, J., concurring). If Plaintiffs were correct that common circulation was the dispositive criterion for the Second Amendment analysis, Congress could not in fact restrict them—just as Plaintiffs' position would raise grave doubts about restrictions on machineguns themselves. Plaintiffs still have no answer to this flaw.

As for the June 15 letter, Plaintiffs argue that because the Attorney General once referred to large-capacity magazines ("LCMs") as "dangerous weapons" in a press release that the State somehow "admits that the subject magazines are weapons and therefore arms protected by the Second Amendment." Dkt. 219 at 2. The press release is no such admission. For one, the press release is irrelevant to the legal issue in this case: the meaning of the Second Amendment's plain text as originally understood. The State submitted expert evidence showing that the original public meaning of "Arms" excludes bullet-storage containers like LCMs. *See, e.g.*, Dkt. 183-1 at 16-21 (State's Principal Brief); Dkt. 203 at 4-9 (State's Reply Brief). For another, caselaw has long made clear that executive statements—as with legislative findings—cannot dictate this Court's

---

[2] Available at: https://www.supremecourt.gov/oral_arguments/argument_transcripts/2023/22-976_97be.pdf.

constitutional analysis. *Cf. Smyth v. Ames*, 169 U.S. 466, 527-28 (1898); *City of Boerne v. Flores*, 521 U.S. 507, 519-24, 527-29 (1997).

                              Respectfully yours,

                              /s/ Christopher J. Ioannou
                              Christopher J. Ioannou
                              Deputy Attorney General

Cc: All counsel via ECF