LAW OFFICES

# HARTMAN & WINNICKI, P.C.

Dariusz M. Winnicki *°
Richard L. Ravin *°□
Daniel L. Schmutter*
Andrew T. Wolfe*

_____

\* New York and New Jersey Bars
° Florida Bar
□ Washington, D.C. Bar
◊ New Jersey Bar

74 PASSAIC STREET
RIDGEWOOD, NEW JERSEY 07450

\* \* \*

WEBSITE
www.hartmanwinnicki.com

Phone: (201) 967-8040
Fax:    (201) 967-0590

_____

Porter E. Hartman (1920-2009)
Charles R. Buhrman (1938-1994)
William T. Marsden (1943-1993)
Cyrus D. Samuelson (1911-1998)

June 25, 2024

**VIA ECF**

The Honorable Peter G. Sheridan
U.S. District Court for the District of New Jersey
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street
Room 2020
Trenton, NJ 08608

> Re:  *ANJRPC v. Platkin*, - 3:18-cv-10507-PGS-JBD
> *Cheeseman v. Platkin* - 1:22-cv-04360-PGS-JBD
> *Ellman v. Platkin* - 3:22-cv-04397-PGS-JBD

Dear Judge Sheridan:

We represent the *ANJRPC* and *Ellman* plaintiffs in the above-referenced consolidated matters and submit this letter in response to Defendants' letter of June 24, 2024, regarding the Supreme Court's decision in *United States v. Rahimi*, No. 22-915 (U.S. June 21, 2024).

At the outset, *Rahimi* makes clear that the government always "bears the burden to 'justify its regulation'" when it "regulates arms-bearing conduct." Op.6-7. *Rahimi* also confirms that the Second Amendment "'extends, prima facie, to all instruments that constitute bearable arms, even those that were not [yet] in existence'" "at the Founding." Op.7 (quoting in *District of Columbia v. Heller*, 554 U.S. 570, 582 (2008)). That defeats Defendants' contention that this Court can uphold New Jersey's sweeping bans on common arms without even engaging with our Nation's historical tradition of firearm regulation.

Defendants' summary of *Rahimi*'s historical-tradition analysis also misses the critical point. To be sure, *Rahimi* explains that "the appropriate analysis involves considering whether the challenged regulation is consistent with the principles that underpin our regulatory tradition." Op.7. But the law in *Rahimi* was permissible because there is a well-established regulatory tradition of restricting firearm possession and use by individuals "found by a court to present a threat to others." Op.13; *see* Op.9-16. The challenged laws here, by contrast, prohibit law-abiding citizens who have never been found to pose any threat to anyone from keeping or bearing some of the most common firearms in America as well as feeding devices that not only enable the

Hon. Peter G. Sheridan, U.S.D.J.
June 25, 2024
Page 2

quintessential self-defense weapons to function as intended, but are ubiquitous in modern America. That distinction is critical, because when it comes to laws that prohibit law-abiding citizens from keeping or bearing a class of arms outright, the Supreme Court has been explicit about *both* what our Nation's regulatory tradition is *and* what "principle[] ... underpin[s]" that tradition:  The relevant "historical tradition" is "of prohibiting the carrying of 'dangerous and unusual weapons,'" and the principle that underpins that tradition is "that the Second Amendment protects the possession and use of weapons that are 'in common use at the time.'" *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 21 (2022) (quoting *Heller*, 554 U.S. at 627).

Notably*, Rahimi*, makes no change to the "common use" test – the test set forth in *Heller* that controls arms ban cases such as these. As already fully briefed in the record, the arms bans at issue in these cases fail because the banned arms are "typically possessed by law-abiding citizens for lawful purposes." *Heller*, 554 U.S. at 625; *Caetano v. Massachusetts*, 577 U.S. 411, 416 (2016) (Alito, J., concurring). Once an arm is determined to satisfy the common use test it cannot be banned. No further analysis or historical tradition is required or appropriate because the Court did the full historical analysis for arms ban in *Heller* and developed the common use test for such laws. *See* Dkt.175-7 at 21-27 (Plaintiffs' summary judgment moving brief); Dkt.197 at 6-12 (Plaintiffs' summary judgment reply brief).

Rather than take the Supreme Court at its word, Defendants make the remarkable suggestion that the *real* historical tradition in this country is of allowing states to prohibit "dangerous *or* unusual weapons."  Dkt.222 at 2; *see also id.* at 3 (repeatedly claiming that the tradition is dangerousness alone).  Defendants try that gambit because they know that the arms they have banned are the furthest thing from "unusual" in modern society, and in fact are "unquestionably in common use today." *Bruen*, 597 U.S. at 47.  But the Supreme Court has been crystal clear that the relevant principle here is that "[a] weapon may not be banned unless it is *both* dangerous *and* unusual." *Caetano v. Massachusetts*, 577 U.S. 411, 417 (2016) (Alito, J., concurring in the judgment); *see also Rahimi* slip op.6 (reiterating that the tradition is of "bann[ing] the carrying of 'dangerous *and* unusual weapons'" (emphasis added) (quoting *Heller*, 554 U.S. at 627)); Kavanaugh.conc.22 (same).  And it is not open to states to disagree with the Supreme Court about the actual historical tradition in this country—especially when (as here) a state is trying to rewrite that tradition in order to expand its authority to trench on fundamental constitutional rights.

In a highly prescient concurring opinion, Justice Barrett wrote:

Courts have struggled with this use of history in the wake of *Bruen*. One difficulty is a level of generality problem: . . . To be sure, a court must be careful not to read a principle at such a high level of generality that it waters down the right.

Barrett.conc.3-4.

As if anticipating Defendants' letter of yesterday, Justice Barrett identifies precisely the manner in which States like New Jersey will attempt to misuse *Rahimi* seeking to support unconstitutional laws. Though not requiring an "historical twin," analogical reasoning under the

Hon. Peter G. Sheridan, U.S.D.J.
June 25, 2024
Page 3

Second Amendment nevertheless still requires the identification of an historical tradition that matches the "how" and "why" of a challenged regulation. Op.7. Defendants failed in this regard, and nothing in *Rahimi* changes that.  Additionally, *Rahimi* has not changed the requirement that the underlying historical laws, themselves, must each establish a specific historical tradition against which the challenge law is to be compared.  In the case of *Rahimi*, the Court relied on two distinct and broad historical traditions to generate the principle supporting the challenged law in that case. The Court identified a broad historical tradition of surety laws and a separate historical tradition of affray laws. The Court then used these two separate historical traditions to establish the principle on which the challenged law was supported. Op.9-16.

Yet, Defendants have identified no such specific historical traditions. Quite the opposite, Defendants are attempting to manufacture a highly general principle by amalgamating outliers that themselves do not form any historical tradition at all. Defendants' analogies are a smattering of disparate laws, none of which, themselves, form any historical tradition. While *Rahimi* recognizes that two historical traditions may, together, yield a relevant principle, nothing in *Rahimi* suggest that a state may try to manufacture an historical tradition from disparate outliers. In fact, *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111, 2133 (2022) specifically rejects such attempts. Further, such an attempt represents precisely the pernicious strategy that Justice Barrett warned about – States trying to water down the Second Amendment right by elevating the analysis to a high level of generality. That strategy could justify any regulation and eviscerate the Second Amendment entirely.

Respectfully submitted,

s/ Daniel L. Schmutter
DANIEL L. SCHMUTTER

DLS/lks
cc:     Angela Cai, Esq. (via ECF)
        Daniel M. Vannella, Esq. (via ECF)
        Bradley Lehman (via ECF)
        Raymond M. DiGuiseppe (via ECF)